APPEAL,Pro Se ECF Filer,Pro Se Plaintiff

# U.S. District Court
# District of Rhode Island (Providence)
# CIVIL DOCKET FOR CASE #: 1:23−cv−00126−WES−PAS

Seguin v. Rhode Island Department of Human Services et al
Assigned to: District Judge William E. Smith
Referred to: Magistrate Judge Patricia A. Sullivan
Demand: $3,000,000
Case in other court:  First Circuit, 23−01967 (requires PACER login)

First Circuit, 23−01978 (requires PACER login)

Cause: 18:1962 Racketeering (RICO) Act

Date Filed: 03/30/2023
Date Terminated: 10/19/2023
Jury Demand: Both
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Mary Seguin**                                      represented by    **Mary Seguin**
                                                                       P.O. Box 22022
                                                                       Houston, TX 77019
                                                                       281−744−2016
                                                                       Email: maryseguin22022@gmail.com
                                                                       PRO SE

V.

**Defendant**

**Rhode Island Department of Human Services**        represented by    **Marissa D. Pizana**
*In its official capacity*                                             RI Department of Attorney General
                                                                       Civil Division
                                                                       150 South Main Street
                                                                       Providence, RI 02903
                                                                       401−274−4400
                                                                       Email: mpizana@riag.ri.gov
                                                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**Rhode Island Department of Human Services Office Of Child Support Services**    represented by    **Marissa D. Pizana**
*In its official capacity*                                             (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**Gero Meyersiek**                                   represented by    **Joanna M. Achille**
*In his individual and official capacity*                              Burns & Levinson LLP
                                                                       1 Citizens Plaza
                                                                       Providence, RI 02903
                                                                       (401) 831−8330
                                                                       Fax: (617) 345−3299

Email: jachille@burnslev.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Michael D. Coleman**
*In his individual and official capacity*

**Defendant**

**Deborah A. Barclay**
*In her individual and official capacity*

**Defendant**

**Lisa Pinsoneault**
*In her individual and official capacity*

**Defendant**

**Carl Beauregard**
*In his individual and official capacity*

**Defendant**

**Kevin Tighe**

**Defendant**

**Monique Bonin**

**Defendant**

**Frank Dibiase**

**Defendant**

**Wendy A. Fobert**

**Defendant**

**Karla Caballeros**

**Defendant**

**Timothy Flynn**

**Defendant**

**Rhode Island Court System**

**Defendant**

**Paul A Suttell**
*L in his individual and official capacity*
*as Executive Head OF Rhode Island State*
*Court System*

**Defendant**

**Rhode Island Administrative Office of State Courts**

**Defendant**

**Rhode Island Administrative Office of the Superior Court**

**Defendant**

**Rhode Island Judicial Council**

**Defendant**

**Rhode Island Superior Court**

**Defendant**

**Rhode Island Superior Court Judicial Council**

**Defendant**

**The Judicial Technology Center**

**Defendant**

**Julie Hamil**

**Defendant**

**Marisa P. Brown**

**Defendant**

**John Joseph Baxter, Jr.**

**Defendant**

**Justin Correa**

**Defendant**

**Rhode Island Office of the Attorney General**

**Defendant**

**Rhode Island Office of the Attorney General Open Government Unit**

**Defendant**

**Adam Roach**

**Defendant**

Peter Neronha

**Defendant**

**Tyler Technologies, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/30/2023 | 1 | COMPLAINT ( filing fee paid $ 402.00 receipt number ARIDC−1855567 ), filed by Mary Seguin.(DaCruz, Kayla) (Entered: 03/30/2023) |
| 03/30/2023 | | CORRECTIVE DOCKET ENTRY Regarding: 1 Complaint. **CORRECTIVE DOCKET ENTRY:** This case has been electronically filed and processed, however, after a quality control review the following deficiencies were found:Civil Cover Sheet not attached. The filer is directed to file a Civil Cover Sheet within one day. (DaCruz, Kayla) (Entered: 03/30/2023) |
| 03/30/2023 | 2 | Civil Cover Sheet filed by Mary Seguin. Regarding New Case: 1 Complaint. (Attachments: # 1 Email)(DaCruz, Kayla) (Entered: 03/30/2023) |
| 03/30/2023 | 3 | Summons Request filed by Mary Seguin. (Attachments: # 1 Rhode Island Department of Human Services Office of Child Support Services Summons, # 2 Gero Meyersiek Summons)(DaCruz, Kayla) (Additional attachment(s) added on 3/30/2023: # 3 Email) (DaCruz, Kayla). (Entered: 03/30/2023) |
| 03/30/2023 | 4 | MOTION for Leave to Proceed as Pro Se Electronic Filer filed by Mary Seguin. (Attachments: # 1 Email)(DaCruz, Kayla) (Entered: 03/30/2023) |
| 03/30/2023 | | CASE CONDITIONALLY ASSIGNED to District Judge William E. Smith and Magistrate Judge Patricia A. Sullivan. Related Case Number 23cv34 based upon a related case previously assigned to the presiding judge. The assignment is subject to the presiding judge's determination that the cases, in fact, are related. (DaCruz, Kayla) (Entered: 03/30/2023) |
| 03/30/2023 | 5 | CASE OPENING NOTICE ISSUED (DaCruz, Kayla) (Entered: 03/30/2023) |
| 03/30/2023 | 6 | Summons Issued as to Gero Meyersiek, Rhode Island Department of Human Services, Rhode Island Department of Human Services Office of Child Support Services. (Attachments: # 1 Rhode Island Department of Human Services Office Of Child Support Services Summons, # 2 Gero Meyersiek Summons)(DaCruz, Kayla) (Entered: 03/30/2023) |
| 03/30/2023 | | TEXT ORDER granting 4 Motion for Leave to Proceed as Pro Se Electronic Filer. So Ordered by District Judge William E. Smith on 3/30/2023. (Urizandi, Nissheneyra) (Entered: 03/30/2023) |
| 07/07/2023 | 7 | ORDER TO SHOW CAUSE entered. Show Cause Response due by 7/21/2023. So Ordered by District Judge William E. Smith on 7/7/2023. (Urizandi, Nissheneyra) (Entered: 07/07/2023) |
| 07/07/2023 | | CASE PERMANENTLY ASSIGNED: Since District Judge William E. Smith has determined that this case is in fact related to CA 22−cv−34 this case is permanently assigned to District Judge William E. Smith for all further proceedings. (Urizandi, Nissheneyra) (Entered: 07/07/2023) |
| 07/20/2023 | 8 | |

| | | |
|---|---|---|
| | | AFFIDAVIT re 7 Order to Show Cause *Rule 4(m) Show Cause Declaration* by Mary Seguin. (Attachments: # 1 Exhibit Exhibits A to B attached to Plaintiff's Rule 4(m) Show Cause Declaration)(Seguin, Mary) (Entered: 07/20/2023) |
| 08/07/2023 | 9 | NOTICE of Appearance by Marissa D. Pizana on behalf of Rhode Island Department of Human Services, Rhode Island Department of Human Services Office Of Child Support Services (Pizana, Marissa) (Entered: 08/07/2023) |
| 08/07/2023 | 10 | MOTION for an Extension of Time to File Answer re 1 Complaint *or Otherwise Respond to the Complaint* filed by Rhode Island Department of Human Services, Rhode Island Department of Human Services Office Of Child Support Services. **Responses due by 8/21/2023.** (Pizana, Marissa) (Entered: 08/07/2023) |
| 08/07/2023 | 11 | EXHIBIT IN SUPPORT by Rhode Island Department of Human Services, Rhode Island Department of Human Services Office Of Child Support Services in support of 10 MOTION for an Extension of Time to File Answer re 1 Complaint *or Otherwise Respond to the Complaint* . (Pizana, Marissa) (Entered: 08/07/2023) |
| 08/08/2023 | 12 | MOTION for an Extension of Time to Amend 1 Complaint *Pursuant to Rule 15* filed by Mary Seguin. **Responses due by 8/22/2023.** (Attachments: # 1 Exhibit Exhibit A to E attached to Plaintiff Motion for Extension of Time To Amend Complaint 080823, # 2 Affidavit Affidavit in Support of Plaintiff Motion for Extension of Time to Amend Complaint 080823, # 3 Exhibit Exhibit A to D attached to Affidavit in Support of Plaintiff Motion for Extension of Time to Amend Complaint 080823)(Seguin, Mary) (Entered: 08/08/2023) |
| 08/10/2023 | 13 | NOTICE of Appearance by Joanna M. Achille on behalf of Gero Meyersiek (Achille, Joanna) (Entered: 08/10/2023) |
| 08/10/2023 | 14 | First MOTION for an Extension of Time to File Answer re 1 Complaint filed by Gero Meyersiek. **Responses due by 8/24/2023.** (Achille, Joanna) (Entered: 08/10/2023) |
| 08/15/2023 | | TEXT ORDER granting 10 Motion for Extension of Time to Answer. Rhode Island Department of Human Services answer due 10/9/2023; Rhode Island Department of Human Services Office of Child Support Services answer due 10/9/2023. So Ordered by District Judge William E. Smith on 8/15/2023. (Urizandi, Nissheneyra) (Entered: 08/15/2023) |
| 08/16/2023 | 15 | RESPONSE In Opposition to 12 MOTION for an Extension of Time to Amend 1 Complaint *Pursuant to Rule 15* filed by Rhode Island Department of Human Services, Rhode Island Department of Human Services Office Of Child Support Services. **Replies due by 8/23/2023.** (Pizana, Marissa) (Entered: 08/16/2023) |
| 08/16/2023 | 16 | REPLY to Response re 15 Response to Motion, *Plaintiff's Motion for Extension of Time to Amend Complaint* filed by Mary Seguin. (Seguin, Mary) (Entered: 08/16/2023) |
| 08/17/2023 | 17 | MOTION for Temporary Restraining Order filed by Mary Seguin. (Attachments: # 1 Supporting Memorandum Memorandum In Support of Motion for Preliminary Injunction and Temporary Restraining Order, # 2 Affidavit Affidavit in Support of Plaintiff Motion for TRO, # 3 Exhibit Exhibits Attached to Plaintiff Motion for TRO and Preliminary Injunction)(Seguin, Mary) (Entered: 08/17/2023) |
| 08/17/2023 | 18 | AFFIDAVIT re 17 MOTION for Temporary Restraining Order *and Motion for Preliminary Injunction* by Mary Seguin. (Seguin, Mary) (Entered: 08/17/2023) |
| 08/18/2023 | 19 | |

| | | |
|---|---|---|
| | | AFFIDAVIT re 17 MOTION for Temporary Restraining Order *and Rule 65(a) Motion for Injunctive Relief* by Mary Seguin. (Attachments: # 1 Exhibit Rhode Island Family Court Emergency Motion to Stay Proceedings)(Seguin, Mary) (Entered: 08/18/2023) |
| 08/18/2023 | 20 | EXHIBIT IN SUPPORT by Mary Seguin in support of 18 Affidavit, 17 MOTION for Temporary Restraining Order , 1 Complaint, 19 Affidavit *Affidavit in Support of Evidence Submitted for Complaint and Motion for Temporary Restraining Order*. (Seguin, Mary) (Entered: 08/18/2023) |
| 08/18/2023 | 21 | EXHIBIT IN SUPPORT by Mary Seguin in support of 1 Complaint . (Attachments: # 1 Exhibit Documentary Evidentiary Support, # 2 Exhibit Evidentiary Support, # 3 Exhibit Evidentiary Support, # 4 Exhibit Evidentiary Support, # 5 Exhibit Evidentiary Support, # 6 Exhibit Evidentiary Support, # 7 Exhibit Audio Recording Evidentiary Support)(Seguin, Mary) (Entered: 08/18/2023) |
| 08/18/2023 | 22 | DOCKET NOTE: Audio file was received and will be maintained in the Clerk's Office. Regarding: 20 Exhibit in Support, 21 Exhibit in Support, 18 Affidavit, 17 MOTION for Temporary Restraining Order , 1 Complaint, 19 Affidavit. (Kenny, Meghan) (Entered: 08/18/2023) |
| 08/18/2023 | 23 | Emergency MOTION for Hearing re 17 MOTION for Temporary Restraining Order filed by Mary Seguin. **Responses due by 9/1/2023.** (Seguin, Mary) (Entered: 08/18/2023) |
| 08/18/2023 | 24 | Second MOTION for Hearing re 17 MOTION for Temporary Restraining Order filed by Mary Seguin. **Responses due by 9/1/2023.** (Kenny, Meghan) (Entered: 08/18/2023) |
| 08/18/2023 | | TEXT ORDER denying Plaintiff's 17 Motion for Temporary Restraining Order and Preliminary Injunction. Because the ongoing proceedings in state court implicate a significant state interest, the Younger abstention doctrine applies, requiring this Court to abstain from enjoining ongoing state proceedings. See Younger v. Harris, 401 U.S. 37 (1971); Sirva Relocation, LLC v. Richie, 794 F.3d 185, 191−93 (1st Cir. 2015). The ongoing proceeding in Family Court implicates the State's interest in enforcing the orders and judgments of its courts and in its ability to collect child support payments, the state court is fully competent to adjudicate Plaintiff's claims, and no Younger abstention exceptions apply. See Sirva, 794 F.3d at 192. Accordingly, Plaintiff's 17 Motion for Temporary Restraining Order and Preliminary Injunction is DENIED. So Ordered by District Judge William E. Smith on 8/18/2023. (Urizandi, Nissheneyra) (Entered: 08/18/2023) |
| 08/18/2023 | | TEXT ORDER granting Plaintiff's 12 Motion for an Extension of Time to Amend Complaint and Defendant Gero Meyersiek's 14 First Motion for an Extension of Time to File Answer. Because Defendants have not yet filed a responsive pleading, Plaintiff is permitted to amend her Complaint pursuant to Federal Rule of Civil Procedure 15(a). Plaintiff is directed to file her amended complaint within fourteen days from the date of this order. In light of this extension, Defendant Gero Meyersieks request for an extension of time is also granted, and he is directed to respond to Plaintiff's amended complaint within 60 days of its filing. So Ordered by District Judge William E. Smith on 8/18/2023. (Urizandi, Nissheneyra) (Entered: 08/18/2023) |
| 08/18/2023 | | TEXT ORDER denying Plaintiff's 23 Emergency Motion for Hearing and 24 Second Motion for Hearing. In light of the denial of Plaintiff's 17 Motion for Temporary Restraining Order and Preliminary Injunction, Plaintiff's requests for a hearing on that motion are DENIED as MOOT. So Ordered by District Judge William E. Smith on 8/18/2023. (Urizandi, Nissheneyra) (Entered: 08/18/2023) |

| 09/01/2023 | 25 | AMENDED COMPLAINT against All Defendants, filed by Mary Seguin.(Seguin, Mary) (Entered: 09/01/2023) |
|---|---|---|
| 09/05/2023 | 26 | NOTICE by Mary Seguin *Notice and Demand of Claims Against Defendants' Liability Insurance Policies and Coverage* (Seguin, Mary) (Entered: 09/05/2023) |
| 09/06/2023 | 27 | MOTION for an Extension of Time to File Answer re 25 Amended Complaint filed by Rhode Island Department of Human Services, Rhode Island Department of Human Services Office Of Child Support Services. **Responses due by 9/20/2023.** (Pizana, Marissa) (Entered: 09/06/2023) |
| 09/08/2023 | 28 | RESPONSE In Opposition to 27 MOTION for an Extension of Time to File Answer re 25 Amended Complaint filed by Mary Seguin. **Replies due by 9/15/2023.** (Seguin, Mary) (Entered: 09/08/2023) |
| 09/19/2023 | | TEXT ORDER granting 27 Motion for an Extension of Time to File Answer. Rhode Island Department of Human Services' answer is due November 17, 2023; Rhode Island Department of Human Services Office of Child Support Services' answer is due November 17, 2023. So Ordered by District Judge William E. Smith on 9/19/2023. (Urizandi, Nissheneyra) (Entered: 09/19/2023) |
| 09/30/2023 | 29 | First MOTION for Recusal *Pursuant to 28 U.S.C. § 455* filed by Mary Seguin. **Responses due by 10/16/2023.** (Seguin, Mary) (Entered: 09/30/2023) |
| 10/02/2023 | | TEXT ORDER denying Plaintiff's 29 Motion for Recusal. Plaintiff "moves to recuse and/or disqualify" me and "all justices, judges, or magistrate judges... in the U.S. District Court of Rhode Island." A judge may be disqualified from a case if "(1) the judges impartiality may reasonably be questioned; or (2) the judge may have a personal bias or prejudice concerning a party." United States v. Kelley, 712 F.2d 884, 889 (1st Cir. 1983); see 28 U.S.C. § 455. Plaintiff argues that I and the other judges of this Court should disqualify ourselves because we did so sua sponte in her past lawsuits. Plaintiff does not identify any other facts to support her argument that I should recuse myself from this case. Plaintiffs argument is plainly insufficient to justify recusal and disqualification. See United States v. Houston, No. 3:13−10−DCR, 2013 WL 3975405, at *10 (E.D. Tenn. July 29, 2013) ("A judges recusal in a prior case does not alone require disqualification in a subsequent case."). Accordingly, Plaintiffs motion for Recusal is DENIED. So Ordered by District Judge William E. Smith on 10/2/2023. (Urizandi, Nissheneyra) (Entered: 10/02/2023) |
| 10/17/2023 | 30 | Summons Request filed by Mary Seguin. (Attachments: # 1 Summons Request, # 2 Summons Request)(Kenny, Meghan) (Entered: 10/17/2023) |
| 10/19/2023 | | TEXT ORDER dismissing the action under Younger abstention. Though not raised by the parties, the Court has the power and obligation to dismiss an action if the principles of abstention so require. See Guillemard−Ginorio v. Contreras−Gomez, 585 F.3d 508, 517−18 (1st Cir. 2009); see also Bellotti v. Baird, 428 U.S. 132, 14344 n.10 (1976) (recognizing that "abstention may be raised by the court sua sponte"). Plaintiff filed a 91−page Amended Complaint asking the Court to address the child support payments for which she alleges she is being wrongfully charged and her perceived grievance that she is being denied access to court records under the Rhode Island Access to Public Records Act ("APRA"). See generally Am. Compl., ECF No. 25 . Plaintiff seeks to impede the child support proceedings before the Rhode Island Family Court ("Family Court") and her action before the Rhode Island Superior Court ("Superior Court") concerning her alleged denial of access to court records. The telltale signs that Plaintiff is attempting to encumber state court proceedings are the facts that Plaintiff, in |

her Amended Complaint, included as parties, among others, the Superior Court, various state court clerks, and the Chief Justice of the Rhode Island Supreme Court; Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction seeking to "enjoin[] and restrain[] the Defendants from continuing prosecution of the family court proceeding against the Plaintiff," Mot. for TRO and Prelim. Inj. 16, ECF No. 17 ; and Plaintiff asked the Court, in her Amended Complaint, to "[e]njoin the Defendants'[] enforcement and practices of rules, practices, and/or policies" of the state courts, Am. Compl. 90. The issues being considered before the Family Court directly relate to this case because, according to the Amended Complaint, Defendant Rhode Island Department of Human Services ("RIDHS") is seeking child support arrearage interest from Plaintiff. See Am. Compl.&para;&para; 135−37 (recognizing that RIDHS is seeking compound interest). Moreover, Plaintiff admits that she has a pending case before the Superior Court where she alleges violations of the APRA. See Am. Compl. &para; 2; see also Seguin v. R.I. Dept of Human Servs., PC−2022−07215 (R.I. Super. Ct.). The Court takes judicial notice of the proceedings before both state tribunals. See Meyersiek v. Seguin, K−2001−0521M (R.I. Fam. Ct.); see also Fed. R. Evid. 201 (permitting, "at any stage of the proceeding," sua sponte judicial notice of facts "not subject to reasonable dispute because" they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). The Younger abstention doctrine, derived from Younger v. Harris, 401 U.S. 37 (1971), "counsels federal−court abstention when there is a pending state proceeding." Moore v. Sims, 442 U.S. 415, 423 (1979). For the doctrine to apply, certain elements must be met. "First, the pending state [court] proceeding must fall into one of three categories: 1) criminal prosecutions, 2) civil proceedings that are 'akin to criminal prosecutions' ('quasi−criminal proceedings') or 3) civil proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts.'" Credit Acceptance Corp. v. Healey, 544 F. Supp. 3d 139, 143 (D. Mass. 2021) (quoting Sirva Relocation, LLC v. Richie, 794 F.3d 185, 192 (1st Cir. 2015)). Here, relief for Plaintiff in the pending Family Court case would implicate the state's interest in enforcing the orders and judgments of its courts concerning the payment and collection of child support. See Seguin v. Bedrosian, No. 12−cv−614−JD, 2013 WL 367722, at *2 (D.R.I. Jan. 30, 2013). Moreover, the state has an asserted interest in having appeals under the APRA be heard before the Superior Court. See R.I. Gen. Laws § 38−2−9. Second, the state court case must satisfy the factors identified in Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423 (1982): "1) the state proceeding is ongoing, 2) it involves significant state interests and 3) it provides an adequate opportunity for the plaintiff to raise his federal claims in state court." Credit Acceptance Corp., 544 F. Supp. 3d at 143; see also Middlesex, 457 U.S. at 432. The first factor is satisfied because the proceedings are ongoing. The second factor is satisfied because the state has an interest in family relations and the payment and collection of child support, see Eastman v. New Hampshire, No. 11−cv−316−SM, 2012 WL 405487, at *3 (D.N.H. Jan. 17, 2012), report and recommendation adopted, No. 11−cv−316−SM, 2012 WL 405507 (D.N.H. Feb. 8, 2012), and an interest in the "fair and orderly administration of justice" that includes maintaining sensitive and confidential judicial records, see Courthouse News Serv. v. Quinlan, 32 F.4th 15, 21 (1st Cir. 2022). As for the third factor, "[e]xcept in the most extraordinary cases, a federal court must presume that state courts, consistent with the imperatives of the Supremacy Clause, see U.S. Const. art. VI, are fully competent to adjudicate federal constitutional and statutory claims properly presented by the parties." Casa Marie, Inc. v. Super. Ct. of P.R., 988 F.2d 252, 262 (1st Cir. 1993) (footnote omitted). Nothing suggests that the Family Court and the Superior Court cannot hear Plaintiff's federal claims. Third, none of the Younger abstention exceptions apply. See Sirva, 794 F.3d at 192 (finding abstention

| | | |
|---|---|---|
| | | inappropriate if 1) the state proceeding is brought "in bad faith" to harass, 2) the state forum cannot adequately protect federal rights, or 3) the state statute is "flagrantly and patently violative of express constitutional prohibitions" (citations omitted). Accordingly, because the Court does not have jurisdiction over Plaintiff's case, it is DISMISSED in its entirety. Because Plaintiff has a history of filing frivolous and repetitive motions following decisions of the Court of which she disapproves, see Seguin v. R.I. Office of Child Support Servs., No. 1:23−cv−00034−WES−PAS (D.R.I.), it is further ORDERED that the Courts March 30, 2023, Text Order granting Plaintiff Leave to Proceed as a Pro Se Electronic Filer is VACATED. Plaintiff's Electronic Filer privileges are revoked. See LR Gen 302(b). So Ordered by District Judge William E. Smith on 10/19/2023. (Simoncelli, Michael) (Entered: 10/19/2023) |
| 10/19/2023 | 31 | JUDGMENT. So Ordered by Clerk of Court on 10/19/2023. (Simoncelli, Michael) (Entered: 10/19/2023) |
| 11/17/2023 | | TEXT ORDER: The Court is in receipt of Plaintiff's two recent emails to the Clerk's Office. The Court construes these emails as motions for leave to file the motions attached to those emails and denies leave to file for the reasons given in its earlier text orders. So Ordered by District Judge William E. Smith on 11/17/2023. (Urizandi, Nissheneyra) Modified on 11/17/2023 to correct a typo. (Urizandi, Nissheneyra). (Entered: 11/17/2023) |
| 11/17/2023 | | TEXT ORDER: The Court is in receipt of Plaintiff's email to the Clerk's Office this afternoon. As with its order issued earlier today, the Court construes this email as a motion for leave to file the motion attached to the email and denies leave to file for the reasons given in its earlier text orders. So Ordered by District Judge William E. Smith on 11/17/2023. (Urizandi, Nissheneyra) (Entered: 11/17/2023) |
| 11/17/2023 | 32 | NOTICE OF APPEAL by Mary Seguin as to Text Order, Text Order, **NOTICE TO COUNSEL: Counsel should register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf/. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf** Appeal Record due by 11/24/2023. (Attachments: # 1 Envelope)(Kenny, Meghan) (Entered: 11/17/2023) |
| 11/17/2023 | 33 | CLERK'S CERTIFICATE AND APPELLATE COVER SHEET: Abbreviated record on appeal consisting of notice of appeal, order(s) being appealed, and a certified copy of the district court docket report transmitted to the U.S. Court of Appeals for the First Circuit in accordance with 1st Cir. R. 11.0(b). 32 Notice of Appeal. Documents Sent: Text Order 11/17/2023, Text Order 11/17/2023. (Attachments: # 1 Record on Appeal)(Kenny, Meghan) (Entered: 11/17/2023) |
| 11/17/2023 | 34 | MOTION Rule 59 for a New Trial filed by Mary Seguin. **Responses due by 12/1/2023.** (Attachments: # 1 Email)(DaCruz, Kayla) (Entered: 11/20/2023) |
| 11/17/2023 | 35 | MOTION Rule 60(b) filed by Mary Seguin. **Responses due by 12/1/2023.** (Attachments: # 1 Email)(DaCruz, Kayla) (Entered: 11/20/2023) |
| 11/17/2023 | 36 | DOCKET NOTE: Duplicate received regarding: 34 MOTION Rule 59 for a New Trial . (Attachments: # 1 Email) (DaCruz, Kayla) (Entered: 11/20/2023) |
| 11/17/2023 | 37 | MOTION Rule 60(b)(1) filed by Mary Seguin. **Responses due by 12/1/2023.** (Attachments: # 1 Email)(DaCruz, Kayla) (Entered: 11/20/2023) |

| 11/20/2023 | | TEXT ORDER: On November 17, 2023, Plaintiff attempted to file three motions in this case. Plaintiff emailed these motions to the Clerk's Office because the Court revoked Plaintiff's electronic filer privileges in its October 19, 2023, text order. After reviewing the three motions, the Court denied Plaintiff leave to file. However, although Plaintiff must seek leave to file documents in another case before this Court, the same restriction does not apply in this case. Therefore, the Clerk's Office is directed to docket the three motions Plaintiff sought to file. Plaintiff has now appealed, so this Court has limited jurisdiction, but when Plaintiff's appeal is resolved the Court will resolve these three motions. So Ordered by District Judge William E. Smith on 11/20/2023. (Urizandi, Nissheneyra) (Entered: 11/20/2023) |
|---|---|---|
| 11/20/2023 | | USCA Case Number 23−1967 for 32 Notice of Appeal, filed by Mary Seguin. (Hill, Cherelle) (Entered: 11/20/2023) |
| 11/20/2023 | 38 | NOTICE OF APPEAL by Mary Seguin as to 11/20/2023 Text Order. **NOTICE TO COUNSEL: Counsel should register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf/. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at  http://www.ca1.uscourts.gov/cmecf** Appeal Record due by 11/27/2023. (Attachments: # 1 Email)(DaCruz, Kayla) (Entered: 11/20/2023) |
| 11/20/2023 | 39 | CLERK'S CERTIFICATE AND APPELLATE COVER SHEET: Abbreviated record on appeal consisting of notice of appeal, order(s) being appealed, and a certified copy of the district court docket report transmitted to the U.S. Court of Appeals for the First Circuit in accordance with 1st Cir. R. 11.0(b). 38 Notice of Appeal. (Attachments: # 1 Record on Appeal)(DaCruz, Kayla) (Entered: 11/20/2023) |
| 11/20/2023 | 40 | Supplemental Record on Appeal transmitted to U.S. Court of Appeals for the First Circuit. 32 Notice of Appeal,,. (Attachments: # 1 Text Order)(Urizandi, Nissheneyra) (Entered: 11/20/2023) |
| 11/27/2023 | | USCA Case Number 23−1978 for 38 Notice of Appeal, filed by Mary Seguin. (Hill, Cherelle) (Entered: 11/27/2023) |
| 11/28/2023 | 41 | RESPONSE In Opposition to 34 MOTION Rule 59 for a New Trial filed by Rhode Island Department of Human Services, Rhode Island Department of Human Services Office Of Child Support Services. **Replies due by 12/5/2023.** (Pizana, Marissa) (Entered: 11/28/2023) |
| 11/28/2023 | 42 | RESPONSE In Opposition to 35 MOTION Rule 60(b) filed by Rhode Island Department of Human Services, Rhode Island Department of Human Services Office Of Child Support Services. **Replies due by 12/5/2023.** (Pizana, Marissa) (Entered: 11/28/2023) |
| 11/28/2023 | 43 | RESPONSE In Opposition to 37 MOTION Rule 60(b)(1) filed by Rhode Island Department of Human Services, Rhode Island Department of Human Services Office Of Child Support Services. **Replies due by 12/5/2023.** (Pizana, Marissa) (Entered: 11/28/2023) |
| 11/28/2023 | 44 | REPLY to Response re 43 Response to Motion, 42 Response to Motion, 41 Response to Motion, filed by Mary Seguin. (Attachments: # 1 Email) (Gonzalez Gomez, Viviana) (Entered: 11/29/2023) |

| 12/04/2023 | 45 | MOTION to Stay *Pending Appeal* filed by Mary Seguin. **Responses due by 12/18/2023.** (Attachments: # 1 Email)(Hill, Cherelle) (Entered: 12/04/2023) |
|---|---|---|
| 12/05/2023 | | TEXT ORDER denying Plaintiff's 45 Motion to Stay Pending Appeal under Federal Rule of Appellate Procedure 8. Plaintiff seeks a stay of judgment pending appeal. Before seeking relief from the Court of Appeals, a litigant must first request relief from the District Court. Dist. 4 Lodge of Intl Assoc. of Machinists & Aerospace Workers Loc. Lodge 207 v. Raimondo, No. 1:21−cv−00275−LEW, 2021 WL 5163306, at *1 (D. Me. Nov. 5, 2021). The factors that govern the issuance of a preliminary injunction are the same as the factors for relief under Rule 8. Id. (citing Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos., 996 F.3d 37, 44 (1st Cir. 2021)). To grant such relief, "a district court must find the following four elements satisfied: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) a balance of equities in the [movants] favor, and (4) service of the public interest." Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc., 794 F.3d 168, 171 (1st Cir. 2015). Here, Plaintiff has not made a showing that any of the factors justify staying judgment pending appeal. Principally, Plaintiff will not face irreparable harm absent interim relief. If, hypothetically, the Court granted Plaintiffs' Motion, the stay would not have any legal effect because there is nothing for the Court to enjoin. In other words, there is no immediate harm facing Plaintiff for the Court to prevent. The status quo would be the same whether or not the Court grants Plaintiffs motion. Plaintiff misunderstands this point. Therefore, Plaintiff's 45 Motion to Stay Pending Appeal is DENIED. So Ordered by District Judge William E. Smith on 12/5/2023. (Simoncelli, Michael) (Entered: 12/05/2023) |
| 12/14/2023 | 47 | U.S. Court of Appeals for the First Circuit Appeal Fees received $505.00 re: 32 Notice of Appeal, filed by Mary Seguin. (Gonzalez Gomez, Viviana) (Additional attachment(s) added on 12/27/2023: # 2 Envelope with Payment, # 3 Envelope − FedEx) (Gonzalez Gomez, Viviana). (Entered: 12/27/2023) |
| 12/27/2023 | 46 | Supplemental Record on Appeal transmitted to U.S. Court of Appeals for the First Circuit. 32 Notice of Appeal. Unrestricted Documents Sent: [doc] filing date 12/14/2023. (Attachments: # 1 Supplemental Record on Appeal) (Gonzalez Gomez, Viviana) (Entered: 12/27/2023) |
| 02/01/2024 | 48 | ORDER denying Plaintiff's 34 Rule 59 Motion for a New Trial, denying 35 Rule 60(b) Motion, and denying as moot 37 Rule 60(b)(1) Motion. So Ordered by District Judge William E. Smith on 2/1/2024. (Urizandi, Nissheneyra) (Entered: 02/01/2024) |
| 03/01/2024 | 49 | MOTION for an Extension of Time filed by Mary Seguin. **Responses due by 3/15/2024.** (Hill, Cherelle) (Entered: 03/04/2024) |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                )
MARY SEGUIN,                    )
                                )
          Plaintiff,            )
                                )
     v.                         )     C.A. No. 23-00126 WES
                                )
RHODE ISLAND DEPARTMENT OF HUMAN )
SERVICES, et al.,               )
                                )
          Defendants.           )
_____)
```

**ORDER**

WILLIAM E. SMITH, District Judge.

Before the Court are Plaintiff's Rule 59 Motion for a New Trial, ECF No. 34, Rule 60(b) Motion, ECF No. 35, and Rule 60(b)(1) Motion, ECF No. 37. Prior to filing these motions, Plaintiff filed a Notice of Appeal appealing the Court's final judgment dismissing the case under <u>Younger v. Harris</u>, 401 U.S. 37 (1971). Final J., ECF No. 31; Text Order (Oct. 19, 2023); Notice of Appeal, ECF No. No. 32. Despite Plaintiff filing the Notice of Appeal, the Court still retains jurisdiction to entertain the instant motions. <u>See Hosp. San Antonio, Inc. v. Oquendo-Lorenzo</u>, 47 F.4th 1, 6 (1st Cir. 2022) ("[T]he district court had jurisdiction to entertain the Rule 60(b) motion despite [the plaintiff's] pending appeal because the district court has continuing jurisdiction during an appeal to act in aid of the appeal." (citation and quotation marks

omitted)); <u>Gonzalez-Arroyo v. Doctors' Ctr. Hosp. Bayamon, Inc.</u>,
54 F.4th 7, 19 (1st Cir. 2022) ("[E]ven after [the plaintiff] filed
her notice of appeal, the district court legally maintained
jurisdiction then to resolve her Rule 59(e) motion on the
merits.").

Plaintiff's first motion is presumably a motion for
reconsideration under Federal Rule of Civil Procedure 59(e) "to
alter or amend a judgment." Fed. R. Civ. P. 59(e). Such a motion
"will only be granted if 'the original judgment entered evidenced
a manifest error of law, if there is newly discovered evidence, or
in certain other narrow situations.'" <u>In re Telexfree Secs.
Litig.</u>, 652 F. Supp. 3d 233, 235 (D. Mass. Jan. 24, 2023) (quoting
<u>Global Naps, Inc. v. Verizon N.E., Inc.</u>, 489 F.3d 13, 25 (1st Cir.
2007)). Plaintiff primarily attempts to re-litigate her case
even though the Court has dismissed her Complaint. Such arguments
are inappropriate for a Rule 59 motion. <u>See</u> <u>Rivera v. Pub.
Broadcasting Corp. of P.R. (WIPR Radio and TV)</u>, No. 06-2151 (DRD),
2009 WL 10680941, at *1 (D.P.R. Sept. 23, 2009) ("A motion for
reconsideration is unavailable if it simply brings a point of
disagreement between the court and the litigant, or to reargue
matters already properly disposed of by the Court.").

Plaintiff also argues that, because she is only seeking
monetary damages, under <u>Younger</u> abstention, the case should have
been stayed rather than dismissed. Pl.'s Rule 59 Mot. New Trial

7 ("Rule 59 Mot."), ECF No. 34.  Plaintiff would only be correct
if she will not have an opportunity to litigate her federal law
claims in state court.  See <u>Casa Marie, Inc. v. Super. Ct. of P.R.</u>,
988 F.2d 252, 262 (1st Cir. 1993) ("Except in the most
extraordinary cases, a federal court must presume that state courts
. . . are fully competent to adjudicate federal constitutional and
statutory claims properly presented by the parties.").  Plaintiff
has not made a showing that either the Rhode Island Superior Court
or the Rhode Island Family Court cannot litigate her federal law
claims.  Thus, the Court was not required to stay the action.  See
<u>Deakins v. Monaghan</u>, 484 U.S. 193, 202 (1988); <u>see also</u> Text Order
(Oct. 19, 2023).

Plaintiff also argues that the undersigned should recuse from
this case because he recused himself <u>sua sponte</u> in other cases in
which Plaintiff was a named party.  Rule 59 Mot. 5, 15.  This
argument has already been addressed and disposed of by the Court.
<u>See</u> Text Order (Oct. 2, 2023).

Plaintiff also argues that the undersigned should recuse
because the Rhode Island Judiciary and other named state agencies
are allegedly former clients of the undersigned and continue to be
clients of the undersigned's former law firm.  Rule 59 Mot. 5-6,
10-11, 20-21, 31.  Putting aside the lack of factual support for
Plaintiff's vague allegations, Plaintiff's assertions do not
require the undersigned to recuse as a matter of law.  <u>See</u> 28

U.S.C. § 455(b) (requiring a judge to recuse in various situations including "[w]here in private practice he served as lawyer in the <u>matter in controversy</u>, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter" (emphasis added)); <u>Jovee v. Snohomish Cnty.</u>, No. 21-1590-RSM-JRC, 2022 WL 566602, at *1 (W.D. Wash. Jan. 7, 2022) ("The fact that a party to litigation is, in other matters, a client of the judge's former law firm does not necessitate recusal." (quoting Judicial Conference's Compendium of Selected Opinions, Canon 3, Section 3.3-1, Compendium § 2.7(c)); <u>Griffith v. Metro. Atl. Rapid. Transit Auth. (Marta)</u>, 1:08-cv-1850-WSD-LTW, 2008 WL 11343403, at *2 (N.D. Ga. Nov. 19, 2008) (denying motion to recuse in a case in which the court's former law firm has an attorney client relationship with the defendant because the plaintiff did "not identif[y] any specific relationship between the Court and" the defendant). Thus, Plaintiff has not provided any reason for the undersigned to recuse.

Taken together, there is no legitimate reason to grant Plaintiff's Rule 59 Motion. Therefore, the motion is DENIED.

Plaintiff's second motion is made under Rule 60(b). The Rule states:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;

4

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Plaintiff's motion, however, merely rehashes the same arguments that she made in her Rule 59 Motion. For the same reasons above, Plaintiff's Rule 60(b) Motion is DENIED.

Finally, Plaintiff's third motion is brought under Rule 60(b)(1). In it, she aggrieves the Clerk's office's delay in docketing her first and second motions. Despite the delay, the Court ordered the motions to be docketed. Text Order (Nov. 20, 2023). Thus, the purported mistake has been rectified. Plaintiff's Rule 60(b)(1) Motion is DENIED as MOOT.

IT IS SO ORDERED.

_William E. Smith_
William E. Smith
District Judge
Date: February 1, 2024

5

16

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

MARY SEGUIN,
*pro se*

*Plaintiff,*

VS.                                          Civil Action No. 1:23-cv-126-WES-PAS

RHODE ISLAND DEPARTMENT OF HUMAN SERVICES in its official capacity; MICHAEL D. COLEMAN, DEBORAH A. BARCLAY in their individual and official capacities; RHODE ISLAND OFFICE OF CHILD SUPPORT SERVICES in its official capacity; KEVIN TIGHE, MONIQUE BONIN, FRANK DIBIASE, WENDY FOBERT, KARLA CABALLEROS, TIMOTHY FLYNN, LISA PINSONNEAULT, CARL BEAUREGARD, PRISCILLA GLUCKSMAN, JOHN LANGLOIS, PAUL GOULD, in their individual and official capacities; RHODE ISLAND STATE COURT SYSTEM in its official capacity; PAUL A. SUTTELL in his individual and official capacity as EXECUTIVE HEAD OF RHODE ISLAND STATE COURT SYSTEM; RHODE ISLAND ADMINISTRATIVE OFFICE OF STATE COURTS in its official capacity; RHODE ISLAND ADMINISTRATIVE OFFICE OF THE SUPERIOR COURT in its official capacity; RHODE ISLAND JUDICIAL COUNCIL in its official capacity; RHODE ISLAND SUPERIOR COURT in its official capacity; RHODE ISLAND SUPERIOR COURT JUDICIAL COUNCIL in its official capacity; THE JUDICIAL TECHNOLOGY CENTER in its official capacity; JULIE HAMIL, MARISA BROWN, JOHN JOSEPH BAXTER, JR., JUSTIN CORREA in their individual and official capacities; RHODE ISLAND OFFICE OF THE ATTORNEY GENERAL in its official capacity; RHODE ISLAND OFFICE OF THE ATTORNEY GENERAL OPEN GOVERNMENT UNIT in its official capacity; ADAM D. ROACH, PETER NERONHA in their official and individual capacities; TYLER TECHNOLOGIES, INC.; GERO MEYERSIEK

*Defendants*

**<u>PLAINTIFF'S RULE 59 MOTION FOR A NEW TRIAL</u>**

1. Plaintiff, proceeding from and as a citizen of Texas, respectfully requests pursuant to Fed. R. Civ. P. Rule 59 for a new trial.  Plaintiff avers the following, supported by affidavit attached: The 91-page First Amended Complaint [ECF 25] filed on September 1, 2023 seeks monetary damages against the Rhode Island State Defendants and the private actor Defendants for:

(1) The Rhode Island Judiciary and Tyler Technologies' monopoly of publication of law.

(2) The Rhode Island Judiciary and Tyler Technologies' denial to the Public and to all Pro Se Litigants all access and the denial of free access to the contents of the law created, authored, and deliberated by the Rhode Island Judiciary.

(3) The civil conspiracy by the Rhode Island Judiciary and Tyler Technologies to knowingly fail to properly integrate the legacy electronic court case management systems used by Rhode Island Department of Human Services and Office of Child Support Services during the implementation of Odyssey from 2013 to 2014 (the State's official electronic court filing and electronic case management system), so that these state agencies' filings are discriminately invisible only to the Public, to Pro Se Litigants and to the Rhode Island Virtual Clerk of the Courts in the Rhode Island Family Court, a limited jurisdiction court of record.  The State's filings are only visible to the judges and to the State filers, thus manipulating the proceeding towards a foregone conclusion in favor of the State filers.

(4) The civil conspiracy by the Rhode Island Judiciary and Tyler Technologies to misrepresent to the Public and to the Pro Se Litigants that the implemented electronic court case records of judge created laws are available to *all* court users, in order to cover up their monopolization of the publication of law denies the Public and the Pro Se Litigant access to the judge-created laws.

(5) The civil conspiracy by the Rhode Island Judiciary and the Defendant Department of Human Services and Office of Child Support Services that the State routinely establishes and enforces 12% compound interest on child and spousal support in Title IV of the Social Security Act state family court proceedings, in violation of the uniform statutory requirement of 42 U.S.C. § 654(21)(A) that provides States *may* opt to charge a fee, and

*if* the State opts to do so, between *3% to 6% simple interest*, *not* 12% compound interest, targeting noncustodial parents victims. In welfare cases, support are assigned by the custodial parent to the State, and the 12% compound interest represents a fee for the State's "services" in the support's establishment and enforcement paid to the State, which at 12% compound interest represents lucrative, illegally obtained revenue to the State actors, who are financially incentivized to obtain as much as possible.

(6) The civil conspiracy by the Rhode Island Judiciary and the Defendant Department of Human Services and Office of Child Support Services and Tyler Technologies to knowingly fail to properly integrate Odyssey with the State's legacy electronic court filing system resulting in the State's filings seeking illegal 12% compound interest, as well as to deny the Public and to Pro Se Litigants' access to their publication of judge-created law records for the purpose of cover up of this wholesale illegal defraud of the court, extortionary defraud under color of state law targeting the unsuspecting noncustodial parents victims, and defraud of the United States (66% of the cost of these child support "operations" is funded by the U.S. Department of Health and Human Services through Title IV of the Social Security Act through funds appropriated by Congress through the annual budget appropriations.)

(7) The civil conspiracy by the Rhode Island Judiciary and the Defendant Department of Human Services and Tyler Technologies to operate the Title IV Program of the Social Security Act in all manners violative of due process, in prima facie due process violative State Electronic Courts, for the purpose of generating state revenue through fraud and deceit, through conspired tortious interference of rights of access to the courts, rights of

access to state case documents, and rights of access to judge-created laws targeting

litigants, targeting the Public and targeting Pro Se Litigants.

(8) The civil conspiracy by the Rhode Island Judiciary and the Defendant Department of

Human Services and Tyler Technologies to cover up their public-access-denied

publication of state judge-created laws of illegal 12% compound interest benefiting the

state's revenue by adopting a State policy not to establish nor enforce any interest in

*interstate* support cases only, calculated to cover up the collective fraud from federal

enforcement officials and other states' enforcement officials of court orders (laws)

showing 12% compounded interest established and funded under Title IV that are facially

illegally violative of 42 U.S.C. § 654(21)(A) which explicitly provides States *may* opt to

charge a fee, and *if* the State opts to do so, between *3% to 6% simple interest*, *not* 12%

compound interest.  The federal Title IV Program regulation by Congressional intent

explicitly preempts any related state laws of all participating states.

(9) The civil conspiracy by the Rhode Island Judiciary and the Defendant Department of

Human Services and Office of Child Support Services and Barbara Grady and Gero

Meyersiek to use the fraudulent, First Amendment-, Fourth Amendment-, Fifth

Amendment-, Seventh Amendment-, and Fourteenth Amendment violative state court

machinery weaponizing Title IV Program of the Social Security Act to target the Plaintiff

*pro se* noncustodial parent in Texas to retaliate against Plaintiff for her past lawsuits

against them, namely ten years ago in Seguin v. Chafee et al., Civil No. 12-cv-708-JD

(D.R.I. 2013), Seguin v. Bedrosian et al, Civil No. 12-cv-614-JD (D.R.I. 2013), and

Seguin v. Suttell et al, Civil No. 13-cv-95-JNL-LM (D.R.I. 2013), in which Plaintiff sued

them, *inter alia*, for monetary damages claims for extortion by the Rhode Island state

court's under color of state law abuse of the legal frame work of another federal-funded human services program Violence Against Women Act, 34 U.S.C. § 12471 *et seq.*, through which Rhode Island demanded that Plaintiff pay the state court actor $55,000.00 per visitation if Plaintiff wanted to see her children in Rhode Island, because the state court stated in writing they believed Plaintiff married "a rich oil man" in Texas, absent any other legally sufficient basis. Plaintiff had reported this *prima facie* extortion under color of state law and under color of federal law 34 U.S.C. § 12471 *et seq.*, to the federal law enforcement authorities, *e.g.*, the F.B.I. in Texas and the Office of the U.S. Department of Justice in Texas. Here, Plaintiff's ==retaliation== damages claims have been issues pending before the Court since September 1, 2023 [ECF 25], at which point Judge Smith was disqualified under the self-executing expectation under 28 U.S.C. § 455, additionally given the fact Judge Smith had also self-recused from Seguin v. Chafee et al., Civil No. 12-cv-708-JD (D.R.I. 2013), Seguin v. Bedrosian et al, Civil No. 12-cv-614-JD (D.R.I. 2013), and Seguin v. Suttell et al, Civil No. 13-cv-95-JNL-LM (D.R.I. 2013) ten years ago. *See In re Martinez-Catala,* 129 F.3d 213, 220 (1st Cir. 1998) ("[under §455] the judge is expected to recuse sua sponte, where necessary, even if no party has requested it").

(10) The Rhode Island Judiciary continues the pattern of cover up by denying Plaintiff's request for public judicial records related to the monopoly of publication of judge-created records submitted to the State Judiciary pursuant to the Rhode Island Access to Public Records Act ("RI APRA").

4. Plaintiff obtained new evidence on October 6, 2023 that the Rhode Island Judiciary is a former client of Judge Smith, and on November 9, 2023, Plaintiff obtained new evidence that the

Rhode Island Judiciary remains a major client of Judge Smith's former law firm. Plaintiff's due diligence search for conflict of interest has been impeded by the Rhode Island Judiciary and Tyler Technologies monopoly of publication of judge-created laws in the state's electronic court system and their denial of access to the judge-created laws, and Plaintiff, as a member of the Public and proceeding pro se without a Rhode Island Attorney license, the issuance of which is also monopolized by the Rhode Island Judiciary, has further been denied access to official records, including through the Rhode Island Access to Public Records Act, consistent with a pattern of civil conspiracy cover up.

5. A new trial or a stay of the Judgment is necessary to prevent irreparable harm to Plaintiff, and to Americans across the First Circuit who would be needlessly deprived of access to the federal courts of law in the First Circuit for monetary damages redress - the judicially created doctrine of Younger Abstention that functioned as a court of equity - regarding Plaintiff's monetary damages claims against the Rhode Island Judiciary and Tyler Technologies' scheme to monopolize the publication of judge-created laws that denies, tortiously interferes, tortiously abridges and tortiously obstruct the Public access to those very laws; regarding Defendant Rhode Island Office of Child Support Services' unlawful seizures of interstate Texas properties outside of Rhode Island under color of Rhode Island state law based on legally insufficient interest charge on overdue support based on the unlawful rate of 12% compound interest that is disallowed under Title IV-D Program of the Social Security Act, specifically 42 U.S.C. § 654(21)(A) that provides States *may* opt to charge a fee, and *if* the State opts to do so, between *3% to 6% simple interest*, *not* 12% compound interest. And this is on top of Defendants' breach of contract that was brokered by Defendant Rhode Island Office of Child Support Services on behalf of the agency's client; the contract between the custodial parent client, defendant Gero

Meyersiek and the Texas Plaintiff stipulated that the custodial parent waived interest upon the

Texas Plaintiff paying a lump sum of $104,185.98 pay-off amount, which Plaintiff performed

from Texas on December 7, 2021.  Even at the point of contractual agreement, Defendant Rhode

Island Office of Child Support Services in conjunction with Defendant Gero Meyersiek,

misrepresented there was lawful and enforceable interest to be waived, as they removed the

accrued interest from the Title IV-D Program mandated support record system in order to cover

up from the Plaintiff, and from federal and Texas authorities the unlawful 12% compound rate.

After fraudulently inducing Plaintiff in Texas to agree to and to perform on the contract, the

Defendants immediately put the interest back into the Title IV-D Program-mandated automated

support record system and started to seize Plaintiff's properties in Texas under color of Rhode

Island state law.

     6. The final judgment is on its face violative of binding First Circuit caselaw that

mandates lower courts to ***stay*** monetary damages claims when applying Younger Abstention.

*See DeMauro v. DeMauro,* 115 F.3d 94, 98 (1st Cir. 1997) (relying on *Quackenbush v. Allstate*

*Ins. Co.,* 517 U.S. 706 (1996) in holding that abstention does not allow for dismissal of damages

claim).

     7. 42 U.S.C. § 654(21)(A) has been in effect since the enactment of the Title IV-D

Program of the Social Security Act several decades ago, and Congress's original intent was to

combat poverty within the populace of single mothers and children in welfare cases; Congress at

no time intended to shift the undue burden of Rhode Island's 12% compound interest on overdue

support under color of Rhode Island state law to noncustodial parents, whether targeting Texas

or across the country, which in welfare cases Rhode Island converts the 12% compound interest

to assigned debts owed by noncustodial parents to Rhode Island's state agencies and state

government, representing underhanded unlawful state revenue unlawfully obtained through the legal framework of Title IV-D Program of the Social Security Act, targeting unsuspecting noncustodial parents victims. As a legal point of a state's lawful application of 42 U.S.C. § 654(21)(A) within the First Circuit, New Hampshire, in compliance with the letter of federal law, opts into Title IV-D Program and opts not to charge any interest whatsoever, as per the letter of law and the original intent of Congress, 42 U.S.C. § 654(21)(A). Similarly, Texas charges 6% in compliance with 42 U.S.C. § 654(21)(A).

8. Defendant Rhode Island Office of Child Support Service's illegal denial and obstruction of access to Plaintiff's own child support case file that contains the incriminating illegal and arguably criminal scheme of removing the interest rate from the Title IV-D Program mandated and federally funded support record system to cover up the unlawful 12% compound interest from federal and Texas authorities, as well as from the Plaintiff in Texas, violates due process, obstructs justice, obstructs a federally funded and federal program proceeding, and the legal framework of Title IV-D of the Social Security Act, specifically, 42 U.S.C. § 654 and 42 U.S.C. § 666.

9. Judge Smith's dismissal of Texas Plaintiff's legal remedy monetary damages and breach of contract fraudulent inducement damages claims under Younger Abstention in this Court of law represents irreparable harm violative of the First Amendment, Fourth Amendment, Fifth Amendment, the Fourteenth Amendment, the Seventh Amendment and the First Amendment access to the Court. The undisputable fact remains, Plaintiff's legal remedy request for monetary damages in this court of law consisting of twenty-two causes of action that cannot be dismissed under Younger Abstention, namely monetary damages claims of breach of contract fraudulent inducement, breach of implied contract, unjust enrichment, misrepresentation,

negligent misrepresentation, intentional/fraudulent misrepresentation, common law bad faith, breach of the covenant of good faith and fair dealings, tortious breach of the covenant of good faith and fair dealings, breach of fraudulent concealment/common law fraud, concealed fraud, tort of deceit, reckless indifference to the rights of Plaintiff, deliberate indifference to the rights of Plaintiff, abuse of process, breach of duty, accounting fraud, fraud cover up, RI Government Tort Liability (R.I. Gen. Laws 9-31-1, *et seq.*), 42 U.S.C. § 1983 Claim for Reckless Indifference of Plaintiff's Clearly Established Constitutional Rights, 42 U.S.C. § 1983 claim of Fourth Amendment Illegal Seizure of Plaintiff's Texas Property, state tort of liability against defendants under 42 U.S.C. § 1983, Civil RICO [ECF 25].

10. Judge Smith's legally-unsupported and factually-unsupported, and "legally insufficient" opinion that the limited jurisdiction family court is an adequate forum to raise Plaintiff's federal legal damages claims of breach of contract et al., contravenes Rhode Island law: R.I. Gen Laws 8-10-3 makes clear that family court is not a court of general jurisdiction, can only conduct bench trials functioning as a court of equity, not of law, and prohibits family court from exercising jurisdiction over breach of contract claims et al between the Texas Plaintiff and the Defendants; family court lacks jurisdiction over the Plaintiff's federal causes of actions; lacks the jurisdiction to summon a jury for jury trial in a court of law.

11. Finally, but equally critically, twenty-one days post judgment Plaintiff discovered troubling new evidence on November 9, 2023, that Judge Smith appears to have impermissibly acted in favor of the interests of the defendants – he is automatically disqualified under 28 U.S.C. § 455, because as a partner in his past practice and firm, the state government and the Rhode Island Judiciary were not only his clients, but continue to be that firm's major client under a flat fee contract and he has knowledge of the defendants' actions in this action – as a major

partner in his firm, the Rhode Island Judiciary is his and his form's past and current clients, the

state government actors and the state courts actors, cooperate in the routine establishment and

enforcement of 12% compound interest under the legal framework of Title IV-D Program of the

Social Security Act, where 12% compound interest is disallowed under 42 U.S.C. § 654(21)(A).

To the objective observer, having knowledge of the facts and circumstances of this case, and

being a partner in his past firm that continues to have the Rhode Island Judiciary as a client,

Judge Smith appears biased in favor of the defendants' interest to continue raking in state

revenue under the auspices of 42 U.S.C. § 654(21))(A) that explicitly disallows state debts of

12% compound interest assigned to Rhode Island that the state actors who cover up the 12%

compound rate by obstructing the noncustodial parent's access to her own child support case file

that is further violative of the due process provisions under 42 U.S.C. § 654 and §666, in Rhode

Island's federally funded operation with funds appropriated by Congress intended for the *lawful*

operation of Title IV-D of the Social Security Act.  Although under the judicial self-executing

expectation under 28 U.S.C. §455, the Texas Plaintiff is not expected to cull court records in the

Rhode Island state courts for judicial conflict of interest, nevertheless the Plaintiff in good faith

and diligently attempted to perform a remote search of Rhode Island's electronic court case

management system, Odyssey in 2023.  In so doing, Plaintiff discovered troubling newly-

discovered evidence that the Rhode Island Judiciary, while publicly representing that the 2014 $6

million state transition from paper courts to electronic courts promises *all court users* will be

able to call up court documents remotely from their mobile devices, in reality Rhode Island

adopted rules only denying the public and pro se litigants remote access to court case

information, including pro-se litigants' own case records, that both the public and all litigants

had equal statutory, common law and constitutional rights of access in paper courts – Judge

Smith's firm's clients, the Rhode Island Judiciary, therefore implemented electronic court public access denials that obstructed Plaintiff's and the public's discovery of Judge Smith's judicial disqualification regarding his former clients such as the state courts, the defendant state actors and other conflict entities.

### I. LEGAL STANDARD

11. The United States Supreme Court in 2020 reaffirmed, in *GEORGIA, ET AL., PETITIONERS v. PUBLIC.RESOURCE.ORG, INC*, 590 U.S. ___ (2020), the century-old government edicts doctrine, making clear that officials empowered to speak with the force of law cannot be the authors of—and therefore cannot monopolize access—the works they create in the course of their official duties. The U.S. Supreme Court previously applied that doctrine to hold that non-binding, explanatory legal materials when created by judges who possess the authority to make and interpret the law shall not monopolize access to it. *See Banks v. Manchester*, 128 U. S. 244 (1888). Tyler Technologies is a for profit organization that aims to facilitate public access to government judge-created records and legal materials. Tyler Technologies is contracted by the Rhode Island Judiciary to implement the State's electronic courts in 2013 and together, they both publicly represented that access to the contents of judge-created laws records will be readily called on mobile devices to *all* court users, namely, to the Public and to pro se litigants.

12. Under the government edicts doctrine, judges may not be considered the "authors" of the works they produce in the course of their official duties as judges. That rule applies regardless of whether a given material carries the force of law. In *Banks v. Manchester,* 128 U. S. 244 (1888) the Supreme Court concluded that "the judge who, in his judicial capacity, prepares the opinion or decision, the statement of the case and the syllabus or head note" cannot "be regarded as their author or their proprietor. *Banks*, 128 U. S, at 253 (emphasis in original).

Rather, "[t]he whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all." *Ibid.* (citing *Nash v. Lathrop*, 142 Mass. 29, 6 N. E. 559 (1886)). These cases establish a straightforward rule: Because judges are vested with the authority to make and interpret the law, they cannot be the "author" of the works they prepare "in the discharge of their judicial duties." Banks, 128 U. S., at 253. This rule applies both to binding works (such as opinions) and to non-binding works (such as headnotes and syllabi). *Ibid.* The animating principle behind this rule is that no one can own the law. "Every citizen is presumed to know the law," and "it needs no argument to show . . . that all should have free access" to its contents. *Nash,* 142 Mass., at 35, 6 N. E., at 560 (cited by *Banks*, 128 U. S., at 253–254). Rather than attempting to catalog the materials that constitute "the law," the doctrine bars the officials responsible for creating the law from being considered the "author[s]" of "whatever work they perform in their capacity" as lawmakers. *Ibid.* (emphasis added). Because these officials are generally empowered to make and interpret law, their "whole work" is deemed part of the "authentic exposition and interpretation of the law" and must be "free for publication to all." *Ibid.*

13. Rhode Island Judiciary and Tyler Technologies monopoly of publication of the judge-created laws and their "whole works" making and interpreting the law that explicitly by design deny access to the Public and to the Pro Se Litigant runs afoul of the government edicts doctrine.

14. Courts have long understood the government edicts doctrine to apply to legislative materials. See, e.g., *Nash*, 142 Mass., at 35, 6 N. E., at 560 (judicial opinions and statutes stand "on substantially the same footing" for purposes of the government edicts doctrine); moreover, just as the doctrine applies to "whatever work [judges] perform in their capacity as judges,"

*Banks*, 128 U. S., at 253, it applies to whatever work judges perform in their capacity as judges. *Banks*, following *Wheaton* and the "judicial consensus" it inspired, denied publication monopoly protection to judicial opinions without excepting concurrences and dissents that carry no legal force. 128 U. S., at 253 (emphasis deleted). As every judge learns the hard way, "comments in [a] dissenting opinion" about legal principles and precedents "are just that: comments in a dissenting opinion." *Railroad Retirement Bd. v. Fritz,* 449 U. S. 166, 177, n. 10 (1980). Yet such comments are covered by the government edicts doctrine because they come from an official with authority to make and interpret the law. Indeed, *Banks* went even further and withheld publication monopoly protection from headnotes and syllabi produced by judges. 128 U. S., at 253. Surely these supplementary materials do not have the force of law, yet they are covered by the doctrine. The simplest explanation is the one *Banks* provided: These non-binding works are not copyrightable because of who creates them—judges acting in their judicial capacity. *See ibid.* The textual basis for the doctrine is the "authorship" requirement, which unsurprisingly focuses on—the author, the judges*.* The Supreme Court long ago interpreted the 'author" to be officials empowered to speak with the force of law. The doctrine distinguishes between some authors (who are empowered to speak with the force of law) and others (who are not). The Supreme Court explicitly rejects allowing the States to "monetize its entire suite of legislative and judicial history. With today's *digital tools*, States might even launch a subscription or pay-per-law service." See *Georgia v, Public Resources Org.* at 590 U. S. ____ (2020) It is obviously explicitly clear that the Supreme Court refers to the prohibition against the Rhode Island Judiciary and Tyler Technology's monopolization of the digital publication of DIGITAL COURT JUDICIAL COURT RECORDS that denies publication access of judge-created laws and their work materials to the Public and to Pro Se Litigants.

15. There is no legitimate Rhode Island government interest in the knowing illegal denial of access to the public and to pro se litigants the digital records of the Rhode Island Judiciary's and Tyler Technologies' illegal monopolization of digital publication of judge-created laws involving the establishment nor enforcement of unlawful 12% compound interest violative of explicitly clear 42 U.S.C. § 654(21)(A) within the legal framework of Title IV-D Program targeting noncustodial parties in Texas who are outside of Rhode Island that Rhode Island already knows is unenforceable in Texas, and thus had removed the 12% compound interest in 2018 calculated to cover it up from federal and Texas authorities. Rhode Island's abuse of the legal framework of the government edict doctrine and the legal framework of Title IV-D Program are diametrically at odds with the intent of Congress and binding caselaws of the U.S. Supreme Court. The civil conspiracy to cover up the illegal machinery of the digital electronic courts in Rhode Island is clear. *See Turner v. Rogers*, 131 S. Ct. 2507, 2518 (2011). *See Georgia v, Public Resources Org.* at 590 U. S. ____ (2020); *See* HOUSE COMM. WAYS & MEANS, Section 8: Child Support Enforcement Program, in 2004 GREEN BOOK: BACKGROUND MATERIAL AND DATA ON THE PROGRAMS WITHIN THE JURISDICTION OF THE COMMITTEE ON WAYS AND MEANS 8-1, 8-2 (2004). *See* Social Services Amendments of 1974, Pub. L. No. 93-647, § 101, 88 Stat. 2337, 2351. Where the mother receives public aid, federal and state governments will provide the child support payment to the mother and hold the father indebted to the government for that amount. In cases where the mother is not dependent on welfare, the government has largely stayed out of the fray. *See* HOUSE COMM. WAYS & MEANS, *supra* note 38. Yet, this case does not involve a welfare case, as the custodial father is wealthy, but the Defendants are motivated by retaliation against the Plaintiff for suing them ten years ago in Seguin v. Chafee et al., Civil No. 12-cv-708-JD (D.R.I. 2013), Seguin v. Bedrosian

et al, Civil No. 12-cv-614-JD (D.R.I. 2013), and Seguin v. Suttell et al, Civil No. 13-cv-95-JNL-

LM (D.R.I. 2013), in which Plaintiff sued them, *inter alia*, for monetary damages claims for

extortion by the Rhode Island state court's under color of state law abuse of the legal frame work

of another federal-funded human services program Violence Against Women Act, 34 U.S.C. §

12471 *et seq.*, through which Rhode Island demanded that Plaintiff pay the state court actor

$55,000.00 per visitation if she wanted to see her children in Rhode Island, because the state

court stated in writing they believed Plaintiff married "a rich oil man" in Texas, absent any other

legally sufficient basis.  Plaintiff had reported this *prima facie* extortion under color of state law

and under color of federal law 34 U.S.C. § 12471 *et seq.*, to the federal law enforcement

authorities, *e.g.*, the F.B.I. in Texas and the Office of the U.S. Department of Justice in Texas.

Here, Plaintiff's retaliation damages claims have been issues pending before the Court since

September 1, 2023 [ECF 25], at which point Judge Smith was disqualified under the self-

executing expectation under 28 U.S.C. § 455, additionally given the fact Judge Smith had also

self-recused from Seguin v. Chafee et al., Civil No. 12-cv-708-JD (D.R.I. 2013), Seguin v.

Bedrosian et al, Civil No. 12-cv-614-JD (D.R.I. 2013), and Seguin v. Suttell et al, Civil No. 13-

cv-95-JNL-LM (D.R.I. 2013) ten years ago.  *See In re Martinez-Catala,* 129 F.3d 213, 220 (1st

Cir. 1998) ("[under §455] the judge is expected to recuse sua sponte, where necessary, even if no

party has requested it").

## II. ARGUMENT

16. Plaintiff has appealed the Court's/Judge Smith's judgment in its entirety in the related

case, Seguin v, RI Office of Child Support Services et al Civil No. 23-cv-34-WES-PAS (D.R.I.

2023) and respectfully submits that she is likely to secure a complete reversal of this Court's

holding that the judicially created doctrine of Younger Abstention applies to the *dismissal* of her monetary damages and breach of contract damages claims.

17. Plaintiff further submits that she is likely to secure a complete reversal of this Court's in this case.

18. Conducting state proceedings funded by federal funding appropriated by Congress under Title IV of the Social Security Act in state monopolized electronic courts that violate the long-established government edict doctrine as it related to the Public's access of the digital publication of judge-created laws and violate the Constitution targeting Texas assets and Texas parties for illegal 12% compound interest involving fraudulent inducement that cannot be enforceable in Texas is the prima facie example of government fraud and government waste, warranting cut off from federal funding at the very minimum. Not even Judge Smith, friend of the Rhode Island Judiciary, can punt these egregious state activities to later addressment via the attention of the Supreme Court and to Congress Appropriation Committees, wrongfully using Younger Abstention.

19. Judge Smith's holding is defect in claiming without a shred of factual basis that Plaintiff can raise her federal monetary damages claims and fraudulent inducement breach of contract claims in the jurisdictionally defective Rhode Island family court, that R.I. Gen. Laws 8-10-3 plainly states the family court is *not* a court of general jurisdiction, and which lacks the jurisdiction over the controversy for legal relief of monetary damages tort claims and fraudulent inducement breach of contract damages claims over both the Plaintiff and all the named defendants.

20.  Plaintiff seeks a new trial or a stay pending appeal as Plaintiff's likelihood of success on appeal, together with the lopsided balance of hardships, weigh heavily in favor of granting the stay being sought pending appellate review.

**A. Plaintiff is Likely To Succeed On Appeal Of the Judgment Ordered By the Court:**

21. Although Plaintiff recognizes that the Court has ruled against her as to the scope of relief, Plaintiff is likely to succeed on appeal of those issues, and has raised serious legal questions and presented a substantial case. *See Arnold v. Garlock, Inc*., 278 F.3d 426, 438-39 (5th Cir. 2001).

22. Plaintiff incorporates by reference her prior remedy arguments.  Plaintiff reserves the right to make any and all arguments on appeal.

23. Among the substantial questions raised by Plaintiff is whether the Court erred in awarding Defendants dismissal of Plaintiff's monetary damages claim in this First Circuit under Younger Abstention and erred in failing to self-execute 28 U.S.C. § 455. And Plaintiff respectfully submits that she is likely to succeed on appeal in arguing that, in these circumstances, dismissal was not properly ordered in the particular circumstances of this case pursuant to established binding First Circuit caselaws on both the Court's errors applying Younger Abstention as well as judicial disqualification. *See DeMauro v. DeMauro,* 115 F.3d 94, 98 (1st Cir. 1997)**;** *In re Martinez-Catala,* 129 F.3d 213, 220 (1st Cir. 1998); *Quackenbush v. Allstate Ins. Co*., 517 U.S. 706 (1996).  *See* also *Allen v. La. State Bd. of Dentistry*, 835 F.2d 100, 104 (5th Cir. 1988). ("Younger abstention does not apply to claims for monetary damages.")

24. Absence of a new trial or a stay of the judgment will erode confidence in the

Judiciary in the First Circuit by creating an impression that it is violating national law regarding

the government edict doctrine and setting illegal new national policy regarding the Title IV-D

Program.  It may also have the effect of "encouraging forum shopping."  *Trump v. Hawaii,* 138

S. Ct. 2392, 2425 (2018) (Thomas, J., concurring). It further "undermines the judicial system's

goals of allowing the 'airing of competing views' and permitting multiple judges and circuits to

weigh in on significant issues."  *See* also *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20

(2008) (traditional remedial principles account for "the public interest" and "the balance of

equities"); *EME Homer City Generation, LP v. EPA*, 795 F.3d 118, 132 (D.C. Cir. 2015)

(Kavanaugh, J.) (declining to vacate unlawful agency action under the APA because "vacatur

could cause substantial disruption"). In this context, the dismissal of Plaintiff's state government

tort monetary damages claims entered by the Court could cause substantial disruption to the

*uniform* application of the legal framework of the Title IV-D Program Congress explicitly

intended.

25. The serious legal questions raised in this case regarding the scope of remedy go

beyond the questions of whether a Younger abstention is applicable to federal monetary damages

claims and or the feeble assertion of *comity* applied to the Rhode Island Judiciary and Tyler

Technology's gross violation of the government edict doctrine—and indeed, those questions

should not have even entered into this case. Here, among Plaintiff's challenges was to state

Judiciary, Tyler Technologies and agency actions, and Plaintiff pursued fraudulent inducement

breach of contract damages claims and tort monetary damages claims.  Instead, the Court at law

cannot vacate a federal statute—i.e., cannot "delete a previously enacted statute from the books"

such as 42 U.S.C. § 1983.  *See* also Jonathan F. Mitchell, The Writ-of-Erasure Fallacy, 104 Va.

L. Rev. 933, 936 (2018) ("The federal courts have no authority to erase a duly enacted law from the statute books, and they have no power to veto or suspend a statute. The power of judicial review is more limited." (footnotes omitted). Legal monetary damages relief under 42 U.S.C. § 1983 that would hold the Rhode Island state government accountable under the Rhode Island Government Tort Act for Rhode Island government actors' tortious actions violating the legal framework of the Title IV-D Program federal statutes targeting the Plaintiff in Texas was a legal remedy conferred by Congress to federal courts to grant legal relief appropriate in this case. The Court has an unflagging obligation to exercise jurisdiction conferred to it by Congress. *See Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013)

26. With respect, although the Court has entered a judgment otherwise, Plaintiff has demonstrated a likelihood of success on appeal of the Final Judgment sufficient to justify a stay of the judgment.

## **B. The Balance of the Equities Overwhelmingly Favors the Requested New Trial or Stay**

27. The balance of the equities overwhelmingly favors a new trial or stay: The State of Rhode Island plainly lacks any legitimate interest in the State's systemic knowing violation of the government edict doctrine and violation of 42 U.S.C. § 654(21)(A) that they now target Plaintiff in Texas, and which they sought to cover up from federal and Texas authorities, as well as from Plaintiff, by knowingly and unlawfully removing interest from the automated support record system. Americans outside of Rhode Island re fraudulently, unlawfully and systemically fleeced by Rhode Island's illegal scheme that is illegally funded through the State's defrauding of the United States lying to the United States that these activities are eligible for federal funds

appropriated by Congress for the legal administration of Title IV Program of the Social Security Act.

28. Defendants will face no harm from Plaintiff's requested new trial or stay. The judgment that is specifically directed to and protects the prevailing Defendants from legal accountability of their illegal actions, is further issued by a disqualified judge, Judge Smith, who was the former counsel for the Defendants and a partner of the firm whose major client is the Rhode Island Judiciary, *e.g.*, Rhode Island state government entities, including the state courts and state agencies. The requested new trial or stay will thus impose no hardship on the prevailing Defendants at all.

29. By contrast, the public and the Plaintiff face significant harm if now new trial is ordered or the judgment is not stayed. As an initial matter, "any time a [government]" violates "statutes enacted by representatives of its people," the people "suffer a form of irreparable injury." *Maryland v. King,* 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted). But the harm here is much greater and more far-reaching. The government edict doctrine is willfully violated by the Rhode Island Judiciary and Tyler Technology in a civil conspiracy to cover up the illegal state family court creating judge-created laws ordering and enforcing 12% compound interest, aided and abetted by the Department of Human Services - Title IV-D requires the uniform application and compliance by participating States with the Social Security Act. Congress's as well as the United States through the Secretary of the U.S. Department of Health and Human Services' interest in the uniform compliance of 42 U.S.C. § 654(21)(A), § 654 and 42 U.S.C. § 666 are well established. The States are reimbursed 66% of the cost of operations through federal funding appropriated by Congress under Title IV-D of the Social Security Act. The Defendants' arbitrary illegal removal of the illegal unenforceable 12%

compound interest from the automated support record system and cover up of their illegal 12% compound interest scheme from the federal and Texas authorities targeting Texas properties and targeting the Plaintiff in Texas demonstrates Rhode Island government agencies (who are former clients of Judge Smith) knowingly committed criminal schemes illegally seizing Plaintiff's properties interstate in Texas that they know are violative of federal criminal codes and Texas civil and penal codes. *See,* e.g., Social Services Amendments of 1974 (1975 Act), Pub. L. No. 93-647, § 101(a), 88 Stat. 2351 (42 U.S.C. 651 et seq.) (adding Title IV-D to the Social Security Act). The program, which is administered by the United States Secretary of Health and Human Services (Secretary), provides that States with approved plans for child and spousal support that meet federal requirements are reimbursed by the federal government for a significant sixty-six percent (66%) of the costs of operating their child-support enforcement programs. 42 U.S.C. §v655(a)(2)(C).  In 1975, Congress adopted Title IV-D, 42 U.S.C. §v651 *et seq*., and established the general statutory framework that exists today. See 1975 Act § 101(a), 88 Stat. 2351; *Blessing v. Freestone*, 520 U.S. 329, 333-335 (1997) (describing program).  Congress ultimately set the federal share of reimbursable expenditures at 66%, 42 U.S.C. 655(a)(2), but expanded the availability of matching funds at the 90% level for State expenditures for automating data processing systems to improve "the monitoring of support payments, the maintenance of accurate records regarding the payment of support.  Therefore, the Defendants' illegal operations cannot be funded by Congressional appropriations.

    30. Judge Smith's failure to self-execute his disqualification under 28 U.S.C. § 455 as well as Canon 3E of the Code of Judicial Conduct, then his subsequent refusal to recuse in the related case, <u>Seguin v, RI Office of Child Support Services et al Civil</u> No. 23-cv-34-WES-PAS (D.R.I. 2023), upon Plaintiff's request after she raised newly discovered discovery post judgment

on October 6, 2023 of his direct and past public sector law practice's contract legal representation of the Defendants, state courts, state agencies and other conflict entities, have the appearance, to the objective observer, of the Court's issuance of judgment in favor of the Defendants in error that contravenes established First Circuit case law on Younger Abstention as well as disqualification, calculated to benefit the interests of his former clients, as partner of his former firm that represents the Rhode Island Judiciary and the state government.

31. Moreover, the Court's judgment effectively functions as a denial of Plaintiff's access to this Court of law to redress her legal monetary damages claims and fraudulent inducement breach of contract damages claims. It is well-settled that even minimal loss of First Amendment freedoms, "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976) (plurality)); *see also Elrod*, 427 U.S. at 373.; *N.Y. Times v. United States*, 403 U.S. 713, 715 (1971). Accordingly, Plaintiff has a strong likelihood of success on the merits, will suffer irreparable injury without a stay, and a stay will not injure others while furthering the public interest.

### III. CONCLUSION

27. For the foregoing reasons, Plaintiff has demonstrated a likelihood of success on appeal of the Judgment ordered, and has demonstrated that the balance of the equities favors a new trial or a stay. Plaintiff respectfully requests that the Court stay the final judgment for the duration of appellate proceedings relating to the related Seguin v, RI Office of Child Support Services et al Civil No. 23-cv-34-WES-PAS (D.R.I. 2023).

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 16, 2023, I filed the within Motion with the

Clerk of the Court via email.

Respectfully submitted,

Mary Seguin

Pro Se

/s/ *Mary Seguin*

Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

Dated: November 16, 2023

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

MARY SEGUIN,
*pro se*

*Plaintiff,*

VS.                                          Civil Action No. 1:23-cv-126-WES-PAS

RHODE ISLAND DEPARTMENT OF HUMAN SERVICES in its official capacity; MICHAEL
D. COLEMAN, DEBORAH A. BARCLAY in their individual and official capacities;
RHODE ISLAND OFFICE OF CHILD SUPPORT SERVICES in its official capacity; KEVIN
TIGHE, MONIQUE BONIN, FRANK DIBIASE, WENDY FOBERT, KARLA
CABALLEROS, TIMOTHY FLYNN, LISA PINSONNEAULT, CARL BEAUREGARD,
PRISCILLA GLUCKSMAN, JOHN LANGLOIS, PAUL GOULD, in their individual and
official capacities; RHODE ISLAND STATE COURT SYSTEM in its official capacity; PAUL
A. SUTTELL in his individual and official capacity as EXECUTIVE HEAD OF RHODE
ISLAND STATE COURT SYSTEM; RHODE ISLAND ADMINISTRATIVE OFFICE OF
STATE COURTS in its official capacity; RHODE ISLAND ADMINISTRATIVE OFFICE OF
THE SUPERIOR COURT in its official capacity; RHODE ISLAND JUDICIAL COUNCIL in
its official capacity; RHODE ISLAND SUPERIOR COURT in its official capacity; RHODE
ISLAND SUPERIOR COURT JUDICIAL COUNCIL in its official capacity; THE JUDICIAL
TECHNOLOGY CENTER in its official capacity; JULIE HAMIL, MARISA BROWN, JOHN
JOSEPH BAXTER, JR., JUSTIN CORREA in their individual and official capacities; RHODE
ISLAND OFFICE OF THE ATTORNEY GENERAL in its official capacity; RHODE ISLAND
OFFICE OF THE ATTORNEY GENERAL OPEN GOVERNMENT UNIT in its official
capacity; ADAM D. ROACH, PETER NERONHA in their official and individual capacities;
TYLER TECHNOLOGIES, INC.; GERO MEYERSIEK

*Defendants*

## MARY SEGUIN'S DECLARATION IN SUPPORT OF PLAINTIFF'S RULE 59 MOTION

I, MARY SEGUIN, hereby declare under penalty of perjury, pursuant to 28 U.S.C. sec.
1746(2) that the following statements are true and correct:

1. That I am the Plaintiff, Pro Se, in the above captioned matter.

2. That I exercised, am exercising and continue to exercise my statutory right to appear
   pro se party in the above captioned civil matter in federal court by statute 28 U.S.C.
   sec. 1654.

3. That in state proceedings in Rhode Island, I am required to comply with Rhode Island Article X. Rules Governing Electronic Filing, Rule 2. Official Court Record, (a) Official Court Record. "Upon the implementation of the Electronic Filing System ("EFS") in each court, all documents shall be filed electronically and shall be the official court record."

4. That the state proceedings in which I am a party are public and are not about child custody nor involve a minor.

5. That the **Rhode Island Family Court**, through its adoption and promulgation of **Administrative Order 2021-01 A2)** mandated that all child support interest matters shall be heard remotely via WebEx. Further, **Administrative Order 2021-01 B1)** mandated that all non-emergency filings shall be filed using the electronic filing system in accordance with the Family Court Rules of Domestic Relations Procedure, which is the **Odyssey system**.

6. That the **"RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION, Rule 5. Access to Case Information, (c) Remote Access to Case Information. (1) Policy. To allow <u>limited</u> Remote Access to the Database through the Public Portal. Non-public case types shall not be remotely accessible except for certain case types to attorneys who have entered an appearance in a case. (2) Content. (a) The Public, Self-represented Litigants and Parties. The Public, self-represented litigants, and parties shall have Remote Access to the register of actions or Docket but shall <u>not</u> have Remote Access to other Electronic Case Information"** bar, deny, violate, abridge, infringe and interfere with Pro Se Litigants' and the Public's fundamental rights to access public court records and Pro Se Litigants' fundamental right to meaningful access to the courts. See "**<u>RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION</u>**" **<u>Rule 5(c)(2)(a)</u>** "**<u>The Public, Self-represented Litigants and Parties. The Public, self-represented litigants, and parties shall have Remote Access to the register of actions or Docket but shall not have Remote Access to other Electronic Case Information.</u>**" See also "**<u>RHODE ISLAND JUDICIARY, Access to Case Information, 2. Remote Access to Case Information A. The Public, Self-represented Litigants, and Parties to a Case, The public, self-represented litigants, and parties in a case shall have remote access to the register of actions or docket but shall not have remote access to other electronic case information</u>**."

7. That I, the Plaintiff, learned and verified on July 10, 2023 directly from the Rhode Island Judiciary itself through numerous (14) correspondences with the Rhode Island Judiciary from June 10, 2023 to July 10, 2023, pursuant to my RI Access to Public Records Act ("APRA") request for public records from the Rhode Island Judiciary, that as a matter of State policy, State Court Rule, and Judiciary Rule, in the digital courts implemented by the Rhode Island Judiciary, the State Court, the Rhode Island

Judiciary deny remote digital access of the Rhode Island Judiciary's monopolized publication of court and judicial records using the digital tool maintained and published by Tyler Technologies, Odyssey, including judge-created, judge-authored court decisions arising from state proceedings in the State's digital electronic courts, and digital court transcripts ordered by and paid by pro-se litigants that are published by the Judiciary digitally on Tyer Technologies' Odyssey are also denied access to the Public, pro-se litigants, and parties to the litigation (who are represented by counsel). The Rhode Island State Court only grants remote access to digital court and judicial records created by judges produced in digital courts to Rhode Island attorneys and state and federal agencies that are approved by the Rhode Island Judiciary's monopoly. On this matter, I corresponded in writing fourteen (14) APRA correspondence emails with Mr. Justin Correa, Esq. and Ms. Alexandra Kriss of the Rhode Island Judiciary from June 10, 2023 to July 10, 2023.

8. That the State Defendants in this matter electronically file all notices using another electronic filing system that is even separate and different from the EFS (Odyssey).

9. That the State Defendants' court electronic filings are not noticed to me in Texas.

10. That the State Defendants' court electronic filings are not visible to me on the Rhode Island courts' EFS.

11. That the State Defendants' court electronic filing court records cannot be accessed remotely by me, solely because I am a self-represented litigant.

12. That the State Defendants' court electronic filing court records cannot be accessed remotely by the public, by self-represented litigants, nor by parties to the case, but can be accessed remotely and instantly through the internet by attorneys in Rhode Island and state and federal agencies.

13. That the Rhode Island Court Clerks state to me over the phone that they are prohibited from reading the contents of the court records over the phone to me.

14. That the Rhode Island Court virtual clerks state to me over the phone that even they are unable to see or access the court record information of filings by the State Defendants from the virtual clerks' access portals.

15. That the Rhode Island Electronic Filing System, case management system, rules and practices outright and unconstitutionally restrict and deny access to the court to three classes: (1) the public; (2) pro-se litigants; (3) parties to the case (who are represented by counsel), and is obviously outright reserved for only the government and Rhode Island attorneys.

16. That the State Defendants have full knowledge of the egregious due process violations of the Rhode Island state court EFS.

17. That the State Defendants have full knowledge of the egregious due process violations of the Rhode Island state court EFS system/architecture/rules/practices, and

withdrew from my-initiated RI EOHHS agency appeal in 2022 in a scheme to procure a favorable judgment in a state proceeding that deny my federal constitutional and due process rights in Texas.

18. That the State Defendants have full knowledge of the egregious due process violations of the Rhode Island state court EFS system/architecture/rules/practices, and initiated the family court state proceeding on January 31, 2023 before the Covid Emergency Declaration was lifted.

19. That the State Defendants have full knowledge of the egregious due process violations of the Rhode Island state court EFS system/architecture/rules/practices that appear to **only allow remote, instant and full court access to a restricted club of R.I. lawyers and the government**, pose unconstitutional and undue burden on me, a citizen of Texas over 2,500 miles away.

20. That the State Defendant have full knowledge of the egregiously unfair due process violations of the Rhode Island state court EFS system/architecture/rules/practices that deny me access to the <u>required</u> **electronic court transcripts** prepared by the court reporter and electronically filed in the state EFS that **I ordered and paid for** for appeal, but the State Defendants have instant remote access by state court design.

21. That the State Defendants have full knowledge of the above unconstitutional restriction on access to court records and information to the public and non-lawyers is deliberate, by design and calculated to be unfair, violating constitutional guarantees of full and fair opportunity to raise claims in state proceedings.

22. That the above-raised unconstitutional restrictions are not exhaustive.

23. That my federal monetary damages claims on the unconstitutionality of the Rhode Island state court rules, practices and proceedings that violate the government edict doctrine and violate the pro-se litigants', such as my-self, federal constitutional rights: (1) federal constitutional right of equal access to the courts, (2) federal constitutional right to equal access to court records to receive information on the contents of all electronically filed notices, pleadings, court decisions, and transcripts that I myself ordered <u>and</u> paid for for appeal that are required to be electronically filed by state court rules and practices, (3) federal constitutional due process right and equal right to be given equal and timely notice of electronic filings and entries by the courts (including court decisions, court orders, court judgments, full docket entries, etc.) that the Rhode Island Judiciary deliberately deny by category all pro-se litigants access to court information, namely the contents of judicial/court records of cases to which I am the self-represented party, (4) federal constitutional due process right to be heard (Rhode Island Superior Court threatens me, the Texas pro-se plaintiff, with denial of my request to conduct WebEx hearings for the purpose of denying the Texas pro-se litigant access to the court and to be heard), (5) federal constitutional due process right to decision by a neutral decision-maker (the court that denies pro-se litigant

access to the court and the corollary opportunity to be heard fails the neutral decision-maker test).  This list is not exhaustive.

24. That I seek to sue in federal court the State Defendants and add additional defendants.

25. I am an out-of-state diversity and a pro-se litigant in two state proceedings in Rhode Island, and have been unconstitutionally singled out by the State Judiciary, by category "self-represented litigant," to be barred from accessing electronic case information authored by judges and which the Judiciary has a monopoly in the publication of the judge-created laws in which state court cases I am the pro-se party, and therefore have standing to raise claims against this unconstitutional state practice and unconstitutional state court practice and rules.  I understand the Rhode Island Judiciary's monopoly in the digital publication of judge-created laws in the Judiciary' implemented digital/electronic courts and the Judiciary's denial to the Public and to me from accessing the monopolized electronic publication of the judge-created laws in the court records violate the government edict doctrine.

26. Additionally, my fundamental First and Fourteenth Amendment constitutional right and common law right to equal, meaningful, and timely access to judicial records and public court records in litigation, given timely notice, adequate opportunity to be heard and to decision by a neutral decision-maker are fundamental First and Fourth Amendment and Fourteenth Amendment rights.  Critically, the unconstitutional abridgement, infringement, and denial of judicial and court records to out-of-state pro-se litigants by the Rhode Island State Courts, Rhode Island State Judiciary and the Rhode Island Superior Court Bench Bar Committee directly relate to Younger Abstention Exception.

27. The State Defendants deliberately file all the State's pleadings outside of the State's electronic filing system, "Odyssey," and deliberately use a wholly different un-named electronic filing system, different and separate from that ("Odyssey") provided for pro-se litigants, so that pro-se litigants do not receive any requisite automated electronic notices of court motions or pleadings the State Defendants file electronically, nor are pro se litigants able to electronically access the content information of the State Defendants' electronically-filed pleadings.  The only way the pro se litigant, such as me, the Texas Plaintiff, can access the court record is to personally go over 2,500 miles away to the courthouse in Rhode Island to access the court pleading information, or get a "courtesy notice" via email or get a "courtesy notice" through U.S. Mail sent by the State Defendants at whim.   The State Defendants deliberately fail to send the notices electronically or by U.S. Mail, and the state courts deliberately promulgated court rules disallowing the public, pro-se litigants and even the parties who are represented by lawyers, remote access to court records, and critically, deny access to crucial court decisions, judgments and orders of public cases, as well as deny remote access to the transcripts ordered by pro-se litigants for appeal.  Critically, the State court's abridgment and denial of access to court documents to the pro se litigant and the general public result in the

unconstitutional abridgment and denial of equal, timely and meaningful access to court complaints, decisions, judgments and orders.  What is truly shocking is that the Rhode Island Judiciary even denies and/or bars pro-se litigants remote access of court transcripts that were ordered by pro-se litigants for appeal.

28. Thirdly, the Texas Pro-Se Plaintiff discovered and verified the fact, on or about July 7, 2023, that the Rhode Island Judiciary, using the aforesaid state court rule barring, by category, pro-se litigants from accessing court case information remotely, bars the Plaintiff by category ("self-represented litigant") from accessing state court proceeding transcripts that the Texas Plaintiff ordered and paid for, for appeal.  In other words, the RI Supreme Court Clerk stated to the Texas Plaintiff that the Plaintiff, in Texas, is unconstitutionally barred from remotely accessing the transcripts of court proceedings that she ordered and paid for in her appeal to the RI Supreme Court in the Plaintiff-initiated APRA action **Seguin v. RI Office of Child Support Services, PC-22-07215**, and yet the State Defendants are inequitably granted instant and free remote access to those very transcripts that the Texas Plaintiff ordered and paid for, for appeal.  The federal Texas Plaintiff respectfully requests this Court the extension of time to present the new evidence and plead the verified facts.

29. Fourthly, the Texas Plaintiff discovered and verified the fact, on or about July 11, 2023, that, despite the Texas Plaintiff's several phone inquiries to the RI Superior Court in the past several weeks regarding the status of the appeal, the RI Superior Court, for undisclosed reasons, failed and continue to fail to relinquish jurisdiction and transfer the court case file of **Seguin v. RI Office of Child Support Services, PC-22-07215** to the RI Supreme Court within the requisite 60 days after Plaintiff's filing of Notice of Appeal on April 3, 2023, as required by the RI Supreme Court rules and procedures.  At the same time, the Texas Plaintiff verified the fact that the Plaintiff-ordered transcripts of the state proceedings in the Federal Plaintiff-initiated state APRA action **Seguin v. RI Office of Child Support Services, PC-22-07215** show the RI Superior Court further unconstitutionally sought to deny the Texas Plaintiff access to the state court and opportunity to be heard by outright threatening the Plaintiff in open court that the Judge, David Cruise, during the hearing of March 24, 2023 in that matter, shall use the state court's discretionary power in the future to deny all of the Texas pro-se Plaintiff's petitions for remote WebEx hearings to effectively deny her access to the state superior court.   The state court that denies court access and the opportunity to be heard fails the neutral-decision-maker test required under the Fourteenth Amendment.  I now specifically request further the Court to judicially notice that this court access denial and denial to be heard occurred on March 24, 2023, PRIOR to President Biden's lifting of the COVID-19 National Health Emergency Declaration.  I, the Texas Plaintiff, aver this is a direct contributory reason for the RI Superior Court's failure to transfer the case file to the Supreme Court within 60 days (by June 3, 2023) of the Plaintiff's filing of Notice of Appeal on April 3, 2023 in **Seguin v. RI Office of Child Support Services, PC-22-07215**.

30. Fifthly, the Plaintiff presents to this Court and respectfully requests the Court to take judicial notice of the undisputed fact of the court rule-making process in Rhode Island. The 1966 Rules were promulgated by the justices of the superior court pursuant to section 8-6-2 of the General Laws of Rhode Island. This enabling act departed from the Federal Rules Enabling Act and most state enabling legislation conferring rule-making power on the supreme courts of the respective governments. The Rhode Island Enabling Act was adopted in 1940, 1940 R.I. Pub. Laws ch. 943, sec. 1. It conferred the power on the justices of the superior court and the 1966 reform was the product of that court. In 1969 an amendment to section 8-6-2 made the Rules thereafter adopted by the trial courts subject to the approval of the Supreme Court. 1969 R.I. Pub. Laws ch. 239, sec 2. Therefore, all public records relating to the adoption and promulgation of the "RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION" are "made in the course of, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency, ""agency" or "public body" means any executive, legislative, judicial, regulatory, or administrative body of the state, or any political subdivision thereof" as per R.I. Gen. Laws § 38-2-2, a.k.a. RI Access to Public Records Act ("APRA"). Even though the Rhode Island Enabling Act conferred the power on the judiciary public body to promulgate and adopt court rules, a.k.a. rule-making process, the Rhode Island Judiciary, pursuant to the Plaintiff's APRA request for public records, denied the Plaintiff's APRA request within the 10 business day period, as well as denies it possesses public records, as defined by APRA, relating to the rule-making process by the judiciary of the "RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION," including denying possession of public records that show the intent of the rule-makers to promulgate and adopt court rules denying fundamental right of public access to electronic case information remotely to the public, to self-represented litigants, and to parties to a case. **See <u>Exhibit D</u>** fourteen (14) APRA correspondence emails between the Plaintiff and/with Mr. Justin Correa, Esq. and Ms. Alexandra Kriss of the Rhode Island Judiciary from June 10, 2023 to July 10, 2023. The Texas pro-se Plaintiff respectfully requests the extension of time to present the new evidence and plead the newly verified facts and claims, and amend the complaint, which is further in the interest of judicial economy. The Plaintiff further seeks to appeal and file her claim against the implausible denial by the RI Judiciary, which is conferred by the Rhode Island Enabling Act to make rules of the court, that it possesses public records relating to the "RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION," that the judiciary, conferred power by the Rhode Island Enabling Act, "made in the course of, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency, ""agency" or "public body" means any executive, legislative, judicial, regulatory, or administrative body of the state, or any political subdivision thereof" as per R.I. Gen. Laws § 38-2-2, a.k.a. RI Access to

Public Records Act ("APRA"). Because the RI Superior Court clearly ruled in **Seguin v. RI Office of Child Support Services, PC-22-07215** that it lacked subject matter jurisdiction to hear my/the Texas Plaintiff's APRA-related claims, I, the Texas Plaintiff, now exercise my statutory and constitutional rights to petition this Federal Court, invoking 28 U.S.C. § 1343(a)(3) (civil rights) and 28 U.S.C. § 1367 that provides supplemental jurisdiction over the state law tort claims that arose from the same common nuclei of facts, invoking 28 U.S.C. § 1331 (federal question), and invoking 42 U.S.C. § 1983 for violations of civil rights under the First, Fourth and Fourteenth Amendments to the United States Constitution. I, the Plaintiff, respectfully request this Court for the extension of time to file my claims.

31. Plaintiff discovered on October 6, 2023 that the Rhode Island Judiciary and Government Defendants are former clients of Judge Smith, a partner in his former firm, Edwards & Angell.

32. Plaintiff discovered on November 9, 2023 that the Rhode Isand Judiciary and Government Defendants are current clients of the firm Edwards & Angell, the former firm of Judge Smith, a partner in the firm.

33. A plain reading of 28 U.S.C. sec. 455 makes clear that Judge Smith is disqualified from this case, and a plain reading of case law makes clear that 28 U.S.C. sec. 455 is self-executing, without necessitating any party's request.


Respectfully submitted,

Date: November 16, 2023

MARY SEGUIN


*Mary Seguin*

Mary Seguin

P.O. Box 22022

Houston, TX 77019

maryseguin22022@gmail.com

## Kayla DaCruz

| | |
|---|---|
| **From:** | Mary Seguin <maryseguin22022@gmail.com> |
| **Sent:** | Thursday, November 16, 2023 2:32 PM |
| **To:** | RID_ECF_INTAKE |
| **Subject:** | URGENT - TIME SENSITIVE - FILE TODAY RULE 59 MOTION in Seguin v. Ri Dept of Human Services et al, Civil Action No. 1:23-cv-126-WES-PAS |
| **Attachments:** | CA 126 Plaintiff Rule 59 Motion with Affidavit 111623.pdf |
| | |
| **Categories:** | Pending With Judge, Being Worked On MK |

<mark>**CAUTION - EXTERNAL:**</mark>

Dear Clerk of the Court,

Kindly urgently file today, November 16, 2023, my attached Rule 59 Motion in the above captioned case, Seguin v. Ri Dept of Human Services et al, Civil Action No. 1:23-cv-126-WES-PAS.

Because this Rule 59 Motion is time sensitive, kindly make sure that it is filed and docketed today, November 16, 2023. I do not have access to electronic filing, it appears.

Thank you in advance for your assistance.

Respectfully Submitted,
Mary Seguin
PO Box 22022
Houston, TX  77019
(281) 244-2016

<mark>**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.</mark>

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

MARY SEGUIN, *pro se*

*Plaintiff,*

VS.                                                          Civil Action No. 1:23-cv-126-WES-PAS

RHODE ISLAND DEPARTMENT OF HUMAN SERVICES in its official capacity; MICHAEL D. COLEMAN, DEBORAH A. BARCLAY in their individual and official capacities; RHODE ISLAND OFFICE OF CHILD SUPPORT SERVICES in its official capacity; KEVIN TIGHE, MONIQUE BONIN, FRANK DIBIASE, WENDY FOBERT, KARLA CABALLEROS, TIMOTHY FLYNN, LISA PINSONNEAULT, CARL BEAUREGARD, PRISCILLA GLUCKSMAN, JOHN LANGLOIS, PAUL GOULD, in their individual and official capacities; RHODE ISLAND STATE COURT SYSTEM in its official capacity; PAUL A. SUTTELL in his individual and official capacity as EXECUTIVE HEAD OF RHODE ISLAND STATE COURT SYSTEM; RHODE ISLAND ADMINISTRATIVE OFFICE OF STATE COURTS in its official capacity; RHODE ISLAND ADMINISTRATIVE OFFICE OF THE SUPERIOR COURT in its official capacity; RHODE ISLAND JUDICIAL COUNCIL in its official capacity; RHODE ISLAND SUPERIOR COURT in its official capacity; RHODE ISLAND SUPERIOR COURT JUDICIAL COUNCIL in its official capacity; THE JUDICIAL TECHNOLOGY CENTER in its official capacity; JULIE HAMIL, MARISA BROWN, JOHN JOSEPH BAXTER, JR., JUSTIN CORREA in their individual and official capacities; RHODE ISLAND OFFICE OF THE ATTORNEY GENERAL in its official capacity; RHODE ISLAND OFFICE OF THE ATTORNEY GENERAL OPEN GOVERNMENT UNIT in its official capacity; ADAM D. ROACH, PETER NERONHA in their official and individual capacities; TYLER TECHNOLOGIES, INC.; GERO MEYERSIEK

*Defendants*

## PLAINTIFF'S RULE 60(b) MOTION

1. Plaintiff, proceeding from and as a citizen of Texas, respectfully requests pursuant to Fed. R. Civ. P. Rule 60(b)(1), (3), (4) and (6) for a new trial. Plaintiff avers the following, supported by affidavit attached: The 91-page First Amended Complaint [ECF 25] filed on September 1, 2023 seeks monetary damages against the Rhode Island State Defendants and the private actor Defendants for:

(1) The Rhode Island Judiciary and Tyler Technologies' monopoly of publication of law.

(2) The Rhode Island Judiciary and Tyler Technologies' denial to the Public and to all Pro Se Litigants all access and the denial of free access to the contents of the law created, authored, and deliberated by the Rhode Island Judiciary.

(3) The civil conspiracy by the Rhode Island Judiciary and Tyler Technologies to knowingly fail to properly integrate the legacy electronic court case management systems used by Rhode Island Department of Human Services and Office of Child Support Services during the implementation of Odyssey from 2013 to 2014 (the State's official electronic court filing and electronic case management system), so that these state agencies' filings are discriminately invisible only to the Public, to Pro Se Litigants and to the Rhode Island Virtual Clerk of the Courts in the Rhode Island Family Court, a limited jurisdiction court of record.  The State's filings are only visible to the judges and to the State filers, thus manipulating the proceeding towards a foregone conclusion in favor of the State filers.

(4) The civil conspiracy by the Rhode Island Judiciary and Tyler Technologies to misrepresent to the Public and to the Pro Se Litigants that the implemented electronic court case records of judge created laws are available to *all* court users, in order to cover up their monopolization of the publication of law denies the Public and the Pro Se Litigant access to the judge-created laws.

(5) The civil conspiracy by the Rhode Island Judiciary and the Defendant Department of Human Services and Office of Child Support Services that the State routinely establishes and enforces 12% compound interest on child and spousal support in Title IV of the Social Security Act state family court proceedings, in violation of the uniform statutory requirement of 42 U.S.C. § 654(21)(A) that provides States *may* opt to charge a fee, and

*if* the State opts to do so, between *3% to 6% simple interest*, *not* 12% compound interest, targeting noncustodial parents victims. In welfare cases, support are assigned by the custodial parent to the State, and the 12% compound interest represents a fee for the State's "services" in the support's establishment and enforcement paid to the State, which at 12% compound interest represents lucrative, illegally obtained revenue to the State actors, who are financially incentivized to obtain as much as possible.

(6) The civil conspiracy by the Rhode Island Judiciary and the Defendant Department of Human Services and Office of Child Support Services and Tyler Technologies to knowingly fail to properly integrate Odyssey with the State's legacy electronic court filing system resulting in the State's filings seeking illegal 12% compound interest, as well as to deny the Public and to Pro Se Litigants' access to their publication of judge-created law records for the purpose of cover up of this wholesale illegal defraud of the court, extortionary defraud under color of state law targeting the unsuspecting noncustodial parents victims, and defraud of the United States (66% of the cost of these child support "operations" is funded by the U.S. Department of Health and Human Services through Title IV of the Social Security Act through funds appropriated by Congress through the annual budget appropriations.)

(7) The civil conspiracy by the Rhode Island Judiciary and the Defendant Department of Human Services and Tyler Technologies to operate the Title IV Program of the Social Security Act in all manners violative of due process, in prima facie due process violative State Electronic Courts, for the purpose of generating state revenue through fraud and deceit, through conspired tortious interference of rights of access to the courts, rights of

access to state case documents, and rights of access to judge-created laws targeting

litigants, targeting the Public and targeting Pro Se Litigants.

(8) The civil conspiracy by the Rhode Island Judiciary and the Defendant Department of

Human Services and Tyler Technologies to cover up their public-access-denied

publication of state judge-created laws of illegal 12% compound interest benefiting the

state's revenue by adopting a State policy not to establish nor enforce any interest in

*interstate* support cases only, calculated to cover up the collective fraud from federal

enforcement officials and other states' enforcement officials of court orders (laws)

showing 12% compounded interest established and funded under Title IV that are facially

illegally violative of 42 U.S.C. § 654(21)(A) which explicitly provides States *may* opt to

charge a fee, and *if* the State opts to do so, between *3% to 6% simple interest*, *not* 12%

compound interest.  The federal Title IV Program regulation by Congressional intent

explicitly preempts any related state laws of all participating states.

(9) The civil conspiracy by the Rhode Island Judiciary and the Defendant Department of

Human Services and Office of Child Support Services and Barbara Grady and Gero

Meyersiek to use the fraudulent, First Amendment-, Fourth Amendment-, Fifth

Amendment-, Seventh Amendment-, and Fourteenth Amendment violative state court

machinery weaponizing Title IV Program of the Social Security Act to target the Plaintiff

*pro se* noncustodial parent in Texas to retaliate against Plaintiff for her past lawsuits

against them, namely ten years ago in <u>Seguin v. Chafee et al</u>., Civil No. 12-cv-708-JD

(D.R.I. 2013), <u>Seguin v. Bedrosian et al,</u> Civil No. 12-cv-614-JD (D.R.I. 2013), and

<u>Seguin v. Suttell et al</u>, Civil No. 13-cv-95-JNL-LM (D.R.I. 2013), in which Plaintiff sued

them, *inter alia*, for monetary damages claims for extortion by the Rhode Island state

court's under color of state law abuse of the legal frame work of another federal-funded

human services program Violence Against Women Act, 34 U.S.C. § 12471 *et seq.*,

through which Rhode Island demanded that Plaintiff pay the state court actor $55,000.00

per visitation if Plaintiff wanted to see her children in Rhode Island, because the state

court stated in writing they believed Plaintiff married "a rich oil man" in Texas, absent

any other legally sufficient basis. Plaintiff had reported this *prima facie* extortion under

color of state law and under color of federal law 34 U.S.C. § 12471 *et seq.*, to the federal

law enforcement authorities, *e.g.*, the F.B.I. in Texas and the Office of the U.S.

Department of Justice in Texas. Here, Plaintiff's ==retaliation== damages claims have been

issues pending before the Court since September 1, 2023 [ECF 25], at which point Judge

Smith was disqualified under the self-executing expectation under 28 U.S.C. § 455,

additionally given the fact Judge Smith had also self-recused from Seguin v. Chafee et

al., Civil No. 12-cv-708-JD (D.R.I. 2013), Seguin v. Bedrosian et al, Civil No. 12-cv-

614-JD (D.R.I. 2013), and Seguin v. Suttell et al, Civil No. 13-cv-95-JNL-LM (D.R.I.

2013) ten years ago. *See In re Martinez-Catala,* 129 F.3d 213, 220 (1st Cir. 1998)

("[under §455] the judge is expected to recuse sua sponte, where necessary, even if no

party has requested it").

(10) The Rhode Island Judiciary continues the pattern of cover up by denying Plaintiff's

request for public judicial records related to the monopoly of publication of judge-created

records submitted to the State Judiciary pursuant to the Rhode Island Access to Public

Records Act ("RI APRA").

4. Plaintiff obtained new evidence on October 6, 2023 that the Rhode Island Judiciary is a

former client of Judge Smith, and on November 9, 2023, Plaintiff obtained new evidence that the

Rhode Island Judiciary remains a major client of Judge Smith's former law firm. Plaintiff's due diligence search for conflict of interest has been impeded by the Rhode Island Judiciary and Tyler Technologies monopoly of publication of judge-created laws in the state's electronic court system and their denial of access to the judge-created laws, and Plaintiff, as a member of the Public and proceeding pro se without a Rhode Island Attorney license, the issuance of which is also monopolized by the Rhode Island Judiciary, has further been denied access to official records, including through the Rhode Island Access to Public Records Act, consistent with a pattern of civil conspiracy cover up.

5. A new trial or a stay of the Judgment is necessary to prevent irreparable harm to Plaintiff, and to Americans across the First Circuit who would be needlessly deprived of access to the federal courts of law in the First Circuit for monetary damages redress - the judicially created doctrine of Younger Abstention that functioned as a court of equity - regarding Plaintiff's monetary damages claims against the Rhode Island Judiciary and Tyler Technologies' scheme to monopolize the publication of judge-created laws that denies, tortiously interferes, tortiously abridges and tortiously obstruct the Public access to those very laws; regarding Defendant Rhode Island Office of Child Support Services' unlawful seizures of interstate Texas properties outside of Rhode Island under color of Rhode Island state law based on legally insufficient interest charge on overdue support based on the unlawful rate of 12% compound interest that is disallowed under Title IV-D Program of the Social Security Act, specifically 42 U.S.C. § 654(21)(A) that provides States *may* opt to charge a fee, and *if* the State opts to do so, between *3% to 6% simple interest*, *not* 12% compound interest. And this is on top of Defendants' breach of contract that was brokered by Defendant Rhode Island Office of Child Support Services on behalf of the agency's client; the contract between the custodial parent client, defendant Gero

Meyersiek and the Texas Plaintiff stipulated that the custodial parent waived interest upon the Texas Plaintiff paying a lump sum of $104,185.98 pay-off amount, which Plaintiff performed from Texas on December 7, 2021. Even at the point of contractual agreement, Defendant Rhode Island Office of Child Support Services in conjunction with Defendant Gero Meyersiek, misrepresented there was lawful and enforceable interest to be waived, as they removed the accrued interest from the Title IV-D Program mandated support record system in order to cover up from the Plaintiff, and from federal and Texas authorities the unlawful 12% compound rate. After fraudulently inducing Plaintiff in Texas to agree to and to perform on the contract, the Defendants immediately put the interest back into the Title IV-D Program-mandated automated support record system and started to seize Plaintiff's properties in Texas under color of Rhode Island state law.

6. The final judgment is on its face violative of binding First Circuit caselaw that mandates lower courts to ***stay*** monetary damages claims when applying Younger Abstention. *See DeMauro v. DeMauro,* 115 F.3d 94, 98 (1st Cir. 1997) (relying on *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706 (1996) in holding that abstention does not allow for dismissal of damages claim).

7. 42 U.S.C. § 654(21)(A) has been in effect since the enactment of the Title IV-D Program of the Social Security Act several decades ago, and Congress's original intent was to combat poverty within the populace of single mothers and children in welfare cases; Congress at no time intended to shift the undue burden of Rhode Island's 12% compound interest on overdue support under color of Rhode Island state law to noncustodial parents, whether targeting Texas or across the country, which in welfare cases Rhode Island converts the 12% compound interest to assigned debts owed by noncustodial parents to Rhode Island's state agencies and state

government, representing underhanded unlawful state revenue unlawfully obtained through the legal framework of Title IV-D Program of the Social Security Act, targeting unsuspecting noncustodial parents victims.  As a legal point of a state's lawful application of 42 U.S.C. § 654(21)(A) within the First Circuit, New Hampshire, in compliance with the letter of federal law, opts into Title IV-D Program and opts not to charge any interest whatsoever, as per the letter of law and the original intent of Congress, 42 U.S.C. § 654(21)(A).  Similarly, Texas charges 6% in compliance with 42 U.S.C. § 654(21)(A).

8. Defendant Rhode Island Office of Child Support Service's illegal denial and obstruction of access to Plaintiff's own child support case file that contains the incriminating illegal and arguably criminal scheme of removing the interest rate from the Title IV-D Program mandated and federally funded support record system to cover up the unlawful 12% compound interest from federal and Texas authorities, as well as from the Plaintiff in Texas, violates due process, obstructs justice, obstructs a federally funded and federal program proceeding, and the legal framework of Title IV-D of the Social Security Act, specifically, 42 U.S.C. § 654 and 42 U.S.C. § 666.

9. Judge Smith's dismissal of Texas Plaintiff's legal remedy monetary damages and breach of contract fraudulent inducement damages claims under Younger Abstention in this Court of law represents irreparable harm violative of the First Amendment, Fourth Amendment, Fifth Amendment, the Fourteenth Amendment, the Seventh Amendment and the First Amendment access to the Court.  The undisputable fact remains, Plaintiff's legal remedy request for monetary damages in this court of law consisting of twenty-two causes of action that cannot be dismissed under Younger Abstention, namely monetary damages claims of breach of contract fraudulent inducement, breach of implied contract, unjust enrichment, misrepresentation,

negligent misrepresentation, intentional/fraudulent misrepresentation, common law bad faith, breach of the covenant of good faith and fair dealings, tortious breach of the covenant of good faith and fair dealings, breach of fraudulent concealment/common law fraud, concealed fraud, tort of deceit, reckless indifference to the rights of Plaintiff, deliberate indifference to the rights of Plaintiff, abuse of process, breach of duty, accounting fraud, fraud cover up, RI Government Tort Liability (R.I. Gen. Laws 9-31-1, *et seq.*), 42 U.S.C. § 1983 Claim for Reckless Indifference of Plaintiff's Clearly Established Constitutional Rights, 42 U.S.C. § 1983 claim of Fourth Amendment Illegal Seizure of Plaintiff's Texas Property, state tort of liability against defendants under 42 U.S.C. § 1983, Civil RICO [ECF 25].

10. Judge Smith's legally-unsupported and factually-unsupported, and "legally insufficient" opinion that the limited jurisdiction family court is an adequate forum to raise Plaintiff's federal legal damages claims of breach of contract et al., contravenes Rhode Island law: R.I. Gen Laws 8-10-3 makes clear that family court is not a court of general jurisdiction, can only conduct bench trials functioning as a court of equity, not of law, and prohibits family court from exercising jurisdiction over breach of contract claims et al between the Texas Plaintiff and the Defendants; family court lacks jurisdiction over the Plaintiff's federal causes of actions; lacks the jurisdiction to summon a jury for jury trial in a court of law.

11. Finally, but equally critically, twenty-one days post judgment Plaintiff discovered troubling new evidence on November 9, 2023, that Judge Smith appears to have impermissibly acted in favor of the interests of the defendants – he is automatically disqualified under 28 U.S.C. § 455, because as a partner in his past practice and firm, the state government and the Rhode Island Judiciary were not only his clients, but continue to be that firm's major client under a flat fee contract and he has knowledge of the defendants' actions in this action – as a major

partner in his firm, the Rhode Island Judiciary is his and his form's past and current clients, the

state government actors and the state courts actors, cooperate in the routine establishment and

enforcement of 12% compound interest under the legal framework of Title IV-D Program of the

Social Security Act, where 12% compound interest is disallowed under 42 U.S.C. § 654(21)(A).

To the objective observer, having knowledge of the facts and circumstances of this case, and

being a partner in his past firm that continues to have the Rhode Island Judiciary as a client,

Judge Smith appears biased in favor of the defendants' interest to continue raking in state

revenue under the auspices of 42 U.S.C. § 654(21))(A) that explicitly disallows state debts of

12% compound interest assigned to Rhode Island that the state actors who cover up the 12%

compound rate by obstructing the noncustodial parent's access to her own child support case file

that is further violative of the due process provisions under 42 U.S.C. § 654 and §666, in Rhode

Island's federally funded operation with funds appropriated by Congress intended for the *lawful*

operation of Title IV-D of the Social Security Act.  Although under the judicial self-executing

expectation under 28 U.S.C. §455, the Texas Plaintiff is not expected to cull court records in the

Rhode Island state courts for judicial conflict of interest, nevertheless the Plaintiff in good faith

and diligently attempted to perform a remote search of Rhode Island's electronic court case

management system, Odyssey in 2023.  In so doing, Plaintiff discovered troubling newly-

discovered evidence that the Rhode Island Judiciary, while publicly representing that the 2014 $6

million state transition from paper courts to electronic courts promises *all court users* will be

able to call up court documents remotely from their mobile devices, in reality Rhode Island

adopted rules only denying the public and pro se litigants remote access to court case

information, including pro-se litigants' own case records, that both the public and all litigants

had equal statutory, common law and constitutional rights of access in paper courts – Judge

Smith's firm's clients, the Rhode Island Judiciary, therefore implemented electronic court public access denials that obstructed Plaintiff's and the public's discovery of Judge Smith's judicial disqualification regarding his former clients such as the state courts, the defendant state actors and other conflict entities.

### I. LEGAL STANDARD

11. The United States Supreme Court in 2020 reaffirmed, in *GEORGIA, ET AL., PETITIONERS v. PUBLIC.RESOURCE.ORG, INC*, 590 U.S. ___ (2020), the century-old government edicts doctrine, making clear that officials empowered to speak with the force of law cannot be the authors of—and therefore cannot monopolize access—the works they create in the course of their official duties. The U.S. Supreme Court previously applied that doctrine to hold that non-binding, explanatory legal materials when created by judges who possess the authority to make and interpret the law shall not monopolize access to it. *See Banks v. Manchester*, 128 U. S. 244 (1888). Tyler Technologies is a for profit organization that aims to facilitate public access to government judge-created records and legal materials. Tyler Technologies is contracted by the Rhode Island Judiciary to implement the State's electronic courts in 2013 and together, they both publicly represented that access to the contents of judge-created laws records will be readily called on mobile devices to *all* court users, namely, to the Public and to pro se litigants.

12. Under the government edicts doctrine, judges may not be considered the "authors" of the works they produce in the course of their official duties as judges. That rule applies regardless of whether a given material carries the force of law. In *Banks v. Manchester,* 128 U. S. 244 (1888) the Supreme Court concluded that "the judge who, in his judicial capacity, prepares the opinion or decision, the statement of the case and the syllabus or head note" cannot "be regarded as their author or their proprietor. *Banks*, 128 U. S, at 253 (emphasis in original).

Rather, "[t]he whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all." *Ibid.* (citing *Nash v. Lathrop*, 142 Mass. 29, 6 N. E. 559 (1886)). These cases establish a straightforward rule: Because judges are vested with the authority to make and interpret the law, they cannot be the "author" of the works they prepare "in the discharge of their judicial duties." Banks, 128 U. S., at 253. This rule applies both to binding works (such as opinions) and to non-binding works (such as headnotes and syllabi). *Ibid.* The animating principle behind this rule is that no one can own the law. "Every citizen is presumed to know the law," and "it needs no argument to show . . . that all should have free access" to its contents. *Nash,* 142 Mass., at 35, 6 N. E., at 560 (cited by *Banks*, 128 U. S., at 253–254). Rather than attempting to catalog the materials that constitute "the law," the doctrine bars the officials responsible for creating the law from being considered the "author[s]" of "whatever work they perform in their capacity" as lawmakers. *Ibid.* (emphasis added). Because these officials are generally empowered to make and interpret law, their "whole work" is deemed part of the "authentic exposition and interpretation of the law" and must be "free for publication to all." *Ibid.*

13. Rhode Island Judiciary and Tyler Technologies monopoly of publication of the judge-created laws and their "whole works" making and interpreting the law that explicitly by design deny access to the Public and to the Pro Se Litigant runs afoul of the government edicts doctrine.

14. Courts have long understood the government edicts doctrine to apply to legislative materials. See, e.g., *Nash*, 142 Mass., at 35, 6 N. E., at 560 (judicial opinions and statutes stand "on substantially the same footing" for purposes of the government edicts doctrine); moreover, just as the doctrine applies to "whatever work [judges] perform in their capacity as judges,"

*Banks*, 128 U. S., at 253, it applies to whatever work judges perform in their capacity as judges. *Banks*, following *Wheaton* and the "judicial consensus" it inspired, denied publication monopoly protection to judicial opinions without excepting concurrences and dissents that carry no legal force. 128 U. S., at 253 (emphasis deleted). As every judge learns the hard way, "comments in [a] dissenting opinion" about legal principles and precedents "are just that: comments in a dissenting opinion." *Railroad Retirement Bd. v. Fritz,* 449 U. S. 166, 177, n. 10 (1980). Yet such comments are covered by the government edicts doctrine because they come from an official with authority to make and interpret the law. Indeed, *Banks* went even further and withheld publication monopoly protection from headnotes and syllabi produced by judges. 128 U. S., at 253. Surely these supplementary materials do not have the force of law, yet they are covered by the doctrine. The simplest explanation is the one *Banks* provided: These non-binding works are not copyrightable because of who creates them—judges acting in their judicial capacity. *See ibid.* The textual basis for the doctrine is the "authorship" requirement, which unsurprisingly focuses on—the author, the judges*.* The Supreme Court long ago interpreted the 'author" to be officials empowered to speak with the force of law. The doctrine distinguishes between some authors (who are empowered to speak with the force of law) and others (who are not). The Supreme Court explicitly rejects allowing the States to "monetize its entire suite of legislative and judicial history. With today's *digital tools*, States might even launch a subscription or pay-per-law service." See *Georgia v, Public Resources Org.* at 590 U. S. ____ (2020)  It is obviously explicitly clear that the Supreme Court refers to the prohibition against the Rhode Island Judiciary and Tyler Technology's monopolization of  the digital publication of DIGITAL COURT JUDICIAL COURT RECORDS that denies publication access of judge-created laws and their work materials to the Public and to Pro Se Litigants.

Page 13 of 23

15. There is no legitimate Rhode Island government interest in the knowing illegal denial of access to the public and to pro se litigants the digital records of the Rhode Island Judiciary's and Tyler Technologies' illegal monopolization of digital publication of judge-created laws involving the establishment nor enforcement of unlawful 12% compound interest violative of explicitly clear 42 U.S.C. § 654(21)(A) within the legal framework of Title IV-D Program targeting noncustodial parties in Texas who are outside of Rhode Island that Rhode Island already knows is unenforceable in Texas, and thus had removed the 12% compound interest in 2018 calculated to cover it up from federal and Texas authorities. Rhode Island's abuse of the legal framework of the government edict doctrine and the legal framework of Title IV-D Program are diametrically at odds with the intent of Congress and binding caselaws of the U.S. Supreme Court. The civil conspiracy to cover up the illegal machinery of the digital electronic courts in Rhode Island is clear. *See Turner v. Rogers*, 131 S. Ct. 2507, 2518 (2011). *See Georgia v, Public Resources Org.* at 590 U. S. ____ (2020); *See* HOUSE COMM. WAYS & MEANS, Section 8: Child Support Enforcement Program, in 2004 GREEN BOOK: BACKGROUND MATERIAL AND DATA ON THE PROGRAMS WITHIN THE JURISDICTION OF THE COMMITTEE ON WAYS AND MEANS 8-1, 8-2 (2004). *See* Social Services Amendments of 1974, Pub. L. No. 93-647, § 101, 88 Stat. 2337, 2351. Where the mother receives public aid, federal and state governments will provide the child support payment to the mother and hold the father indebted to the government for that amount. In cases where the mother is not dependent on welfare, the government has largely stayed out of the fray. *See* HOUSE COMM. WAYS & MEANS, *supra* note 38. Yet, this case does not involve a welfare case, as the custodial father is wealthy, but the Defendants are motivated by retaliation against the Plaintiff for suing them ten years ago in Seguin v. Chafee et al., Civil No. 12-cv-708-JD (D.R.I. 2013), Seguin v. Bedrosian

et al, Civil No. 12-cv-614-JD (D.R.I. 2013), and Seguin v. Suttell et al, Civil No. 13-cv-95-JNL-LM (D.R.I. 2013), in which Plaintiff sued them, *inter alia*, for monetary damages claims for extortion by the Rhode Island state court's under color of state law abuse of the legal frame work of another federal-funded human services program Violence Against Women Act, 34 U.S.C. § 12471 *et seq.*, through which Rhode Island demanded that Plaintiff pay the state court actor $55,000.00 per visitation if she wanted to see her children in Rhode Island, because the state court stated in writing they believed Plaintiff married "a rich oil man" in Texas, absent any other legally sufficient basis. Plaintiff had reported this *prima facie* extortion under color of state law and under color of federal law 34 U.S.C. § 12471 *et seq.*, to the federal law enforcement authorities, *e.g.*, the F.B.I. in Texas and the Office of the U.S. Department of Justice in Texas. Here, Plaintiff's retaliation damages claims have been issues pending before the Court since September 1, 2023 [ECF 25], at which point Judge Smith was disqualified under the self-executing expectation under 28 U.S.C. § 455, additionally given the fact Judge Smith had also self-recused from Seguin v. Chafee et al., Civil No. 12-cv-708-JD (D.R.I. 2013), Seguin v. Bedrosian et al, Civil No. 12-cv-614-JD (D.R.I. 2013), and Seguin v. Suttell et al, Civil No. 13-cv-95-JNL-LM (D.R.I. 2013) ten years ago. *See In re Martinez-Catala,* 129 F.3d 213, 220 (1st Cir. 1998) ("[under §455] the judge is expected to recuse sua sponte, where necessary, even if no party has requested it").

## II. ARGUMENT

16. Plaintiff has appealed the Court's/Judge Smith's judgment in its entirety in the related case, Seguin v, RI Office of Child Support Services et al Civil No. 23-cv-34-WES-PAS (D.R.I. 2023) and respectfully submits that she is likely to secure a complete reversal of this Court's

holding that the judicially created doctrine of Younger Abstention applies to the *dismissal* of her monetary damages and breach of contract damages claims.

17. Plaintiff further submits that she is likely to secure a complete reversal of this Court's in this case.

18. Conducting state proceedings funded by federal funding appropriated by Congress under Title IV of the Social Security Act in state monopolized electronic courts that violate the long-established government edict doctrine as it related to the Public's access of the digital publication of judge-created laws and violate the Constitution targeting Texas assets and Texas parties for illegal 12% compound interest involving fraudulent inducement that cannot be enforceable in Texas is the prima facie example of government fraud and government waste, warranting cut off from federal funding at the very minimum. Not even Judge Smith, friend of the Rhode Island Judiciary, can punt these egregious state activities to later addressment via the attention of the Supreme Court and to Congress Appropriation Committees, wrongfully using Younger Abstention.

19. Judge Smith's holding is defect in claiming without a shred of factual basis that Plaintiff can raise her federal monetary damages claims and fraudulent inducement breach of contract claims in the jurisdictionally defective Rhode Island family court, that R.I. Gen. Laws 8-10-3 plainly states the family court is ***not*** a court of general jurisdiction, and which lacks the jurisdiction over the controversy for legal relief of monetary damages tort claims and fraudulent inducement breach of contract damages claims over both the Plaintiff and all the named defendants.

20.  Plaintiff seeks a new trial or a stay pending appeal as Plaintiff's likelihood of success

on appeal, together with the lopsided balance of hardships, weigh heavily in favor of granting the

stay being sought pending appellate review.

## A. Plaintiff is Likely To Succeed On Appeal Of the Judgment Ordered By the Court:

21. Although Plaintiff recognizes that the Court has ruled against her as to the scope of

relief, Plaintiff is likely to succeed on appeal of those issues, and has raised serious legal

questions and presented a substantial case. *See Arnold v. Garlock, Inc*., 278 F.3d 426,

438-39 (5th Cir. 2001).

22. Plaintiff incorporates by reference her prior remedy arguments.  Plaintiff reserves the

right to make any and all arguments on appeal.

23. Among the substantial questions raised by Plaintiff is whether the Court erred in

awarding Defendants dismissal of Plaintiff's monetary damages claim in this First Circuit under

Younger Abstention and erred in failing to self-execute 28 U.S.C. § 455. And Plaintiff

respectfully submits that she is likely to succeed on appeal in arguing that, in these

circumstances, dismissal was not properly ordered in the particular circumstances of this case

pursuant to established binding First Circuit caselaws on both the Court's errors applying

Younger Abstention as well as judicial disqualification. *See DeMauro v. DeMauro,* 115 F.3d 94,

98 (1st Cir. 1997)**;** *In re Martinez-Catala,* 129 F.3d 213, 220 (1st Cir. 1998); *Quackenbush v.*

*Allstate Ins. Co*., 517 U.S. 706 (1996).  *See* also *Allen v. La. State Bd. of Dentistry*, 835 F.2d 100,

104 (5th Cir. 1988). ("Younger abstention does not apply to claims for monetary damages.")

24. Absence of a new trial or a stay of the judgment will erode confidence in the

Judiciary in the First Circuit by creating an impression that it is violating national law regarding

the government edict doctrine and setting illegal new national policy regarding the Title IV-D

Program. It may also have the effect of "encouraging forum shopping." *Trump v. Hawaii,* 138

S. Ct. 2392, 2425 (2018) (Thomas, J., concurring). It further "undermines the judicial system's

goals of allowing the 'airing of competing views' and permitting multiple judges and circuits to

weigh in on significant issues." *See* also *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20

(2008) (traditional remedial principles account for "the public interest" and "the balance of

equities"); *EME Homer City Generation, LP v. EPA*, 795 F.3d 118, 132 (D.C. Cir. 2015)

(Kavanaugh, J.) (declining to vacate unlawful agency action under the APA because "vacatur

could cause substantial disruption"). In this context, the dismissal of Plaintiff's state government

tort monetary damages claims entered by the Court could cause substantial disruption to the

*uniform* application of the legal framework of the Title IV-D Program Congress explicitly

intended.

25. The serious legal questions raised in this case regarding the scope of remedy go

beyond the questions of whether a Younger abstention is applicable to federal monetary damages

claims and or the feeble assertion of *comity* applied to the Rhode Island Judiciary and Tyler

Technology's gross violation of the government edict doctrine—and indeed, those questions

should not have even entered into this case. Here, among Plaintiff's challenges was to state

Judiciary, Tyler Technologies and agency actions, and Plaintiff pursued fraudulent inducement

breach of contract damages claims and tort monetary damages claims. Instead, the Court at law

cannot vacate a federal statute—i.e., cannot "delete a previously enacted statute from the books"

such as 42 U.S.C. § 1983. *See* also Jonathan F. Mitchell, The Writ-of-Erasure Fallacy, 104 Va.

L. Rev. 933, 936 (2018) ("The federal courts have no authority to erase a duly enacted law from the statute books, and they have no power to veto or suspend a statute. The power of judicial review is more limited." (footnotes omitted). Legal monetary damages relief under 42 U.S.C. § 1983 that would hold the Rhode Island state government accountable under the Rhode Island Government Tort Act for Rhode Island government actors' tortious actions violating the legal framework of the Title IV-D Program federal statutes targeting the Plaintiff in Texas was a legal remedy conferred by Congress to federal courts to grant legal relief appropriate in this case. The Court has an unflagging obligation to exercise jurisdiction conferred to it by Congress. *See Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013)

26. With respect, although the Court has entered a judgment otherwise, Plaintiff has demonstrated a likelihood of success on appeal of the Final Judgment sufficient to justify a stay of the judgment.

### **B. The Balance of the Equities Overwhelmingly Favors the Requested New Trial or Stay**

27. The balance of the equities overwhelmingly favors a new trial or stay: The State of Rhode Island plainly lacks any legitimate interest in the State's systemic knowing violation of the government edict doctrine and violation of 42 U.S.C. § 654(21)(A) that they now target Plaintiff in Texas, and which they sought to cover up from federal and Texas authorities, as well as from Plaintiff, by knowingly and unlawfully removing interest from the automated support record system. Americans outside of Rhode Island re fraudulently, unlawfully and systemically fleeced by Rhode Island's illegal scheme that is illegally funded through the State's defrauding of the United States lying to the United States that these activities are eligible for federal funds

appropriated by Congress for the legal administration of Title IV Program of the Social Security Act.

28. Defendants will face no harm from Plaintiff's requested new trial or stay. The judgment that is specifically directed to and protects the prevailing Defendants from legal accountability of their illegal actions, is further issued by a disqualified judge, Judge Smith, who was the former counsel for the Defendants and a partner of the firm whose major client is the Rhode Island Judiciary, *e.g.*, Rhode Island state government entities, including the state courts and state agencies. The requested new trial or stay will thus impose no hardship on the prevailing Defendants at all.

29. By contrast, the public and the Plaintiff face significant harm if now new trial is ordered or the judgment is not stayed. As an initial matter, "any time a [government]" violates "statutes enacted by representatives of its people," the people "suffer a form of irreparable injury." *Maryland v. King,* 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted). But the harm here is much greater and more far-reaching. The government edict doctrine is willfully violated by the Rhode Island Judiciary and Tyler Technology in a civil conspiracy to cover up the illegal state family court creating judge-created laws ordering and enforcing 12% compound interest, aided and abetted by the Department of Human Services - Title IV-D requires the uniform application and compliance by participating States with the Social Security Act. Congress's as well as the United States through the Secretary of the U.S. Department of Health and Human Services' interest in the uniform compliance of 42 U.S.C. § 654(21)(A), § 654 and 42 U.S.C. § 666 are well established. The States are reimbursed 66% of the cost of operations through federal funding appropriated by Congress under Title IV-D of the Social Security Act. The Defendants' arbitrary illegal removal of the illegal unenforceable 12%

compound interest from the automated support record system and cover up of their illegal 12% compound interest scheme from the federal and Texas authorities targeting Texas properties and targeting the Plaintiff in Texas demonstrates Rhode Island government agencies (who are former clients of Judge Smith) knowingly committed criminal schemes illegally seizing Plaintiff's properties interstate in Texas that they know are violative of federal criminal codes and Texas civil and penal codes. *See,* e.g., Social Services Amendments of 1974 (1975 Act), Pub. L. No. 93-647, § 101(a), 88 Stat. 2351 (42 U.S.C. 651 et seq.) (adding Title IV-D to the Social Security Act). The program, which is administered by the United States Secretary of Health and Human Services (Secretary), provides that States with approved plans for child and spousal support that meet federal requirements are reimbursed by the federal government for a significant sixty-six percent (66%) of the costs of operating their child-support enforcement programs. 42 U.S.C. §v655(a)(2)(C). In 1975, Congress adopted Title IV-D, 42 U.S.C. §v651 *et seq*., and established the general statutory framework that exists today. See 1975 Act § 101(a), 88 Stat. 2351; *Blessing v. Freestone*, 520 U.S. 329, 333-335 (1997) (describing program). Congress ultimately set the federal share of reimbursable expenditures at 66%, 42 U.S.C. 655(a)(2), but expanded the availability of matching funds at the 90% level for State expenditures for automating data processing systems to improve "the monitoring of support payments, the maintenance of accurate records regarding the payment of support. Therefore, the Defendants' illegal operations cannot be funded by Congressional appropriations.

30. Judge Smith's failure to self-execute his disqualification under 28 U.S.C. § 455 as well as Canon 3E of the Code of Judicial Conduct, then his subsequent refusal to recuse in the related case, <u>Seguin v, RI Office of Child Support Services et al Civil</u> No. 23-cv-34-WES-PAS (D.R.I. 2023), upon Plaintiff's request after she raised newly discovered discovery post judgment

on October 6, 2023 of his direct and past public sector law practice's contract legal representation of the Defendants, state courts, state agencies and other conflict entities, have the appearance, to the objective observer, of the Court's issuance of judgment in favor of the Defendants in error that contravenes established First Circuit case law on Younger Abstention as well as disqualification, calculated to benefit the interests of his former clients, as partner of his former firm that represents the Rhode Island Judiciary and the state government.

31. Moreover, the Court's judgment effectively functions as a denial of Plaintiff's access to this Court of law to redress her legal monetary damages claims and fraudulent inducement breach of contract damages claims. It is well-settled that even minimal loss of First Amendment freedoms, "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976) (plurality)); *see* also *Elrod*, 427 U.S. at 373.; *N.Y. Times v. United States*, 403 U.S. 713, 715 (1971). Accordingly, Plaintiff has a strong likelihood of success on the merits, will suffer irreparable injury without a stay, and a stay will not injure others while furthering the public interest.

### III. CONCLUSION

27. For the foregoing reasons, Plaintiff has demonstrated a likelihood of success on appeal of the Judgment ordered, and has demonstrated that the balance of the equities favors a new trial or a stay. Plaintiff respectfully requests that the Court stay the final judgment for the duration of appellate proceedings relating to the related Seguin v, RI Office of Child Support Services et al Civil No. 23-cv-34-WES-PAS (D.R.I. 2023).

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 16, 2023, I filed the within Motion with the

Clerk of the Court via email.

Respectfully submitted,

Mary Seguin

Pro Se

/s/ *Mary Seguin*

Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

Dated: November 16, 2023

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

MARY SEGUIN,
*pro se*

*Plaintiff,*

VS.                                                            Civil Action No. 1:23-cv-126-WES-PAS

RHODE ISLAND DEPARTMENT OF HUMAN SERVICES in its official capacity; MICHAEL
D. COLEMAN, DEBORAH A. BARCLAY in their individual and official capacities;
RHODE ISLAND OFFICE OF CHILD SUPPORT SERVICES in its official capacity; KEVIN
TIGHE, MONIQUE BONIN, FRANK DIBIASE, WENDY FOBERT, KARLA
CABALLEROS, TIMOTHY FLYNN, LISA PINSONNEAULT, CARL BEAUREGARD,
PRISCILLA GLUCKSMAN, JOHN LANGLOIS, PAUL GOULD, in their individual and
official capacities; RHODE ISLAND STATE COURT SYSTEM in its official capacity; PAUL
A. SUTTELL in his individual and official capacity as EXECUTIVE HEAD OF RHODE
ISLAND STATE COURT SYSTEM; RHODE ISLAND ADMINISTRATIVE OFFICE OF
STATE COURTS in its official capacity; RHODE ISLAND ADMINISTRATIVE OFFICE OF
THE SUPERIOR COURT in its official capacity; RHODE ISLAND JUDICIAL COUNCIL in
its official capacity; RHODE ISLAND SUPERIOR COURT in its official capacity; RHODE
ISLAND SUPERIOR COURT JUDICIAL COUNCIL in its official capacity; THE JUDICIAL
TECHNOLOGY CENTER in its official capacity; JULIE HAMIL, MARISA BROWN, JOHN
JOSEPH BAXTER, JR., JUSTIN CORREA in their individual and official capacities; RHODE
ISLAND OFFICE OF THE ATTORNEY GENERAL in its official capacity; RHODE ISLAND
OFFICE OF THE ATTORNEY GENERAL OPEN GOVERNMENT UNIT in its official
capacity; ADAM D. ROACH, PETER NERONHA in their official and individual capacities;
TYLER TECHNOLOGIES, INC.; GERO MEYERSIEK

*Defendants*

## MARY SEGUIN'S DECLARATION IN SUPPORT OF PLAINTIFF'S RULE 60(b) MOTION

I, MARY SEGUIN, hereby declare under penalty of perjury, pursuant to 28 U.S.C. sec.
1746(2) that the following statements are true and correct:

1. That I am the Plaintiff, Pro Se, in the above captioned matter.

2. That I exercised, am exercising and continue to exercise my statutory right to appear
   pro se party in the above captioned civil matter in federal court by statute 28 U.S.C.
   sec. 1654.

3. That in state proceedings in Rhode Island, I am required to comply with Rhode Island Article X. Rules Governing Electronic Filing, Rule 2. Official Court Record, (a) Official Court Record. "Upon the implementation of the Electronic Filing System ("EFS") in each court, all documents shall be filed electronically and shall be the official court record."

4. That the state proceedings in which I am a party are public and are not about child custody nor involve a minor.

5. That the **Rhode Island Family Court**, through its adoption and promulgation of **Administrative Order 2021-01 A2)** mandated that all child support interest matters shall be heard remotely via WebEx. Further, **Administrative Order 2021-01 B1)** mandated that all non-emergency filings shall be filed using the electronic filing system in accordance with the Family Court Rules of Domestic Relations Procedure, which is the **Odyssey system**.

6. That the **"RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION, Rule 5. Access to Case Information, (c) Remote Access to Case Information. (1) Policy. To allow <u>limited</u> Remote Access to the Database through the Public Portal. Non-public case types shall not be remotely accessible except for certain case types to attorneys who have entered an appearance in a case. (2) Content. (a) The Public, Self-represented Litigants and Parties. The Public, self-represented litigants, and parties shall have Remote Access to the register of actions or Docket but shall <u>not</u> have Remote Access to other Electronic Case Information"** bar, deny, violate, abridge, infringe and interfere with Pro Se Litigants' and the Public's fundamental rights to access public court records and Pro Se Litigants' fundamental right to meaningful access to the courts. See "**<u>RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION</u>" <u>Rule 5(c)(2)(a)</u> "<u>The Public, Self-represented Litigants and Parties. The Public, self-represented litigants, and parties shall have Remote Access to the register of actions or Docket but shall not have Remote Access to other Electronic Case Information.</u>"** See also "**<u>RHODE ISLAND JUDICIARY, Access to Case Information, 2. Remote Access to Case Information A. The Public, Self-represented Litigants, and Parties to a Case, The public, self-represented litigants, and parties in a case shall have remote access to the register of actions or docket but shall not have remote access to other electronic case information</u>."**

7. That I, the Plaintiff, learned and verified on July 10, 2023 directly from the Rhode Island Judiciary itself through numerous (14) correspondences with the Rhode Island Judiciary from June 10, 2023 to July 10, 2023, pursuant to my RI Access to Public Records Act ("APRA") request for public records from the Rhode Island Judiciary, that as a matter of State policy, State Court Rule, and Judiciary Rule, in the digital courts implemented by the Rhode Island Judiciary, the State Court, the Rhode Island

Judiciary deny remote digital access of the Rhode Island Judiciary's monopolized publication of court and judicial records using the digital tool maintained and published by Tyler Technologies, Odyssey, including  judge-created, judge-authored court decisions arising from state proceedings in the State's digital electronic courts, and digital court transcripts ordered by and paid by pro-se litigants that are published by the Judiciary digitally on Tyer Technologies' Odyssey are also denied access to the Public, pro-se litigants, and parties to the litigation (who are represented by counsel).  The Rhode Island State Court only grants remote access to digital court and judicial records created by judges produced in digital courts to Rhode Island attorneys and state and federal agencies that are approved by the Rhode Island Judiciary's monopoly. On this matter, I corresponded in writing fourteen (14) APRA correspondence emails with Mr. Justin Correa, Esq. and Ms. Alexandra Kriss of the Rhode Island Judiciary from June 10, 2023 to July 10, 2023.

8.  That the State Defendants in this matter electronically file all notices using another electronic filing system that is even separate and different from the EFS (Odyssey).

9.  That the State Defendants' court electronic filings are not noticed to me in Texas.

10.  That the State Defendants' court electronic filings are not visible to me on the Rhode Island courts' EFS.

11.  That the State Defendants' court electronic filing court records cannot be accessed remotely by me, solely because I am a self-represented litigant.

12.  That the State Defendants' court electronic filing court records cannot be accessed remotely by the public, by self-represented litigants, nor by parties to the case, but can be accessed remotely and instantly through the internet by attorneys in Rhode Island and state and federal agencies.

13.  That the Rhode Island Court Clerks state to me over the phone that they are prohibited from reading the contents of the court records over the phone to me.

14.  That the Rhode Island Court virtual clerks state to me over the phone that even they are unable to see or access the court record information of filings by the State Defendants from the virtual clerks' access portals.

15.  That the Rhode Island Electronic Filing System, case management system, rules and practices outright and unconstitutionally restrict and deny access to the court to three classes: (1) the public; (2) pro-se litigants; (3) parties to the case (who are represented by counsel), and is obviously outright reserved for only the government and Rhode Island attorneys.

16.  That the State Defendants have full knowledge of the egregious due process violations of the Rhode Island state court EFS.

17.  That the State Defendants have full knowledge of the egregious due process violations of the Rhode Island state court EFS system/architecture/rules/practices, and

withdrew from my-initiated RI EOHHS agency appeal in 2022 in a scheme to procure a favorable judgment in a state proceeding that deny my federal constitutional and due process rights in Texas.

18. That the State Defendants have full knowledge of the egregious due process violations of the Rhode Island state court EFS system/architecture/rules/practices, and initiated the family court state proceeding on January 31, 2023 before the Covid Emergency Declaration was lifted.

19. That the State Defendants have full knowledge of the egregious due process violations of the Rhode Island state court EFS system/architecture/rules/practices that appear to **only allow remote, instant and full court access to a restricted club of R.I. lawyers and the government**, pose unconstitutional and undue burden on me, a citizen of Texas over 2,500 miles away.

20. That the State Defendant have full knowledge of the egregiously unfair due process violations of the Rhode Island state court EFS system/architecture/rules/practices that deny me access to the <u>required</u> **electronic court transcripts** prepared by the court reporter and electronically filed in the state EFS that **I ordered and paid for** for appeal, but the State Defendants have instant remote access by state court design.

21. That the State Defendants have full knowledge of the above unconstitutional restriction on access to court records and information to the public and non-lawyers is deliberate, by design and calculated to be unfair, violating constitutional guarantees of full and fair opportunity to raise claims in state proceedings.

22. That the above-raised unconstitutional restrictions are not exhaustive.

23. That my federal monetary damages claims on the unconstitutionality of the Rhode Island state court rules, practices and proceedings that violate the government edict doctrine and violate the pro-se litigants', such as my-self, federal constitutional rights: (1) federal constitutional right of equal access to the courts, (2) federal constitutional right to equal access to court records to receive information on the contents of all electronically filed notices, pleadings, court decisions, and transcripts that I myself ordered <u>and</u> paid for for appeal that are required to be electronically filed by state court rules and practices, (3) federal constitutional due process right and equal right to be given equal and timely notice of electronic filings and entries by the courts (including court decisions, court orders, court judgments, full docket entries, etc.) that the Rhode Island Judiciary deliberately deny by category all pro-se litigants access to court information, namely the contents of judicial/court records of cases to which I am the self-represented party, (4) federal constitutional due process right to be heard (Rhode Island Superior Court threatens me, the Texas pro-se plaintiff, with denial of my request to conduct WebEx hearings for the purpose of denying the Texas pro-se litigant access to the court and to be heard), (5) federal constitutional due process right to decision by a neutral decision-maker (the court that denies pro-se litigant

access to the court and the corollary opportunity to be heard fails the neutral decision-maker test). This list is not exhaustive.

24. That I seek to sue in federal court the State Defendants and add additional defendants.

25. I am an out-of-state diversity and a pro-se litigant in two state proceedings in Rhode Island, and have been unconstitutionally singled out by the State Judiciary, by category "self-represented litigant," to be barred from accessing electronic case information authored by judges and which the Judiciary has a monopoly in the publication of the judge-created laws in which state court cases I am the pro-se party, and therefore have standing to raise claims against this unconstitutional state practice and unconstitutional state court practice and rules. I understand the Rhode Island Judiciary's monopoly in the digital publication of judge-created laws in the Judiciary' implemented digital/electronic courts and the Judiciary's denial to the Public and to me from accessing the monopolized electronic publication of the judge-created laws in the court records violate the government edict doctrine.

26. Additionally, my fundamental First and Fourteenth Amendment constitutional right and common law right to equal, meaningful, and timely access to judicial records and public court records in litigation, given timely notice, adequate opportunity to be heard and to decision by a neutral decision-maker are fundamental First and Fourth Amendment and Fourteenth Amendment rights. Critically, the unconstitutional abridgement, infringement, and denial of judicial and court records to out-of-state pro-se litigants by the Rhode Island State Courts, Rhode Island State Judiciary and the Rhode Island Superior Court Bench Bar Committee directly relate to Younger Abstention Exception.

27. The State Defendants deliberately file all the State's pleadings outside of the State's electronic filing system, "Odyssey," and deliberately use a wholly different un-named electronic filing system, different and separate from that ("Odyssey") provided for pro-se litigants, so that pro-se litigants do not receive any requisite automated electronic notices of court motions or pleadings the State Defendants file electronically, nor are pro se litigants able to electronically access the content information of the State Defendants' electronically-filed pleadings. The only way the pro se litigant, such as me, the Texas Plaintiff, can access the court record is to personally go over 2,500 miles away to the courthouse in Rhode Island to access the court pleading information, or get a "courtesy notice" via email or get a "courtesy notice" through U.S. Mail sent by the State Defendants at whim. The State Defendants deliberately fail to send the notices electronically or by U.S. Mail, and the state courts deliberately promulgated court rules disallowing the public, pro-se litigants and even the parties who are represented by lawyers, remote access to court records, and critically, deny access to crucial court decisions, judgments and orders of public cases, as well as deny remote access to the transcripts ordered by pro-se litigants for appeal. Critically, the State court's abridgment and denial of access to court documents to the pro se litigant and the general public result in the

unconstitutional abridgment and denial of equal, timely and meaningful access to court complaints, decisions, judgments and orders. What is truly shocking is that the Rhode Island Judiciary even denies and/or bars pro-se litigants remote access of court transcripts that were ordered by pro-se litigants for appeal.

28. Thirdly, the Texas Pro-Se Plaintiff discovered and verified the fact, on or about July 7, 2023, that the Rhode Island Judiciary, using the aforesaid state court rule barring, by category, pro-se litigants from accessing court case information remotely, bars the Plaintiff by category ("self-represented litigant") from accessing state court proceeding transcripts that the Texas Plaintiff ordered and paid for, for appeal. In other words, the RI Supreme Court Clerk stated to the Texas Plaintiff that the Plaintiff, in Texas, is unconstitutionally barred from remotely accessing the transcripts of court proceedings that she ordered and paid for in her appeal to the RI Supreme Court in the Plaintiff-initiated APRA action **Seguin v. RI Office of Child Support Services, PC-22-07215**, and yet the State Defendants are inequitably granted instant and free remote access to those very transcripts that the Texas Plaintiff ordered and paid for, for appeal. The federal Texas Plaintiff respectfully requests this Court the extension of time to present the new evidence and plead the verified facts.

29. Fourthly, the Texas Plaintiff discovered and verified the fact, on or about July 11, 2023, that, despite the Texas Plaintiff's several phone inquiries to the RI Superior Court in the past several weeks regarding the status of the appeal, the RI Superior Court, for undisclosed reasons, failed and continue to fail to relinquish jurisdiction and transfer the court case file of **Seguin v. RI Office of Child Support Services, PC-22-07215** to the RI Supreme Court within the requisite 60 days after Plaintiff's filing of Notice of Appeal on April 3, 2023, as required by the RI Supreme Court rules and procedures. At the same time, the Texas Plaintiff verified the fact that the Plaintiff-ordered transcripts of the state proceedings in the Federal Plaintiff-initiated state APRA action **Seguin v. RI Office of Child Support Services, PC-22-07215** show the RI Superior Court further unconstitutionally sought to deny the Texas Plaintiff access to the state court and opportunity to be heard by outright threatening the Plaintiff in open court that the Judge, David Cruise, during the hearing of March 24, 2023 in that matter, shall use the state court's discretionary power in the future to deny all of the Texas pro-se Plaintiff's petitions for remote WebEx hearings to effectively deny her access to the state superior court. The state court that denies court access and the opportunity to be heard fails the neutral-decision-maker test required under the Fourteenth Amendment. I now specifically request further the Court to judicially notice that this court access denial and denial to be heard occurred on March 24, 2023, PRIOR to President Biden's lifting of the COVID-19 National Health Emergency Declaration. I, the Texas Plaintiff, aver this is a direct contributory reason for the RI Superior Court's failure to transfer the case file to the Supreme Court within 60 days (by June 3, 2023) of the Plaintiff's filing of Notice of Appeal on April 3, 2023 in **Seguin v. RI Office of Child Support Services, PC-22-07215**.

30. Fifthly, the Plaintiff presents to this Court and respectfully requests the Court to take judicial notice of the undisputed fact of the court rule-making process in Rhode Island. The 1966 Rules were promulgated by the justices of the superior court pursuant to section 8-6-2 of the General Laws of Rhode Island. This enabling act departed from the Federal Rules Enabling Act and most state enabling legislation conferring rule-making power on the supreme courts of the respective governments. The Rhode Island Enabling Act was adopted in 1940, 1940 R.I. Pub. Laws ch. 943, sec. 1. It conferred the power on the justices of the superior court and the 1966 reform was the product of that court. In 1969 an amendment to section 8-6-2 made the Rules thereafter adopted by the trial courts subject to the approval of the Supreme Court. 1969 R.I. Pub. Laws ch. 239, sec 2. Therefore, all public records relating to the adoption and promulgation of the "RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION" are "made in the course of, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency, ""agency" or "public body" means any executive, legislative, judicial, regulatory, or administrative body of the state, or any political subdivision thereof" as per R.I. Gen. Laws § 38-2-2, a.k.a. RI Access to Public Records Act ("APRA"). Even though the Rhode Island Enabling Act conferred the power on the judiciary public body to promulgate and adopt court rules, a.k.a. rule-making process, the Rhode Island Judiciary, pursuant to the Plaintiff's APRA request for public records, denied the Plaintiff's APRA request within the 10 business day period, as well as denies it possesses public records, as defined by APRA, relating to the rule-making process by the judiciary of the "RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION," including denying possession of public records that show the intent of the rule-makers to promulgate and adopt court rules denying fundamental right of public access to electronic case information remotely to the public, to self-represented litigants, and to parties to a case. **See Exhibit D** fourteen (14) APRA correspondence emails between the Plaintiff and/with Mr. Justin Correa, Esq. and Ms. Alexandra Kriss of the Rhode Island Judiciary from June 10, 2023 to July 10, 2023. The Texas pro-se Plaintiff respectfully requests the extension of time to present the new evidence and plead the newly verified facts and claims, and amend the complaint, which is further in the interest of judicial economy. The Plaintiff further seeks to appeal and file her claim against the implausible denial by the RI Judiciary, which is conferred by the Rhode Island Enabling Act to make rules of the court, that it possesses public records relating to the "RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION," that the judiciary, conferred power by the Rhode Island Enabling Act, "made in the course of, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency, ""agency" or "public body" means any executive, legislative, judicial, regulatory, or administrative body of the state, or any political subdivision thereof" as per R.I. Gen. Laws § 38-2-2, a.k.a. RI Access to

Public Records Act ("APRA"). Because the RI Superior Court clearly ruled in **Seguin v. RI Office of Child Support Services, PC-22-07215** that it lacked subject matter jurisdiction to hear my/the Texas Plaintiff's APRA-related claims, I, the Texas Plaintiff, now exercise my statutory and constitutional rights to petition this Federal Court, invoking 28 U.S.C. § 1343(a)(3) (civil rights) and 28 U.S.C. § 1367 that provides supplemental jurisdiction over the state law tort claims that arose from the same common nuclei of facts, invoking 28 U.S.C. § 1331 (federal question), and invoking 42 U.S.C. § 1983 for violations of civil rights under the First, Fourth and Fourteenth Amendments to the United States Constitution. I, the Plaintiff, respectfully request this Court for the extension of time to file my claims.

31. Plaintiff discovered on October 6, 2023 that the Rhode Island Judiciary and Government Defendants are former clients of Judge Smith, a partner in his former firm, Edwards & Angell.

32. Plaintiff discovered on November 9, 2023 that the Rhode Isand Judiciary and Government Defendants are current clients of the firm Edwards & Angell, the former firm of Judge Smith, a partner in the firm.

33. A plain reading of 28 U.S.C. sec. 455 makes clear that Judge Smith is disqualified from this case, and a plain reading of case law makes clear that 28 U.S.C. sec. 455 is self-executing, without necessitating any party's request.

Respectfully submitted,

Date: November 16, 2023

MARY SEGUIN

*Mary Seguin*

Mary Seguin

P.O. Box 22022

Houston, TX 77019

maryseguin22022@gmail.com

## Kayla DaCruz

| | |
|---|---|
| **From:** | Mary Seguin <maryseguin22022@gmail.com> |
| **Sent:** | Thursday, November 16, 2023 5:40 PM |
| **To:** | RID_ECF_INTAKE |
| **Subject:** | URGENT - TIME SENSITIVE - FILE TODAY RULE 60 MOTION in Seguin v. Ri Dept of Human Services et al, Civil Action No. 1:23-cv-126-WES-PAS |
| **Attachments:** | CA 126 Rule 60(b) Motion with Affidavit 111623.pdf |
| | |
| **Categories:** | Pending With Judge, Being Worked On MK |

**CAUTION - EXTERNAL:**

Dear Clerk/Deputy Clerk of the Court,

Kindly urgently file and docket today, November 16, 2023, my attached Rule 60(b) Motion in the above captioned case, Seguin v. Ri Dept of Human Services et al, Civil Action No. 1:23-cv-126-WES-PAS.

Because this Rule 60(b) Motion is time sensitive, kindly make sure that it is filed and docketed today, November 16, 2023.  I do not have access to electronic filing, it appears.

Thank you in advance for your assistance.

Respectfully Submitted,
Mary Seguin
PO Box 22022
Houston, TX  77019
(281) 244-2016

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

MARY SEGUIN,
*pro se*

*Plaintiff,*

VS.                                              Civil Action No. 1:23-cv-126-WES-PAS


RHODE ISLAND DEPARTMENT OF HUMAN SERVICES in its official capacity; MICHAEL
D. COLEMAN, DEBORAH A. BARCLAY in their individual and official capacities;
RHODE ISLAND OFFICE OF CHILD SUPPORT SERVICES in its official capacity; KEVIN
TIGHE, MONIQUE BONIN, FRANK DIBIASE, WENDY FOBERT, KARLA
CABALLEROS, TIMOTHY FLYNN, LISA PINSONNEAULT, CARL BEAUREGARD,
PRISCILLA GLUCKSMAN, JOHN LANGLOIS, PAUL GOULD, in their individual and
official capacities; RHODE ISLAND STATE COURT SYSTEM in its official capacity; PAUL
A. SUTTELL in his individual and official capacity as EXECUTIVE HEAD OF RHODE
ISLAND STATE COURT SYSTEM; RHODE ISLAND ADMINISTRATIVE OFFICE OF
STATE COURTS in its official capacity; RHODE ISLAND ADMINISTRATIVE OFFICE OF
THE SUPERIOR COURT in its official capacity; RHODE ISLAND JUDICIAL COUNCIL in
its official capacity; RHODE ISLAND SUPERIOR COURT in its official capacity; RHODE
ISLAND SUPERIOR COURT JUDICIAL COUNCIL in its official capacity; THE JUDICIAL
TECHNOLOGY CENTER in its official capacity; JULIE HAMIL, MARISA BROWN, JOHN
JOSEPH BAXTER, JR., JUSTIN CORREA in their individual and official capacities; RHODE
ISLAND OFFICE OF THE ATTORNEY GENERAL in its official capacity; RHODE ISLAND
OFFICE OF THE ATTORNEY GENERAL OPEN GOVERNMENT UNIT in its official
capacity; ADAM D. ROACH, PETER NERONHA in their official and individual capacities;
TYLER TECHNOLOGIES, INC.; GERO MEYERSIEK

> *Defendants*

### PLAINTIFF'S RULE 60(b)(1) MOTION

1. Plaintiff, proceeding from and as a citizen of Texas, respectfully requests pursuant to

Fed. R. Civ. P. Rule 60(b)(1), (3), (4) and (6) for a new trial.  Judge Smith had obstructed

Plaintiff access to the Court, by instructing the Clerk of the Court, Meghan, to not docket

Plaintiff's timely filed Rule 59 and Rule 60 Motions filed with the Clerk via email on November

16, 2023, as to obstruct Plaintiff's right to access the Court to preserve the issues for appeal.

Plaintiff avers the following, supported by affidavit attached:

(1) On November 16, 2023, at 1:31 PM Central Time, Plaintiff filed via email to the Office of the Clerk In-Take email, Plaintiff's timely-filed Rule 59 Motion, requesting a new trial as Rule 59(e) provides.  Plaintiff requested in her email that the Clerk timely docket the time-sensitive Rule 59 Motion on November 16, 2023.  Plaintiff telephoned the Clerk's Office twice on November 16, 2023 to make sure of the Clerk's receipt of Plaintiff's filings, and was confirmed, and told that all motions emailed to the Clerk's Office are docketed as filed on the date stamp receipt by the Court's Clerk's Office.  <u>See attached email and email-attached Motion.</u>

(2) On November 16, 2023, at 4:39 PM Central Time, Plaintiff filed via email to the Office of the Clerk In-Take email, Plaintiff's timely-filed Rule 60(b) Motion, requesting a new trial.  Plaintiff requested in her email that the Clerk timely docket the time-sensitive Rule 60 Motion on November 16, 2023.  <u>See attached email and email-attached Motion.</u>

(3) However, neither motions were docketed by the Clerk of the Court, and Plaintiff followed up first thing on November 17, 2023 at 8:00 AM Central Time.  Plaintiff spoke to Clerk Meghan who informed Plaintiff that she had forwarded Plaintiff's Rule 59 and Rule 60 Motion to Chambers because the Court told her to, without docketing Plaintiff's Motions.  Clerk Meghan told Plaintiff she will email Chambers to "find out what is going on."  No Order in this matter requires Plaintiff to file for leave of Court to file any post judgement motions, and even if leave is required, Plaintiff's court-submitted Rule 59 and Rule 60 Motions seeking to preserve issues for appeal are required by law to be docketed in all courts of law to complete an accurate record for appeal.

(4) Plaintiff expressed to Clerk Meghan Plaintiff's concern that the irregular forwarding of timely filed Rule 59 Motion and Rule 60 Motion languishing in Chambers without being docketed on the record adversely impede and obstruct Plaintiff's right of access to the Court, as

well as obstructs Plaintiff's right to preserve legal issues for appeal, and fabricating an inaccurate record for appeal, as well as violates due process.

(5) At 12:20 PM, Plaintiff followed up by telephone, and was told that there were no updates from Chambers and Plaintiff's Rule 59 and Rule 60 Motions are still not docketed. Plaintiff emailed the Clerk's office documenting in writing the irregularity described above. At the very same moment, Judge Smith entered a text order stating that the Court is in receipt of two emails sent by the Plaintiff and construes them as motion for leave to file, that are denied. Plaintiff's Rule 59 and Rule 60 Motions continue to be not docketed. Plaintiff phoned the Office of the Clerk again, and the Clerk informed Plaintiff that the Court is telling her not to docket Plaintiff's Rule 59 and Rule 60 motions. This is *prima facie* judicial obstruction of Plaintiff's right to file Rule 59 and Rule 60 Motions against the Plaintiff to preserve issues on the record for appeal. Plaintiff attaches herewith the aforesaid November 17, 2023 email for the record.

WHEREFORE, Plaintiff requests the Court to docket Plaintiff's timely filed Rule 59 and Rule 60 Motions and the aforesaid three emails to preserve the record accurately. Plaintiff requests the Court treat Plaintiff's timely filed Rule 59 Motion and Rule 60 Motion filed on November 16, 2023 as timely filed. Plaintiff requests the disqualification of Judge Smith by the Court. Plaintiff requests any and all such relief deemed just under the circumstances.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 17, 2023, I filed the within Motion with the Clerk of the Court via email.

Respectfully submitted,

Mary Seguin

Pro Se

/s/ *Mary Seguin*

Page 3 of 4

Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

Dated: November 17, 2023



Mary Seguin <maryseguin22022@gmail.com>

---

## URGENT - TIME SENSITIVE - FILE TODAY RULE 59 MOTION in Seguin v. Ri Dept of Human Services et al, Civil Action No. 1:23-cv-126-WES-PAS

2 messages

---

**Mary Seguin** <maryseguin22022@gmail.com>                    Thu, Nov 16, 2023 at 1:31 PM
To: RID_ECF_INTAKE <RID_ECF_INTAKE@rid.uscourts.gov>

Dear Clerk of the Court,

Kindly urgently file today, November 16, 2023, my attached Rule 59 Motion in the above captioned case, Seguin v. Ri Dept of Human Services et al, Civil Action No. 1:23-cv-126-WES-PAS.

Because this Rule 59 Motion is time sensitive, kindly make sure that it is filed and docketed today, November 16, 2023. I do not have access to electronic filing, it appears.

Thank you in advance for your assistance.

Respectfully Submitted,
Mary Seguin
PO Box 22022
Houston, TX 77019
(281) 244-2016

---

 **CA 126 Plaintiff Rule 59 Motion with Affidavit 111623.pdf**
387K

---

**Mary Seguin** <maryseguin22022@gmail.com>                    Fri, Nov 17, 2023 at 12:33 PM
To: RID_ECF_INTAKE <RID_ECF_INTAKE@rid.uscourts.gov>

Dear Clerks of the Court,

I am respectfully following up on my Rule 59 Motion filing.

Yesterday, November 16, 2023, at 1:31 PM Central Time, I filed via email below, my Rule 59 Motion in the above captioned matter, Seguin v. Ri Dept of Human Services et al, Civil Action No. 1:23-cv-126-WES-PAS. As indicated in my email below, I emphasized that docketing the Rule 59 Motion on November 16, 2023 is urgent, to comply with the 28 day filing post-judgment deadline, which my filing meets - November 16, 2023 is within the 28 day deadline of Fed. R. of Civ. P. 59 that tolls the time for filing an appeal.

I followed up with telephone calls to the Clerk's Office at 1:32 PM Central Time, and at 3:42 PM Central Time to request timely docket of my Rule 59 Motion, and the Clerk's Office assured me each time that a deputy clerk is working on it and that it will be docketed on the day it was received and that the docket will reflect the email date stamp of the day the Rule 59 Motion is received by email. Further, I was told that **all filings** I email to the Clerk's Office will be docketed and considered by the Court as having been filed on the day that the motion was emailed to the Clerk's Office.

Therefore, my Rule 59 Motion emailed on November 16, 2023 should be accordingly docketed as **ECF 32** with the **entry of/stating filing on November 16, 2023**, in the above captioned matter, Seguin v. Ri Dept of Human Services et al, Civil Action No. 1:23-cv-126-WES-PAS.

However, as of this time, on November 17, 2023 almost 24 hours later, my Rule 59 Motion is still not docketed.

I would like to respectfully clarify that the Text Order dated October 19, 2023 in this matter states that only my electronic filing privilege was revoked, but there is **no** order requiring that I need to file for leave of Court to file any post-judgment motions, such as my Rule 59 Motion.

Today, November 17, 2023, I telephoned the Clerk's Office first thing at 8:00 AM Central Time, and spoke with Clerk Meghan, who informed me that yesterday she had forwarded my Rule 59 Motion to Chambers upon receipt, but has yet to hear back from Chambers, but did not know what was causing the hold up when I asked why Chambers' response is taking almost 24 hours which impacts the docketing date of the Rule 59 Motion. I expressed my concern of the Rule 59 deadline, emphasizing that it tolls the time for filing an appeal, therefore I respectfully requested that the docket accurately reflects my timely filing of my Rule 59 Motion on November 16, 2023 (at 1:31 PM Central Time).

Additionally, I informed Clerk Meghan that I relied on the Clerk's Office's information provided above, and I had also filed a timely **Rule 60** Motion yesterday, **November 16, 2023**, at **4:39 PM Central Time**, similarly requesting docketing to reflect it was timely filed via email to on November 16, 2023. I emphasized to Clerk Meghan that timeliness is critical, as Rule 60 Motion filed within 28 days post-judgment tolls the time for filing an appeal. Clerk Meghan told me that my Rule 60 Motion was forwarded to Chambers as well. According to the Clerk's Office's information, my **Rule 60 Motion** needs to be docketed/filed as **ECF 33, dated stamped filed on November 16, 2023**.

Due to the above information regarding the processing of my post-judgment motions, I expressed to Clerk Megghan my concern regarding the Court's procedure of forwarding my time-sensitive post-judgment motions to Chambers without docketing/filing, and then those time-sensitive motions seemingly to languish in Chambers past the date of the 28-day deadline stipulated by Rule 59, and Rule 60 as they relate to tolling the time for filing an appeal. I expressed my explicit concern that I seek to preserve my right of appeal, and that I respectfully seek to preserve on the record the issues contained in my Rule 59 and Rule 60 Motions that are currently before Chambers, without docketing, by law within the jurisdiction of the U.S. District Court of Rhode Island. My Rule 59 and Rule 60 Motions are not ex-parte or emergency motions.

Moreover, I expressed to Clerk Meghan my concern that the processing of my post-judgment motions forwarded to Chambers and seemingly pending before Chambers without the motions being docketed, impacts my right of appeal 30-days post judgment, and today, Friday, is Day 29. I told the Clerk that under the circumstances in this matter, I seek to preserve for appeal the issues raised in my timely filed Rule 59 Motion and Rule 60 Motion, and that I seek to preserve my right to appeal within the 30-day postjudgment period.

I also discussed with the Clerk that my timely filed but undocketed Rule 59 Motion and Rule 60 Motion that were forwarded to and currently before Chambers cause an uncertain effect, impacting the date of my filing of Notice of Appeal, the deadline of which is November 18, 2023, a Saturday. Based on the current facts and issues regarding simply docketing my filings on the record, I am concerned my rights of access to the Courts are impacted, and that my Notice of Appeal may also languish I do not believe any pro se litigant should be made to be uncertain of the timeliness of filing a Notice of Appeal as a matter of right that is caused by inaction by Chambers on timely-filed Rule 59 and Rule 60 Motions that toll the time to file an appeal. I explicitly expressed my concern on the effect on my access to the Courts.

I respectfully request that this email communication regarding the filing/docketing of my Rule 59 Motion be docketed to accurately reflect the record on appeal along with the Rule 59 Motion at the time the Rule 59 Motion is docketed by the Clerk.

Thank you in advance for you assistance.

Respectfully submitted,
Mary Seguin
[Quoted text hidden]

---

📄 **CA 126 Plaintiff Rule 59 Motion with Affidavit 111623.pdf**
387K



Mary Seguin <maryseguin22022@gmail.com>

## URGENT - TIME SENSITIVE - FILE TODAY RULE 60 MOTION in Seguin v. Ri Dept of Human Services et al, Civil Action No. 1:23-cv-126-WES-PAS

1 message

**Mary Seguin** <maryseguin22022@gmail.com>
Thu, Nov 16, 2023 at 4:39 PM
To: RID_ECF_INTAKE <RID_ECF_INTAKE@rid.uscourts.gov>

Dear Clerk/Deputy Clerk of the Court,

Kindly urgently file and docket today, November 16, 2023, my attached Rule 60(b) Motion in the above captioned case, Seguin v. Ri Dept of Human Services et al, Civil Action No. 1:23-cv-126-WES-PAS.

Because this Rule 60(b) Motion is time sensitive, kindly make sure that it is filed and docketed today, November 16, 2023.  I do not have access to electronic filing, it appears.

Thank you in advance for your assistance.

Respectfully Submitted,
Mary Seguin
PO Box 22022
Houston, TX  77019
(281) 244-2016



**CA 126 Rule 60(b) Motion with Affidavit 111623.pdf**
379K

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

MARY SEGUIN,
*pro se*

*Plaintiff,*

VS.                                                          Civil Action No. 1:23-cv-126-WES-PAS


RHODE ISLAND DEPARTMENT OF HUMAN SERVICES in its official capacity; MICHAEL D. COLEMAN, DEBORAH A. BARCLAY in their individual and official capacities; RHODE ISLAND OFFICE OF CHILD SUPPORT SERVICES in its official capacity; KEVIN TIGHE, MONIQUE BONIN, FRANK DIBIASE, WENDY FOBERT, KARLA CABALLEROS, TIMOTHY FLYNN, LISA PINSONNEAULT, CARL BEAUREGARD, PRISCILLA GLUCKSMAN, JOHN LANGLOIS, PAUL GOULD, in their individual and official capacities; RHODE ISLAND STATE COURT SYSTEM in its official capacity; PAUL A. SUTTELL in his individual and official capacity as EXECUTIVE HEAD OF RHODE ISLAND STATE COURT SYSTEM; RHODE ISLAND ADMINISTRATIVE OFFICE OF STATE COURTS in its official capacity; RHODE ISLAND ADMINISTRATIVE OFFICE OF THE SUPERIOR COURT in its official capacity; RHODE ISLAND JUDICIAL COUNCIL in its official capacity; RHODE ISLAND SUPERIOR COURT in its official capacity; RHODE ISLAND SUPERIOR COURT JUDICIAL COUNCIL in its official capacity; THE JUDICIAL TECHNOLOGY CENTER in its official capacity; JULIE HAMIL, MARISA BROWN, JOHN JOSEPH BAXTER, JR., JUSTIN CORREA in their individual and official capacities; RHODE ISLAND OFFICE OF THE ATTORNEY GENERAL in its official capacity; RHODE ISLAND OFFICE OF THE ATTORNEY GENERAL OPEN GOVERNMENT UNIT in its official capacity; ADAM D. ROACH, PETER NERONHA in their official and individual capacities; TYLER TECHNOLOGIES, INC.; GERO MEYERSIEK

   *Defendants*

**PLAINTIFF'S RULE 59 MOTION FOR A NEW TRIAL**

1. Plaintiff, proceeding from and as a citizen of Texas, respectfully requests pursuant to

Fed. R. Civ. P. Rule 59 for a new trial. Plaintiff avers the following, supported by affidavit

attached: The 91-page First Amended Complaint [ECF 25] filed on September 1, 2023 seeks

monetary damages against the Rhode Island State Defendants and the private actor Defendants

for:

(1) The Rhode Island Judiciary and Tyler Technologies' monopoly of publication of law.

(2) The Rhode Island Judiciary and Tyler Technologies' denial to the Public and to all Pro Se Litigants all access and the denial of free access to the contents of the law created, authored, and deliberated by the Rhode Island Judiciary.

(3) The civil conspiracy by the Rhode Island Judiciary and Tyler Technologies to knowingly fail to properly integrate the legacy electronic court case management systems used by Rhode Island Department of Human Services and Office of Child Support Services during the implementation of Odyssey from 2013 to 2014 (the State's official electronic court filing and electronic case management system), so that these state agencies' filings are discriminately invisible only to the Public, to Pro Se Litigants and to the Rhode Island Virtual Clerk of the Courts in the Rhode Island Family Court, a limited jurisdiction court of record. The State's filings are only visible to the judges and to the State filers, thus manipulating the proceeding towards a foregone conclusion in favor of the State filers.

(4) The civil conspiracy by the Rhode Island Judiciary and Tyler Technologies to misrepresent to the Public and to the Pro Se Litigants that the implemented electronic court case records of judge created laws are available to *all* court users, in order to cover up their monopolization of the publication of law denies the Public and the Pro Se Litigant access to the judge-created laws.

(5) The civil conspiracy by the Rhode Island Judiciary and the Defendant Department of Human Services and Office of Child Support Services that the State routinely establishes and enforces 12% compound interest on child and spousal support in Title IV of the Social Security Act state family court proceedings, in violation of the uniform statutory requirement of 42 U.S.C. § 654(21)(A) that provides States *may* opt to charge a fee, and

*if* the State opts to do so, between *3% to 6% simple interest*, *not* 12% compound interest, targeting noncustodial parents victims. In welfare cases, support are assigned by the custodial parent to the State, and the 12% compound interest represents a fee for the State's "services" in the support's establishment and enforcement paid to the State, which at 12% compound interest represents lucrative, illegally obtained revenue to the State actors, who are financially incentivized to obtain as much as possible.

(6) The civil conspiracy by the Rhode Island Judiciary and the Defendant Department of Human Services and Office of Child Support Services and Tyler Technologies to knowingly fail to properly integrate Odyssey with the State's legacy electronic court filing system resulting in the State's filings seeking illegal 12% compound interest, as well as to deny the Public and to Pro Se Litigants' access to their publication of judge-created law records for the purpose of cover up of this wholesale illegal defraud of the court, extortionary defraud under color of state law targeting the unsuspecting noncustodial parents victims, and defraud of the United States (66% of the cost of these child support "operations" is funded by the U.S. Department of Health and Human Services through Title IV of the Social Security Act through funds appropriated by Congress through the annual budget appropriations.)

(7) The civil conspiracy by the Rhode Island Judiciary and the Defendant Department of Human Services and Tyler Technologies to operate the Title IV Program of the Social Security Act in all manners violative of due process, in prima facie due process violative State Electronic Courts, for the purpose of generating state revenue through fraud and deceit, through conspired tortious interference of rights of access to the courts, rights of

access to state case documents, and rights of access to judge-created laws targeting

litigants, targeting the Public and targeting Pro Se Litigants.

(8) The civil conspiracy by the Rhode Island Judiciary and the Defendant Department of

Human Services and Tyler Technologies to cover up their public-access-denied

publication of state judge-created laws of illegal 12% compound interest benefiting the

state's revenue by adopting a State policy not to establish nor enforce any interest in

*interstate* support cases only, calculated to cover up the collective fraud from federal

enforcement officials and other states' enforcement officials of court orders (laws)

showing 12% compounded interest established and funded under Title IV that are facially

illegally violative of 42 U.S.C. § 654(21)(A) which explicitly provides States *may* opt to

charge a fee, and *if* the State opts to do so, between *3% to 6% simple interest*, *not* 12%

compound interest.  The federal Title IV Program regulation by Congressional intent

explicitly preempts any related state laws of all participating states.

(9) The civil conspiracy by the Rhode Island Judiciary and the Defendant Department of

Human Services and Office of Child Support Services and Barbara Grady and Gero

Meyersiek to use the fraudulent, First Amendment-, Fourth Amendment-, Fifth

Amendment-, Seventh Amendment-, and Fourteenth Amendment violative state court

machinery weaponizing Title IV Program of the Social Security Act to target the Plaintiff

*pro se* noncustodial parent in Texas to retaliate against Plaintiff for her past lawsuits

against them, namely ten years ago in Seguin v. Chafee et al., Civil No. 12-cv-708-JD

(D.R.I. 2013), Seguin v. Bedrosian et al, Civil No. 12-cv-614-JD (D.R.I. 2013), and

Seguin v. Suttell et al, Civil No. 13-cv-95-JNL-LM (D.R.I. 2013), in which Plaintiff sued

them, *inter alia*, for monetary damages claims for extortion by the Rhode Island state

court's under color of state law abuse of the legal frame work of another federal-funded

human services program Violence Against Women Act, 34 U.S.C. § 12471 *et seq.*,

through which Rhode Island demanded that Plaintiff pay the state court actor $55,000.00

per visitation if Plaintiff wanted to see her children in Rhode Island, because the state

court stated in writing they believed Plaintiff married "a rich oil man" in Texas, absent

any other legally sufficient basis. Plaintiff had reported this *prima facie* extortion under

color of state law and under color of federal law 34 U.S.C. § 12471 *et seq.*, to the federal

law enforcement authorities, *e.g.*, the F.B.I. in Texas and the Office of the U.S.

Department of Justice in Texas. Here, Plaintiff's ==retaliation== damages claims have been

issues pending before the Court since September 1, 2023 [ECF 25], at which point Judge

Smith was disqualified under the self-executing expectation under 28 U.S.C. § 455,

additionally given the fact Judge Smith had also self-recused from <u>Seguin v. Chafee et</u>

<u>al</u>., Civil No. 12-cv-708-JD (D.R.I. 2013), <u>Seguin v. Bedrosian et al,</u> Civil No. 12-cv-

614-JD (D.R.I. 2013), and <u>Seguin v. Suttell et al</u>, Civil No. 13-cv-95-JNL-LM (D.R.I.

2013) ten years ago. *See In re Martinez-Catala,* 129 F.3d 213, 220 (1st Cir. 1998)

("[under §455] the judge is expected to recuse sua sponte, where necessary, even if no

party has requested it").

(10) The Rhode Island Judiciary continues the pattern of cover up by denying Plaintiff's

request for public judicial records related to the monopoly of publication of judge-created

records submitted to the State Judiciary pursuant to the Rhode Island Access to Public

Records Act ("RI APRA").

4. Plaintiff obtained new evidence on October 6, 2023 that the Rhode Island Judiciary is a

former client of Judge Smith, and on November 9, 2023, Plaintiff obtained new evidence that the

Rhode Island Judiciary remains a major client of Judge Smith's former law firm. Plaintiff's due diligence search for conflict of interest has been impeded by the Rhode Island Judiciary and Tyler Technologies monopoly of publication of judge-created laws in the state's electronic court system and their denial of access to the judge-created laws, and Plaintiff, as a member of the Public and proceeding pro se without a Rhode Island Attorney license, the issuance of which is also monopolized by the Rhode Island Judiciary, has further been denied access to official records, including through the Rhode Island Access to Public Records Act, consistent with a pattern of civil conspiracy cover up.

5. A new trial or a stay of the Judgment is necessary to prevent irreparable harm to Plaintiff, and to Americans across the First Circuit who would be needlessly deprived of access to the federal courts of law in the First Circuit for monetary damages redress - the judicially created doctrine of Younger Abstention that functioned as a court of equity - regarding Plaintiff's monetary damages claims against the Rhode Island Judiciary and Tyler Technologies' scheme to monopolize the publication of judge-created laws that denies, tortiously interferes, tortiously abridges and tortiously obstruct the Public access to those very laws; regarding Defendant Rhode Island Office of Child Support Services' unlawful seizures of interstate Texas properties outside of Rhode Island under color of Rhode Island state law based on legally insufficient interest charge on overdue support based on the unlawful rate of 12% compound interest that is disallowed under Title IV-D Program of the Social Security Act, specifically 42 U.S.C. § 654(21)(A) that provides States *may* opt to charge a fee, and *if* the State opts to do so, between *3% to 6% simple interest*, *not* 12% compound interest. And this is on top of Defendants' breach of contract that was brokered by Defendant Rhode Island Office of Child Support Services on behalf of the agency's client; the contract between the custodial parent client, defendant Gero

Meyersiek and the Texas Plaintiff stipulated that the custodial parent waived interest upon the

Texas Plaintiff paying a lump sum of $104,185.98 pay-off amount, which Plaintiff performed

from Texas on December 7, 2021. Even at the point of contractual agreement, Defendant Rhode

Island Office of Child Support Services in conjunction with Defendant Gero Meyersiek,

misrepresented there was lawful and enforceable interest to be waived, as they removed the

accrued interest from the Title IV-D Program mandated support record system in order to cover

up from the Plaintiff, and from federal and Texas authorities the unlawful 12% compound rate.

After fraudulently inducing Plaintiff in Texas to agree to and to perform on the contract, the

Defendants immediately put the interest back into the Title IV-D Program-mandated automated

support record system and started to seize Plaintiff's properties in Texas under color of Rhode

Island state law.

6. The final judgment is on its face violative of binding First Circuit caselaw that

mandates lower courts to *stay* monetary damages claims when applying Younger Abstention.

*See DeMauro v. DeMauro,* 115 F.3d 94, 98 (1st Cir. 1997) (relying on *Quackenbush v. Allstate*

*Ins. Co.,* 517 U.S. 706 (1996) in holding that abstention does not allow for dismissal of damages

claim).

7. 42 U.S.C. § 654(21)(A) has been in effect since the enactment of the Title IV-D

Program of the Social Security Act several decades ago, and Congress's original intent was to

combat poverty within the populace of single mothers and children in welfare cases; Congress at

no time intended to shift the undue burden of Rhode Island's 12% compound interest on overdue

support under color of Rhode Island state law to noncustodial parents, whether targeting Texas

or across the country, which in welfare cases Rhode Island converts the 12% compound interest

to assigned debts owed by noncustodial parents to Rhode Island's state agencies and state

government, representing underhanded unlawful state revenue unlawfully obtained through the

legal framework of Title IV-D Program of the Social Security Act, targeting unsuspecting

noncustodial parents victims.  As a legal point of a state's lawful application of 42 U.S.C. §

654(21)(A) within the First Circuit, New Hampshire, in compliance with the letter of federal law,

opts into Title IV-D Program and opts not to charge any interest whatsoever, as per the letter of

law and the original intent of Congress, 42 U.S.C. § 654(21)(A).  Similarly, Texas charges 6% in

compliance with 42 U.S.C. § 654(21)(A).

8. Defendant Rhode Island Office of Child Support Service's illegal denial and

obstruction of access to Plaintiff's own child support case file that contains the incriminating

illegal and arguably criminal scheme of removing the interest rate from the Title IV-D Program

mandated and federally funded support record system to cover up the unlawful 12% compound

interest from federal and Texas authorities, as well as from the Plaintiff in Texas, violates due

process, obstructs justice, obstructs a federally funded and federal program proceeding, and the

legal framework of Title IV-D of the Social Security Act, specifically, 42 U.S.C. § 654 and 42

U.S.C. § 666.

9. Judge Smith's dismissal of Texas Plaintiff's legal remedy monetary damages and

breach of contract fraudulent inducement damages claims under Younger Abstention in this

Court of law represents irreparable harm violative of the First Amendment, Fourth Amendment,

Fifth Amendment, the Fourteenth Amendment, the Seventh Amendment and the First

Amendment access to the Court.  The undisputable fact remains, Plaintiff's legal remedy request

for monetary damages in this court of law consisting of twenty-two causes of action that cannot

be dismissed under Younger Abstention, namely monetary damages claims of breach of contract

fraudulent inducement, breach of implied contract, unjust enrichment, misrepresentation,

negligent misrepresentation, intentional/fraudulent misrepresentation, common law bad faith, breach of the covenant of good faith and fair dealings, tortious breach of the covenant of good faith and fair dealings, breach of fraudulent concealment/common law fraud, concealed fraud, tort of deceit, reckless indifference to the rights of Plaintiff, deliberate indifference to the rights of Plaintiff, abuse of process, breach of duty, accounting fraud, fraud cover up, RI Government Tort Liability (R.I. Gen. Laws 9-31-1, *et seq.*), 42 U.S.C. § 1983 Claim for Reckless Indifference of Plaintiff's Clearly Established Constitutional Rights, 42 U.S.C. § 1983 claim of Fourth Amendment Illegal Seizure of Plaintiff's Texas Property, state tort of liability against defendants under 42 U.S.C. § 1983, Civil RICO [ECF 25].

10. Judge Smith's legally-unsupported and factually-unsupported, and "legally insufficient" opinion that the limited jurisdiction family court is an adequate forum to raise Plaintiff's federal legal damages claims of breach of contract et al., contravenes Rhode Island law: R.I. Gen Laws 8-10-3 makes clear that family court is not a court of general jurisdiction, can only conduct bench trials functioning as a court of equity, not of law, and prohibits family court from exercising jurisdiction over breach of contract claims et al between the Texas Plaintiff and the Defendants; family court lacks jurisdiction over the Plaintiff's federal causes of actions; lacks the jurisdiction to summon a jury for jury trial in a court of law.

11. Finally, but equally critically, twenty-one days post judgment Plaintiff discovered troubling new evidence on November 9, 2023, that Judge Smith appears to have impermissibly acted in favor of the interests of the defendants – he is automatically disqualified under 28 U.S.C. § 455, because as a partner in his past practice and firm, the state government and the Rhode Island Judiciary were not only his clients, but continue to be that firm's major client under a flat fee contract and he has knowledge of the defendants' actions in this action – as a major

partner in his firm, the Rhode Island Judiciary is his and his form's past and current clients, the

state government actors and the state courts actors, cooperate in the routine establishment and

enforcement of 12% compound interest under the legal framework of Title IV-D Program of the

Social Security Act, where 12% compound interest is disallowed under 42 U.S.C. § 654(21)(A).

To the objective observer, having knowledge of the facts and circumstances of this case, and

being a partner in his past firm that continues to have the Rhode Island Judiciary as a client,

Judge Smith appears biased in favor of the defendants' interest to continue raking in state

revenue under the auspices of 42 U.S.C. § 654(21))(A) that explicitly disallows state debts of

12% compound interest assigned to Rhode Island that the state actors who cover up the 12%

compound rate by obstructing the noncustodial parent's access to her own child support case file

that is further violative of the due process provisions under 42 U.S.C. § 654 and §666, in Rhode

Island's federally funded operation with funds appropriated by Congress intended for the *lawful*

operation of Title IV-D of the Social Security Act.  Although under the judicial self-executing

expectation under 28 U.S.C. §455, the Texas Plaintiff is not expected to cull court records in the

Rhode Island state courts for judicial conflict of interest, nevertheless the Plaintiff in good faith

and diligently attempted to perform a remote search of Rhode Island's electronic court case

management system, Odyssey in 2023.  In so doing, Plaintiff discovered troubling newly-

discovered evidence that the Rhode Island Judiciary, while publicly representing that the 2014 $6

million state transition from paper courts to electronic courts promises *all court users* will be

able to call up court documents remotely from their mobile devices, in reality Rhode Island

adopted rules only denying the public and pro se litigants remote access to court case

information, including pro-se litigants' own case records, that both the public and all litigants

had equal statutory, common law and constitutional rights of access in paper courts – Judge

Smith's firm's clients, the Rhode Island Judiciary, therefore implemented electronic court public access denials that obstructed Plaintiff's and the public's discovery of Judge Smith's judicial disqualification regarding his former clients such as the state courts, the defendant state actors and other conflict entities.

**I. LEGAL STANDARD**

11. The United States Supreme Court in 2020 reaffirmed, in *GEORGIA, ET AL., PETITIONERS v. PUBLIC.RESOURCE.ORG, INC*, 590 U.S. ___ (2020), the century-old government edicts doctrine, making clear that officials empowered to speak with the force of law cannot be the authors of—and therefore cannot monopolize access—the works they create in the course of their official duties. The U.S. Supreme Court previously applied that doctrine to hold that non-binding, explanatory legal materials when created by judges who possess the authority to make and interpret the law shall not monopolize access to it. *See Banks v. Manchester*, 128 U. S. 244 (1888). Tyler Technologies is a for profit organization that aims to facilitate public access to government judge-created records and legal materials. Tyler Technologies is contracted by the Rhode Island Judiciary to implement the State's electronic courts in 2013 and together, they both publicly represented that access to the contents of judge-created laws records will be readily called on mobile devices to *all* court users, namely, to the Public and to pro se litigators.

12. Under the government edicts doctrine, judges may not be considered the "authors" of the works they produce in the course of their official duties as judges. That rule applies regardless of whether a given material carries the force of law. In *Banks v. Manchester,* 128 U. S. 244 (1888) the Supreme Court concluded that "the judge who, in his judicial capacity, prepares the opinion or decision, the statement of the case and the syllabus or head note" cannot "be regarded as their author or their proprietor. *Banks*, 128 U. S, at 253 (emphasis in original).

Rather, "[t]he whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all." *Ibid.* (citing *Nash v. Lathrop*, 142 Mass. 29, 6 N. E. 559 (1886)). These cases establish a straightforward rule: Because judges are vested with the authority to make and interpret the law, they cannot be the "author" of the works they prepare "in the discharge of their judicial duties." Banks, 128 U. S., at 253. This rule applies both to binding works (such as opinions) and to non-binding works (such as headnotes and syllabi). *Ibid.* The animating principle behind this rule is that no one can own the law. "Every citizen is presumed to know the law," and "it needs no argument to show . . . that all should have free access" to its contents. *Nash*, 142 Mass., at 35, 6 N. E., at 560 (cited by *Banks*, 128 U. S., at 253–254). Rather than attempting to catalog the materials that constitute "the law," the doctrine bars the officials responsible for creating the law from being considered the "author[s]" of "whatever work they perform in their capacity" as lawmakers. *Ibid.* (emphasis added). Because these officials are generally empowered to make and interpret law, their "whole work" is deemed part of the "authentic exposition and interpretation of the law" and must be "free for publication to all." *Ibid.*

13.   Rhode Island Judiciary and Tyler Technologies monopoly of publication of the judge-created laws and their "whole works" making and interpreting the law that explicitly by design deny access to the Public and to the Pro Se Litigant runs afoul of the government edicts doctrine.

14. Courts have long understood the government edicts doctrine to apply to legislative materials. See, e.g., *Nash*, 142 Mass., at 35, 6 N. E., at 560 (judicial opinions and statutes stand "on substantially the same footing" for purposes of the government edicts doctrine); moreover, just as the doctrine applies to "whatever work [judges] perform in their capacity as judges,"

*Banks*, 128 U. S., at 253, it applies to whatever work judges perform in their capacity as judges. *Banks*, following *Wheaton* and the "judicial consensus" it inspired, denied publication monopoly protection to judicial opinions without excepting concurrences and dissents that carry no legal force. 128 U. S., at 253 (emphasis deleted). As every judge learns the hard way, "comments in [a] dissenting opinion" about legal principles and precedents "are just that: comments in a dissenting opinion." *Railroad Retirement Bd. v. Fritz,* 449 U. S. 166, 177, n. 10 (1980). Yet such comments are covered by the government edicts doctrine because they come from an official with authority to make and interpret the law. Indeed, *Banks* went even further and withheld publication monopoly protection from headnotes and syllabi produced by judges. 128 U. S., at 253. Surely these supplementary materials do not have the force of law, yet they are covered by the doctrine. The simplest explanation is the one *Banks* provided: These non-binding works are not copyrightable because of who creates them—judges acting in their judicial capacity. *See ibid.* The textual basis for the doctrine is the "authorship" requirement, which unsurprisingly focuses on—the author, the judges*.* The Supreme Court long ago interpreted the 'author" to be officials empowered to speak with the force of law. The doctrine distinguishes between some authors (who are empowered to speak with the force of law) and others (who are not). The Supreme Court explicitly rejects allowing the States to "monetize its entire suite of legislative and judicial history. With today's *digital tools*, States might even launch a subscription or pay-per-law service." See *Georgia v, Public Resources Org.* at 590 U. S. ____ (2020)  It is obviously explicitly clear that the Supreme Court refers to the prohibition against the Rhode Island Judiciary and Tyler Technology's monopolization of  the digital publication of DIGITAL COURT JUDICIAL COURT RECORDS that denies publication access of judge-created laws and their work materials to the Public and to Pro Se Litigants.

15. There is no legitimate Rhode Island government interest in the knowing illegal denial of access to the public and to pro se litigants the digital records of the Rhode Island Judiciary's and Tyler Technologies' illegal monopolization of digital publication of judge-created laws involving the establishment nor enforcement of unlawful 12% compound interest violative of explicitly clear 42 U.S.C. § 654(21)(A) within the legal framework of Title IV-D Program targeting noncustodial parties in Texas who are outside of Rhode Island that Rhode Island already knows is unenforceable in Texas, and thus had removed the 12% compound interest in 2018 calculated to cover it up from federal and Texas authorities. Rhode Island's abuse of the legal framework of the government edict doctrine and the legal framework of Title IV-D Program are diametrically at odds with the intent of Congress and binding caselaws of the U.S. Supreme Court. The civil conspiracy to cover up the illegal machinery of the digital electronic courts in Rhode Island is clear. *See Turner v. Rogers*, 131 S. Ct. 2507, 2518 (2011). *See Georgia v, Public Resources Org.* at 590 U. S. ____ (2020); *See* HOUSE COMM. WAYS & MEANS, Section 8: Child Support Enforcement Program, in 2004 GREEN BOOK: BACKGROUND MATERIAL AND DATA ON THE PROGRAMS WITHIN THE JURISDICTION OF THE COMMITTEE ON WAYS AND MEANS 8-1, 8-2 (2004). *See* Social Services Amendments of 1974, Pub. L. No. 93-647, § 101, 88 Stat. 2337, 2351. Where the mother receives public aid, federal and state governments will provide the child support payment to the mother and hold the father indebted to the government for that amount. In cases where the mother is not dependent on welfare, the government has largely stayed out of the fray. *See* HOUSE COMM. WAYS & MEANS, *supra* note 38. Yet, this case does not involve a welfare case, as the custodial father is wealthy, but the Defendants are motivated by retaliation against the Plaintiff for suing them ten years ago in <u>Seguin v. Chafee et al</u>., Civil No. 12-cv-708-JD (D.R.I. 2013), <u>Seguin v. Bedrosian</u>

et al, Civil No. 12-cv-614-JD (D.R.I. 2013), and Seguin v. Suttell et al, Civil No. 13-cv-95-JNL-LM (D.R.I. 2013), in which Plaintiff sued them, *inter alia*, for monetary damages claims for extortion by the Rhode Island state court's under color of state law abuse of the legal frame work of another federal-funded human services program Violence Against Women Act, 34 U.S.C. § 12471 *et seq.*, through which Rhode Island demanded that Plaintiff pay the state court actor $55,000.00 per visitation if she wanted to see her children in Rhode Island, because the state court stated in writing they believed Plaintiff married "a rich oil man" in Texas, absent any other legally sufficient basis.  Plaintiff had reported this *prima facie* extortion under color of state law and under color of federal law 34 U.S.C. § 12471 *et seq.*, to the federal law enforcement authorities, *e.g.*, the F.B.I. in Texas and the Office of the U.S. Department of Justice in Texas. Here, Plaintiff's retaliation damages claims have been issues pending before the Court since September 1, 2023 [ECF 25], at which point Judge Smith was disqualified under the self-executing expectation under 28 U.S.C. § 455, additionally given the fact Judge Smith had also self-recused from Seguin v. Chafee et al., Civil No. 12-cv-708-JD (D.R.I. 2013), Seguin v. Bedrosian et al, Civil No. 12-cv-614-JD (D.R.I. 2013), and Seguin v. Suttell et al, Civil No. 13-cv-95-JNL-LM (D.R.I. 2013) ten years ago.  *See In re Martinez-Catala,* 129 F.3d 213, 220 (1st Cir. 1998) ("[under §455] the judge is expected to recuse sua sponte, where necessary, even if no party has requested it").

## II. ARGUMENT

16. Plaintiff has appealed the Court's/Judge Smith's judgment in its entirety in the related case, Seguin v, RI Office of Child Support Services et al Civil No. 23-cv-34-WES-PAS (D.R.I. 2023) and respectfully submits that she is likely to secure a complete reversal of this Court's

holding that the judicially created doctrine of Younger Abstention applies to the *dismissal* of her monetary damages and breach of contract damages claims.

17. Plaintiff further submits that she is likely to secure a complete reversal of this Court's in this case.

18. Conducting state proceedings funded by federal funding appropriated by Congress under Title IV of the Social Security Act in state monopolized electronic courts that violate the long-established government edict doctrine as it related to the Public's access of the digital publication of judge-created laws and violate the Constitution targeting Texas assets and Texas parties for illegal 12% compound interest involving fraudulent inducement that cannot be enforceable in Texas is the prima facie example of government fraud and government waste, warranting cut off from federal funding at the very minimum. Not even Judge Smith, friend of the Rhode Island Judiciary, can punt these egregious state activities to later addressment via the attention of the Supreme Court and to Congress Appropriation Committees, wrongfully using Younger Abstention.

19. Judge Smith's holding is defect in claiming without a shred of factual basis that Plaintiff can raise her federal monetary damages claims and fraudulent inducement breach of contract claims in the jurisdictionally defective Rhode Island family court, that R.I. Gen. Laws 8-10-3 plainly states the family court is *not* a court of general jurisdiction, and which lacks the jurisdiction over the controversy for legal relief of monetary damages tort claims and fraudulent inducement breach of contract damages claims over both the Plaintiff and all the named defendants.

20.  Plaintiff seeks a new trial or a stay pending appeal as Plaintiff's likelihood of success

on appeal, together with the lopsided balance of hardships, weigh heavily in favor of granting the

stay being sought pending appellate review.

### A. Plaintiff is Likely To Succeed On Appeal Of the Judgment Ordered By the Court:

21. Although Plaintiff recognizes that the Court has ruled against her as to the scope of

relief, Plaintiff is likely to succeed on appeal of those issues, and has raised serious legal

questions and presented a substantial case. *See Arnold v. Garlock, Inc*., 278 F.3d 426,

438-39 (5th Cir. 2001).

22. Plaintiff incorporates by reference her prior remedy arguments.  Plaintiff reserves the

right to make any and all arguments on appeal.

23. Among the substantial questions raised by Plaintiff is whether the Court erred in

awarding Defendants dismissal of Plaintiff's monetary damages claim in this First Circuit under

Younger Abstention and erred in failing to self-execute 28 U.S.C. § 455. And Plaintiff

respectfully submits that she is likely to succeed on appeal in arguing that, in these

circumstances, dismissal was not properly ordered in the particular circumstances of this case

pursuant to established binding First Circuit caselaws on both the Court's errors applying

Younger Abstention as well as judicial disqualification. *See DeMauro v. DeMauro,* 115 F.3d 94,

98 (1st Cir. 1997)**;** *In re Martinez-Catala,* 129 F.3d 213, 220 (1st Cir. 1998); *Quackenbush v.

Allstate Ins. Co*., 517 U.S. 706 (1996).  *See* also *Allen v. La. State Bd. of Dentistry*, 835 F.2d 100,

104 (5th Cir. 1988). ("Younger abstention does not apply to claims for monetary damages.")

24. Absence of a new trial or a stay of the judgment will erode confidence in the Judiciary in the First Circuit by creating an impression that it is violating national law regarding the government edict doctrine and setting illegal new national policy regarding the Title IV-D Program. It may also have the effect of "encouraging forum shopping." *Trump v. Hawaii,* 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring). It further "undermines the judicial system's goals of allowing the 'airing of competing views' and permitting multiple judges and circuits to weigh in on significant issues." *See* also *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (traditional remedial principles account for "the public interest" and "the balance of equities"); *EME Homer City Generation, LP v. EPA*, 795 F.3d 118, 132 (D.C. Cir. 2015) (Kavanaugh, J.) (declining to vacate unlawful agency action under the APA because "vacatur could cause substantial disruption"). In this context, the dismissal of Plaintiff's state government tort monetary damages claims entered by the Court could cause substantial disruption to the *uniform* application of the legal framework of the Title IV-D Program Congress explicitly intended.

25. The serious legal questions raised in this case regarding the scope of remedy go beyond the questions of whether a Younger abstention is applicable to federal monetary damages claims and or the feeble assertion of *comity* applied to the Rhode Island Judiciary and Tyler Technology's gross violation of the government edict doctrine—and indeed, those questions should not have even entered into this case. Here, among Plaintiff's challenges was to state Judiciary, Tyler Technologies and agency actions, and Plaintiff pursued fraudulent inducement breach of contract damages claims and tort monetary damages claims. Instead, the Court at law cannot vacate a federal statute—i.e., cannot "delete a previously enacted statute from the books" such as 42 U.S.C. § 1983. *See* also Jonathan F. Mitchell, The Writ-of-Erasure Fallacy, 104 Va.

L. Rev. 933, 936 (2018) ("The federal courts have no authority to erase a duly enacted law from

the statute books, and they have no power to veto or suspend a statute. The power of judicial

review is more limited." (footnotes omitted). Legal monetary damages relief under 42 U.S.C. §

1983 that would hold the Rhode Island state government accountable under the Rhode Island

Government Tort Act for Rhode Island government actors' tortious actions violating the legal

framework of the Title IV-D Program federal statutes targeting the Plaintiff in Texas was a legal

remedy conferred by Congress to federal courts to grant legal relief appropriate in this case. The

Court has an unflagging obligation to exercise jurisdiction conferred to it by Congress. *See*

*Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013)

26. With respect, although the Court has entered a judgment otherwise, Plaintiff has

demonstrated a likelihood of success on appeal of the Final Judgment sufficient to justify a stay

of the judgment.

### **B. The Balance of the Equities Overwhelmingly Favors the Requested New Trial or Stay**

27. The balance of the equities overwhelmingly favors a new trial or stay: The State of

Rhode Island plainly lacks any legitimate interest in the State's systemic knowing violation of

the government edict doctrine and violation of 42 U.S.C. § 654(21)(A) that they now target

Plaintiff in Texas, and which they sought to cover up from federal and Texas authorities, as well

as from Plaintiff, by knowingly and unlawfully removing interest from the automated support

record system.  Americans outside of Rhode Island re fraudulently, unlawfully and systemically

fleeced by Rhode Island's illegal scheme that is illegally funded through the State's defrauding

of the United States lying to the United States that these activities are eligible for federal funds

appropriated by Congress for the legal administration of Title IV Program of the Social Security Act.

28. Defendants will face no harm from Plaintiff's requested new trial or stay. The judgment that is specifically directed to and protects the prevailing Defendants from legal accountability of their illegal actions, is further issued by a disqualified judge, Judge Smith, who was the former counsel for the Defendants and a partner of the firm whose major client is the Rhode Island Judiciary, *e.g.*, Rhode Island state government entities, including the state courts and state agencies. The requested new trial or stay will thus impose no hardship on the prevailing Defendants at all.

29. By contrast, the public and the Plaintiff face significant harm if now new trial is ordered or the judgment is not stayed. As an initial matter, "any time a [government]" violates "statutes enacted by representatives of its people," the people "suffer a form of irreparable injury." *Maryland v. King,* 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted). But the harm here is much greater and more far-reaching. The government edict doctrine is willfully violated by the Rhode Island Judiciary and Tyler Technology in a civil conspiracy to cover up the illegal state family court creating judge-created laws ordering and enforcing 12% compound interest, aided and abetted by the Department of Human Services - Title IV-D requires the uniform application and compliance by participating States with the Social Security Act. Congress's as well as the United States through the Secretary of the U.S. Department of Health and Human Services' interest in the uniform compliance of 42 U.S.C. § 654(21)(A), § 654 and 42 U.S.C. § 666 are well established. The States are reimbursed 66% of the cost of operations through federal funding appropriated by Congress under Title IV-D of the Social Security Act. The Defendants' arbitrary illegal removal of the illegal unenforceable 12%

compound interest from the automated support record system and cover up of their illegal 12%

compound interest scheme from the federal and Texas authorities targeting Texas properties and

targeting the Plaintiff in Texas demonstrates Rhode Island government agencies (who are former

clients of Judge Smith) knowingly committed criminal schemes illegally seizing Plaintiff's

properties interstate in Texas that they know are violative of federal criminal codes and Texas

civil and penal codes.  *See,* e.g., Social Services Amendments of 1974 (1975 Act), Pub. L. No.

93-647, § 101(a), 88 Stat. 2351 (42 U.S.C. 651 et seq.) (adding Title IV-D to the Social Security

Act). The program, which is administered by the United States Secretary of Health and Human

Services (Secretary), provides that States with approved plans for child and spousal support that

meet federal requirements are reimbursed by the federal government for a significant sixty-six

percent (66%) of the costs of operating their child-support enforcement programs. 42 U.S.C.

§v655(a)(2)(C).  In 1975, Congress adopted Title IV-D, 42 U.S.C. §v651 *et seq*., and established

the general statutory framework that exists today. See 1975 Act § 101(a), 88 Stat. 2351; *Blessing*

*v. Freestone*, 520 U.S. 329, 333-335 (1997) (describing program).  Congress ultimately set the

federal share of reimbursable expenditures at 66%, 42 U.S.C. 655(a)(2), but expanded the

availability of matching funds at the 90% level for State expenditures for automating data

processing systems to improve "the monitoring of support payments, the maintenance of

accurate records regarding the payment of support.  Therefore, the Defendants' illegal operations

cannot be funded by Congressional appropriations.

30. Judge Smith's failure to self-execute his disqualification under 28 U.S.C. § 455 as

well as Canon 3E of the Code of Judicial Conduct, then his subsequent refusal to recuse in the

related case, <u>Seguin v, RI Office of Child Support Services et al Civil</u> No. 23-cv-34-WES-PAS

(D.R.I. 2023), upon Plaintiff's request after she raised newly discovered discovery post judgment

on October 6, 2023 of his direct and past public sector law practice's contract legal

representation of the Defendants, state courts, state agencies and other conflict entities, have the

appearance, to the objective observer, of the Court's issuance of judgment in favor of the

Defendants in error that contravenes established First Circuit case law on Younger Abstention as

well as disqualification, calculated to benefit the interests of his former clients, as partner of his

former firm that represents the Rhode Island Judiciary and the state government.

31. Moreover, the Court's judgment effectively functions as a denial of Plaintiff's access

to this Court of law to redress her legal monetary damages claims and fraudulent inducement

breach of contract damages claims. It is well-settled that even minimal loss of First Amendment

freedoms, "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96

S. Ct. 2673, 49 L. Ed. 2d 547 (1976) (plurality)); *see* also *Elrod*, 427 U.S. at 373.; *N.Y. Times v.*

*United States*, 403 U.S. 713, 715 (1971). Accordingly, Plaintiff has a strong likelihood of success

on the merits, will suffer irreparable injury without a stay, and a stay will not injure others while

furthering the public interest.

### III. CONCLUSION

27. For the foregoing reasons, Plaintiff has demonstrated a likelihood of success on

appeal of the Judgment ordered, and has demonstrated that the balance of the equities favors a

new trial or a stay. Plaintiff respectfully requests that the Court stay the final judgment for the

duration of appellate proceedings relating to the related <u>Seguin v, RI Office of Child Support</u>

<u>Services et al Civil</u> No. 23-cv-34-WES-PAS (D.R.I. 2023).

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 16, 2023, I filed the within Motion with the

Clerk of the Court via email.

Respectfully submitted,

Mary Seguin

Pro Se

/s/ *Mary Seguin*

Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX 77019

Dated: November 16, 2023

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

MARY SEGUIN,
*pro se*

*Plaintiff,*

VS.                                                         Civil Action No. 1:23-cv-126-WES-PAS

RHODE ISLAND DEPARTMENT OF HUMAN SERVICES in its official capacity; MICHAEL D. COLEMAN, DEBORAH A. BARCLAY in their individual and official capacities; RHODE ISLAND OFFICE OF CHILD SUPPORT SERVICES in its official capacity; KEVIN TIGHE, MONIQUE BONIN, FRANK DIBIASE, WENDY FOBERT, KARLA CABALLEROS, TIMOTHY FLYNN, LISA PINSONNEAULT, CARL BEAUREGARD, PRISCILLA GLUCKSMAN, JOHN LANGLOIS, PAUL GOULD, in their individual and official capacities; RHODE ISLAND STATE COURT SYSTEM in its official capacity; PAUL A. SUTTELL in his individual and official capacity as EXECUTIVE HEAD OF RHODE ISLAND STATE COURT SYSTEM; RHODE ISLAND ADMINISTRATIVE OFFICE OF STATE COURTS in its official capacity; RHODE ISLAND ADMINISTRATIVE OFFICE OF THE SUPERIOR COURT in its official capacity; RHODE ISLAND JUDICIAL COUNCIL in its official capacity; RHODE ISLAND SUPERIOR COURT in its official capacity; RHODE ISLAND SUPERIOR COURT JUDICIAL COUNCIL in its official capacity; THE JUDICIAL TECHNOLOGY CENTER in its official capacity; JULIE HAMIL, MARISA BROWN, JOHN JOSEPH BAXTER, JR., JUSTIN CORREA in their individual and official capacities; RHODE ISLAND OFFICE OF THE ATTORNEY GENERAL in its official capacity; RHODE ISLAND OFFICE OF THE ATTORNEY GENERAL OPEN GOVERNMENT UNIT in its official capacity; ADAM D. ROACH, PETER NERONHA in their official and individual capacities; TYLER TECHNOLOGIES, INC.; GERO MEYERSIEK

*Defendants*

### <u>MARY SEGUIN'S DECLARATION IN SUPPORT OF PLAINTIFF'S RULE 59 MOTION</u>

I, MARY SEGUIN, hereby declare under penalty of perjury, pursuant to 28 U.S.C. sec. 1746(2) that the following statements are true and correct:

1. That I am the Plaintiff, Pro Se, in the above captioned matter.

2. That I exercised, am exercising and continue to exercise my statutory right to appear pro se party in the above captioned civil matter in federal court by statute 28 U.S.C. sec. 1654.

3. That in state proceedings in Rhode Island, I am required to comply with Rhode Island Article X. Rules Governing Electronic Filing, Rule 2. Official Court Record, (a) Official Court Record. "Upon the implementation of the Electronic Filing System ("EFS") in each court, all documents shall be filed electronically and shall be the official court record."

4. That the state proceedings in which I am a party are public and are not about child custody nor involve a minor.

5. That the **Rhode Island Family Court**, through its adoption and promulgation of **Administrative Order 2021-01 A2)** mandated that all child support interest matters shall be heard remotely via WebEx. Further, **Administrative Order 2021-01 B1)** mandated that all non-emergency filings shall be filed using the electronic filing system in accordance with the Family Court Rules of Domestic Relations Procedure, which is the **Odyssey system**.

6. That the **"RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION, Rule 5. Access to Case Information, (c) Remote Access to Case Information. (1) Policy. To allow <u>limited</u> Remote Access to the Database through the Public Portal. Non-public case types shall not be remotely accessible except for certain case types to attorneys who have entered an appearance in a case. (2) Content. (a) The Public, Self-represented Litigants and Parties. The Public, self-represented litigants, and parties shall have Remote Access to the register of actions or Docket but shall <u>not</u> have Remote Access to other Electronic Case Information"** bar, deny, violate, abridge, infringe and interfere with Pro Se Litigants' and the Public's fundamental rights to access public court records and Pro Se Litigants' fundamental right to meaningful access to the courts. See "**<u>RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION</u>**" **<u>Rule 5(c)(2)(a)</u>** "**<u>The Public, Self-represented Litigants and Parties. The Public, self-represented litigants, and parties shall have Remote Access to the register of actions or Docket but shall not have Remote Access to other Electronic Case Information.</u>**" See also "**<u>RHODE ISLAND JUDICIARY, Access to Case Information, 2. Remote Access to Case Information A. The Public, Self-represented Litigants, and Parties to a Case, The public, self-represented litigants, and parties in a case shall have remote access to the register of actions or docket but shall not have remote access to other electronic case information</u>**."

7. That I, the Plaintiff, learned and verified on July 10, 2023 directly from the Rhode Island Judiciary itself through numerous (14) correspondences with the Rhode Island Judiciary from June 10, 2023 to July 10, 2023, pursuant to my RI Access to Public Records Act ("APRA") request for public records from the Rhode Island Judiciary, that as a matter of State policy, State Court Rule, and Judiciary Rule, in the digital courts implemented by the Rhode Island Judiciary, the State Court, the Rhode Island

Judiciary deny remote digital access of the Rhode Island Judiciary's monopolized publication of court and judicial records using the digital tool maintained and published by Tyler Technologies, Odyssey, including judge-created, judge-authored court decisions arising from state proceedings in the State's digital electronic courts, and digital court transcripts ordered by and paid by pro-se litigants that are published by the Judiciary digitally on Tyer Technologies' Odyssey are also denied access to the Public, pro-se litigants, and parties to the litigation (who are represented by counsel). The Rhode Island State Court only grants remote access to digital court and judicial records created by judges produced in digital courts to Rhode Island attorneys and state and federal agencies that are approved by the Rhode Island Judiciary's monopoly. On this matter, I corresponded in writing fourteen (14) APRA correspondence emails with Mr. Justin Correa, Esq. and Ms. Alexandra Kriss of the Rhode Island Judiciary from June 10, 2023 to July 10, 2023.

8. That the State Defendants in this matter electronically file all notices using another electronic filing system that is even separate and different from the EFS (Odyssey).

9. That the State Defendants' court electronic filings are not noticed to me in Texas.

10. That the State Defendants' court electronic filings are not visible to me on the Rhode Island courts' EFS.

11. That the State Defendants' court electronic filing court records cannot be accessed remotely by me, solely because I am a self-represented litigant.

12. That the State Defendants' court electronic filing court records cannot be accessed remotely by the public, by self-represented litigants, nor by parties to the case, but can be accessed remotely and instantly through the internet by attorneys in Rhode Island and state and federal agencies.

13. That the Rhode Island Court Clerks state to me over the phone that they are prohibited from reading the contents of the court records over the phone to me.

14. That the Rhode Island Court virtual clerks state to me over the phone that even they are unable to see or access the court record information of filings by the State Defendants from the virtual clerks' access portals.

15. That the Rhode Island Electronic Filing System, case management system, rules and practices outright and unconstitutionally restrict and deny access to the court to three classes: (1) the public; (2) pro-se litigants; (3) parties to the case (who are represented by counsel), and is obviously outright reserved for only the government and Rhode Island attorneys.

16. That the State Defendants have full knowledge of the egregious due process violations of the Rhode Island state court EFS.

17. That the State Defendants have full knowledge of the egregious due process violations of the Rhode Island state court EFS system/architecture/rules/practices, and

withdrew from my-initiated RI EOHHS agency appeal in 2022 in a scheme to procure a favorable judgment in a state proceeding that deny my federal constitutional and due process rights in Texas.

18. That the State Defendants have full knowledge of the egregious due process violations of the Rhode Island state court EFS system/architecture/rules/practices, and initiated the family court state proceeding on January 31, 2023 before the Covid Emergency Declaration was lifted.

19. That the State Defendants have full knowledge of the egregious due process violations of the Rhode Island state court EFS system/architecture/rules/practices that appear to **only allow remote, instant and full court access to a restricted club of R.I. lawyers and the government**, pose unconstitutional and undue burden on me, a citizen of Texas over 2,500 miles away.

20. That the State Defendant have full knowledge of the egregiously unfair due process violations of the Rhode Island state court EFS system/architecture/rules/practices that deny me access to the <u>required</u> **electronic court transcripts** prepared by the court reporter and electronically filed in the state EFS that **I ordered and paid for** for appeal, but the State Defendants have instant remote access by state court design.

21. That the State Defendants have full knowledge of the above unconstitutional restriction on access to court records and information to the public and non-lawyers is deliberate, by design and calculated to be unfair, violating constitutional guarantees of full and fair opportunity to raise claims in state proceedings.

22. That the above-raised unconstitutional restrictions are not exhaustive.

23. That my federal monetary damages claims on the unconstitutionality of the Rhode Island state court rules, practices and proceedings that violate the government edict doctrine and violate the pro-se litigants', such as my-self, federal constitutional rights: (1) federal constitutional right of equal access to the courts, (2) federal constitutional right to equal access to court records to receive information on the contents of all electronically filed notices, pleadings, court decisions, and transcripts that I myself ordered <u>and</u> paid for for appeal that are required to be electronically filed by state court rules and practices, (3) federal constitutional due process right and equal right to be given equal and timely notice of electronic filings and entries by the courts (including court decisions, court orders, court judgments, full docket entries, etc.) that the Rhode Island Judiciary deliberately deny by category all pro-se litigants access to court information, namely the contents of judicial/court records of cases to which I am the self-represented party, (4) federal constitutional due process right to be heard (Rhode Island Superior Court threatens me, the Texas pro-se plaintiff, with denial of my request to conduct WebEx hearings for the purpose of denying the Texas pro-se litigant access to the court and to be heard), (5) federal constitutional due process right to decision by a neutral decision-maker (the court that denies pro-se litigant

access to the court and the corollary opportunity to be heard fails the neutral decision-maker test). This list is not exhaustive.

24. That I seek to sue in federal court the State Defendants and add additional defendants.

25. I am an out-of-state diversity and a pro-se litigant in two state proceedings in Rhode Island, and have been unconstitutionally singled out by the State Judiciary, by category "self-represented litigant," to be barred from accessing electronic case information authored by judges and which the Judiciary has a monopoly in the publication of the judge-created laws in which state court cases I am the pro-se party, and therefore have standing to raise claims against this unconstitutional state practice and unconstitutional state court practice and rules. I understand the Rhode Island Judiciary's monopoly in the digital publication of judge-created laws in the Judiciary' implemented digital/electronic courts and the Judiciary's denial to the Public and to me from accessing the monopolized electronic publication of the judge-created laws in the court records violate the government edict doctrine.

26. Additionally, my fundamental First and Fourteenth Amendment constitutional right and common law right to equal, meaningful, and timely access to judicial records and public court records in litigation, given timely notice, adequate opportunity to be heard and to decision by a neutral decision-maker are fundamental First and Fourth Amendment and Fourteenth Amendment rights. Critically, the unconstitutional abridgement, infringement, and denial of judicial and court records to out-of-state pro-se litigants by the Rhode Island State Courts, Rhode Island State Judiciary and the Rhode Island Superior Court Bench Bar Committee directly relate to Younger Abstention Exception.

27. The State Defendants deliberately file all the State's pleadings outside of the State's electronic filing system, "Odyssey," and deliberately use a wholly different un-named electronic filing system, different and separate from that ("Odyssey") provided for pro-se litigants, so that pro-se litigants do not receive any requisite automated electronic notices of court motions or pleadings the State Defendants file electronically, nor are pro se litigants able to electronically access the content information of the State Defendants' electronically-filed pleadings. The only way the pro se litigant, such as me, the Texas Plaintiff, can access the court record is to personally go over 2,500 miles away to the courthouse in Rhode Island to access the court pleading information, or get a "courtesy notice" via email or get a "courtesy notice" through U.S. Mail sent by the State Defendants at whim. The State Defendants deliberately fail to send the notices electronically or by U.S. Mail, and the state courts deliberately promulgated court rules disallowing the public, pro-se litigants and even the parties who are represented by lawyers, remote access to court records, and critically, deny access to crucial court decisions, judgments and orders of public cases, as well as deny remote access to the transcripts ordered by pro-se litigants for appeal. Critically, the State court's abridgment and denial of access to court documents to the pro se litigant and the general public result in the

unconstitutional abridgment and denial of equal, timely and meaningful access to court complaints, decisions, judgments and orders. What is truly shocking is that the Rhode Island Judiciary even denies and/or bars pro-se litigants remote access of court transcripts that were ordered by pro-se litigants for appeal.

28. Thirdly, the Texas Pro-Se Plaintiff discovered and verified the fact, on or about July 7, 2023, that the Rhode Island Judiciary, using the aforesaid state court rule barring, by category, pro-se litigants from accessing court case information remotely, bars the Plaintiff by category ("self-represented litigant") from accessing state court proceeding transcripts that the Texas Plaintiff ordered and paid for, for appeal. In other words, the RI Supreme Court Clerk stated to the Texas Plaintiff that the Plaintiff, in Texas, is unconstitutionally barred from remotely accessing the transcripts of court proceedings that she ordered and paid for in her appeal to the RI Supreme Court in the Plaintiff-initiated APRA action **Seguin v. RI Office of Child Support Services, PC-22-07215**, and yet the State Defendants are inequitably granted instant and free remote access to those very transcripts that the Texas Plaintiff ordered and paid for, for appeal. The federal Texas Plaintiff respectfully requests this Court the extension of time to present the new evidence and plead the verified facts.

29. Fourthly, the Texas Plaintiff discovered and verified the fact, on or about July 11, 2023, that, despite the Texas Plaintiff's several phone inquiries to the RI Superior Court in the past several weeks regarding the status of the appeal, the RI Superior Court, for undisclosed reasons, failed and continue to fail to relinquish jurisdiction and transfer the court case file of **Seguin v. RI Office of Child Support Services, PC-22-07215** to the RI Supreme Court within the requisite 60 days after Plaintiff's filing of Notice of Appeal on April 3, 2023, as required by the RI Supreme Court rules and procedures. At the same time, the Texas Plaintiff verified the fact that the Plaintiff-ordered transcripts of the state proceedings in the Federal Plaintiff-initiated state APRA action **Seguin v. RI Office of Child Support Services, PC-22-07215** show the RI Superior Court further unconstitutionally sought to deny the Texas Plaintiff access to the state court and opportunity to be heard by outright threatening the Plaintiff in open court that the Judge, David Cruise, during the hearing of March 24, 2023 in that matter, shall use the state court's discretionary power in the future to deny all of the Texas pro-se Plaintiff's petitions for remote WebEx hearings to effectively deny her access to the state superior court. The state court that denies court access and the opportunity to be heard fails the neutral-decision-maker test required under the Fourteenth Amendment. I now specifically request further the Court to judicially notice that this court access denial and denial to be heard occurred on March 24, 2023, PRIOR to President Biden's lifting of the COVID-19 National Health Emergency Declaration. I, the Texas Plaintiff, aver this is a direct contributory reason for the RI Superior Court's failure to transfer the case file to the Supreme Court within 60 days (by June 3, 2023) of the Plaintiff's filing of Notice of Appeal on April 3, 2023 in **Seguin v. RI Office of Child Support Services, PC-22-07215**.

30. Fifthly, the Plaintiff presents to this Court and respectfully requests the Court to take judicial notice of the undisputed fact of the court rule-making process in Rhode Island. The 1966 Rules were promulgated by the justices of the superior court pursuant to section 8-6-2 of the General Laws of Rhode Island. This enabling act departed from the Federal Rules Enabling Act and most state enabling legislation conferring rule-making power on the supreme courts of the respective governments. The Rhode Island Enabling Act was adopted in 1940, 1940 R.I. Pub. Laws ch. 943, sec. 1. It conferred the power on the justices of the superior court and the 1966 reform was the product of that court. In 1969 an amendment to section 8-6-2 made the Rules thereafter adopted by the trial courts subject to the approval of the Supreme Court. 1969 R.I. Pub. Laws ch. 239, sec 2. Therefore, all public records relating to the adoption and promulgation of the "RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION" are "made in the course of, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency, ""agency" or "public body" means any executive, legislative, judicial, regulatory, or administrative body of the state, or any political subdivision thereof" as per R.I. Gen. Laws § 38-2-2, a.k.a. RI Access to Public Records Act ("APRA"). Even though the Rhode Island Enabling Act conferred the power on the judiciary public body to promulgate and adopt court rules, a.k.a. rule-making process, the Rhode Island Judiciary, pursuant to the Plaintiff's APRA request for public records, denied the Plaintiff's APRA request within the 10 business day period, as well as denies it possesses public records, as defined by APRA, relating to the rule-making process by the judiciary of the "RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION," including denying possession of public records that show the intent of the rule-makers to promulgate and adopt court rules denying fundamental right of public access to electronic case information remotely to the public, to self-represented litigants, and to parties to a case. **See Exhibit D** fourteen (14) APRA correspondence emails between the Plaintiff and/with Mr. Justin Correa, Esq. and Ms. Alexandra Kriss of the Rhode Island Judiciary from June 10, 2023 to July 10, 2023. The Texas pro-se Plaintiff respectfully requests the extension of time to present the new evidence and plead the newly verified facts and claims, and amend the complaint, which is further in the interest of judicial economy. The Plaintiff further seeks to appeal and file her claim against the implausible denial by the RI Judiciary, which is conferred by the Rhode Island Enabling Act to make rules of the court, that it possesses public records relating to the "RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION," that the judiciary, conferred power by the Rhode Island Enabling Act, "made in the course of, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency, ""agency" or "public body" means any executive, legislative, judicial, regulatory, or administrative body of the state, or any political subdivision thereof" as per R.I. Gen. Laws § 38-2-2, a.k.a. RI Access to

Public Records Act ("APRA").  Because the RI Superior Court clearly ruled in **Seguin v. RI Office of Child Support Services, PC-22-07215** that it lacked subject matter jurisdiction to hear my/the Texas Plaintiff's APRA-related claims, I, the Texas Plaintiff, now exercise my statutory and constitutional rights to petition this Federal Court, invoking 28 U.S.C. § 1343(a)(3) (civil rights) and 28 U.S.C. § 1367 that provides supplemental jurisdiction over the state law tort claims that arose from the same common nuclei of facts, invoking  28 U.S.C. § 1331 (federal question), and invoking 42 U.S.C. § 1983 for violations of civil rights under the First, Fourth and Fourteenth Amendments to the United States Constitution.  I, the Plaintiff, respectfully request this Court for the extension of time to file my claims.

31. Plaintiff discovered on October 6, 2023 that the Rhode Island Judiciary and Government Defendants are former clients of Judge Smith, a partner in his former firm, Edwards & Angell.

32. Plaintiff discovered on November 9, 2023 that the Rhode Isand Judiciary and Government Defendants are current clients of the firm Edwards & Angell, the former firm of Judge Smith, a partner in the firm.

33. A plain reading of 28 U.S.C. sec. 455 makes clear that Judge Smith is disqualified from this case, and a plain reading of case law makes clear that 28 U.S.C. sec. 455 is self-executing, without necessitating any party's request.


Respectfully submitted,

Date: November 16, 2023

MARY SEGUIN


*Mary Seguin*
_____

Mary Seguin

P.O. Box 22022

Houston, TX 77019

maryseguin22022@gmail.com

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

MARY SEGUIN,
*pro se*

*Plaintiff,*

VS.                                                   Civil Action No. 1:23-cv-126-WES-PAS


RHODE ISLAND DEPARTMENT OF HUMAN SERVICES in its official capacity; MICHAEL D. COLEMAN, DEBORAH A. BARCLAY in their individual and official capacities; RHODE ISLAND OFFICE OF CHILD SUPPORT SERVICES in its official capacity; KEVIN TIGHE, MONIQUE BONIN, FRANK DIBIASE, WENDY FOBERT, KARLA CABALLEROS, TIMOTHY FLYNN, LISA PINSONNEAULT, CARL BEAUREGARD, PRISCILLA GLUCKSMAN, JOHN LANGLOIS, PAUL GOULD, in their individual and official capacities; RHODE ISLAND STATE COURT SYSTEM in its official capacity; PAUL A. SUTTELL in his individual and official capacity as EXECUTIVE HEAD OF RHODE ISLAND STATE COURT SYSTEM; RHODE ISLAND ADMINISTRATIVE OFFICE OF STATE COURTS in its official capacity; RHODE ISLAND ADMINISTRATIVE OFFICE OF THE SUPERIOR COURT in its official capacity; RHODE ISLAND JUDICIAL COUNCIL in its official capacity; RHODE ISLAND SUPERIOR COURT in its official capacity; RHODE ISLAND SUPERIOR COURT JUDICIAL COUNCIL in its official capacity; THE JUDICIAL TECHNOLOGY CENTER in its official capacity; JULIE HAMIL, MARISA BROWN, JOHN JOSEPH BAXTER, JR., JUSTIN CORREA in their individual and official capacities; RHODE ISLAND OFFICE OF THE ATTORNEY GENERAL in its official capacity; RHODE ISLAND OFFICE OF THE ATTORNEY GENERAL OPEN GOVERNMENT UNIT in its official capacity; ADAM D. ROACH, PETER NERONHA in their official and individual capacities; TYLER TECHNOLOGIES, INC.; GERO MEYERSIEK

    *Defendants*

## PLAINTIFF'S RULE 60(b) MOTION

1. Plaintiff, proceeding from and as a citizen of Texas, respectfully requests pursuant to Fed. R. Civ. P. Rule 60(b)(1), (3), (4) and (6) for a new trial. Plaintiff avers the following, supported by affidavit attached: The 91-page First Amended Complaint [ECF 25] filed on September 1, 2023 seeks monetary damages against the Rhode Island State Defendants and the private actor Defendants for:

(1) The Rhode Island Judiciary and Tyler Technologies' monopoly of publication of law.

(2) The Rhode Island Judiciary and Tyler Technologies' denial to the Public and to all Pro Se Litigants all access and the denial of free access to the contents of the law created, authored, and deliberated by the Rhode Island Judiciary.

(3) The civil conspiracy by the Rhode Island Judiciary and Tyler Technologies to knowingly fail to properly integrate the legacy electronic court case management systems used by Rhode Island Department of Human Services and Office of Child Support Services during the implementation of Odyssey from 2013 to 2014 (the State's official electronic court filing and electronic case management system), so that these state agencies' filings are discriminately invisible only to the Public, to Pro Se Litigants and to the Rhode Island Virtual Clerk of the Courts in the Rhode Island Family Court, a limited jurisdiction court of record. The State's filings are only visible to the judges and to the State filers, thus manipulating the proceeding towards a foregone conclusion in favor of the State filers.

(4) The civil conspiracy by the Rhode Island Judiciary and Tyler Technologies to misrepresent to the Public and to the Pro Se Litigants that the implemented electronic court case records of judge created laws are available to *all* court users, in order to cover up their monopolization of the publication of law denies the Public and the Pro Se Litigant access to the judge-created laws.

(5) The civil conspiracy by the Rhode Island Judiciary and the Defendant Department of Human Services and Office of Child Support Services that the State routinely establishes and enforces 12% compound interest on child and spousal support in Title IV of the Social Security Act state family court proceedings, in violation of the uniform statutory requirement of 42 U.S.C. § 654(21)(A) that provides States *may* opt to charge a fee, and

*if* the State opts to do so, between *3% to 6% simple interest*, *not* 12% compound interest, targeting noncustodial parents victims. In welfare cases, support are assigned by the custodial parent to the State, and the 12% compound interest represents a fee for the State's "services" in the support's establishment and enforcement paid to the State, which at 12% compound interest represents lucrative, illegally obtained revenue to the State actors, who are financially incentivized to obtain as much as possible.

(6) The civil conspiracy by the Rhode Island Judiciary and the Defendant Department of Human Services and Office of Child Support Services and Tyler Technologies to knowingly fail to properly integrate Odyssey with the State's legacy electronic court filing system resulting in the State's filings seeking illegal 12% compound interest, as well as to deny the Public and to Pro Se Litigants' access to their publication of judge-created law records for the purpose of cover up of this wholesale illegal defraud of the court, extortionary defraud under color of state law targeting the unsuspecting noncustodial parents victims, and defraud of the United States (66% of the cost of these child support "operations" is funded by the U.S. Department of Health and Human Services through Title IV of the Social Security Act through funds appropriated by Congress through the annual budget appropriations.)

(7) The civil conspiracy by the Rhode Island Judiciary and the Defendant Department of Human Services and Tyler Technologies to operate the Title IV Program of the Social Security Act in all manners violative of due process, in prima facie due process violative State Electronic Courts, for the purpose of generating state revenue through fraud and deceit, through conspired tortious interference of rights of access to the courts, rights of

access to state case documents, and rights of access to judge-created laws targeting

litigants, targeting the Public and targeting Pro Se Litigants.

(8) The civil conspiracy by the Rhode Island Judiciary and the Defendant Department of

Human Services and Tyler Technologies to cover up their public-access-denied

publication of state judge-created laws of illegal 12% compound interest benefiting the

state's revenue by adopting a State policy not to establish nor enforce any interest in

*interstate* support cases only, calculated to cover up the collective fraud from federal

enforcement officials and other states' enforcement officials of court orders (laws)

showing 12% compounded interest established and funded under Title IV that are facially

illegally violative of 42 U.S.C. § 654(21)(A) which explicitly provides States *may* opt to

charge a fee, and *if* the State opts to do so, between *3% to 6% simple interest*, *not* 12%

compound interest.  The federal Title IV Program regulation by Congressional intent

explicitly preempts any related state laws of all participating states.

(9) The civil conspiracy by the Rhode Island Judiciary and the Defendant Department of

Human Services and Office of Child Support Services and Barbara Grady and Gero

Meyersiek to use the fraudulent, First Amendment-, Fourth Amendment-, Fifth

Amendment-, Seventh Amendment-, and Fourteenth Amendment violative state court

machinery weaponizing Title IV Program of the Social Security Act to target the Plaintiff

*pro se* noncustodial parent in Texas to retaliate against Plaintiff for her past lawsuits

against them, namely ten years ago in <u>Seguin v. Chafee et al</u>., Civil No. 12-cv-708-JD

(D.R.I. 2013), <u>Seguin v. Bedrosian et al</u>, Civil No. 12-cv-614-JD (D.R.I. 2013), and

<u>Seguin v. Suttell et al</u>, Civil No. 13-cv-95-JNL-LM (D.R.I. 2013), in which Plaintiff sued

them, *inter alia*, for monetary damages claims for extortion by the Rhode Island state

court's under color of state law abuse of the legal frame work of another federal-funded

human services program Violence Against Women Act, 34 U.S.C. § 12471 *et seq.*,

through which Rhode Island demanded that Plaintiff pay the state court actor $55,000.00

per visitation if Plaintiff wanted to see her children in Rhode Island, because the state

court stated in writing they believed Plaintiff married "a rich oil man" in Texas, absent

any other legally sufficient basis. Plaintiff had reported this *prima facie* extortion under

color of state law and under color of federal law 34 U.S.C. § 12471 *et seq.*, to the federal

law enforcement authorities, *e.g.*, the F.B.I. in Texas and the Office of the U.S.

Department of Justice in Texas. Here, Plaintiff's ==*retaliation*== damages claims have been

issues pending before the Court since September 1, 2023 [ECF 25], at which point Judge

Smith was disqualified under the self-executing expectation under 28 U.S.C. § 455,

additionally given the fact Judge Smith had also self-recused from <u>Seguin v. Chafee et</u>

<u>al</u>., Civil No. 12-cv-708-JD (D.R.I. 2013), <u>Seguin v. Bedrosian et al,</u> Civil No. 12-cv-

614-JD (D.R.I. 2013), and <u>Seguin v. Suttell et al</u>, Civil No. 13-cv-95-JNL-LM (D.R.I.

2013) ten years ago. *See In re Martinez-Catala,* 129 F.3d 213, 220 (1st Cir. 1998)

("[under §455] the judge is expected to recuse sua sponte, where necessary, even if no

party has requested it").

(10) The Rhode Island Judiciary continues the pattern of cover up by denying Plaintiff's

request for public judicial records related to the monopoly of publication of judge-created

records submitted to the State Judiciary pursuant to the Rhode Island Access to Public

Records Act ("RI APRA").

4. Plaintiff obtained new evidence on October 6, 2023 that the Rhode Island Judiciary is a

former client of Judge Smith, and on November 9, 2023, Plaintiff obtained new evidence that the

Rhode Island Judiciary remains a major client of Judge Smith's former law firm. Plaintiff's due diligence search for conflict of interest has been impeded by the Rhode Island Judiciary and Tyler Technologies monopoly of publication of judge-created laws in the state's electronic court system and their denial of access to the judge-created laws, and Plaintiff, as a member of the Public and proceeding pro se without a Rhode Island Attorney license, the issuance of which is also monopolized by the Rhode Island Judiciary, has further been denied access to official records, including through the Rhode Island Access to Public Records Act, consistent with a pattern of civil conspiracy cover up.

5. A new trial or a stay of the Judgment is necessary to prevent irreparable harm to Plaintiff, and to Americans across the First Circuit who would be needlessly deprived of access to the federal courts of law in the First Circuit for monetary damages redress - the judicially created doctrine of Younger Abstention that functioned as a court of equity - regarding Plaintiff's monetary damages claims against the Rhode Island Judiciary and Tyler Technologies' scheme to monopolize the publication of judge-created laws that denies, tortiously interferes, tortiously abridges and tortiously obstruct the Public access to those very laws; regarding Defendant Rhode Island Office of Child Support Services' unlawful seizures of interstate Texas properties outside of Rhode Island under color of Rhode Island state law based on legally insufficient interest charge on overdue support based on the unlawful rate of 12% compound interest that is disallowed under Title IV-D Program of the Social Security Act, specifically 42 U.S.C. § 654(21)(A) that provides States *may* opt to charge a fee, and *if* the State opts to do so, between *3% to 6% simple interest*, *not* 12% compound interest. And this is on top of Defendants' breach of contract that was brokered by Defendant Rhode Island Office of Child Support Services on behalf of the agency's client; the contract between the custodial parent client, defendant Gero

Meyersiek and the Texas Plaintiff stipulated that the custodial parent waived interest upon the

Texas Plaintiff paying a lump sum of $104,185.98 pay-off amount, which Plaintiff performed

from Texas on December 7, 2021.  Even at the point of contractual agreement, Defendant Rhode

Island Office of Child Support Services in conjunction with Defendant Gero Meyersiek,

misrepresented there was lawful and enforceable interest to be waived, as they removed the

accrued interest from the Title IV-D Program mandated support record system in order to cover

up from the Plaintiff, and from federal and Texas authorities the unlawful 12% compound rate.

After fraudulently inducing Plaintiff in Texas to agree to and to perform on the contract, the

Defendants immediately put the interest back into the Title IV-D Program-mandated automated

support record system and started to seize Plaintiff's properties in Texas under color of Rhode

Island state law.

6. The final judgment is on its face violative of binding First Circuit caselaw that

mandates lower courts to *stay* monetary damages claims when applying Younger Abstention.

*See DeMauro v. DeMauro,* 115 F.3d 94, 98 (1st Cir. 1997) (relying on *Quackenbush v. Allstate

Ins. Co.,* 517 U.S. 706 (1996) in holding that abstention does not allow for dismissal of damages

claim).

7. 42 U.S.C. § 654(21)(A) has been in effect since the enactment of the Title IV-D

Program of the Social Security Act several decades ago, and Congress's original intent was to

combat poverty within the populace of single mothers and children in welfare cases; Congress at

no time intended to shift the undue burden of Rhode Island's 12% compound interest on overdue

support under color of Rhode Island state law to noncustodial parents, whether targeting Texas

or across the country, which in welfare cases Rhode Island converts the 12% compound interest

to assigned debts owed by noncustodial parents to Rhode Island's state agencies and state

government, representing underhanded unlawful state revenue unlawfully obtained through the legal framework of Title IV-D Program of the Social Security Act, targeting unsuspecting noncustodial parents victims. As a legal point of a state's lawful application of 42 U.S.C. § 654(21)(A) within the First Circuit, New Hampshire, in compliance with the letter of federal law, opts into Title IV-D Program and opts not to charge any interest whatsoever, as per the letter of law and the original intent of Congress, 42 U.S.C. § 654(21)(A). Similarly, Texas charges 6% in compliance with 42 U.S.C. § 654(21)(A).

8. Defendant Rhode Island Office of Child Support Service's illegal denial and obstruction of access to Plaintiff's own child support case file that contains the incriminating illegal and arguably criminal scheme of removing the interest rate from the Title IV-D Program mandated and federally funded support record system to cover up the unlawful 12% compound interest from federal and Texas authorities, as well as from the Plaintiff in Texas, violates due process, obstructs justice, obstructs a federally funded and federal program proceeding, and the legal framework of Title IV-D of the Social Security Act, specifically, 42 U.S.C. § 654 and 42 U.S.C. § 666.

9. Judge Smith's dismissal of Texas Plaintiff's legal remedy monetary damages and breach of contract fraudulent inducement damages claims under Younger Abstention in this Court of law represents irreparable harm violative of the First Amendment, Fourth Amendment, Fifth Amendment, the Fourteenth Amendment, the Seventh Amendment and the First Amendment access to the Court. The undisputable fact remains, Plaintiff's legal remedy request for monetary damages in this court of law consisting of twenty-two causes of action that cannot be dismissed under Younger Abstention, namely monetary damages claims of breach of contract fraudulent inducement, breach of implied contract, unjust enrichment, misrepresentation,

negligent misrepresentation, intentional/fraudulent misrepresentation, common law bad faith, breach of the covenant of good faith and fair dealings, tortious breach of the covenant of good faith and fair dealings, breach of fraudulent concealment/common law fraud, concealed fraud, tort of deceit, reckless indifference to the rights of Plaintiff, deliberate indifference to the rights of Plaintiff, abuse of process, breach of duty, accounting fraud, fraud cover up, RI Government Tort Liability (R.I. Gen. Laws 9-31-1, *et seq*.), 42 U.S.C. § 1983 Claim for Reckless Indifference of Plaintiff's Clearly Established Constitutional Rights, 42 U.S.C. § 1983 claim of Fourth Amendment Illegal Seizure of Plaintiff's Texas Property, state tort of liability against defendants under 42 U.S.C. § 1983, Civil RICO [ECF 25].

10. Judge Smith's legally-unsupported and factually-unsupported, and "legally insufficient" opinion that the limited jurisdiction family court is an adequate forum to raise Plaintiff's federal legal damages claims of breach of contract et al., contravenes Rhode Island law: R.I. Gen Laws 8-10-3 makes clear that family court is not a court of general jurisdiction, can only conduct bench trials functioning as a court of equity, not of law, and prohibits family court from exercising jurisdiction over breach of contract claims et al between the Texas Plaintiff and the Defendants; family court lacks jurisdiction over the Plaintiff's federal causes of actions; lacks the jurisdiction to summon a jury for jury trial in a court of law.

11. Finally, but equally critically, twenty-one days post judgment Plaintiff discovered troubling new evidence on November 9, 2023, that Judge Smith appears to have impermissibly acted in favor of the interests of the defendants – he is automatically disqualified under 28 U.S.C. § 455, because as a partner in his past practice and firm, the state government and the Rhode Island Judiciary were not only his clients, but continue to be that firm's major client under a flat fee contract and he has knowledge of the defendants' actions in this action – as a major

Page 9 of 23

127

partner in his firm, the Rhode Island Judiciary is his and his form's past and current clients, the

state government actors and the state courts actors, cooperate in the routine establishment and

enforcement of 12% compound interest under the legal framework of Title IV-D Program of the

Social Security Act, where 12% compound interest is disallowed under 42 U.S.C. § 654(21)(A).

To the objective observer, having knowledge of the facts and circumstances of this case, and

being a partner in his past firm that continues to have the Rhode Island Judiciary as a client,

Judge Smith appears biased in favor of the defendants' interest to continue raking in state

revenue under the auspices of 42 U.S.C. § 654(21))(A) that explicitly disallows state debts of

12% compound interest assigned to Rhode Island that the state actors who cover up the 12%

compound rate by obstructing the noncustodial parent's access to her own child support case file

that is further violative of the due process provisions under 42 U.S.C. § 654 and §666, in Rhode

Island's federally funded operation with funds appropriated by Congress intended for the *lawful*

operation of Title IV-D of the Social Security Act.  Although under the judicial self-executing

expectation under 28 U.S.C. §455, the Texas Plaintiff is not expected to cull court records in the

Rhode Island state courts for judicial conflict of interest, nevertheless the Plaintiff in good faith

and diligently attempted to perform a remote search of Rhode Island's electronic court case

management system, Odyssey in 2023.  In so doing, Plaintiff discovered troubling newly-

discovered evidence that the Rhode Island Judiciary, while publicly representing that the 2014 $6

million state transition from paper courts to electronic courts promises *all court users* will be

able to call up court documents remotely from their mobile devices, in reality Rhode Island

adopted rules only denying the public and pro se litigants remote access to court case

information, including pro-se litigants' own case records, that both the public and all litigants

had equal statutory, common law and constitutional rights of access in paper courts – Judge

Smith's firm's clients, the Rhode Island Judiciary, therefore implemented electronic court public access denials that obstructed Plaintiff's and the public's discovery of Judge Smith's judicial disqualification regarding his former clients such as the state courts, the defendant state actors and other conflict entities.

### I. LEGAL STANDARD

11. The United States Supreme Court in 2020 reaffirmed, in *GEORGIA, ET AL., PETITIONERS v. PUBLIC.RESOURCE.ORG, INC*, 590 U.S. ___ (2020), the century-old government edicts doctrine, making clear that officials empowered to speak with the force of law cannot be the authors of—and therefore cannot monopolize access—the works they create in the course of their official duties. The U.S. Supreme Court previously applied that doctrine to hold that non-binding, explanatory legal materials when created by judges who possess the authority to make and interpret the law shall not monopolize access to it. *See Banks v. Manchester*, 128 U. S. 244 (1888). Tyler Technologies is a for profit organization that aims to facilitate public access to government judge-created records and legal materials. Tyler Technologies is contracted by the Rhode Island Judiciary to implement the State's electronic courts in 2013 and together, they both publicly represented that access to the contents of judge-created laws records will be readily called on mobile devices to *all* court users, namely, to the Public and to pro se litigants.

12. Under the government edicts doctrine, judges may not be considered the "authors" of the works they produce in the course of their official duties as judges. That rule applies regardless of whether a given material carries the force of law. In *Banks v. Manchester,* 128 U. S. 244 (1888) the Supreme Court concluded that "the judge who, in his judicial capacity, prepares the opinion or decision, the statement of the case and the syllabus or head note" cannot "be regarded as their author or their proprietor. *Banks*, 128 U. S, at 253 (emphasis in original).

Rather, "[t]he whole work done by the judges constitutes the authentic exposition and

interpretation of the law, which, binding every citizen, is free for publication to all." *Ibid.* (citing

*Nash v. Lathrop*, 142 Mass. 29, 6 N. E. 559 (1886)). These cases establish a straightforward rule:

Because judges are vested with the authority to make and interpret the law, they cannot be the

"author" of the works they prepare "in the discharge of their judicial duties." Banks, 128 U. S., at

253. This rule applies both to binding works (such as opinions) and to non-binding works (such

as headnotes and syllabi). *Ibid.* The animating principle behind this rule is that no one can own

the law. "Every citizen is presumed to know the law," and "it needs no argument to show . . . that

all should have free access" to its contents. *Nash,* 142 Mass., at 35, 6 N. E., at 560 (cited by

*Banks*, 128 U. S., at 253–254). Rather than attempting to catalog the materials that constitute

"the law," the doctrine bars the officials responsible for creating the law from being considered

the "author[s]" of "whatever work they perform in their capacity" as lawmakers. *Ibid.* (emphasis

added). Because these officials are generally empowered to make and interpret law, their "whole

work" is deemed part of the "authentic exposition and interpretation of the law" and must be

"free for publication to all." *Ibid.*

    13.  Rhode Island Judiciary and Tyler Technologies monopoly of publication of the

judge-created laws and their "whole works" making and interpreting the law that explicitly by

design deny access to the Public and to the Pro Se Litigant runs afoul of the government edicts

doctrine.

    14. Courts have long understood the government edicts doctrine to apply to legislative

materials. See, e.g., *Nash*, 142 Mass., at 35, 6 N. E., at 560 (judicial opinions and statutes stand

"on substantially the same footing" for purposes of the government edicts doctrine); moreover,

just as the doctrine applies to "whatever work [judges] perform in their capacity as judges,"

*Banks*, 128 U. S., at 253, it applies to whatever work judges perform in their capacity as judges. *Banks*, following *Wheaton* and the "judicial consensus" it inspired, denied publication monopoly protection to judicial opinions without excepting concurrences and dissents that carry no legal force. 128 U. S., at 253 (emphasis deleted). As every judge learns the hard way, "comments in [a] dissenting opinion" about legal principles and precedents "are just that: comments in a dissenting opinion." *Railroad Retirement Bd. v. Fritz,* 449 U. S. 166, 177, n. 10 (1980). Yet such comments are covered by the government edicts doctrine because they come from an official with authority to make and interpret the law. Indeed, *Banks* went even further and withheld publication monopoly protection from headnotes and syllabi produced by judges. 128 U. S., at 253. Surely these supplementary materials do not have the force of law, yet they are covered by the doctrine. The simplest explanation is the one *Banks* provided: These non-binding works are not copyrightable because of who creates them—judges acting in their judicial capacity. *See ibid.* The textual basis for the doctrine is the "authorship" requirement, which unsurprisingly focuses on—the author, the judges*.* The Supreme Court long ago interpreted the 'author" to be officials empowered to speak with the force of law. The doctrine distinguishes between some authors (who are empowered to speak with the force of law) and others (who are not). The Supreme Court explicitly rejects allowing the States to "monetize its entire suite of legislative and judicial history. With today's *digital tools*, States might even launch a subscription or pay-per-law service." See *Georgia v, Public Resources Org.* at 590 U. S. ____ (2020) It is obviously explicitly clear that the Supreme Court refers to the prohibition against the Rhode Island Judiciary and Tyler Technology's monopolization of the digital publication of DIGITAL COURT JUDICIAL COURT RECORDS that denies publication access of judge-created laws and their work materials to the Public and to Pro Se Litigants.

15. There is no legitimate Rhode Island government interest in the knowing illegal denial of access to the public and to pro se litigants the digital records of the Rhode Island Judiciary's and Tyler Technologies' illegal monopolization of digital publication of judge-created laws involving the establishment nor enforcement of unlawful 12% compound interest violative of explicitly clear 42 U.S.C. § 654(21)(A) within the legal framework of Title IV-D Program targeting noncustodial parties in Texas who are outside of Rhode Island that Rhode Island already knows is unenforceable in Texas, and thus had removed the 12% compound interest in 2018 calculated to cover it up from federal and Texas authorities. Rhode Island's abuse of the legal framework of the government edict doctrine and the legal framework of Title IV-D Program are diametrically at odds with the intent of Congress and binding caselaws of the U.S. Supreme Court. The civil conspiracy to cover up the illegal machinery of the digital electronic courts in Rhode Island is clear. *See Turner v. Rogers*, 131 S. Ct. 2507, 2518 (2011). *See Georgia v, Public Resources Org.* at 590 U. S. ____ (2020); *See* HOUSE COMM. WAYS & MEANS, Section 8: Child Support Enforcement Program, in 2004 GREEN BOOK: BACKGROUND MATERIAL AND DATA ON THE PROGRAMS WITHIN THE JURISDICTION OF THE COMMITTEE ON WAYS AND MEANS 8-1, 8-2 (2004). *See* Social Services Amendments of 1974, Pub. L. No. 93-647, § 101, 88 Stat. 2337, 2351. Where the mother receives public aid, federal and state governments will provide the child support payment to the mother and hold the father indebted to the government for that amount. In cases where the mother is not dependent on welfare, the government has largely stayed out of the fray. *See* HOUSE COMM. WAYS & MEANS, *supra* note 38. Yet, this case does not involve a welfare case, as the custodial father is wealthy, but the Defendants are motivated by retaliation against the Plaintiff for suing them ten years ago in <u>Seguin v. Chafee et al</u>., Civil No. 12-cv-708-JD (D.R.I. 2013), <u>Seguin v. Bedrosian</u>

et al, Civil No. 12-cv-614-JD (D.R.I. 2013), and Seguin v. Suttell et al, Civil No. 13-cv-95-JNL-

LM (D.R.I. 2013), in which Plaintiff sued them, *inter alia*, for monetary damages claims for

extortion by the Rhode Island state court's under color of state law abuse of the legal frame work

of another federal-funded human services program Violence Against Women Act, 34 U.S.C. §

12471 *et seq.*, through which Rhode Island demanded that Plaintiff pay the state court actor

$55,000.00 per visitation if she wanted to see her children in Rhode Island, because the state

court stated in writing they believed Plaintiff married "a rich oil man" in Texas, absent any other

legally sufficient basis.  Plaintiff had reported this *prima facie* extortion under color of state law

and under color of federal law 34 U.S.C. § 12471 *et seq.*, to the federal law enforcement

authorities, *e.g.*, the F.B.I. in Texas and the Office of the U.S. Department of Justice in Texas.

Here, Plaintiff's retaliation damages claims have been issues pending before the Court since

September 1, 2023 [ECF 25], at which point Judge Smith was disqualified under the self-

executing expectation under 28 U.S.C. § 455, additionally given the fact Judge Smith had also

self-recused from Seguin v. Chafee et al., Civil No. 12-cv-708-JD (D.R.I. 2013), Seguin v.

Bedrosian et al, Civil No. 12-cv-614-JD (D.R.I. 2013), and Seguin v. Suttell et al, Civil No. 13-

cv-95-JNL-LM (D.R.I. 2013) ten years ago.  *See In re Martinez-Catala,* 129 F.3d 213, 220 (1st

Cir. 1998) ("[under §455] the judge is expected to recuse sua sponte, where necessary, even if no

party has requested it").

## II. ARGUMENT

16. Plaintiff has appealed the Court's/Judge Smith's judgment in its entirety in the related

case, Seguin v, RI Office of Child Support Services et al Civil No. 23-cv-34-WES-PAS (D.R.I.

2023) and respectfully submits that she is likely to secure a complete reversal of this Court's

holding that the judicially created doctrine of Younger Abstention applies to the *dismissal* of her monetary damages and breach of contract damages claims.

17. Plaintiff further submits that she is likely to secure a complete reversal of this Court's in this case.

18. Conducting state proceedings funded by federal funding appropriated by Congress under Title IV of the Social Security Act in state monopolized electronic courts that violate the long-established government edict doctrine as it related to the Public's access of the digital publication of judge-created laws and violate the Constitution targeting Texas assets and Texas parties for illegal 12% compound interest involving fraudulent inducement that cannot be enforceable in Texas is the prima facie example of government fraud and government waste, warranting cut off from federal funding at the very minimum. Not even Judge Smith, friend of the Rhode Island Judiciary, can punt these egregious state activities to later addressment via the attention of the Supreme Court and to Congress Appropriation Committees, wrongfully using Younger Abstention.

19. Judge Smith's holding is defect in claiming without a shred of factual basis that Plaintiff can raise her federal monetary damages claims and fraudulent inducement breach of contract claims in the jurisdictionally defective Rhode Island family court, that R.I. Gen. Laws 8-10-3 plainly states the family court is *not* a court of general jurisdiction, and which lacks the jurisdiction over the controversy for legal relief of monetary damages tort claims and fraudulent inducement breach of contract damages claims over both the Plaintiff and all the named defendants.

20.  Plaintiff seeks a new trial or a stay pending appeal as Plaintiff's likelihood of success on appeal, together with the lopsided balance of hardships, weigh heavily in favor of granting the stay being sought pending appellate review.

**A. Plaintiff is Likely To Succeed On Appeal Of the Judgment Ordered By the Court:**

21. Although Plaintiff recognizes that the Court has ruled against her as to the scope of relief, Plaintiff is likely to succeed on appeal of those issues, and has raised serious legal questions and presented a substantial case. *See Arnold v. Garlock, Inc*., 278 F.3d 426, 438-39 (5th Cir. 2001).

22. Plaintiff incorporates by reference her prior remedy arguments.  Plaintiff reserves the right to make any and all arguments on appeal.

23. Among the substantial questions raised by Plaintiff is whether the Court erred in awarding Defendants dismissal of Plaintiff's monetary damages claim in this First Circuit under Younger Abstention and erred in failing to self-execute 28 U.S.C. § 455. And Plaintiff respectfully submits that she is likely to succeed on appeal in arguing that, in these circumstances, dismissal was not properly ordered in the particular circumstances of this case pursuant to established binding First Circuit caselaws on both the Court's errors applying Younger Abstention as well as judicial disqualification. *See DeMauro v. DeMauro,* 115 F.3d 94, 98 (1st Cir. 1997)**;** *In re Martinez-Catala,* 129 F.3d 213, 220 (1st Cir. 1998); *Quackenbush v. Allstate Ins. Co*., 517 U.S. 706 (1996).  *See* also *Allen v. La. State Bd. of Dentistry*, 835 F.2d 100, 104 (5th Cir. 1988). ("Younger abstention does not apply to claims for monetary damages.")

24. Absence of a new trial or a stay of the judgment will erode confidence in the

Judiciary in the First Circuit by creating an impression that it is violating national law regarding

the government edict doctrine and setting illegal new national policy regarding the Title IV-D

Program.  It may also have the effect of "encouraging forum shopping."  *Trump v. Hawaii,* 138

S. Ct. 2392, 2425 (2018) (Thomas, J., concurring). It further "undermines the judicial system's

goals of allowing the 'airing of competing views' and permitting multiple judges and circuits to

weigh in on significant issues."  *See* also *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20

(2008) (traditional remedial principles account for "the public interest" and "the balance of

equities"); *EME Homer City Generation, LP v. EPA*, 795 F.3d 118, 132 (D.C. Cir. 2015)

(Kavanaugh, J.) (declining to vacate unlawful agency action under the APA because "vacatur

could cause substantial disruption"). In this context, the dismissal of Plaintiff's state government

tort monetary damages claims entered by the Court could cause substantial disruption to the

*uniform* application of the legal framework of the Title IV-D Program Congress explicitly

intended.

25. The serious legal questions raised in this case regarding the scope of remedy go

beyond the questions of whether a Younger abstention is applicable to federal monetary damages

claims and or the feeble assertion of *comity* applied to the Rhode Island Judiciary and Tyler

Technology's gross violation of the government edict doctrine—and indeed, those questions

should not have even entered into this case. Here, among Plaintiff's challenges was to state

Judiciary, Tyler Technologies and agency actions, and Plaintiff pursued fraudulent inducement

breach of contract damages claims and tort monetary damages claims.  Instead, the Court at law

cannot vacate a federal statute—i.e., cannot "delete a previously enacted statute from the books"

such as 42 U.S.C. § 1983.  *See* also Jonathan F. Mitchell, The Writ-of-Erasure Fallacy, 104 Va.

L. Rev. 933, 936 (2018) ("The federal courts have no authority to erase a duly enacted law from the statute books, and they have no power to veto or suspend a statute. The power of judicial review is more limited." (footnotes omitted). Legal monetary damages relief under 42 U.S.C. § 1983 that would hold the Rhode Island state government accountable under the Rhode Island Government Tort Act for Rhode Island government actors' tortious actions violating the legal framework of the Title IV-D Program federal statutes targeting the Plaintiff in Texas was a legal remedy conferred by Congress to federal courts to grant legal relief appropriate in this case. The Court has an unflagging obligation to exercise jurisdiction conferred to it by Congress. *See Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013)

26. With respect, although the Court has entered a judgment otherwise, Plaintiff has demonstrated a likelihood of success on appeal of the Final Judgment sufficient to justify a stay of the judgment.

**B. The Balance of the Equities Overwhelmingly Favors the Requested New Trial or Stay**

27. The balance of the equities overwhelmingly favors a new trial or stay: The State of Rhode Island plainly lacks any legitimate interest in the State's systemic knowing violation of the government edict doctrine and violation of 42 U.S.C. § 654(21)(A) that they now target Plaintiff in Texas, and which they sought to cover up from federal and Texas authorities, as well as from Plaintiff, by knowingly and unlawfully removing interest from the automated support record system. Americans outside of Rhode Island re fraudulently, unlawfully and systemically fleeced by Rhode Island's illegal scheme that is illegally funded through the State's defrauding of the United States lying to the United States that these activities are eligible for federal funds

appropriated by Congress for the legal administration of Title IV Program of the Social Security Act.

28. Defendants will face no harm from Plaintiff's requested new trial or stay. The judgment that is specifically directed to and protects the prevailing Defendants from legal accountability of their illegal actions, is further issued by a disqualified judge, Judge Smith, who was the former counsel for the Defendants and a partner of the firm whose major client is the Rhode Island Judiciary, *e.g.*, Rhode Island state government entities, including the state courts and state agencies. The requested new trial or stay will thus impose no hardship on the prevailing Defendants at all.

29. By contrast, the public and the Plaintiff face significant harm if now new trial is ordered or the judgment is not stayed. As an initial matter, "any time a [government]" violates "statutes enacted by representatives of its people," the people "suffer a form of irreparable injury." *Maryland v. King,* 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted). But the harm here is much greater and more far-reaching. The government edict doctrine is willfully violated by the Rhode Island Judiciary and Tyler Technology in a civil conspiracy to cover up the illegal state family court creating judge-created laws ordering and enforcing 12% compound interest, aided and abetted by the Department of Human Services - Title IV-D requires the uniform application and compliance by participating States with the Social Security Act. Congress's as well as the United States through the Secretary of the U.S. Department of Health and Human Services' interest in the uniform compliance of 42 U.S.C. § 654(21)(A), § 654 and 42 U.S.C. § 666 are well established. The States are reimbursed 66% of the cost of operations through federal funding appropriated by Congress under Title IV-D of the Social Security Act. The Defendants' arbitrary illegal removal of the illegal unenforceable 12%

compound interest from the automated support record system and cover up of their illegal 12% compound interest scheme from the federal and Texas authorities targeting Texas properties and targeting the Plaintiff in Texas demonstrates Rhode Island government agencies (who are former clients of Judge Smith) knowingly committed criminal schemes illegally seizing Plaintiff's properties interstate in Texas that they know are violative of federal criminal codes and Texas civil and penal codes. *See,* e.g., Social Services Amendments of 1974 (1975 Act), Pub. L. No. 93-647, § 101(a), 88 Stat. 2351 (42 U.S.C. 651 et seq.) (adding Title IV-D to the Social Security Act). The program, which is administered by the United States Secretary of Health and Human Services (Secretary), provides that States with approved plans for child and spousal support that meet federal requirements are reimbursed by the federal government for a significant sixty-six percent (66%) of the costs of operating their child-support enforcement programs. 42 U.S.C. §v655(a)(2)(C). In 1975, Congress adopted Title IV-D, 42 U.S.C. §v651 *et seq*., and established the general statutory framework that exists today. See 1975 Act § 101(a), 88 Stat. 2351; *Blessing v. Freestone*, 520 U.S. 329, 333-335 (1997) (describing program). Congress ultimately set the federal share of reimbursable expenditures at 66%, 42 U.S.C. 655(a)(2), but expanded the availability of matching funds at the 90% level for State expenditures for automating data processing systems to improve "the monitoring of support payments, the maintenance of accurate records regarding the payment of support. Therefore, the Defendants' illegal operations cannot be funded by Congressional appropriations.

30. Judge Smith's failure to self-execute his disqualification under 28 U.S.C. § 455 as well as Canon 3E of the Code of Judicial Conduct, then his subsequent refusal to recuse in the related case, Seguin v, RI Office of Child Support Services et al Civil No. 23-cv-34-WES-PAS (D.R.I. 2023), upon Plaintiff's request after she raised newly discovered discovery post judgment

on October 6, 2023 of his direct and past public sector law practice's contract legal representation of the Defendants, state courts, state agencies and other conflict entities, have the appearance, to the objective observer, of the Court's issuance of judgment in favor of the Defendants in error that contravenes established First Circuit case law on Younger Abstention as well as disqualification, calculated to benefit the interests of his former clients, as partner of his former firm that represents the Rhode Island Judiciary and the state government.

31. Moreover, the Court's judgment effectively functions as a denial of Plaintiff's access to this Court of law to redress her legal monetary damages claims and fraudulent inducement breach of contract damages claims. It is well-settled that even minimal loss of First Amendment freedoms, "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976) (plurality)); *see* also *Elrod*, 427 U.S. at 373.; *N.Y. Times v. United States*, 403 U.S. 713, 715 (1971). Accordingly, Plaintiff has a strong likelihood of success on the merits, will suffer irreparable injury without a stay, and a stay will not injure others while furthering the public interest.

### III. CONCLUSION

27. For the foregoing reasons, Plaintiff has demonstrated a likelihood of success on appeal of the Judgment ordered, and has demonstrated that the balance of the equities favors a new trial or a stay. Plaintiff respectfully requests that the Court stay the final judgment for the duration of appellate proceedings relating to the related Seguin v, RI Office of Child Support Services et al Civil No. 23-cv-34-WES-PAS (D.R.I. 2023).

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 16, 2023, I filed the within Motion with the

Clerk of the Court via email.

Respectfully submitted,

Mary Seguin

Pro Se

/s/ *Mary Seguin*

Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

Dated: November 16, 2023

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

MARY SEGUIN,
*pro se*

*Plaintiff,*

VS.                                                    Civil Action No. 1:23-cv-126-WES-PAS


RHODE ISLAND DEPARTMENT OF HUMAN SERVICES in its official capacity; MICHAEL D. COLEMAN, DEBORAH A. BARCLAY in their individual and official capacities; RHODE ISLAND OFFICE OF CHILD SUPPORT SERVICES in its official capacity; KEVIN TIGHE, MONIQUE BONIN, FRANK DIBIASE, WENDY FOBERT, KARLA CABALLEROS, TIMOTHY FLYNN, LISA PINSONNEAULT, CARL BEAUREGARD, PRISCILLA GLUCKSMAN, JOHN LANGLOIS, PAUL GOULD, in their individual and official capacities; RHODE ISLAND STATE COURT SYSTEM in its official capacity; PAUL A. SUTTELL in his individual and official capacity as EXECUTIVE HEAD OF RHODE ISLAND STATE COURT SYSTEM; RHODE ISLAND ADMINISTRATIVE OFFICE OF STATE COURTS in its official capacity; RHODE ISLAND ADMINISTRATIVE OFFICE OF THE SUPERIOR COURT in its official capacity; RHODE ISLAND JUDICIAL COUNCIL in its official capacity; RHODE ISLAND SUPERIOR COURT in its official capacity; RHODE ISLAND SUPERIOR COURT JUDICIAL COUNCIL in its official capacity; THE JUDICIAL TECHNOLOGY CENTER in its official capacity; JULIE HAMIL, MARISA BROWN, JOHN JOSEPH BAXTER, JR., JUSTIN CORREA in their individual and official capacities; RHODE ISLAND OFFICE OF THE ATTORNEY GENERAL in its official capacity; RHODE ISLAND OFFICE OF THE ATTORNEY GENERAL OPEN GOVERNMENT UNIT in its official capacity; ADAM D. ROACH, PETER NERONHA in their official and individual capacities; TYLER TECHNOLOGIES, INC.; GERO MEYERSIEK

*Defendants*

## **MARY SEGUIN'S DECLARATION IN SUPPORT OF PLAINTIFF'S RULE 60(b) MOTION**


        I, MARY SEGUIN, hereby declare under penalty of perjury, pursuant to 28 U.S.C. sec. 1746(2) that the following statements are true and correct:

1. That I am the Plaintiff, Pro Se, in the above captioned matter.

2. That I exercised, am exercising and continue to exercise my statutory right to appear pro se party in the above captioned civil matter in federal court by statute 28 U.S.C. sec. 1654.

3. That in state proceedings in Rhode Island, I am required to comply with Rhode Island Article X. Rules Governing Electronic Filing, Rule 2. Official Court Record, (a) Official Court Record. "Upon the implementation of the Electronic Filing System ("EFS") in each court, all documents shall be filed electronically and shall be the official court record."

4. That the state proceedings in which I am a party are public and are not about child custody nor involve a minor.

5. That the **Rhode Island Family Court**, through its adoption and promulgation of **Administrative Order 2021-01 A2)** mandated that all child support interest matters shall be heard remotely via WebEx.  Further, **Administrative Order 2021-01 B1)** mandated that all non-emergency filings shall be filed using the electronic filing system in accordance with the Family Court Rules of Domestic Relations Procedure, which is the **Odyssey system**.

6. That the **"RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION, Rule 5. Access to Case Information, (c) Remote Access to Case Information. (1) Policy. To allow <u>limited</u> Remote Access to the Database through the Public Portal.  Non-public case types shall not be remotely accessible except for certain case types to attorneys who have entered an appearance in a case.  (2) Content. (a) The Public, Self-represented Litigants and Parties. The Public, self-represented litigants, and parties shall have Remote Access to the register of actions or Docket but shall <u>not</u> have Remote Access to other Electronic Case Information"** bar, deny, violate, abridge, infringe and interfere with Pro Se Litigants' and the Public's fundamental rights to access public court records and Pro Se Litigants' fundamental right to meaningful access to the courts.  See "<u>**RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION**</u>" **Rule 5(c)(2)(a)** "<u>**The Public, Self-represented Litigants and Parties. The Public, self-represented litigants, and parties shall have Remote Access to the register of actions or Docket but shall not have Remote Access to other Electronic Case Information.**</u>" See also "<u>**RHODE ISLAND JUDICIARY, Access to Case Information,  2. Remote Access to Case Information A. The Public, Self-represented Litigants, and Parties to a Case, The public, self-represented litigants, and parties in a case shall have remote access to the register of actions or docket but shall not have remote access to other electronic case information**</u>."

7. That I, the Plaintiff, learned and verified on July 10, 2023 directly from the Rhode Island Judiciary itself through numerous (14) correspondences with the Rhode Island Judiciary from June 10, 2023 to July 10, 2023, pursuant to my RI Access to Public Records Act ("APRA") request for public records from the Rhode Island Judiciary, that as a matter of State policy, State Court Rule, and Judiciary Rule, in  the digital courts implemented by the Rhode Island Judiciary, the State Court, the Rhode Island

Judiciary deny remote digital access of the Rhode Island Judiciary's monopolized publication of court and judicial records using the digital tool maintained and published by Tyler Technologies, Odyssey, including judge-created, judge-authored court decisions arising from state proceedings in the State's digital electronic courts, and digital court transcripts ordered by and paid by pro-se litigants that are published by the Judiciary digitally on Tyer Technologies' Odyssey are also denied access to the Public, pro-se litigants, and parties to the litigation (who are represented by counsel). The Rhode Island State Court only grants remote access to digital court and judicial records created by judges produced in digital courts to Rhode Island attorneys and state and federal agencies that are approved by the Rhode Island Judiciary's monopoly. On this matter, I corresponded in writing fourteen (14) APRA correspondence emails with Mr. Justin Correa, Esq. and Ms. Alexandra Kriss of the Rhode Island Judiciary from June 10, 2023 to July 10, 2023.

8. That the State Defendants in this matter electronically file all notices using another electronic filing system that is even separate and different from the EFS (Odyssey).

9. That the State Defendants' court electronic filings are not noticed to me in Texas.

10. That the State Defendants' court electronic filings are not visible to me on the Rhode Island courts' EFS.

11. That the State Defendants' court electronic filing court records cannot be accessed remotely by me, solely because I am a self-represented litigant.

12. That the State Defendants' court electronic filing court records cannot be accessed remotely by the public, by self-represented litigants, nor by parties to the case, but can be accessed remotely and instantly through the internet by attorneys in Rhode Island and state and federal agencies.

13. That the Rhode Island Court Clerks state to me over the phone that they are prohibited from reading the contents of the court records over the phone to me.

14. That the Rhode Island Court virtual clerks state to me over the phone that even they are unable to see or access the court record information of filings by the State Defendants from the virtual clerks' access portals.

15. That the Rhode Island Electronic Filing System, case management system, rules and practices outright and unconstitutionally restrict and deny access to the court to three classes: (1) the public; (2) pro-se litigants; (3) parties to the case (who are represented by counsel), and is obviously outright reserved for only the government and Rhode Island attorneys.

16. That the State Defendants have full knowledge of the egregious due process violations of the Rhode Island state court EFS.

17. That the State Defendants have full knowledge of the egregious due process violations of the Rhode Island state court EFS system/architecture/rules/practices, and

withdrew from my-initiated RI EOHHS agency appeal in 2022 in a scheme to procure a favorable judgment in a state proceeding that deny my federal constitutional and due process rights in Texas.

18. That the State Defendants have full knowledge of the egregious due process violations of the Rhode Island state court EFS system/architecture/rules/practices, and initiated the family court state proceeding on January 31, 2023 before the Covid Emergency Declaration was lifted.

19. That the State Defendants have full knowledge of the egregious due process violations of the Rhode Island state court EFS system/architecture/rules/practices that appear to **only allow remote, instant and full court access to a restricted club of R.I. lawyers and the government**, pose unconstitutional and undue burden on me, a citizen of Texas over 2,500 miles away.

20. That the State Defendant have full knowledge of the egregiously unfair due process violations of the Rhode Island state court EFS system/architecture/rules/practices that deny me access to the <u>required</u> **electronic court transcripts** prepared by the court reporter and electronically filed in the state EFS that **I ordered and paid for** for appeal, but the State Defendants have instant remote access by state court design.

21. That the State Defendants have full knowledge of the above unconstitutional restriction on access to court records and information to the public and non-lawyers is deliberate, by design and calculated to be unfair, violating constitutional guarantees of full and fair opportunity to raise claims in state proceedings.

22. That the above-raised unconstitutional restrictions are not exhaustive.

23. That my federal monetary damages claims on the unconstitutionality of the Rhode Island state court rules, practices and proceedings that violate the government edict doctrine and violate the pro-se litigants', such as my-self, federal constitutional rights: (1) federal constitutional right of equal access to the courts, (2) federal constitutional right to equal access to court records to receive information on the contents of all electronically filed notices, pleadings, court decisions, and transcripts that I myself ordered <u>and</u> paid for for appeal that are required to be electronically filed by state court rules and practices, (3) federal constitutional due process right and equal right to be given equal and timely notice of electronic filings and entries by the courts (including court decisions, court orders, court judgments, full docket entries, etc.) that the Rhode Island Judiciary deliberately deny by category all pro-se litigants access to court information, namely the contents of judicial/court records of cases to which I am the self-represented party, (4) federal constitutional due process right to be heard (Rhode Island Superior Court threatens me, the Texas pro-se plaintiff, with denial of my request to conduct WebEx hearings for the purpose of denying the Texas pro-se litigant access to the court and to be heard), (5) federal constitutional due process right to decision by a neutral decision-maker (the court that denies pro-se litigant

access to the court and the corollary opportunity to be heard fails the neutral decision-maker test). This list is not exhaustive.

24. That I seek to sue in federal court the State Defendants and add additional defendants.

25. I am an out-of-state diversity and a pro-se litigant in two state proceedings in Rhode Island, and have been unconstitutionally singled out by the State Judiciary, by category "self-represented litigant," to be barred from accessing electronic case information authored by judges and which the Judiciary has a monopoly in the publication of the judge-created laws in which state court cases I am the pro-se party, and therefore have standing to raise claims against this unconstitutional state practice and unconstitutional state court practice and rules. I understand the Rhode Island Judiciary's monopoly in the digital publication of judge-created laws in the Judiciary' implemented digital/electronic courts and the Judiciary's denial to the Public and to me from accessing the monopolized electronic publication of the judge-created laws in the court records violate the government edict doctrine.

26. Additionally, my fundamental First and Fourteenth Amendment constitutional right and common law right to equal, meaningful, and timely access to judicial records and public court records in litigation, given timely notice, adequate opportunity to be heard and to decision by a neutral decision-maker are fundamental First and Fourth Amendment and Fourteenth Amendment rights. Critically, the unconstitutional abridgement, infringement, and denial of judicial and court records to out-of-state pro-se litigants by the Rhode Island State Courts, Rhode Island State Judiciary and the Rhode Island Superior Court Bench Bar Committee directly relate to Younger Abstention Exception.

27. The State Defendants deliberately file all the State's pleadings outside of the State's electronic filing system, "Odyssey," and deliberately use a wholly different un-named electronic filing system, different and separate from that ("Odyssey") provided for pro-se litigants, so that pro-se litigants do not receive any requisite automated electronic notices of court motions or pleadings the State Defendants file electronically, nor are pro se litigants able to electronically access the content information of the State Defendants' electronically-filed pleadings. The only way the pro se litigant, such as me, the Texas Plaintiff, can access the court record is to personally go over 2,500 miles away to the courthouse in Rhode Island to access the court pleading information, or get a "courtesy notice" via email or get a "courtesy notice" through U.S. Mail sent by the State Defendants at whim. The State Defendants deliberately fail to send the notices electronically or by U.S. Mail, and the state courts deliberately promulgated court rules disallowing the public, pro-se litigants and even the parties who are represented by lawyers, remote access to court records, and critically, deny access to crucial court decisions, judgments and orders of public cases, as well as deny remote access to the transcripts ordered by pro-se litigants for appeal. Critically, the State court's abridgment and denial of access to court documents to the pro se litigant and the general public result in the

unconstitutional abridgment and denial of equal, timely and meaningful access to court complaints, decisions, judgments and orders.  What is truly shocking is that the Rhode Island Judiciary even denies and/or bars pro-se litigants remote access of court transcripts that were ordered by pro-se litigants for appeal.

28. Thirdly, the Texas Pro-Se Plaintiff discovered and verified the fact, on or about July 7, 2023, that the Rhode Island Judiciary, using the aforesaid state court rule barring, by category, pro-se litigants from accessing court case information remotely, bars the Plaintiff by category ("self-represented litigant") from accessing state court proceeding transcripts that the Texas Plaintiff ordered and paid for, for appeal.  In other words, the RI Supreme Court Clerk stated to the Texas Plaintiff that the Plaintiff, in Texas, is unconstitutionally barred from remotely accessing the transcripts of court proceedings that she ordered and paid for in her appeal to the RI Supreme Court in the Plaintiff-initiated APRA action **Seguin v. RI Office of Child Support Services, PC-22-07215**, and yet the State Defendants are inequitably granted instant and free remote access to those very transcripts that the Texas Plaintiff ordered and paid for, for appeal.  The federal Texas Plaintiff respectfully requests this Court the extension of time to present the new evidence and plead the verified facts.

29. Fourthly, the Texas Plaintiff discovered and verified the fact, on or about July 11, 2023, that, despite the Texas Plaintiff's several phone inquiries to the RI Superior Court in the past several weeks regarding the status of the appeal, the RI Superior Court, for undisclosed reasons, failed and continue to fail to relinquish jurisdiction and transfer the court case file of **Seguin v. RI Office of Child Support Services, PC-22-07215** to the RI Supreme Court within the requisite 60 days after Plaintiff's filing of Notice of Appeal on April 3, 2023, as required by the RI Supreme Court rules and procedures.  At the same time, the Texas Plaintiff verified the fact that the Plaintiff-ordered transcripts of the state proceedings in the Federal Plaintiff-initiated state APRA action **Seguin v. RI Office of Child Support Services, PC-22-07215** show the RI Superior Court further unconstitutionally sought to deny the Texas Plaintiff access to the state court and opportunity to be heard by outright threatening the Plaintiff in open court that the Judge, David Cruise, during the hearing of March 24, 2023 in that matter, shall use the state court's discretionary power in the future to deny all of the Texas pro-se Plaintiff's petitions for remote WebEx hearings to effectively deny her access to the state superior court.   The state court that denies court access and the opportunity to be heard fails the neutral-decision-maker test required under the Fourteenth Amendment.  I now specifically request further the Court to judicially notice that this court access denial and denial to be heard occurred on March 24, 2023, PRIOR to President Biden's lifting of the COVID-19 National Health Emergency Declaration.  I, the Texas Plaintiff, aver this is a direct contributory reason for the RI Superior Court's failure to transfer the case file to the Supreme Court within 60 days (by June 3, 2023) of the Plaintiff's filing of Notice of Appeal on April 3, 2023 in **Seguin v. RI Office of Child Support Services, PC-22-07215**.

30. Fifthly, the Plaintiff presents to this Court and respectfully requests the Court to take judicial notice of the undisputed fact of the court rule-making process in Rhode Island. The 1966 Rules were promulgated by the justices of the superior court pursuant to section 8-6-2 of the General Laws of Rhode Island. This enabling act departed from the Federal Rules Enabling Act and most state enabling legislation conferring rule-making power on the supreme courts of the respective governments. The Rhode Island Enabling Act was adopted in 1940, 1940 R.I. Pub. Laws ch. 943, sec. 1. It conferred the power on the justices of the superior court and the 1966 reform was the product of that court. In 1969 an amendment to section 8-6-2 made the Rules thereafter adopted by the trial courts subject to the approval of the Supreme Court. 1969 R.I. Pub. Laws ch. 239, sec 2. Therefore, all public records relating to the adoption and promulgation of the "RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION" are "made in the course of, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency, ""agency" or "public body" means any executive, legislative, judicial, regulatory, or administrative body of the state, or any political subdivision thereof" as per R.I. Gen. Laws § 38-2-2, a.k.a. RI Access to Public Records Act ("APRA"). Even though the Rhode Island Enabling Act conferred the power on the judiciary public body to promulgate and adopt court rules, a.k.a. rule-making process, the Rhode Island Judiciary, pursuant to the Plaintiff's APRA request for public records, denied the Plaintiff's APRA request within the 10 business day period, as well as denies it possesses public records, as defined by APRA, relating to the rule-making process by the judiciary of the "RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION," including denying possession of public records that show the intent of the rule-makers to promulgate and adopt court rules denying fundamental right of public access to electronic case information remotely to the public, to self-represented litigants, and to parties to a case. **See Exhibit D** fourteen (14) APRA correspondence emails between the Plaintiff and/with Mr. Justin Correa, Esq. and Ms. Alexandra Kriss of the Rhode Island Judiciary from June 10, 2023 to July 10, 2023. The Texas pro-se Plaintiff respectfully requests the extension of time to present the new evidence and plead the newly verified facts and claims, and amend the complaint, which is further in the interest of judicial economy. The Plaintiff further seeks to appeal and file her claim against the implausible denial by the RI Judiciary, which is conferred by the Rhode Island Enabling Act to make rules of the court, that it possesses public records relating to the "RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION," that the judiciary, conferred power by the Rhode Island Enabling Act, "made in the course of, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency, ""agency" or "public body" means any executive, legislative, judicial, regulatory, or administrative body of the state, or any political subdivision thereof" as per R.I. Gen. Laws § 38-2-2, a.k.a. RI Access to

Public Records Act ("APRA"). Because the RI Superior Court clearly ruled in **Seguin v. RI Office of Child Support Services, PC-22-07215** that it lacked subject matter jurisdiction to hear my/the Texas Plaintiff's APRA-related claims, I, the Texas Plaintiff, now exercise my statutory and constitutional rights to petition this Federal Court, invoking 28 U.S.C. § 1343(a)(3) (civil rights) and 28 U.S.C. § 1367 that provides supplemental jurisdiction over the state law tort claims that arose from the same common nuclei of facts, invoking 28 U.S.C. § 1331 (federal question), and invoking 42 U.S.C. § 1983 for violations of civil rights under the First, Fourth and Fourteenth Amendments to the United States Constitution. I, the Plaintiff, respectfully request this Court for the extension of time to file my claims.

31. Plaintiff discovered on October 6, 2023 that the Rhode Island Judiciary and Government Defendants are former clients of Judge Smith, a partner in his former firm, Edwards & Angell.

32. Plaintiff discovered on November 9, 2023 that the Rhode Isand Judiciary and Government Defendants are current clients of the firm Edwards & Angell, the former firm of Judge Smith, a partner in the firm.

33. A plain reading of 28 U.S.C. sec. 455 makes clear that Judge Smith is disqualified from this case, and a plain reading of case law makes clear that 28 U.S.C. sec. 455 is self-executing, without necessitating any party's request.


Respectfully submitted,

Date: November 16, 2023

MARY SEGUIN

*Mary Seguin*

Mary Seguin

P.O. Box 22022

Houston, TX 77019

maryseguin22022@gmail.com

## Kayla DaCruz

| | |
|---|---|
| **From:** | Mary Seguin <maryseguin22022@gmail.com> |
| **Sent:** | Friday, November 17, 2023 3:10 PM |
| **To:** | RID_ECF_INTAKE |
| **Subject:** | URGENT - TIME SENSITIVE - FILE TODAY RULE 60(b)(1) MOTION in Seguin v. Ri Dept of Human Services et al, Civil Action No. 1:23-cv-126-WES-PAS |
| **Attachments:** | CA 126 Rule 60(b)(1) Motion with Attachments FINAL 111723.pdf |
| | |
| **Categories:** | Being Worked On MK |

CAUTION - EXTERNAL:

Dear Clerks of the Court,

I spoke with Clerk Meghan today regarding an update on the docketing of my motions.

Following our discussion, I respectfully request the Clerk of the Court to docket today my attached Rule 60(b)(1) Motion, dated November 17, 2023, that is time-sensitive.

**Please make sure that my attached Rule 60(b)(1) Motion is docketed as ECF 32.**

Please make sure that the law is followed that my attached Rule 60(b)(1) Motion is NOT forwarded to Chambers prior to docketing.  I am NOT requesting the Court leave to file, since it is my right to file the attached Rule 60(b)(1) Motion.  No Chamber interference should be taking place to prevent the docketing of my attached Rule 60(b)(1) Motion.

Thank you for your assistance.

Respectfully Submitted,
Mary Seguin
Houston, Texas

---------- Forwarded message ---------
From: **Mary Seguin** <maryseguin22022@gmail.com>
Date: Fri, Nov 17, 2023 at 12:33 PM
Subject: Fwd: URGENT - TIME SENSITIVE - FILE TODAY RULE 59 MOTION in Seguin v. Ri Dept of Human Services et al, Civil Action No. 1:23-cv-126-WES-PAS
To: RID_ECF_INTAKE <RID_ECF_INTAKE@rid.uscourts.gov>

Dear Clerks of the Court,

I am respectfully following up on my Rule 59 Motion filing.

Yesterday, November 16, 2023, at 1:31 PM Central Time, I filed via email below, my Rule 59 Motion in the above captioned matter, Seguin v. Ri Dept of Human Services et al, Civil Action No. 1:23-cv-126-WES-PAS.  As indicated in my email below, I emphasized that docketing the Rule 59 Motion on November 16, 2023 is urgent, to comply with the 28 day filing post-judgment deadline, which my filing meets - November 16, 2023 is within the 28 day deadline of Fed. R. of Civ. P. 59 that tolls the time for filing an appeal.

I followed up with telephone calls to the Clerk's Office at 1:32 PM Central Time, and at 3:42 PM Central Time to request timely docket of my Rule 59 Motion, and the Clerk's Office assured me each time that a deputy clerk is working on it and that it will be docketed on the day it was received and that the docket will reflect the email date stamp of the day the Rule 59 Motion is received by email.  Further, I was told that **all filings** I email to the Clerk's Office will be docketed and considered by the Court as having been filed on the day that the motion was emailed to the Clerk's Office.

Therefore, my Rule 59 Motion emailed on November 16, 2023 should be accordingly docketed as **ECF 32** with the **entry of/stating filing on November 16, 2023**, in the above captioned matter, Seguin v. Ri Dept of Human Services et al, Civil Action No. 1:23-cv-126-WES-PAS.

However, as of this time, on November 17, 2023 almost 24 hours later, my Rule 59 Motion is still not docketed.

I would like to respectfully clarify that the Text Order dated October 19, 2023 in this matter states that only my electronic filing privilege was revoked, but there is **no** order requiring that I need to file for leave of Court to file any post-judgment motions, such as my Rule 59 Motion.

Today, November 17, 2023, I telephoned the Clerk's Office first thing at 8:00 AM Central Time, and spoke with Clerk Meghan, who informed me that yesterday she had forwarded my Rule 59 Motion to Chambers upon receipt, but has yet to hear back from Chambers, but did not know what was causing the hold up when I asked why Chambers' response is taking almost 24 hours which impacts the docketing date of the Rule 59 Motion.  I expressed my concern of the Rule 59 deadline, emphasizing that it tolls the time for filing an appeal, therefore I respectfully requested that the docket accurately reflects my timely filing of my Rule 59 Motion on November 16, 2023 (at 1:31 PM Central Time).

Additionally, I informed Clerk Meghan that I relied on the Clerk's Office's information provided above, and I had also filed a timely **Rule 60** Motion yesterday, **November 16, 2023**, at **4:39 PM Central Time**, similarly requesting docketing to reflect it was timely filed via email to on November 16, 2023.  I emphasized to Clerk Meghan that timeliness is critical, as Rule 60 Motion filed within 28 days post-judgment tolls the time for filing an appeal.  Clerk Meghan told me that my Rule 60 Motion was forwarded to Chambers as well.  According to the Clerk's Office's information, my **Rule 60 Motion** needs to be docketed/filed as **ECF 33, dated stamped filed on November 16, 2023**.

Due to the above information regarding the processing of my post-judgment motions, I expressed to Clerk Megghan my concern regarding the Court's procedure of forwarding my time-sensitive post-judgment motions to Chambers without docketing/filing, and then those time-sensitive motions seemingly to languish in Chambers past the date of the 28-day deadline stipulated by Rule 59, and Rule 60 as they relate to tolling the time for filing an appeal.  I expressed my explicit concern that I seek to preserve my right of appeal, and that I respectfully seek to preserve on the record the issues contained in my Rule 59 and Rule 60 Motions that are currently before Chambers, without docketing, by law within the jurisdiction of the U.S. District Court of Rhode Island.  My Rule 59 and Rule 60 Motions are not ex-parte or emergency motions.

Moreover, I expressed to Clerk Meghan my concern that the processing of my post-judgment motions forwarded to Chambers and seemingly pending before Chambers without the motions being docketed, impacts my right of appeal 30-days post judgment, and today, Friday, is Day 29.  I told the Clerk that under the circumstances in this matter, I seek to preserve for appeal the issues raised in my timely filed Rule 59 Motion and Rule 60 Motion, and that I seek to preserve my right to appeal within the 30-day postjudgment period.

I also discussed with the Clerk that my timely filed but undocketed Rule 59 Motion and Rule 60 Motion that were forwarded to and currently before Chambers cause an uncertain effect, impacting the date of my filing of Notice of Appeal, the deadline of which is November 18, 2023, a Saturday.   Based on the current facts and issues regarding simply docketing my filings on the record, I am concerned my rights of access to the Courts are impacted, and that my Notice of Appeal may also languish I do not believe any pro se litigant should be made to be uncertain of the timeliness of filing a

Notice of Appeal as a matter of right that is caused by inaction by Chambers on timely-filed Rule 59 and Rule 60 Motions that toll the time to file an appeal. I explicitly expressed my concern on the effect on my access to the Courts.

I respectfully request that this email communication regarding the filing/docketing of my Rule 59 Motion be docketed to accurately reflect the record on appeal along with the Rule 59 Motion at the time the Rule 59 Motion is docketed by the Clerk.

Thank you in advance for you assistance.

Respectfully submitted,
Mary Seguin

---------- Forwarded message ---------
From: **Mary Seguin** <maryseguin22022@gmail.com>
Date: Thu, Nov 16, 2023 at 1:31 PM
Subject: URGENT - TIME SENSITIVE - FILE TODAY RULE 59 MOTION in Seguin v. Ri Dept of Human Services et al, Civil Action No. 1:23-cv-126-WES-PAS
To: RID_ECF_INTAKE <RID_ECF_INTAKE@rid.uscourts.gov>

Dear Clerk of the Court,

Kindly urgently file today, November 16, 2023, my attached Rule 59 Motion in the above captioned case, Seguin v. Ri Dept of Human Services et al, Civil Action No. 1:23-cv-126-WES-PAS.

Because this Rule 59 Motion is time sensitive, kindly make sure that it is filed and docketed today, November 16, 2023. I do not have access to electronic filing, it appears.

Thank you in advance for your assistance.

Respectfully Submitted,
Mary Seguin
PO Box 22022
Houston, TX 77019
(281) 244-2016

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

MARY SEGUIN,
*pro se*

*Plaintiff,*

VS.                                  Civil Action No. 1:23-cv-126-WES-PAS
                                     U.S. Court of Appeals for the First Circuit Appeal No. 23-1967
                                                          Related Appeal No. 23-1978
                                                          Related Appeal No. 23-1851


RHODE ISLAND DEPARTMENT OF HUMAN SERVICES in its official capacity; MICHAEL
D. COLEMAN, DEBORAH A. BARCLAY in their individual and official capacities;
RHODE ISLAND OFFICE OF CHILD SUPPORT SERVICES in its official capacity; KEVIN
TIGHE, MONIQUE BONIN, FRANK DIBIASE, WENDY FOBERT, KARLA
CABALLEROS, TIMOTHY FLYNN, LISA PINSONNEAULT, CARL BEAUREGARD,
PRISCILLA GLUCKSMAN, JOHN LANGLOIS, PAUL GOULD, in their individual and
official capacities; RHODE ISLAND STATE COURT SYSTEM in its official capacity; PAUL
A. SUTTELL in his individual and official capacity as EXECUTIVE HEAD OF RHODE
ISLAND STATE COURT SYSTEM; RHODE ISLAND ADMINISTRATIVE OFFICE OF
STATE COURTS in its official capacity; RHODE ISLAND ADMINISTRATIVE OFFICE OF
THE SUPERIOR COURT in its official capacity; RHODE ISLAND JUDICIAL COUNCIL in
its official capacity; RHODE ISLAND SUPERIOR COURT in its official capacity; RHODE
ISLAND SUPERIOR COURT JUDICIAL COUNCIL in its official capacity; THE JUDICIAL
TECHNOLOGY CENTER in its official capacity; JULIE HAMIL, MARISA BROWN, JOHN
JOSEPH BAXTER, JR., JUSTIN CORREA in their individual and official capacities; RHODE
ISLAND OFFICE OF THE ATTORNEY GENERAL in its official capacity; RHODE ISLAND
OFFICE OF THE ATTORNEY GENERAL OPEN GOVERNMENT UNIT in its official
capacity; ADAM D. ROACH, PETER NERONHA in their official and individual capacities;
TYLER TECHNOLOGIES, INC.; GERO MEYERSIEK

        *Defendants*

### PLAINTIFF'S Fed. R. App. P. 4(a)(5) MOTION FOR EXTENSION OF TIME

Plaintiff, proceeding from and as a citizen of Texas, respectfully requests pursuant

to Fed. R. App. P. 4(a)(5) for an extension of time of 30 days to April 1, 2024 allowing the

Plaintiff adequate opportunity to consider the March 1, 2024 Order of the United States Court of

Appeals for the First Circuit, including but not limited to filing a Notice of Appeal or amend

Plaintiff's Notice of Appeal from the district court's post-judgment order in this matter. Plaintiff

reserves and preserves all applicable issues and her applicable appellate rights to be raised at the appropriate time in accordance with the laws of civil procedure governing this official federal proceeding. On the afternoon of March 1, 2024, Plaintiff received a court notice of the Order issued by the United States Court of Appeals for the First Circuit Appeal No. 23-1967. Plaintiff, proceeding from Texas and *pro se*, has not had an adequate opportunity to adequately review, consider or respond. Plaintiff files this herein motion for extension of time of 30 days allowing the Plaintiff adequate opportunity to do so.

Due to a pattern of Judge Smith's off-the-record issuances of instructions from ==November 16, 2023 to November 17, 2023== to the district court's clerks directing clerks to **not** docket Plaintiff's post-judgment Rule 59 and Rule 60(b) motion submissions via email ==**emailed and received by the district court on November 16, 2023**== and November 17, 2023, as well as due to Judge Smith's pattern of "construing" Plaintiff's aforesaid motion submission "emails as motions for leave to file" as the pretexts to **obstruct the docketing of said motions**, then to deny Plaintiff's emailed court submissions of timely post-judgment ==November 16, 2023== Rule 59 motion and Rule 60(b) motions submitted prior to Plaintiff's filing of the November 17, 2023 Notice of Appeal in this matter, Plaintiff herewith in good faith additionally certifies service of this motion for extension of time pursuant to Fed. R. App. P. 4(a)(5) to the Clerk of the Court of the United States Court of Appeals for the First Circuit, in a good faith and diligent showing of compliance with the Order of that First Circuit Appellate Court. The obvious undisputable fact remains that in this digital age of digital courts such as this instant court, written "emails construed as motions for leave to file" are nonetheless written motions, and written motions are per the law of civil procedure required to be docketed into the record in a federal court of record in an official federal proceeding.

Furthermore, Plaintiff emphasizes that since Plaintiff has not had an adequate opportunity to review the First Circuit Court's Order in the compressed time of a mere few hours and it appearing from the Order that there is only a few hours to act on an impending deadline in these extraordinary circumstances, therefore Plaintiff is moving the district court for an extension of time to allow Plaintiff the opportunity to adequately review and consider the Order, including but not limited to consider whether to file a notice of appeal or amend her notice of appeal.

**WHEREFORE**, Plaintiff requests this district Court for an extension of time of 30 days to April 1, 2024 to allow the Plaintiff an adequate time and opportunity to review and consider the First Circuit's Order, including but not limited to filing a Notice of Appeal or amend the Notice of Appeal in this matter.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 1, 2024, I filed the within Motion with the Clerk of the Court via email at RID_ECF_INTAKE@rid.uscourts.gov and with the Clerk of the Court of the United States Court of Appeals for the First Circuit at CA01ECFHelpDesk@ca1.uscourts.gov

Respectfully submitted,

Mary Seguin

Pro Se

/s/    *Mary Seguin*

Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

Dated: March 1, 2024