THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT
Appeal from the United States District Court for the District of Rhode Island

MARY SEGUIN                                        No. 24-1313
*Plaintiff-Appellant*                              No. 23-1967
v.

RHODE ISLAND DEPARTMENT OF HUMAN SERVICES, et al.
*Defendants-Appellees*

_____

**APPELLANT'S MOTION TO CONSOLIDATE RELATED APPEALS**

**And**

**APPELLANT'S MOTION TO TREAT THIS APPEAL AS AMENDMENT
TO APPEAL No. 23-1967**

**And**

**APPELLANT'S MOTION TO WAIVE FEES**

_____

**ORGANIZED FRAUD, THEFT OF PUBLIC MONEY AND
GOVERNMENT PROGRAMS INVOLVING BILLIONS OF DOLLARS**

**Unlawful Interstate Collection of Unlawful 12% Compound Interest
Including Through Computer Crimes Tampering With Government
Computer Data and Information, and Causing the Falsified Data and
Certification to be Transmitted To Submit Claims For Payment With
Knowledge Of Their Falsity Within the Title IV-D Legal Framework
Involving Organized Felonious Acts by Appellees and Misprision of Felony by
Appellee Counsels**

==**SWEEPING STRUCTURAL ERROR AND FORENSIC MISCONDUCT**==


This case is related to the Appeal Case Numbers 23-1967 and 23-1978.


==***This Court must not lose sight of the factual and procedural reason <u>why this</u>***==

==***appeal No. 24-1313 is before this Court <u>in the first place</u>***==, as will be discussed in

Paragraph 6, pages 18-20.  Only a **structurally defective** due process violative district court that issued the ***functus officio*** February 1, 2024 district court order in the first place would enter a ***functus officio*** **FRAP 4 extension** *denial* **that fundamentally** *denied this* **Court's March 1, 2024 court ordered** *explicit* **due process instruction to file a FRAP 4 motion for enlargement of time in district court in order to allow Plaintiff-Appellant the due process adequate opportunity to consider and** *respond* **to** *this appellate* **Court as the Court ordered.**  This show of sweeping prejudicial behavior by a ***functus officio*** district court former State Appellees counsel shocks the judicial instinct to allow the judgment to stand, that reveals actual bias and constitutes structural error by the former counsel**s** from the current firm (formerly known as Edwards & Angell) of the current regular outside counsels of the State Appellees sitting in district court that affected Appellant's substantial rights, the integrity of the judiciary, and the structural integrity of the district court are implicated, that is *crucially* on appeal.

**Plaintiff-Appellant, MARY SEGUIN, hereby respectfully moves to consolidate the two above-captioned appeals, Appeal No. 23-1967 and No. 24-1313, which arise from the same district court case and involve related issues. No briefing schedule has yet been issued in either matter, and Plaintiff-Appellant respectfully asks that a single briefing and argument schedule govern the matter as consolidated.  The two appeals not only arise from the**

same proceeding but involve closely related issues.  Separate briefing of the two appeals would involve duplicative filings and would waste the resources of the parties and the Court.

Moreover, Plaintiff-Appellant respectfully moves the Court to treat Appeal No. 24-1313 as the Plaintiff-Appellant's intended amendment to the pending No. 23-1967 appeal due to the fact that the Court in No. 23-1967 in its Order dated March 1, 2024 (Document No.: 00118115155) ordered the Plaintiff-Appellant to respond whether the Plaintiff-Appellant intended to "amend the appeal," to Whom the Plaintiff-Appellant responded in the **affirmative** (*see* "APPELLANT'S NOTICE INFORMING THE COURT OF APPELLANT'S INTENT TO FILE NOTICE OF APPEAL OR AMENDED NOTICE OF APPEAL, Document No. 00118117753.  Plaintiff-Appellant subsequently showed the Court in her Show Cause filed in the related Appeal No. 23-1978, that also arises out of functus officio void district order, "Appellant's Show Cause in Support of Appellant's Motion to Consolidate" Doc. No. 00118126723 dated March 31, 2024, and "Appellant's Supplemental Show Cause" dated April 2, 2024, showing the district court's *functus officio* orders dated November 20, 2023 and February 1, 2024 are **void**).  Therefore, in a district court devoid of structural error and forensic misconduct, this appeal, No. 24-1313, would plainly serve as Plaintiff-Appellant's Court-affirmed filing

of Appellant's "amended notice of appeal from the district court's post-judgment order."

Pursuant to ==Fed. R. of Appellate P 4(a)(4)(B)(iii)== that prescribes "No additional fee is required to file an amended notice," Plaintiff-Appellant respectfully moves the Court to waive the filing fee.

## I.     STRUCTURAL ERROR/BIAS and FORENSIC MISCONDUCT

### A. Extent of Structural Bias and Forensic Misconduct by persons representing or in partner with the State in the Rhode Island Jurisdiction

1. The district court case underlying both appeals arises out of monetary claims for sweeping forensic misconduct and structural bias by the Defendants-Appellees involved in their corrupt administration of an Act of Congress, namely Part D of Title IV of the Social Security Act, implemented in response to 1996 Amendments.

2. At issue in No. 23-1967 are both the "mechanisms or pathology or systemic pervasion" of forensic misconduct by the Defendant-Appellees and the State Appellees' counsels, including the Rhode Island Attorney General who is named Defendant, as well as the sweeping extent of forensic misconduct that infect persons, including applicable officers of the court at *both* the state and federal levels, in the Rhode Island jurisdiction, who appear to agree to, and/or participate in feloniously *concealing* the sweeping forensic misconduct and structural defect evidence of Rhode Island's unlawful 12% compound interest disallowed by 42

U.S.C. § 654(21)(A), and *how* -  namely making false claims to the United States for federal funds and to criminally conceal the substantial accrued penalties and owing to the United States for violating Part D of Title IV of the Social Security Act, intentionally making false claims, that involves tampering of, falsifying and transmitting of false computer Government records submitted for the purpose of defrauding the United States, the Receiving State (such as Texas) and the interstate support obligor (such as the Texas Plaintiff-Appellant) under 42 U.S.C. §§ 651-669, Part D of Title IV of the Social Security Act legal frame work.  As of September 1, 2023 the time of the filing of the Amended Complaint (ECF 25) that factually alleges the unlawful 12% compound interest being concealed, Plaintiff-Appellant identified several pages of documents that splashed as a warning reminder the state policy stating, "It is *undesirable*…to charge interest in interstate cases," yet all the State Appellees produced was ONE single computer *report* of accounting that failed to show the "$0.00" interest displayed on the computer online account in Plaintiff-Appellant's online support account on December 6, 2021 – *see* paragraph 94, pg. 40 of Amended Complaint; Plaintiff-Appellant therefore realized, as is consistent with the pattern of Appellee's public record denial alleged in the Amended Complaint, that the Appellees and their counsels unlawfully withheld and criminally concealed material and vital information of criminal forensic misconduct and structural bias, including information directly

showing government record (computer) tampering and falsification, and whether

multiple (computer) reports are generated or run showing different manipulated

figures for the same account, and how interstate case records are manipulated

based on the bannered state policy "*undesirable*…. to charge interest in interstate

cases" – therefore, when the underlying district court case was *sua sponte*

dismissed by the former Appellee-outside-counsel (who appears to have direct

knowledge of employee incentives driven in part by increasing revenue from

support collection – *e.g., see* 42 U.S.C. § 655), Public Law Practice Partner

during the 1996-2002 period when the attached record tampering state policy was

implemented in response to Congress's requirement to implement the penalty-

incurring 1996 Amendment regulations (*see* 42 U.S.C. § 654(24) and 42 U.S.C. §

655), Plaintiff-Appellant continued her search for the concealed withheld evidence.

A withheld evidence was available in 2024, that Plaintiff-Appellant attaches hereto

under Exhibit I, and had notified the Government pursuant to 18 U.S.C. § 4 in this

matter in mid-March 2024, since the coordinated acts are felonies under federal

law (and state law, *e.g.*, R.I.G.L.§ 11-52-1 et seq., but the coordinated sweeping

and self-dealing structural defect and forensic misconduct show this Court that the

coordinated self-dealing renders the Appellee Rhode Island Attorney General and

Appellee counsel glaringly disinterested in enforcing the state's laws).  This case is

in regards to the organized fraud, theft of public money and government programs

involving billions of dollars by the 42 U.S.C. § 654 regulated political subdivision persons and partner private persons named in the action, through the obstruction of justice felonious and corrupt interstate collection of unlawful 12% compound interest that involved the felonious tampering of the state (federally funded) and federal Title IV-D automated data processing system (computer) and felonious false certifications to TEXAS (computer and mail) and the United States (computer and mail) by State Policy, defrauding and harming and victimizing the Appellant within the Title IV-D Legal Framework Involving Felonious Acts by the Appellees and Misprision of Felony by Appellee Counsels and the district court judge William E. Smith, a former Public Law Practice Partner of Edwards & Angell having the appearance of and/or appearance of agreeing with and having knowledge and advisement on the State Appellees' development, adoption and implementation of the **State Policy,** attached hereto in **Exhibit I**, from 1996-2002, who endeavors to interfere with Appeal No. 23-1967 through corrupt ***functus officio*** void acts, including but not limited to, instructing the district court clerk to tamper with the federal appellate record on appeal in Appeal No. 23-1967 and No, 23-1978 in two official judicial proceedings that are protected by 18 U.S.C. § 503. Appellant attaches **ECF 33** hereto **Exhibit II** that conclusively shows, per certification by the district court clerk, there were ***no pending motions*** at the time of the filing by Appellant of the Notice of Appeal ECF 32 on November 17, 2023.

3.  Moreover, the sweepingly breathtaking series of ***functus officio underlying district court*** orders on appeal issued by Judge William E. Smith, a disqualified biased judge – and the State Appellees and their counsels' coordinated participation, is at issue in both No. 23-1967 and 24-1313 appeals.  As the Supreme Court observed in *Griggs v. Provident Consumer Discount Co*., 459 U.S. 56, 58, 103 S. Ct. 400, 74 L. Ed. 2d 225 (1982), "the filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  Of the several issues raised and on appeal is the **structural bias**, or **structural defect**, namely the conflict of interest due process violations against Appellant's Federal Constitutional due process rights exerted time again by the ***functus officio*** district court judge William Smith in the matter relating to the appearance of and/or knowledge of or his former firm's knowledge, advisement on, concealment of, and agreeing to advisement on or concealment of the Appellees' state policy (*see* Exhibit I) in interstate Title IV-D support cases, such as that at issue in this matter, to tamper with, alter, remove, adjust, falsify official government records stored in the federal mandated computer system, that is paid for by federal funds, in the Appellees' corrupt administration of an Act of Congress, namely, Title IV Part D of the Social Security Act after 1996, when Congress enacted substantial monetary penalties ***payable to the United States***

against Title IV-D participating **_persons_** who are in good faith noncompliant but

violate 42 U.S.C. § 654(24) and 42 U.S.C. § 654(27), and moreover explicitly

made eligibility for federal funding participation **contingent** on the Rhode Island

Appellees-compliance with **_all_** provisions of Part D of Title IV of the Social

Security Act, such as 42 U.S.C. § 654(21)(A) allowing for only 3-6% simple

interest (that **must** be structurally implemented in the requisite Part D

*COMPUTER*) – not the usurious 12% compound interest Rhode Island Appellees

intentionally and falsely claim in order to defraud intrastate and interstate support

obligors, such as the Appellant – Congress in its 1996 Amendments moreover

explicitly prescribed Part D of Title IV of the Social Security Act preempts all

participating states' state laws and state constitutions.  **The State Policy attached

to Exhibit I makes it glaringly obvious that the State Appellees deliberately

implemented the Rhode Island computer with the explicit feature to

manipulate and tamper with the interest data field for the purpose of

removing and concealing the unlawful 12% compound interest and to run

multiple reports for the varied manipulated computer data – to wit, for

example, the specific instructions to input "N" to "zero out" interest**.  The

issue of self-dealing, impartiality and conflict of interest of state attorneys

prosecuting the support who affirmatively caused the multiple manipulation of the

computer data and the impartiality of officers of the court in the jurisdiction of

Rhode Island that participate in the sweeping false claims, and the corollary acts

encompassing obstruction of justice and fraud on the court is on appeal – they go

towards the issue of Younger Abstention and the corollary exceptions that are

under appeal in the pending Appeal No. 23-1967. In both appeals are the issues of

requisite due process impartiality, self-dealing and the requirement of a hearing

under Fed. R. Evid. 201(e) on the state policy evidence that goes towards the issue

of due process impartiality protection the Court must safeguard in order to lawfully

address the issues of self-dealing by both state and federal officers of the court

calculated to conceal the extent of the agreed upon forensic misconduct that create

sweeping structural defects in the jurisdiction of Rhode Island consisting of

coordinated efforts, acts and fraud on the United States and on the Appellant, along

with the agreed upon effort to ***obstruct shining a light on the agreed to*** criminal

coordination of federal record tampering in order to conceal the incurred and the

accrued penalties and moneys owed by the Rhode Island Appellees to the United

States and the corollary false claims, and ultimately interstate defraud of the

Appellant and the corollary false claims, are further explicit in Appellant's rule

60(b) motion filed in the district court in April 2024, and the functus officio final

text orders dated April 23rd and April 25th of 2024 that clearly are ***not*** provisional

nor indicative, which are on appeal. The issue of holding the Appellant-requested

"entitled" hearing by right under Fed. R. Evid. 201(e) on the merits of the extent of

the coordination of fraud evidenced in the state policy that are further ***related*** to the appearance of the impartiality of judge Smith, including the issue of his knowledge or agreement to conceal the state policy is categorically a central due process requirement.   Additionally, the issue of the disqualification of the Rhode Island Attorney General (and the "firm" of the Office of the Rhode Island Attorney General) and district court Judge William Smith, along with the issue of the required referral of their corrupt participation, knowledge of, agreement relating to, appearance of participation of, appearance of knowledge of, appearance of agreement relating to, and concealment thereof or the appearance of the concealment thereof, and the corollary necessary referral of the false claim matter by a judge of the United States, such as the ***functus officio*** Judge William Smith, to the United States Attorney General Merrick Garland under 18 U.S.C. § 4 misprision of felony and 18 U.S.C. § 666 are under appeal.

In this matter as of mid-March 2024 in Appeal No. 23-1967 and 1978, pursuant to the explicit invocation of 18 U.S.C. § 4 and 18 U.S.C. § 666, the Appellant has notified the Government of the explicit issue in this appeal concerning Rhode Island Appellees' coordinated and collective false claims to the United States and false claims to the Appellant that are corollary to the false claims to the United States through state policy-described routine false certification, fraud and the corrupt manual manipulation, falsifying and tampering of government records,

including tampering and altering government records stored in the federally funded computer system mandated under 42 U.S.C. § 654, abusing the legal framework of Title IV-D of the Social Security Act that ultimately destroys the integrity and reliability of the Title IV-D Central Registry. The Appellees' computer crimes moreover violate federal and state criminal and civil laws, and Appellant's Rhode Island statutory right to civil remedy in the district court under R.I. Gen. Laws § 11-52-6 is moreover obstructed and delayed and injured by the conflicted, partial district court judge William Smith.

The palpable *pattern* of corrupt *functus officio* void acts in the district court is under appeal here, and is related to Appeal No. 23-1967 through the pattern of corrupt *functus officio* void acts instructing the district court clerk to tamper with the record on appeal in Appeal No. 23-1967 and No, 23-1978 in two official judicial proceedings that are protected by 18 U.S.C. § 503.

Appellant had attached to the Docket Statement in Appeal No. 24-1313 the district court case's **ECF 33** attached to <u>**Exhibit II**</u> that conclusively shows, per certification by the district court clerk, there were *no pending motions* at the time of the filing by Appellant of the Notice of Appeal ECF 32 on November 17, 2023.

Moreover, in the district court case no. 23-cv-126 the district court judge's *functus officio* conduct on appeal here flows forth from the same pattern of

obstruction of justice *functus officio* conduct on appeal in Appeal No. 23-1978 consisting of judge Smith's tampering with the record on appeal, and the similarly obstruction of justice conduct by district court judge William E. Smith **_prior_** to the filing of the Notice of Appeal (ECF 32), that is on appeal in Appeal No. 23-1967 and in Appeal No. 23-1978, through the district court judge's obstruction of justice instructions to the clerks of the district court Meghan Kenny **not** to docket Appellant's two timely Rule 59 motions filed on November 16, 2023 in violation, among others, of Fed. R. Civ. P 79, thus already tampering with the record on appeal and obstructing the appellate court's administration of justice *prior* to the filing of the notice of appeal.

Counsels for Appellees violated, among others, 18 U.S.C. § 4, by failing to make known to the explicitly named federal authorities in section 4 the commission of the above, including to the judges of this United States Appellate Court in the First Circuit.  Counsels for State Appellees here are principals of the district court's perversion of justice scheme by continuing to file "objections" into a divested jurisdiction district court in 23-cv-126 post-appeal after November 17, 2023 while the appeals were pending in Appeal No. 23-1967 and No. 23-1978.

This Appellate Court has, and the judges in this United States Court of Appeals in the First Circuit have the duty to protect the pending government proceedings or appellate judicial proceedings in Appeal No. 23-1851, 23-1967 and No. 23-1978

pursuant to, among others, 18 U.S.C. § 503 and 18 U.S.C. § 4, from *functus officio* orders by the district court officers of the court, both federal and state in the jurisdiction of Rhode Island, where the agreed to coordinated tampering of government records stored in the computer system mandated by 42 U.S.C. § 654 and the falsified certifications of compliance and remission of false records to the receiving State under 42 U.S.C. § 666(14) and 45 CFR 303.7(c), the State of Texas, are falsified in 2018, 2019, 2020, 2021, 2022, 2023, 2024 for the purpose of the Appellees' false claims scheme to defraud the United States, defraud the Appellant and targeted support obligors, pursuant to Rhode Island Appellees' official policy, going so far as proscribing in policy detail as to how to manipulate government records stored in the Title IV-D computer "by input N" in order to zero out the unlawful 12% compound interest in the computer, for the purpose of manipulating the government record to show there is no interest in interstate cases (when the underlying order knowingly ordered the unlawful interest) that all complicit persons coordinate in order to conceal the organized false claims defrauding the United States, defrauding receiving States such as Texas, and defrauding support obligors such as the Appellant, as evidenced in the attached state policy in Exhibit I. Then, Appellees manipulate the computer records by manually inputting the unlawful 12% compound interest back on the system to make false claim to defraud support obligors of the unlawful 12% compound

interest. Then, Appellees manipulate the computer records to generate a false

report falsely showing there is no unlawful 12% compound interest and that

Appellees are Title IV-D compliant in order to make false claims for Title IV

federal funds, including TANF funding and incentive payments under 42 U.S.C. §

655, and in order to conceal the substantial penalties accrued and owing to the

United States since 1988 (and all other applicable penalties on the criminal

conduct), and to make false claims for federal 66% reimbursement for the

operation of the Appellees' coordinated criminal enterprise defrauding the United

States and defrauding support obligors using the Title IV-D legal framework.

### B. <u>Sweeping Structural Defects and Irreparable Harm to Public Interest</u>

4. Structural defect arising from self-dealing biased state prosecuting counsels

and self-dealing biased judges triggers automatic reversal. *See United States v.*

*Davila,* 569 U.S. 597, 611 (2013); *Gonzalez v. United States*, 553 U.S. 242, 252-53

(2008); *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1903 (2017). This Court is

presented with evidence that after directly manipulating and tampering with

government computer records zeroing out interest, the state prosecuting counsels

run to the state family court to "enforce" their false and manipulated computer

records labeling it "support owing" because state judges had ordered the unlawful

12% compound interest that required the state prosecuting counsels to manipulate

the government computer records (zero out the interest) for the purpose of

concealing it – since the state judges knowingly ordered the underlying 12% compound interest, the actions of the state prosecuting counsels show they fundamentally believe they are *entitled* to expect the state judges to "judicially lawfully officialize" their routine manipulating the computer and putting the interest back on the computer by issuance of an "order" *and* concealment and the withholding of record tampering record evidence – as they say they have always "routinely done it" and they say the state judges have always "routinely" done it – sweepingly said by the state's officers of the court in writing in state digital court records that this Court should judicially notice, which It ought to have access and surely should not be denied access.  The sweeping self-dealing that infects the blatant sweeping structural defect cannot be more odious to our collective National Public Interest – this corrupt self-dealing involving forensic misconduct and sweeping structural defect administration of an Act of Congress deals an irreparable harm to the integrity of the federal-state cooperative Title IV-D public program.

5.  Moreover, having an impartial judge in the federal forum is on appeal.  *E.g.*, see *Arizona v. Fulminante*, 499 U.S. at 309, (citing *Gideon v. Wainright*, 372 U.S. 335 (1963)).  The structural integrity is obviously affected by the palpable **pattern** of district court **functus officio** orders interfering with not just one, but **TWO** pending appeals (No. 23-1967 and No. 23-1978) intended to inflict foundational

damage arising from the same underlying district court case. *Id.* at 310 (quoting *Rose v. Clark*, 478 U.S. 570, 577-78 (1986)). This Court must not lose sight of the fact that the constitutional framework of this 42 U.S.C. § 1983 action is being actively damaged by an apparent complicit former counsel of the State Appellees at the time of the development and implementation of the State Policy and its precursors formed in response to Title IV-D's 1996 Amendments sitting in the district court, having the appearance of agreeing to, knowledge of, and advisement on the attached State Policy from 1996-2002, its formulation, its implementation, and its operations. A new trial must be had. The palpable ***pattern*** of bias arising from the palpable ***pattern*** of "former State Appellee counsel sitting in district court" ***functus officio*** orders interfering with ***three*** pending appeals in which the concealed State Policy attached hereto in Exhibit I is materially at issue constitutes judicial misconduct because "a reasonable [person] would entertain doubts concerning the judge's impartiality."

6. Judicial bias falls under the umbrella of judicial misconduct. A fair tribunal is a basic requirement of due process. This "most basic tenet of our judicial system helps to ensure both the litigants' and the public's confidence that each case has been adjudicated by a neutral and detached arbiter." (*Hurles v. Ryan* (2014) 752 F.3d 768, 788.) Although fairness "requires an absence of actual bias in the trial of cases," it is "endeavored to prevent even the probability of unfairness." (*In re*

*Murchison* (1955) 349 U.S. 133, 136, 137, 139); see also *Greenway v. Schriro* (9th

Cir. 2011) 653 F.3d 790, 806 ["[a] showing of judicial requires facts sufficient to

create an appearance of impropriety"].)  Here, on March 1, 2024, this appellate

Court on or about 4:30 PM on a Friday, the eve of the 30 day deadline to file an

amended Notice of Appeal on the ***functus officio*** February 1, 2024 district court

order, issued an eleventh hour order that not only vacated last-minute the briefing

schedule, but *materially* instructed the Plaintiff-Appellant to **respond to the Court**

regarding Plaintiff-Appellant's intent to file an amended Notice of Appeal - and

given the late hour court instruction, explicitly spelled out the Fed. R. App. P 4

rules for Plaintiff-Appellant to file an extension in the ***functus officio*** district court

to allow Plaintiff-Appellant a due process opportunity to **consider** and ***respond to***

the Court's eleventh hour order.  This Court's last-minute eleventh hour ordering

an ***affirmative*** responsive action by the Plaintiff-Appellant is critical – it would

violate due process to require the Plaintiff-Appellant to respond on an issue

concerning Plaintiff-Appellant's right of appeal within 24 hours, therefore, the

Court explicitly spelled out FRAP 4 instructing the Plaintiff-Appellant to file for

an extension of time in the district court.  Only a structurally defective district

court that issued the ***functus officio*** February 1, 2024 in the first place would enter

a ***functus officio*** **FRAP 4 extension** *denial* **that fundamentally** *denied this*

**Court's March 1, 2024 court ordered** *explicit* **due process instruction to file a**

**FRAP 4 motion for enlargement of time in district court in order to allow Plaintiff-Appellant the due process adequate opportunity to consider and _respond_ to the Court as the Court ordered.**

*This Court must not lose sight of why this appeal No. 24-1313 is before this Court in the first place*.  This show of sweeping prejudicial behavior by a *functus officio* district court former State Appellee counsel shocks the judicial instinct to allow the judgment to stand, revealing actual bias, and constitute structural error by the former counsels from the current firm (formerly known as Edwards & Angell) of the current regular outside counsels of the State Appellees sitting in district court that *affected the framework* infecting the conduct of the trial court from beginning to end within which the trial court proceeds *AND __beyond__, functus officio during the pendency of TWO appeals (23-1967 and 23-1978) arising from the same infected framework*, affected Appellant's substantial rights, the integrity of the judiciary, and so the __structural integrity__ of the district court and __public interest__ are implicated, that *crucially* is on appeal. Due to the importance of public confidence in the judicial system, it is not required that actual bias is proved.  This appellate Court must properly rectify the structural defect revealed, as it is of foremost fundamental importance to public interest and the due administration of justice.  More than the instant Plaintiff-Appellant's rights are at stake.  Judicial disqualification statutes are "not solely concerned with the rights of the parties

before the court but are also 'intended to ensure public confidence in the judiciary"
and the appellate Court must use its inherent authority to promote confidence in the
judiciary for the public at large.  In this instance, the ==appellate Court's order itself,==
==this Court's jurisdiction, and this Court's authority are **_defied_** and **_flouted_** by the==
==**_functus officio_** district court== *and as a result, necessitated this appeal*. This
structural "bias practice must be forbidden if the guarantee of due process is to be
adequately implemented." *Caperton v. Massey*, 556 U.S. at p. 870 (2009).
Appellant is prejudiced again and again and again by the biased district court
***functus officio*** former counsel(s) of the State Appellees.

## II.    <u>CONCLUSION</u>

WHEREFORE, for the above reasons, the Court should grant the Appellant's
motions.  Appellant respectfully requests any and all relief deemed just.

Respectfully submitted,

Mary Seguin
/s/          *Mary Seguin*
Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

Dated: May 17, 2024

## CERTIFICATE OF SERVICE

This is to certify that the foregoing Motions were served via the Court's ECF
filing system on May 17, 2024, on all registered counsel of record, and has been
transmitted to the Clerk of the Court.

/s/          *Mary Seguin*

EXHIBIT I.

# SPECIFICATION FOR OCSS CHANGE ORDER
## Auto Adjustment of Interstate Interest

This specification will outline the process by which interstate cases are selected, automatic adjustments are created, and support orders are modified all for the purpose of removing interest from interstate cases.

## FUNCTIONAL REQUIREMENTS

It is desirable for the Rhode Island Office of Child Support Services (OCSS) to prohibit the charging of interest on interstate cases. This is manually done by placing an N in the interest field on page 2 of the support order. Entry of the N not only prohibits the charging of future interest but automatically creates adjustments to zero out any existing interest.

There currently exists on the InRhodes system interstate cases for which the interest field is not an N and for which there is interest due. It is these cases that the system will process.

If on an interstate case, the interest field on the support order is blank, the system will automatically place an N in the interest field and create non-cash adjustments to zero out any existing interest. No support order modification or interest adjustments will be done on interstate cases without a support order or for which the interest field is already an N or is a Y, B or P.

Two reports will be created. The first will detail the interstate cases for which a support order modification was done and for which one or more interest adjustments were created. The second report will detail interstate cases for which the interest field is Y, B or P. A Y in the interest field is an order to accrue interest while B and P are orders to stay future interest but to keep any interest that has accrued to date.

EXHIBIT II.



# UNITED STATES DISTRICT COURT
## *District of Rhode Island*

### CLERK'S CERTIFICATE AND APPELLATE COVER SHEET
### ABBREVIATED ELECTRONIC RECORD

| Case Information |
|---|

Case Caption: **Seguin**      vs. **RI Dept of Human Services**

District Court Number: **1:23cv126-WES-PAS**      Presiding Judge: **Judge Smith**

Notice of Appeal filed by: **Plaintiff**      Notice of Appeal document number: **32**

Appeal from: **Text Order dated 11/17/2023 and Text Order dated 11/17/2023**

Other information:

Fee status: **Due**      Pro se case:   Yes ☑   No ☐

Emergency or requires expedition: **No**   *If yes, reason:*

| Record Information |
|---|

Motions Pending    Yes ☐   No ☑
*If yes, document #*

Other record information:

Related case(s) on appeal:

| Certification |
|---|

I, Hanorah Tyer-Witek, Clerk of the United States District Court for the District of Rhode Island, do certify that the following annexed electronic documents constitute the abbreviated record on appeal in the above referenced case:

**HANORAH TYER-WITEK**
Clerk of Court

**/s/ Meghan Kenny**

Deputy Clerk

Date: **11/17/2023**