THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT
Appeal from the United States District Court for the District of Rhode Island

MARY SEGUIN                                    No. 23-1967
*Plaintiff-Appellant*                          No. 23-1978
                                               No. 24-1313

v.

RHODE ISLAND DEPARTMENT OF HUMAN SERVICES, et al.
*Defendants-Appellees*

———————————

**APPELLANT'S MOTION FOR LIMITED REMAND AND RE-ASSIGN**

**Pursuant to 28 U.S.C. § 2106, Fed. R. App. P. 12.1(b), and Fed. R. App. P. 27**

**Pursuant to**

**NEWLY DISCOVERED EVIDENCE IN 2024 SHOWING OBSTRUCTION**
**And**
**PATTERN OF *FUNCTUS OFFICIO* VOID DISTRICT ORDERS**
**CONTINUING RECORD ALTERATIONS ISSUED WHEN JUDGE WAS
DIVESTED OF AUTHORITY**
**DURING THE PENDENCY OF TWO APPEALS 23-1967 and 23-1978
THAT ATTEMPT TO UNLAWFULLY INFLUENCE APPEAL**

———————————

**ORGANIZED FRAUD, THEFT OF PUBLIC MONEY AND
GOVERNMENT PROGRAMS INVOLVING BILLIONS OF DOLLARS**

Appellant, MARY SEGUIN, hereby respectfully moves, pursuant to **28 U.S.C.
§ 2106, Fed. R. App. P. 12.1(b)** and Fed. R. App. P 27, for **limited remand** to the
district court **and to re-assign to the requisite unbiased judge** to consider under
**Fed. R. Civ. P. 62.1** and **Fed. R. Civ. P 60(b)** grounded in both fraud and
newly discovered or newly available evidence in 2024 of obstruction, foremost

**evidenced by the State Policy in Exhibit I (and the corollary Title IV related and relevant documentary evidence in Exhibit II, Exhibit III, Exhibit IV)** that prescribes making criminal false claims by prescribing policies, methods, processes, specifications and administrative procedures to falsify records (deliberate violation of federal obstruction laws, such as 18 U.S.C. § 1512), including fabricating false support orders, to falsify the U.S. Government Federal Central Registry computer records established under Part D of Title IV of the Social Security Act that are calculated to make false claims to the United States and make false claims to interstate support obligors – the State Policy explicitly describes "**This specification will outline the process by which <mark>interstate cases are selected</mark>, <mark>automatic adjustments are created</mark> and <mark>support orders are modified</mark> all for the purpose of <mark>removing interest</mark> from <mark>interstate support cases</mark>**." See State Policy in Exhibit I.   Moreover available in 2024 is the new evidence of Rhode Island Supreme Court-admitted digital court structural defect caused by the Rhode Island Supreme Court's ministerial promulgation of court rules that conceal from the public, from federal authorities and from pro-se litigants all "judge-created law evidence" of the state family court's routine unlawful 12% compound interest establishment, enforcement and "putting interest back on the system" after the Appellee Rhode Island Office of Child Support Services ("OCSS") "modified support orders all for the purpose of removing

interest from interstate support cases" or falsified federal government Central Registry records removing interest from interstate support cases. After Appellant challenged the Rhode Island Supreme Court's Promulgated Rule 5 that denies Appellant and the public access to judge-created laws in Rhode Island's digital courts which violates the Government Edicts Doctrine and violates due process access to judge-created laws, Rhode Island Supreme Court issued a shocking court order on March 29, 2024 that instructs the Appellant to file a motion to stay proceedings until the end of the year as Rhode Island, only after Appellant's multiple challenges, acknowledges the structural defect that judge-created law court information access denial singling out pro-se litigants will not be remedied until the end of the year.  *See* Rhode Island Supreme Court Order in Exhibit V. Appellant raises the attached exhibit new evidence are evidence of serious federal crimes committed by the Appellees and make the crimes known to the federal appellate judges of the First Circuit pursuant to 18 U.S.C. § 4 and incorporates 18 U.S.C. § 1512, 18 U.S.C. § 666, 18 U.S.C. § 241, 18 U.S.C. § 1516, etc

In support of Appellant's motion for limited remand and re-assign to an unbiased judge, the Appellant states the follows:

**I.    Record Falsification, Alteration, Fabrication, False Statements and Concealment Obstructing Proceedings Calculated To Make False Claims at Both the State and Federal Levels in the Jurisdiction of Rhode Island Showing Structural Defect and Prosecutorial Misconduct That Are Criminal**

Of relevance, since the Court's May order in this matter, critically on June 28, 2024, the United States Supreme Court reinforced in *Fischer v. U.S.*, 603 U. S. ____ (2024), that 18 U.S.C. § 1512(c)(1) and Section 1512(c)(2) cover criminal conduct altering, fabricating and falsifying U.S. Government Federal Central Registry computer records by the State Appellees and Appellee Gero Meyersiek. On page 9, the Court held "…subsection (c)(2) makes it a crime to impair the availability or integrity of records, documents, or objects used in an official proceeding in ways other than those specified in (c)(1). For example, it is possible to violate (c)(2) by creating false evidence—rather than altering incriminating evidence. See, e.g., *United States v. Reich*, 479 F. 3d 179, 185–187 (CA2 2007) (Sotomayor, J.) (prosecution under subsection (c)(2) for transmitting a forged court order). Subsection (c)(2) also ensures that liability is still imposed for impairing the availability or integrity of other things used in an official proceeding beyond the "record[s], document[s], or other object[s]" enumerated in (c)(1), such as witness testimony or intangible information. See, e.g., *United States v. Mintmire*, 507 F. 3d 1273, 1290 (CA11 2007) (prosecution under subsection (c)(2) based in part on the defendant's attempt to orchestrate a witness's grand jury testimony)." *Id.*  It is plain that the district court's description of "state enforcement" that Appellant's newly-discovered evidence proves fundamentally involves the *wholesale policy-prescribed* criminal alteration, fabrication and falsification of federal computer

government records and State Appellees' false certification of federal law compliance that are calculated to make false claims to the United States for billions of dollars of federal funding Rhode Island is not eligible for, conceal from federal auditors Rhode Island's policy-prescibed wholesale criminal falsification of federal Central Registry support obligation records and conceal from federal auditors Rhode Island's false certification of federal law compliance, in violation of 18 U.S.C. § 1512(c)(1) and (c)(2), and to make false claims to interstate support obligors for unlawful interest debt and false claims for waived interest does not only go towards the issue of Younger Abstention, but show Appellant's reporting to the United States judges under 18 U.S.C. § 4 the State Appellees' and Appellee Gero Meyersiek's violate a slew of multiple federal criminal laws discussed by *Fischer v. U.S.*, 603 U. S. _____ (2024), such as 18 U.S.C. § 1516 (impairing or obstructing federal audit),  18 U.S.C. § 1503(a), for example, makes it a crime to "corruptly, or by threats or force, or by any threatening . . . communication, endeavor[] to influence, intimidate, or impede" any juror or court officer"; "sub-sections (a)(2)(C), (b)(3), and **(d)(2) criminalize various means of preventing someone from giving a judge or law enforcement officer information relating to the commission or possible commission of a federal offense**.  And subsections (d)(3) and (4) make it a crime to harass someone and thereby dissuade them from arresting or prosecuting a person alleged to have committed a federal offense.

***None of these crimes requires an "official proceeding***." *Id.* (emphasis added).

"For a person to have violated (c)(2), "an official proceeding need not be pending or about to be instituted." §1512(f)(1). And interference with an arrest or with communications to authorities about federal offenses could very well obstruct the initiation of future official proceedings." *Id.* Applying the Supreme Court's rulings of obstruction acts in *Fischer* to this matter, the record in this matter shows State Appellees, counsel for State Appellees (a state official who knows, aids and abets in the furtherance of the State Policy to falsify federal records to impair their integrity that is calculated to aid and abet Rhode Island to make false claims to the United States for federal funds Rhode Island is not eligible for and to conceal the federal penalty-incurring criminal conduct under 42 U.S.C. § 655) and Appellee Gero Meyersiek engaging in criminal activities discussed by the Supreme Court in *Fischer*. The Appellees by policy conceal Rhode Island's unlawful 12% compound interest by removing it thereby falsifying federal Central Registry records that impairs the records' integrity. After removing the interest that all users relying on the integrity of the records rely on record truthfulness, the Appellees then represent to the support obligor, the Appellant, that interest was waived. After removing the interest from the record, State Appellees further falsely certify to federal authorities and federal auditors that Rhode Island is federal law compliant. Then, the Appellees put back on the *state* register the

unlawful 12% compound interest, then fraudulently lien Appellant's Texas

properties.  The State Appellee John Langlois again states in 2022 in Rhode

Island's Title IV enforcement agency appeal proceeding that Appellee Gero

Meyersiek waived the interest.  See attached Exhibit VI Transcript of audio

recording Appellant made in Texas on October 5, 2022 of telephone call Appellant

had with Appellee John Langlois, Esq., Deputy Chief Counsel of the Appellee

Office of Child Support Services, and Debra DeStefano, Rhode Island Executive

Office of Health and Human Services Appeals Officer in a Title IV enforcement

agency appeal proceeding  in agency Appeal No. 22-2116 that occurred on October

5, 2022, at the Title IV-D enforcement Appeal telephonic Hearing, pages 2-5:

"DeStefano: -- Mary. I know -- I know what you asked for. Let

11 me get to -- let me understand what John just said

12 before. So, John, you're saying there was a change

13 subsequent to her making a payment --

14 Langlois: Correct.

15 DeStefano: -- but before the Notice of Lien went out?

16 Langlois: Yes.

17 DeStefano: Okay. So --

18 Langlois: And can I -- can -- if I could just back up and

19 explain what happened. Okay?

20 DeStefano: Okay.

21 Seguin: This --

22 Langlois: This is -- 99 percent of this is a misunderstanding.

23 DeStefano: Okay.

24 Langlois: Okay?

25 Seguin: Including --

Page 3

1 Langlois: (Inaudible - 00:01:51)

2 Seguin: -- what's on the screenshot? Is that a

3 misunderstanding?

4 Langlois: Can -- can I speak without being shouted over?

5 Seguin: Well, I'm --

6 DeStefano: Mary, let --

7 Seguin: I'm sh- --

8 DeStefano: Let --

9 Seguin: I'm flabbergasted really.

10 DeStefano: Uh, Mary, you've got to let me --

11 Seguin: Sorry.

12 DeStefano: -- listen --

13 Seguin: Sorry.

14 DeStefano: -- to what the agency is gonna --

15 Seguin: I appreciate that.

16 DeStefano: I mean, I know -- I only know that -- what's in

17 front of me and I don't know everything that has

18 happened in this case, but if -- if -- let me just

19 listen to the agency and see what they have to say for

20 --

21 Seguin: Sure.

22 DeStefano: Go ahead, John.

23 Langlois: What -- what happened in this case is when, uh --

24 Mary's representative, her attorney, called us in late

25 November 2021 and said there's a -- she wants her

Page 4

1 passport released. What does she have to do to

2 release her passport? They put her in touch with

3 Carla, who gave her the $104,000 number. Where that

4 number came from, was the department attorney

5 contacted the custodial parent, Mr. Miurski (ph) or,

6 uh, Mr. -- I can't pronounce her last name.

7 Meyersiek. So we contacted his attorney -- it wasn't

8 me, but it was someone in my office -- and said, "If

9 she's willing to make a $104,000 payment to pay off

10 the principal, would you agree to waive the $75,000" -

11 - I think it was $73,000 in arrears at that time? He

12 said yes. So Carla notified Mary that, if she paid

13 $104,000, it would be paid in full because he was

14 willing to waive the interest. That was just the

15 principal. What happened was, the day after Carla

16 spoke to Mary and told her to mail in the -- or to --

17 to wire the $104,000, the attorney for Mr., um,

18 Meyersiek contacted us again and said he changed his

19 mind, please put the interest back up on the system,

20 so we did. That's his money. The state is just

21 collecting for -- for this past child support that's

22 owed to him. If he wants the arrears, he has every

23 right to ask for it. So the number that was given to

24 her was correct on the day it was given to her. The

25 arrears for $104,000. Because when he was waiving the

Page 5

1 arrears, when he changed his mind the next day, we put

2 the arrear -- I mean, interest back up on the system."

Then, the State Appellees initiate a judicial proceeding in the limited jurisdiction state family court that utterly lacks jurisdiction to put back on the federal computer system the unlawful 12% compound interest that Rhode Island Office of Child Support Services removes (and modifies the court order/falsified court order) from the Federal Central Registry computer system, by Rhode Island's official criminal State Policy and that Appellee Gero Meyersiek waived – under Title IV and all applicable federal (preemption) law, the limited jurisdiction state family court lacks jurisdiction to oblige Rhode Island State Appellees and Appellee Gero Meyersiek. As the United States Supreme Court warns corrupt officials on July 1, 2024, "The President is not above the law." *Trump v. U.S*., 603 U. S. ____ (2024). Nobody is above the law, the United States Supreme Court warned, much less the Appellees in Rhode Island, whose conduct by conclusive evidence have been shown to be criminally corrupt falsifying federal records for the purpose of making false claims, and reveal a sense of being above the law for decades within the First Circuit, in this matter alone, from 1996 to the present, and is on-going. While the state family court lacks jurisdiction to unlawfully establish 12% compound interest that violates the preemptive 42 U.S.C. § 654(21)(A), or establish the 12% compound interest retroactively that violates 42 U.S.C. § 666(9)(C), or enforce unlawful 12% compound interest that is by Rhode Island's State Policy always and "automatically" removed from the Federal Government

Central Registry computer system records, including transmitting modified support

orders (falsified court orders in violation of 18 U.S.C. § 1512(c)(2) see June 28,

2024 United States Supreme Court holding, *Fischer v. U.S*., 603 U. S. ____

(2024), citing *United States v. Reich*, 479 F. 3d 179, 185–187 (CA2 2007)

(Sotomayor, J.) (prosecution under subsection (c)(2) for trans mitting a forged

court order). "Subsection (c)(2) also ensures that liability is still imposed for

impairing the availability or integrity of other things used in an official proceeding

be yond the "record[s], document[s], or other object[s]" enumerated in (c)(1), such

as witness testimony or intangible information. See, e.g., *United States v.

Mintmire*, 507 F. 3d 1273, 1290 (CA11 2007) (prosecution under subsection (c)(2)

based in part on the defendant's attempt to orchestrate a witness's grand jury

testimony)") in order to conceal unlawful 12% compound interest from federal

auditors (in violation of 18 U.S.C. § 1216, see *Fischer v. U.S., Id*.), the State

Judiciary Appellees exercise the ministerial function of establishing "court rules"

governing the digital courts the state judiciary implemented calculated to conceal

from the public, from federal authorities, from pro-se litigants any and all judge-

created laws (and the respective syllabi that show the State Appellee Department

of Human Services and Office of Child Support routinely establishing and

administering and enforcing unlawful 12% compound interest enabled in the state

family court of limited jurisdiction that is by Rhode Island state policy criminally

removed from the Federal Central Registry, to which the Appellees transmit forged falsified self-modified court orders and whenever certifications of federal law compliance is performed) created by the state family court that lacks jurisdiction to preempt Title IV of the Social Security Act.

Of equal relevance are other recent guilty verdicts involving falsification of records that are of national importance, to and on which the <u>objective person of the public</u> rely.  After the Court's May 2024 order, on June 7, 2024, the defendant in *U.S. v. Robert Hunter Biden*, Criminal No. 23-00061-MN, was found guilty on all charges, specifically guilty on the record falsifying charges through knowingly making false statements in the purchase of a firearm, in violation of 18 U.S.C. § 922(a)(6) and found guilty of knowingly making a false statement related to information required to be kept by law by a federal firearms licensed dealer, in violation of 18 U.S.C. § 924(a)(1)(A).  The President's son is not above the law.

Moreover, on May 30, 2024, a week after this Court's May 2024 orders, a jury found former President Trump guilty of 34 criminal counts of falsifying his own company's business records affecting a federal presidential election, (note, significantly, absent there the routine systemic and policy-driven falsification of federal government computer records to conceal the unlawful interest, and absent the intent there of systemically making false claims for public federal funds for billions of dollars and making systemic false claims against support obligors

unlawfully as in Appellees' corrupt administration of an Act of Congress, namely Part D of Title IV of the Social Security Act, **as here**, which encompass numerically ***exponentially more*** and ***much more severe felonious counts***…..also here are false claims and theft of federal funds of the collective American public and support obligors that are significantly absent there that Trump had *not* schemed) – plainly, former President Trump has been prosecuted and convicted of far lesser felonies than that is being committed here, further highlighting the palpable structural defect here) for Part D of Title IV of the Social Security Act (See 42 U.S.C. §§ 654, 666(14) and 45 CFR 303.7) that includes explicit written policy instructions *systemically* "zeroing out interest" and self-"modifying court orders all for the purpose of removing interest in interstate cases" within the government computer record-keeping system, falsifying *federal government computer records* for the purpose of *making false claims to the United States* and *false claims to interstate support obligors*, such as the Plaintiff-Appellant, attached hereto as Exhibit I, with the resulting *falsified records evidenced in the computer records of Plaintiff-Appellant's online Title IV-D account* showing $0.00 under interest (EXHIBIT II) which Appellees themselves claim is *purposely inaccurate*, *falsifying computer government records* showing $0.00 paid for Plaintiff-Appellant's substantial contract-agreed pay-off lump-sum payment of $104,185.98 (EXHIBIT III screen shot of computer records and EXHIBIT VI Transcript of

audio phone recording of Appellee John Langlois, Esq., Deputy Chief Counsel of Appellee Office of Child Support Services, stating Appellee Gero Meyersiek waived interest), and Title IV-D TRAC records *documenting purposeful falsifying* Title IV-D computer records zeroing out interest prior to transmitting *falsified government records, including self-computer system "modified court orders all for the purpose of removing interest in interstate cases"* through and to the *Federal Central Registry, then to TEXAS that knowingly and criminally infects and impairs the integrity of Texas's government registry* (EXHIBIT IV) (in 2018, 2019, 2020, 2021, 2022, 2023, 2024) for the purpose of Appellees making false claims (including violation of 18 U.S.C. § 1216 – *see* ***Fischer v. U.S.*** 603 U. S. ____ (2024)  (remove the unlawful 12% compound interest from the computer system for the purpose of making false claims to the United States and then putting unlawful 12% compound interest back on the computer system for the purpose of making false claims to support obligors, such as the Plaintiff-Appellant, and then feloniously remove the unlawful 12% compound interest from the system when running the report for certification of compliance and federal funding application under 42 U.S.C.  §§ 654, 655).  The judiciary Appellees promulgate court rules denying access to judge created laws, that conceals routine rubber stamping the coordinated criminal activity "fabricating and collecting the unlawful debt" in the state family court, without legal authority and without jurisdiction, that specifically

single out court information access denial to the public, federal authorities and pro
se litigants. _Appellee persons are not above the law, just as the United States
Supreme Court held not even Presidents are above the law and held that 18 U.S.C.
§ 1512(c)(2) equally applies to the President, much less the Appellees who are
named in this matter alone_.

The attached newly discovered evidence and newly available evidence, as well
as this consolidated appeals matters' knowingly _altered_ record by a **_divested_**
jurisdiction/authority district court judge after TWO filings of notices of appeal
show necessity for limited remand and re-assign.

In support of this motion, Appellant states the following:

**I.    STRUCTURAL DEFECT IN RHODE ISLAND AT BOTH THE
FEDERAL AND STATE LEVELS; THE COURT'S MAY 2024
ORDER EXPLICITLY HELD APPEAL No. 23-1978 SHALL
PROCEED, HOLDING APPELLATE JURISDICTION OVER A
PATTERN OF DISTRICT COURT VOID ORDERS ISSUED
AFTER THE DISTRICT COURT IS _DIVESTED_ OF
JURISDICTION AFTER THE FILING OF _TWO_ NOTICES OF
APPEALS, THAT KNOWINGLY ALTERED THE RECORD AND
INTERFERED WITH PENDING APPEALS**

**A.    <u>Federal Structural Defect - A Court's Authority is limited to that
conferred to it – exercising authority it has been divested of and
exercising authority not given constitute treason against the
Constitution – No Immunity When Official Is _Divested_ Of
Authority, per Trump v. U.S., 603 U. S. _____ (2024)</u>**

1. The Appellant hereby incorporates the Appellant's <u>two</u> Show Cause filings in Appeal No. 23-1978 that the Court had considered as fully alleged herein. Pursuant to 18 U.S.C. § 4; 18 U.S.C. §1512 (a)(2)(C), (b)(3), (d)(2), (d)(3), (d)(4) and §1512(f )(1), the Appellant makes known to the United States judges in the First Circuit Appellate Court the divested authority conduct of the divested authority district court judge William E. Smith who knowingly caused this Court's record of appeal to be altered to corruptly influence this Court's judges in favor of his former clients and his former firm's current clients, the State Appellees. William E. Smith, who announced his intention to retire in 2023, is no newcomer to the rodeo, and after **two** filed Notices of Appeals dated November 17, 2023 (ECF 32) and November 20, 2023 (initiating Appeal No. 23-1978), knowingly continued ***functus officio*** district court proceedings, aided and abetted by the State Appellee counsels, Rhode Island Official State Attorney General who is also named Appellee, all the way to March 2024 after Smith was divested of authority, TWICE, as of November 17, 2023 and November 20, 2023 in the underlying district court matter. Worse, his *functus officio* conduct knowingly and purposely instructed the district court clerks in Rhode Island to alter the federal record on appeal in favor of his former clients and his former firm's current State Appellee clients, by specifically docketing, post-Appeal, Appellant's 28-day

timely filed post-judgment motions a day late on the docket, so as to

unlawfully influence this Court to dismiss Appellant's rule-compliant,

timely filed appeals, that appeals in part Smith's own pre-Appeal attempts

on November 16, 2023 and November 17, 2023 at impairing, concealing and

altering the federal record on appeal by instructing the district court not to

docket Appellant's post-judgment filings challenging Smith's qualification

in a case that no less alleges in the Amended Complaint (ECF 25) that

Smith's former clients and his former firm's current clients' Rhode Island

officials committing falsifying government records, concealing, obstructing

and impairing the availability of incriminating records, that includes

allegations of structural defects at the Rhode Island state level, specifically

singling out the public, federal authorities and pro se litigants (not even

information in her own court cases), such as the Appellant, from accessing

court information of Rhode Island's digital courts containing judge-created

laws (that further violate the Government Edicts Doctrine), for the purpose

of making billions of dollars in false claims.  Significantly, this Court must

take notice under Fed. R. Evid. 201 that the Amended Complaint (ECF 25)

alleges moreover the compounding structural defect involving the

maintenance of TWO concurrent electronic court case management systems

implemented by the judiciary State Appellees that is peculiar to the limited

jurisdiction state family court that causes all State Appellee Department of Human Services filings to be invisible to the public, federal authorities and pro se litigants such as the Appellant, that favors the Department of Human Services, whose filings are even <u>invisible</u> to the <u>Rhode Island official Virtual Clerk</u>, that together with the Rule 5 court information access denial to pro se litigants, such as the Appellant, facially violate Constitutional First Amendment, Due Process, Equal Protection, and Privileges and Immunities Clauses, along with the Government Edicts Doctrine.  The Amended Complaint extensively alleges state court structural defect, specifically that, structurally, Rhode Island obstructs availability of records showing what Appellee Department of Human Services is up to in the state family court, targeting record availability impairment singling out the Public, pro se litigants and glaringly Federal authorities, thereby impairing the availability of records and <u>obstructing Title IV federal auditors</u> to know what the Appellee Department of Human Services is filing in family court and the limited jurisdiction family court is doing, unlawfully, to oblige the Appellee Department of Human Services, both without authority.  The pattern of district court record alteration, record falsification, and obstruction in are knowingly committed when the district court was divested of jurisdiction and when Smith divested of authority, aided by counsels for his former

clients and his former firm's current clients in the underlying district court case that alleges serious coordinated obstruction crimes that are concurrently writ at large in the 2023-2024 national conscious involving systemic record falsification, false statements, record alteration, concealment, impairment of availability of records, obstruction and the Supreme Court's striking down of the *Chevron deference* in a collective national questioning of and challenge to public <u>wrongs</u> and jurisdiction/authority-exceeding overreach committed by administrative/ministerial government and agency persons.  *See*, ***Trump vs. U.S.***, 603 U. S. ____ (2024) (reinforcing and directing Special Prosecutor Jack Smith to apply *Fischer vs. U.S.*, 603 U. S. ____ (2024); ***Fischer vs. U.S.***, 603 U. S. ____ (2024); ***LOPER BRIGHT ENTERPRISES ET AL. v. RAIMONDO, SECRETARY OF COMMERCE, ET AL***., No. 22-451 *Together with No. 22–1219, **Relentless, Inc., et al. v. Department of Commerce, et al**.; **Corner Post, Inc. v. Board of Governors of the Federal Reserve System**, 603 U. S. ____ (2024); *People v. Trump*, Ind.No. 71543/2023 N.Y.  These cases in the objective observer's conscious instruct the public that those in Rhode Island who commit and those who aid and abet in the falsification of government records for the purpose of obstruction, interfering, corruptly influencing, in order to conceal unlawful interest and/or for the purpose of making false claims are not above the law.

2. Since 42 U.S.C. § 654(1) explicitly requires that 42 U.S.C. § 654 must be in effect in **<mark>all</mark>** political subdivisions in Rhode Island, relevant persons elected to, serving in, involved in, acting on behalf of, consulting with, providing services to, or contracted with all political subdivisions in Rhode Island since 1996 knew or should have known of the State Policy "specifications" prescribing falsifying records to "all for the purpose of removing interest in interstate cases" attached in Exhibit I, should have known the obstruction of federal auditors, should have known of the structural defect implemented in the state digital courts (and that concurrently serves to obstruct federal auditors) evidenced in Exhibit VI, that involves applying for federal funding worth tens of billions of dollars since 1996 that the attached evidence shows Rhode Island knows it is not eligible for.

3. When the district court is divested of jurisdiction upon the filing of TWO Notices of Appeal, a divested authority federal official knows or should have known he has no authority to act in any official capacity, and has no immunity, even in the case of the President – *see* United States Supreme Court ruling in ***Trump v. U.S***., 603 U.S.__(2024) textual usage of "***<mark>divested</mark>*** of authority" (emphasis added) in the context of Presidential immunity on page 21 of Opinion.  Upon being made known under 18 U.S.C. § 4 of the divested-authority alteration of several records to influence in favor of the

Appellees the pending appeals, calculated to corruptly influence United States appellate judges, 18 U.S.C. § 1512 applies, and the issue of what the Section 4 and Section 1512 judges' duties are applies. Appellant is clearly the injured party by the aforementioned conduct at both the federal and state levels, and has invoked in the Amended Complaint and now invokes 18 U.S.C. § 1964(c), Civil RICO, that statutorily provides Appellant the remedy and federal forum to pursue discovery focused on the newly available evidence in a limited remand and the requisite re-assignment to a United States judge free from structural defect and free from record tampering when he was divested of jurisdiction.

4.  In support of Appellant's request for limited remand and to re-assign, Appellant incorporates herein as fully alleged herein the allegations, arguments and case law invocation and reliance filed in Appellant's Correct Motion to Consolidate dated June 7, 2024 filed in the related Appeals No. 23-1851 and No. 24-1451 (Document: 00118153837) that is also pending before the Court in that related matter. Further in support, Appellant incorporates herein as fully alleged the allegations, arguments and case law invocation in Appellant's Motion for Limited Remand filed on May 28, 2024 in Appeal No. 23-1851 (Document: 00118149601). The Court denied Appellant's motion in that matter predicated on instructing the Appellant to

litigate the relevant issues in briefing in the relevant Appeal No. 24-1451 that is an appeal of the district court's relevant orders on newly discovered evidence during the pendency of Appeal No. 23-1851. Here, Appellant requests the limited remand and to re-assign after recent June and July 2024 rulings by the United States Supreme Court of federal law on record tampering, circumstances of divested authority and 2024 newly available evidence and development in this matter clearly showing structural defect and forensic prosecutorial misconduct that the recently rulings by the United States Supreme Court instruct incorporates serious criminal misconduct on the part of persons in the district court, the Appellees, namely the Office of Child Support Services, Gero Meyersiek, Department of Human Services and state judiciary persons, that the limited jurisdiction Rhode Island state family court lacks the jurisdiction to hear (it is even impotent to address the court information denial that the Rhode Island Supreme Court itself claims it cannot remedy until the end of the year in its order dated March 29, 2024 that is attached to Exhibit VI and to which the Appellant requests judicial notice under Fed. R. Evid. 201), never mind remedy, and that the underlined federal forum is the appropriate forum under Article III. Under these factual circumstances presented before this Court, Younger Abstention Exceptions make clear state officials who commit serious federal crimes dressed up as

"state enforcement" are never protected to continue federal crimes under the cloak of Younger Abstention.   In fact, by only granting absolute criminal immunity to the Article I occupant, the <u>President of the United States</u> for the President's core official acts because he is selected by *all the states in the Union*, (not conferred on the Article III lower court judges, not Article II), the United States Supreme Court just painted a clearly *superior* (and *unequal*) Sovereign relationship of the *superior* United States Sovereign Executive who is elected by citizens of the 50 state sovereigns under our Constitution's democracy.  Federal Law has oversight and checks criminal acts by state persons who are <u>not immune</u>.  *Younger* never cloaked, never permitted, nor ever protected criminal conduct by state "enforcers" dressed up as "state interest," the UNDISPUTED evidence of which is <u>crystal clear</u> before this Court.  As the Supreme Court in *Trump v. U.S.* 603 U.S.__(2024) repeatedly points out on July 1, 2024, violations of Section 1512(c)(1) and (c)(2) carry up to 20 years imprisonment per count.  Here, evidence of the Appellees accrued violations and injury liabilities, that are against public interest, are <u>COUNTLESS</u> spanning three decades targeting the United States and support obligors, and spans <u>two decades</u> in *this* matter.

5. Moreover, Appellees' alleged state interest is superseded by Rhode Island's acceptance of preemptive federal laws as a condition of receiving federal

funding under the Commerce Clause (see Supreme Court ruling Congress

exercised its authority to attach conditions on the receipt of federal funds.

*See **South Dakota v. Dole***, 483 U.S. 203, 206 (1987) - **may <u>offer the States</u>**

**<u>a choice of regulation under federal control or preemption under</u>**

**<u>federal regulation</u>.** See ***Hodel v. Virginia Surface Mining & Reclamation***

***Assn., Inc***., 452 U.S. 264, 288 (1981).  It is crystal clear that upon Rhode

Island's State Plan entering into agreement with the United States under the

**<u>Commerce Clause</u>**, Rhode Island accepted the agreement terms of

regulation under federal control or preemption under federal regulation. See

*Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.*, 452 U.S. 264,

288 (1981).) that states <u>must</u> comply under the state's alleged interests – in

other words, in support matters, the preemptive federal laws accepted by

Rhode Island functions as federal law and federal audit <u>oversight</u> of the

state's alleged interests, specifically whether those interests are lawful (in

this case criminal), that <u>Article III courts</u> have the jurisdiction to interpret, or

a general jurisdiction state court free from structural defect, but most

certainly not the limited jurisdiction Rhode Island family court that

maintains two court case management systems in which the Appellee

Department of Human Services' court filings are only visible to themselves

and the judge (this proves after receiving billions of federal funding, Rhode

Island rigs Title IV proceedings in favor of the state government (a serious

crime) and shows a fundamental structural defect, and criminally violates 18

U.S.C. § 241, as it conspires to systemically deprive fundamental due

process and First Amendment Constitutional rights of defendants in its

administration of the Title IV program) and seeks to exceed its jurisdiction

to rubber stamp State Appellees' falsification of federal records to make

false claims criminal enterprise, AS CERTAIN FAMILY COURT

JUDICIAL PERSONS HAVE DONE SINCE THE IMPLEMENTATION

OF THE STATE POLICY, THIS LATEST POLICY

VERSION/ITERATION ATTACHED HERETO in EXHIBIT I STATES

AT THE BOTTOM LEFT OF THE DOCUMENT, SINCE JANUARY

2011.  The public injury is broad and egregious.  Since the start of the

underlying district court action in March 2023, the family court has re-

assigned Rhode Island Appellees' alleged "enforcement" case to four

different family court justices whenever each and every time the facts, due

process issues, including jurisdiction challenges are raised – the challenges

question the lawfulness of the family court proceedings – the family court

Title IV proceeds are categorically unlawful and conspire to deprive

Constitutional rights in violation of 18 U.S.C. § 241.  Jurisdiction

determines whether the judge or the court has authority to act, and goes

towards whether s/he is criminally immune or not, especially in this matter

that involves Appellees' coordinated criminal enterprise prescribed by

decades-old official State Policy to *falsify Federal Central Registry* records,

including self-modify court orders to remove the interest, that under federal

law is punishable for up to 20 years imprisonment per count, in interstate

support cases for the purpose of making false claims.  See, U.S. Supreme

Court case issued on July 1, 2024, ***Trump v. U.S.***, 603 U.S.__(2024).

6.  Therefore, under ***United States v. Caraballo-Rodriguez,*** 480 F.3d 62 (1st

Cir. 2007), limited remand and re-assign as soon as possible or at the first

opportunity further complies with 18 U.S.C. § 4, 18 U.S.C. § 1512 and by

this Court's own addressment in ***Caraballo***, is required at common law,

having at length described as a forewarning the *consequences of failure to*

*act by public officers*.  The failure to act by public officers, the U.S.

Supreme Court reminds us on July 1, 2024 in ***Trump v. U.S.***, 603

U.S.___(2024), is punishable under 18 U.S.C. § 1512.  After all, the Trump

indictment concerns the former President's alleged INACTION when

Congress was stormed on January 6, 2021.  Presidents have immunity but

not other public officials, per the U.S. Supreme Court.

**B.  State Structural Defect Alleged in the September 1, 2023**
**Amended Complaint (ECF 25) and Supported by Newly March**
**2024 Available Evidence of Rhode Island Supreme Court Order**
**Acknowledging Structural Defect**

7. Since September 2023, Appellant filed a total four motions in the Rhode
   Island Supreme Court requesting the repeal the Rhode Island Supreme Court
   promulgated Rule 5 that denies access to court information targeting the
   public, federal authorities and pro-se litigants, since the rule violates
   fundamental due process rights, as well as First Amendment rights,
   fundamental public right to access judge-created laws under the Government
   Edicts Doctrine, Equal Protection and Immunities and Privileges Clauses.
   The Rhode Island Supreme Court that promulgated the unconstitutional
   prejudicial rule 5 <u>refuses</u> to repeal the rule.  It "acknowledges" it is a
   problem in each denial order, the first denial order issued in January 2024.
   On March 29, 2024, in coordination with the Appellees, the Rhode Island
   Supreme Court issued the attached order admitting the structural defect but
   that it would not be remedies until, vaguely and distantly, the end of the
   year, then instructing the Appellant to file a motion to stay proceedings until
   such time.  The proof of fundamental structural defect designed and built
   into the Rhode Island court structural by intent is new evidence 2024 hereby
   presented to this federal Court that is charged to defend the Constitution –
   Younger Abstention does not apply to a state's interest (the law does not
   recognize that any Sovereign signer of the Constitution has an interest in

purposely violating the Constitution) that purposely designs and promulgate

structural defect rules to purposely make structural defects in COURT

proceedings prejudicing pro se litigants so that they cannot even see or

access the court transcripts they ordered, cannot see the court's order, cannot

see relevant judge-created laws and precedents, that fundamentally

egregiously violate due process rights, violate First Amendment rights,

violate the Equal Protection and Privileges and Immunities Clauses and the

public's right to access under the Government Edicts Doctrine.

8.   In other words, a class of litigants, namely the pro se litigants, in all state

court proceedings in Rhode Island are purposely denied due process rights to

adequately raise federal rights or federal claims, or ANY CLAIMS, all the

way up to the Rhode Island Supreme Court.  Due process defective orders

are void.  Pro se litigants (and the public) are purposely and stubbornly

denied access to Rhode Island judge-created laws, or records in their own

cases, and their due process right to an adequately opportunity to be heard is

castrated, purposely, all the way up to the Rhode Island Supreme Court.  As

the United States Supreme Court held in Trump v. U.S., 603 U.S.___(2024),

nobody is above the law, least of those public officials in their ministerial

capacities who purposely harm the public's interest and rights to access the

law in order to know the law under the Government Edicts Doctrine, under

the First Amendment, under the Equal Protection Clause, under the Privileges and Immunities Clause, and under the Due Process clause. This is a bald conspiracy to deprive wholesale Constitutional rights that go towards destabilizing our democracy – without access to judge-created laws, the public's ability to function within the law and under the rule of law is categorically castrated. Younger Abstention does not apply to interests that are not recognized under the law. No Sovereign has a lawfully recognized interest in wholesale purposeful violation of federal criminal laws and the Constitution that it signed to. Rhode Island Supreme Court promulgated its own rules, that it knowingly knows and now acknowledges is a problem, that it refuses to repeal an unlawful, structural defect rule. Younger Abstention does not apply to these set of factual structural defect proceedings in Rhode Island, as they are Constitutionally infirm, and whose "orders" shall be collaterally attacked at any time. It should not be lost on this Court that the Rhode Island Supreme Court matter involves Appellant's challenge under Rhode Island's Open Government Access to Public Records Act. A state supreme court that promulgates rules and persistently maintains unconstitutional rules denying public access to the state's own judge-created laws in violation of the Government Edicts Doctrine is categorically

disqualified to sit over a matter concerning Open Government Access to
Public Records Act matters.

9. Applying Rhode Island's supreme court's order that "acknowledges it is a
   problem" and instructing the Appellant to file a motion to stay proceedings
   until the end of the year to the current allegedly "enforcement" Title IV
   proceeding in the state's limited jurisdiction family court that, worse,
   operates two court case management systems under which pro se litigants
   are knowingly disabled from seeing their filings and the judge's orders,
   proof is evident before this Court that Younger Abstention does not apply in
   self-acknowledge structurally defective "problem" court proceedings that
   Rhode Island's supreme court orders to file a motion to stay until the end of
   the year.  Whether the "problem" will be fixed or is fixable is unclear, and is
   a state court operational and ministerial matter that requires limited remand
   and to re-assign to allow focused discovery on the 2024 newly available
   evidence of structural defect infecting the legality of the State Appellees'
   operation of the state court system that is shown conclusively to violate due
   process by its operation structurally denying access to court information, and
   that wholesale violates 42 U.S.C. § 666's mandate requiring due process
   proceedings in Title IV cases.  The State Appellees' alleged "enforcement"
   proceedings are Constitutionally infirm, federal claims are obstructed from

adequately raised (barred access to Rhode Island judge-created laws on the issue and matter), the proceedings are clearly meant not just to harass but are categorically criminal fraud involving criminal falsification of federal government records for the purpose of making false claims to the United States and to support obligors.  Younger Abstention does not apply.  Limited remand is required, and under ==*United States v. Caraballo-Rodriguez,*== 480 F.3d 62 (1st Cir. 2007), limited remand and re-assign as soon as possible or at the first opportunity further complies with 18 U.S.C. § 4, 18 U.S.C. § 1512 and by this Court's own addressment in *Caraballo*, is required at common law, having at length described as a forewarning the *consequences of failure to act by public officers*.

10. Therefore, under these circumstances, and under *Trump v. U.S.*, 603 U.S. ___(2024)'s instruction to lower courts on remand to the district court for fact finding proceedings, here limited remand and re-assign as soon as possible or at the first opportunity is required.

II.    THE RIGHT OF SEVENTH AMENDMENT TRIAL BY JURY IN DEBT ENFORCEMENT PROCEEDINGS THAT THE LIMITED JURISDICTION FAMILY COURT LACKS THE AUTHORITY TO CALL

11. Just as monumental and applicable here in a matter that the State Appellees allege is Title IV-D support <u>interest</u> debt enforcement is the United States

Supreme Court's June 28, 2024 ruling in *S.E.C. v. Jarkesy*, 603

U.S.___(2024), that upheld the defendant's right to a trial by jury, not just a

judge as in the limited jurisdiction family court, in debt enforcement

proceedings. "Actions by the Government to recover civil penalties under

statutory provisions," we explained, "historically ha[d] been viewed as [a]

type of action in debt requiring trial by jury" quoting *Tull v. U.S*., 481 U.S.,

at 418-419 (1987).

12. When the state family court adjudicates, there are no juries. R.I.G.L. 8-10-3

confers no authority to the limited jurisdiction state family court to call

juries. In these proceedings, the above-mentioned unconstitutional structural

defect already violates the due process mandate Congress legislated in 42

U.S.C. § 666. The Fifth Circuit applied a two-part test from *Granfinan*

*ciera, S. A. v. Nordberg*, 492 U. S. 33 (1989), the panel held that the

agency's decision to adjudicate the matter in-house violated Jarkesy's and

Patriot28's Seventh Amendment right to a jury trial. 34 F. 4th, at 451. First,

the panel determined that because these SEC antifraud claims were "*akin to*

*[a] traditional action[] in debt,*" a jury trial would be required if this case

were brought in an Article III court. Id., at 454; see id., at 453–455. The

Fifth Circuit panel concluded that case should have been brought in federal

court, where a *jury could have found the facts*. Based on this Seventh

Amendment violation, the panel vacated the final order. *Id*., at 459. It also

identified two further constitutional problems. First, it determined that

Congress had violated the non delegation doctrine by authorizing the SEC,

without adequate guidance, to choose whether to litigate this action in an

Article III court or to adjudicate the matter itself. See *id*., at 459–463. The

panel also found that the insulation of the SEC ALJs from executive

supervision with two layers of for-cause removal protections violated the

separation of powers. See *id*., at 463–466.

13. Interest on overdue support claims are traditional actions in debt, and a jury

trial would be required if this case were brought in an Article III court.  The

state family court is a constitutionally infirm forum for actions in debt that

violate Seventh Amendment to jury trial at common law.  The district court

judge William E. Smith, whose former clients were the state courts

themselves, knew that the limited jurisdiction family court is a

constitutionally infirm forum for actions in debt (alleged enforcement of

support interest debt) as it lacks jurisdiction to call ***juries*** who, in Article III

courts, ***would have found the facts***.  The State Appellees are self-serving,

coordinating egregious fraud involving routine falsification of federal the

government records for the purpose of making false claims, that would have

been found by juries that would have found the facts – the attached State

Policy in Exhibit I only works and has lasted this long, because the State
Appellees are bringing actions in debt in the constitutionally infirm limited
jurisdiction family court that lacks jurisdiction to call juries, who would
have found the facts.

14. This case poses a straightforward question: whether the Seventh Amendment
entitles a defendant to a jury trial when the Appellees seek civil penalties in
the form of interest on overdue support against the defendant, and since the
United States Supreme Court affirmed the Fifth Circuit's resounding
upholding of the Seventh Amendment, the state family court forum
proceeding is nothing more than a nullity due to its structural constitutional
infirmity.  This Court needs only look at the remarkable failure by the state
family court's utter failure, since at the very least the year 2011, to find the
fact that the State Policy prescribed falsification of government records for
the purpose of making false claims for interest is legal.  If the judicial fact
finding of basic right and wrong is this paltry, they are de facto disqualified
for incompetence.  A jury would have found out that fact and would have
found the scheme categorically illegal warranting federal indictments, as it is
common sense.  Therefore, a forum thus infirm is an inadequate forum to
raise federal claims.

15. Moreover, as the *Jarkesy* Court held on Jue 28, 2024, Title IV-D's 42 U.S.C. § 654(21)(A) (because charging interest is at the discretion of the States) interest on overdue support provisions replicate common law debt actions, is a punitive penalty and it is well established that "common law claims **must** be heard by a jury." *Id*.

16. The *Jarkesy* Court monumentally held that "The Constitution prohibits Congress from "withdraw[ing] from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law." *Murray's Lessee v. Hoboken Land & Improvement Co*., 18 How. 272, 284 (1856). Once such a suit "is brought within the bounds of federal jurisdiction," an Article III court must decide it, with a jury if the Seventh Amendment applies. ***Stern v. Marshall***, 564 U. S. 462, 484 (2011). "Under 'the basic concept of separation of powers . . . that flow[s] from the scheme of a tripartite gov ernment' adopted in the Constitution, 'the judicial Power cannot be shared with the other branches. *Id.*, at 483 (quoting United States v. Nixon, 418 U. S. 683, 704 (1974); alteration in original). Or, as Alexander Hamilton wrote in The Federalist Papers, "'there is no liberty if the power of judging be not separated from the legislative and executive powers.'" The Federalist No. 78, at 466 (quoting 1 Montesquieu, The Spirit of Laws 181 (10th ed. 1773)). On that basis, we have repeatedly explained that *matters concerning private*

*rights may not be removed from Article III courts. Murray's Lessee,* 18 How., at 284; *Granfinanciera,* 492 U. S., at 51–52; *Stern,* 564 U. S., at 484. A hall mark that we have looked to in determining if a suit concerns private rights is whether it "is made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789.'" *Id*., at 484 (quoting *Northern Pipe line Constr. Co. v. Marathon Pipe Line Co*., 458 U. S. 50, 90 (1982) (Rehnquist, J., concurring in judgment)). If a suit is in the nature of an action at common law, then the matter presumptively concerns private rights, and adjudication by an Article III court is <u>mandatory</u>. *Stern,* 564 U. S., at 484."

17. The state proceeding is a Title IV-D proceeding and is an action in debt at common law, and Title IV-D is legislated by Congress, and Congress has no authority to legislate away Seventh Amendment rights to a jury, according to the *Jarkesy* Court. Therefore, the state Title IV-D proceeding in the state family court that lacks jurisdiction to call juries is unconstitutional and must be dismissed. Title IV-D proceedings in the nature of an action at common law <u>must</u> be adjudicated by an Article III court or a general jurisdiction court by jury trial. *Granfinanciera* effectively decides in this case. Even when an action "originate[s] in a newly fashioned regulatory scheme," what matters is the substance of the action, not where Congress has assigned it. *Id*., at 52.

"They provide civil penalties, a punitive remedy that we have recognized "could only be enforced in courts of law." *Tull*, 481 U. S., at 422. And they target the same basic conduct as common law fraud, employ the same terms of art, and operate pursuant to similar legal principles. *See supra*, at 10–12. In short, this action involves a "matter[] of private rather than public right." *Granfinanciera*, 492 U. S., at 56. Therefore, "Congress may not 'with draw'" it "'from judicial cognizance.'" *Stern*, 564 U. S., at 484 (quoting *Murray's Lessee*, 18 How., at 284). **Congress cannot "conjure away the Seventh Amendment** by mandating that traditional legal claims be . . . taken to an administrative tribunal." 492 U. S., at 52. Nor does the fact that the SEC action "originate[d] in a newly fashioned regulatory scheme" permit Congress to siphon this action away from an Article III court. *Ibid."… if the action resembles a traditional legal claim, its statutory origins are not dispositive. See id., at 52, 56."*

18. Likewise here, Congress and Rhode Island cannot conjure away the Seventh Amendment by mandating that traditional legal claims be taken to a limited jurisdiction family court that lacks the jurisdiction to call juries. The alleged amount, 12% compound interest totaling $84,000, that is already illegal under the Title IV-D framework 42 U.S.C. § 654(21)(A) is unenforceable and it can only be brought in an action in debt at common law, and must be

tried by a jury. Welfare case or not. And this is not a welfare case – the
State Appellees represent Appellee Gero Meyersiek because his private
lawyers helped him to apply for services under 42 U.S.C. § 654(6)(B) in
2010 as a non-welfare recipient so that the State Appellees enter the fray for
a criminal money grab involving falsifying the interest portion and self-
modifying court order records of the federal government Federal Central
Registry for the purpose of making false claims. purposely reaching Texas,
believing Appellant married a rich Texas oil man. This case is a plain and
prime example of corrupt government agency fraud and corrupt Rhode
Island state administration of an Act of Congress, showing the grotesque
criminal ugliness of the term, "the Administrative State." Rhode Island
under federal law must be expelled from the Title IV program for the
flagrant criminal administration of Title IV, that further destroys the
integrity of the federal records of the Federal Central Registry. The only
lawful forum with authority under the Seventh Amendment under these
circumstances is an Article III court, since the general jurisdiction Rhode
Island state courts, including its supreme court, operate in an
unconstitutional manner that violate the Government Edicts Doctrine, that
cover up from public view judge-created laws, that deny a targeted class of
litigants who are pro se access to court information even in their own cases

in proceedings even in its own supreme court, and are by its supreme court's own admission, equally constitutionally infirm or nonviable "until the end of the year."

19. Title IV-D schemes that implicate, in a broad swath and expansive sweep in a draconian manner, private rights of property and liberty, are plainly statutory actions in debt at common law, and the *Jarkesy* United States Supreme Court just held Congress cannot conjure away the Seventh Amendment that is *Supreme* within the States under the Supremacy Clause, and such suits that are debt actions in nature at common law must be tried by a jury, who would find the facts, and who would have found the **grotesque** agency racketeering scheme involving egregious falsification of federal records for the purpose of making false claims, that the state family court justices remarkably have allegedly failed to find out or report or make known to a United States judge (their former counsel, William E. Smith) or federal authority that 18 U.S.C. § 4 requires in countless of these Title IV proceedings for three decades, at least since 2011.

20. It is pointedly clear that the State Appellees' decision to implement a two electronic case management system in the state family court, in which the Department of Human Service's filings are invisible to the public or even to the Virtual Clerk, serves and is intended to *conceal* and *obstruct* access

"judge-created law" evidence, information and documents concerning the

State Policy's (Exhibit I) prescription to falsify federal government records

for the purpose of making false claims and false debt claims against support

obligors in a forum that further routinely violates the defendants' Seventh

Amendment rights to jury trials.  Appellant has effectively shown this Court

supported by new 2024 evidence that the state court forum is a de facto

kangaroo court, and Younger Abstention does not apply.  The state family

court is disqualified to hear challenges concerning its complicity, implied,

intrinsic and extrinsic.  The Rhode Island Supreme Court's continuing court

information access denial after four motions, and denying one motion

denying Appellant's formal application for access to Rhode Island's judge-

created laws in a pending appeal before it concerning Public Access to

Public Records shows it is similarly disqualified.  The criminal conduct and

intent by the Appellees are flagrant.

III.    CHALLENGE TO UNCONSTITUTIONAL TITLE IV PROCEEDINGS
        WHOSE NATURE ARE ACTIONS IN DEBT AT COMMON LAW,
        PURSUANT TO SEC v. JARKESY

21.  This Court must grant a limited remand in that the underlying district court

dismissal relies on an unconstitutional Seventh Amendment violative state

proceeding and the Seventh Amendment requires that a jury not a judge

make findings of fact on federal claims at law that Appellant has, as well as

all the aforementioned structural defects, fraud, and egregious criminal

conduct by the Appellees where federal criminal laws, such as 18 U.S.C. §

1512(c) applies.  Appellant respectfully requests this Court's judicial notice

of the United States Supreme Court's Jarkesy decision on the requirement of

a Seventh Amendment jury trial in actions at common law, and that the

Jarkesy decision applies to all Title IV proceedings and actions whose nature

are debt actions at common law.  Congress cannot conjure away the Seventh

Amendment, and the quick and dirty portion of Title IV enforcement that

implicates private interests at common law that deprive jury trials are all

unconstitutional.

22. *§ v. Jarkesy* makes clear that the state proceeding in the limited jurisdiction

forum concerning a suit in debt at common law that requires a jury should

have been dismissed long ago and could not have been lawfully brought in

the first place, and is being unlawfully maintained.  Indeed, all Title IV

proceedings whose nature are suits in debt at common law requires a jury

and should be dismissed if the forum lacks authority to call a jury.  The

Supreme Court reinforced that the Court in Tull clarified that the Seventh

Amendment does apply to novel statutory regimes, so long as the claims are

akin to common law claims.  See 481 U.S., at 421-423.  The vast majority of

Title IV-D's draconian "efficiency" provisions that affect private interests of

property and liberty further are not covered by "public rights exception."

See *INS v. Chadha*, 462 U.S. 919, 944 (1983).  As *Stern* explained, effects

like increasing efficiency and reducing public costs are not enough to trigger

the exception. See 564 U.S., at 501. Otherwise, the Seventh Amendment

would become nothing more than a game, where the Government need only

identify some slight advantage to the public from agency adjudication to

strip its target of the protections of the Seventh Amendment.  Our United

States Supreme Court is a champion of protections for the agency target, as

it should – the protections of the Seventh Amendment is emphatically

important under the circumstances discussed above in this case.  The Rhode

Island state government has shown to be engaged in State Policy-prescribed

corrupt administration of an Act of Congress, Title IV, through egregious

criminal falsification of federal government records for the purpose of

making false claims for federal funding, evade billions in federal statutory

penalties, and make false debt claims against targeted support obligors.  As

the Jarkesy Court makes clear, the state proceeding is invalid.  The limited

jurisdiction forum lacks the authority over a suit whose nature is in debt at

common law.

23. The *Jarkesy* Court reminds this Court and Rhode Island the Appellees the

origins of American law that Rhode Island Appellees and the Dissent forget

in their distortion of the administrative state: The right to trial by jury is "of such importance and occu pies so firm a place in our history and jurisprudence that any seeming curtailment of the right" has always been and "should be scrutinized with the utmost care." Dimick v. Schiedt, 293 U. S. 474, 486 (1935). Commentators recog nized the right as "the glory of the English law," 3 W. Black stone, Commentaries on the Laws of England 379 (8th ed. 1778) (Blackstone), and it was prized by the American colonists. When the English began evading American juries by siphoning adjudications to juryless admiralty, vice admiralty, and chancery courts, Americans condemned Parliament for "subvert[ing] the rights and liberties of the colonists." Resolutions of the Stamp Act Congress, Art. VIII (Oct. 19, 1765), reprinted in Sources of Our Liberties 270, 271 (R. Perry & J. Cooper eds. 1959). Representatives gathered at the First Continental Congress demanded that Parliament respect the "great and inestimable privilege of being tried by their peers of the vicinage, according to the [common] law." 1 Journals of the Continental Congress, 1774–1789, p. 69 (Oct. 14, 1774) (W. Ford ed. 1904). And when the English continued to try Americans without juries, the Founders cited the practice as a justification for severing our ties to England. See Declaration of Independence ¶20; see generally *Erlinger v. United States,* 602 U. S. ___, ___–___ (2024). In the Revolution's aftermath,

perhaps the "most success[ful]" critique leveled against the proposed Constitution was its "want of a . . . provision for the trial by jury in civil cases." The Federalist No. 83, p. 495 (C. Rossiter ed. 1961) (A. Hamilton) (emphasis deleted). The Framers promptly adopted the Seventh Amendment to fix that flaw. In so doing, they "embedded" the right in the Constitution, securing it "against the passing demands of expediency or convenience." *Reid v. Covert,* 354 U. S. 1, 10 (1957) (plurality opinion). Since then, "every encroachment upon it has been watched with great jealousy." *Parsons v. Bedford*, 3 Pet. 433, 446 (1830). By its text, the Seventh Amendment guarantees that in "[s]uits at common law, . . . the right of trial by jury shall be preserved." In construing this language, we have noted that the right is not limited to the "common-law forms of action recognized" when the Seventh Amendment was ratified. Curtis v. Loether, 415 U. S. 189, 193 (1974). As Justice Story explained, the Framers used the term "common law" in the Amendment "in contradistinction to equity, and admiralty, and maritime jurisprudence." Parsons, 3 Pet., at 446. The Amendment therefore "embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume." Id., at 447. The Seventh Amendment extends to a particular statutory claim if the claim is "legal in nature." *Granfinanciera*, 492 U. S., at 53. As we made clear in

Tull, whether that claim is statutory is immaterial to this analysis. See 481

U. S., at 414–415, 417–425.  In that case, the Government sued a real estate

developer for civil penalties in federal Cite as: 603 U. S. ____ (2024)

Opinion of the Court 9 court. The developer responded by invoking his right

to a jury trial. Although the cause of action arose under the Clean Water Act,

the Court surveyed early cases to show that the statutory nature of the claim

was not legally rele vant. "Actions by the Government to recover civil

penalties under statutory provisions," we explained, "historically ha[d] been

viewed as [a] type of action in debt requiring trial by jury." *Id.*, at 418–419."

24. The United States Supreme Court and the Chief Justice in *Jarkesy, Trump v.*

*U.S., Gina Raimondo*, and the aforesaid 2024 United States Supreme Court

rulings cannot be more clear – this Court must limited remand and re-assign

for further proceedings regarding the nature of the state action, the validity

of the state proceedings, scrutinize the constitutionality of the enforcement

provisions of Title IV that Appellant challenges here and the existence of a

coordinated criminal enterprise that is shown in the 2024 evidence attached

hereto.

25. Appellant now condemns the Appellees, for coordinated subversion of the

rule of law, for coordinated subversion of the Constitution, for coordinate

subversion of the basis of American democracy, for coordinated treason

against the Constitution.

IV.   Pursuant to Misprision of Felony's "duty to raise the 'hue and cry' and report felonies to the authorities" and to "bring to prosecution" via Plaintiff-Appellant Invoked Civil RICO (18 U.S.C. § 1964(c)) Pursuant to Which Congress Confers Individuals the Authority to Civil Prosecution of 18 U.S.C. § 1962

26. The Supreme Court in **United States v. Will**, 449 U.S. 216 (1980), footnote

19, ruled, quoting the venerated Chief Justice Marshall, "Chief Justice

Marshall's exposition in Cohens v. Virginia, 6 Wheat. 264 (1821)… wrote

that a court "must take jurisdiction if it should. The judiciary cannot, as the

legislature may, avoid a measure because it approaches the confines of the

constitution. We cannot pass it by, because it is doubtful. With whatever

doubts, with whatever difficulties, a case may be attended, we must decide it

if it be brought before us. *We have no more right to decline the exercise of*

*jurisdiction which is given than to usurp that which is not given. The one*

*or the other would be treason to the constitution*."  The Court in Appeal

No. 23-1978 Ruled on May 24, 2024 that It Shall Proceed, Finding Under 28

U.S.C. § 1291 It Has Jurisdiction Over The Functus Officio District Orders

Issued by the Same 18 U.S.C. § 4-bound Judge William E. Smith – Under

*United States v. Will*, the same judge Smith has no right to usurp jurisdiction

which is not given, and usurping jurisdiction which is not given is, by

binding Supreme Court precedents, "Treason to The Constitution."  Having

been divested of jurisdiction, Judge Smith's usurpation of jurisdiction during

the pendency of Appeal No. 23-1967 and 23-1978 was aided and abetted by

the State Appellees and their counsel, the Rhode Island Attorney General,

who are common to the captioned appeals in this matter, for the purpose of

obstructing and suppressing access to the federal courts, (just as here),

through which the federal judicial system that **should be** *free from structural*

*defects and the odious mendacity of prosecutorial misconduct* would have

"as soon as possible"  discovered evidence of the felonious crimes that the

Plaintiff-Appellant only started to discover months later in 2024 through

sheer tenacity.  Put plainly, judge William Smith and the State Appellees

actively and feloniously obstruct, conceal, impede, hinder, suppress, repress

and cover up evidence of Rhode Island's systemic and on-going false claims

to the United States for billions of dollars of federal public funds.  Whoever

abet the principal perpetrators are accessories.

27. Accordingly, the Plaintiff-Appellant has, as do public officials (and all

public officials) textually named in 18 U.S.C.  § 4, statutorily prescribed and

at common law "a duty to expeditiously raise the 'hue and cry' and report

felonies to the authorities and "to bring to prosecution."  Procedurally,

jurisdictionally, and statutorily at this juncture, this is done through motion

practice invocation of 28 U.S.C. § 2106, Fed. R. App. P 12.1 and Rule 62.1,

Rule 60(b) and the rules relevant motion practice that allow focused

discovery, Fed. R. Evid. 201, 18 U.S.C. § 4, 18 U.S.C. § 1964(c) (by the

Plaintiff-Appellant), at common law, or the referral of the reported felonies

to the relevant statutory authorities such as the United States Attorney

General Merrick Garland and/or the U.S. Secretary of Health and Human

Services, which the Plaintiff-Appellant formally requests, to limited remand

and re-assign, and to take requisite appropriate actions against public officer

misconduct under this Court's jurisdiction.  Under 18 U.S.C. § 4,

hinderance, concealment, suppression, affirmative neglect, or unjustified

delay are "especially culpable for public officers, since they received a

higher penalty for the crime than that received by ordinary citizens at

common law." Mullis, *supra*. at 1113. The public officers specifically named

in the Federal misprision statutory text with a duty to act upon the receipt of

information are "judge(s) and civil authorities under the United States."  The

First Circuit equally applies the Federal misprision statute to state and local

public officers.  *United States v. Caraballo-Rodriguez,* 480 F.3d 62 (1st Cir.

2007).  The First Circuit in *Caraballo* further noted that the Supreme Court

also noted in *Branzburg v. Hayes*, 408 U.S. 665, 696 n. 36, 92 S.Ct. 2646,

33 L.Ed.2d 626 (1972), that some lower courts had construed the statute to

require both knowledge of a crime and an affirmative act of concealment or

participation, but that both the Supreme Court and the First Circuit did not

adopt that construction.  Moreover, the Plaintiff-Appellant raised the specter

of Appellee Misprision of felony committed before this Court after March

29, 2024 evidenced by the Appellee Motion to Strike submitted by the

Rhode Island Attorney General, a public officer.  This Circuit in *Caraballo*

(precedent) cited ***United States v. Sessions***, Nos. 00-1756, 00-1791, 2000

WL 1456903 (8th Cir. Oct.2, 2000) (unpublished decision), holding that the

misprision statute was satisfied where the individual "gave incomplete

information regarding his knowledge of the [crime]," at least where he "gave

the police partial information that was misleading." Id. at *1, 2000 WL

1456903. If the statute is geared toward avoiding the misleading of

authorities, *Ciambrone*, 750 F.2d at 1418, it is still possible, in concept and

in fact, that even a truthful but partial disclosure could conceal by

misleading the government through the withholding of key information,

specifically in footnote 10 that "it is commonly accepted in other areas of

law.  The specific cases this Circuit Court cited and relied on are all in the

form of omitted facts in filings submitted to judges in a federal court of law

in official federal proceedings that "may mislead."  (Emphatically, it is

obvious that the omission of key facts submitted in the federal district court

which satisfies the misprision statute equally applies to the omission of key facts submitted in the federal appellate court). See the *Caraballo* Court cited cases, **United States v. Nelson-Rodriguez**, 319 F.3d 12, 33 (1st Cir.2003) (recognizing that ==omitted facts in a wiretap warrant affidavit may mislead==); **United States v. Reilly**, 76 F.3d 1271, 1280 (2d Cir.1996) (commenting that a =="bare-bones description" submitted to judge may have been "calculated to mislead"==); **United States v. Stanert**, 762 F.2d 775, 781 (9th Cir.1985) (holding that ==omitted facts in a warrant affidavit may mislead==); *United States v. Previte*, 648 F.2d 73, 85 (1st Cir.1981) (noting that trial court's use of slide transparencies to deliver jury instructions "had some potential to mislead the jury, more by what they omitted than by what they contained").  Therefore it is abundantly plain that the First Circuit *Caraballo* Court applied the **misprision statute** to court "filings submitted to a judge."   Accordingly, the Appellee motions that were filed before this very Court of Appeals, that grossly and egregiously omitted key facts evidenced in the attached state policy documenting the falsification of federal computer records zeroing out the unlawful 12% compound interest in order to conceal it for the felonious purpose of feloniously making false claims to the United States and to support-obligors, "may have been calculated to mislead" which this Court held in ***United States v. Caraballo-***

*Rodriguez,* 480 F.3d 62 (1st Cir. 2007) **satisfies the misprision of felony statute,** holding that the misprision statute was satisfied where the individual "gave incomplete information regarding his knowledge of the [crime]," at least where he "gave the partial information that was misleading"  which the Plaintiff-Appellant plainly contends before this same Court was committed by the Appellees, and Plaintiff-Appellant now preserves this misprision of felony by the Appellees filings submitted to appellate United States judges omitting the substantial fact of falsification of federal computer records zeroing out the unlawful 12% compound interest for the purpose of making false claims "calculated to mislead" and "satisfies the misprision statute" for *all* applicable prosecution under misprision of felony by the Appellant, and all qualifying persons.  The Court should note that the Plaintiff-Appellant applies for the $250,000 per Appellee submission per count allowed under the misprision statute by law and should grant under the misprision law – there is no basis in law or fact for NO consequence or no addressment or indifference or inaction by this Court under the misprision statute or at common law, as painstakingly detailed by this Court in *United States v. Caraballo-Rodriguez,* 480 F.3d 62 (1st Cir. 2007).

28. Under *United States v. Caraballo-Rodriguez,* 480 F.3d 62 (1st Cir. 2007), limited remand and re-assign as soon as possible or at the first opportunity

further complies with 18 U.S.C. § 4, and by this Court's own addressment in *Caraballo*, is required at common law, having at length described as a forewarning the consequences of failure to act by public officers.

## V. CONCLUSION

WHEREFORE, for the above reasons, the Court should grant the Appellant's request for Limited Remand and to Re-Assign, as soon as possible or at the first opportunity. Appellant respectfully specifically invokes 18 U.S.C. § 4, misprision of felony at common law and all applicability, such as that addressed by this Court in *United States v. Caraballo-Rodriguez*, 480 F.3d 62 (1st Cir. 2007), to this instant action. The Plaintiff-Appellant applies for the $250,000 per Appellee submission per count allowed under the misprision statute by law, and the Court should grant the request under the misprision law which the First Circuit held addresses misprision by public officers, who are more severely punished under misprision of felony. Appellant respectfully invokes and applies 18 U.S.C. § 1512 and *Trump v. U.S.*, 603 U.S.___(2024) to request the maximum allowable $250,000 per Appellee submission per count allowed under the federal obstruction statute by law. Appellant respectfully requests any and all relief deemed just.

Respectfully submitted,

Mary Seguin

/s/    *Mary Seguin*

Email: maryseguin22022@gmail.com

Phone: (281)744-2016

P.O. Box 22022

Houston, TX  77019

Dated: July 3, 2024

## CERTIFICATE OF SERVICE

This is to certify that the foregoing Motions were served via the Court's ECF

filing system on July 3, 2024, on all registered counsel of record, and has been

transmitted to the Clerk of the Court.

/s/    *Mary Seguin*

Mary Seguin

Email: maryseguin22022@gmail.com

Phone: (281)744-2016

P.O. Box 22022

Houston, TX  77019

EXHIBIT I.

## SPECIFICATION FOR OCSS CHANGE ORDER
*Auto Adjustment of Interstate Interest*

This specification will outline the process by which interstate cases are selected, automatic adjustments are created, and support orders are modified all for the purpose of removing interest from interstate cases.

## FUNCTIONAL REQUIREMENTS

It is desirable for the Rhode Island Office of Child Support Services (OCSS) to prohibit the charging of interest on interstate cases. This is manually done by placing an N in the interest field on page 2 of the support order. Entry of the N not only prohibits the charging of future interest but automatically creates adjustments to zero out any existing interest.

There currently exists on the InRhodes system interstate cases for which the interest field is not an N and for which there is interest due. It is these cases that the system will process.

If on an interstate case, the interest field on the support order is blank, the system will automatically place an N in the interest field and create non-cash adjustments to zero out any existing interest. No support order modification or interest adjustments will be done on interstate cases without a support order or for which the interest field is already an N or is a Y, B or P.

Two reports will be created. The first will detail the interstate cases for which a support order modification was done and for which one or more interest adjustments were created. The second report will detail interstate cases for which the interest field is Y, B or P. A Y in the interest field is an order to accrue interest while B and P are orders to stay future interest but to keep any interest that has accrued to date.

EXHIBIT II.



**State of Rhode Island**
## Office of Child Support Services
DEPARTMENT OF HUMAN SERVICES

R.I. Government Agencies | Privacy policy | Search RI.gov

Home  My Profile  Contact Us  Site Map  Log

**Menu**

▼ Case Information
  ► Last 5 Payments
  ► Last 13 Months
  ► Current Orders/ Past Due Balances
  ► Court Dates/ Appointments
  ► Enforcement Actions
  ► PIN Lookup

Home > Current Orders and Past Due Balances

### Case Manager

**Current Orders / Past Due Balances**

**Custodial Parent:** Gero K Meyersiek        **CSE ID:** 1689817

**Current Orders**

| Court Order | Amount | Frequency | Begin Date | End Date |
|---|---|---|---|---|
| Child Support | $218.00 | Weekly | 05/28/2012 | 06/30/2018 |
| Arrears | $21.80 | Weekly | 07/17/2012 | |
| Past Liability | $0.00 | None | | |
| Spousal Support | $0.00 | None | | |

⚠ Note: Medical orders and medical arrears are **not** listed on this screen.

**Past Due Balances**

| As Of | Total Due | Arrears | Interest | Spousal |
|---|---|---|---|---|
| 11/30/2021 | $93,214.56 | $93,214.56 | $0.00 | $0.00 |

EXHIBIT III.

Filed in Providence/Bristol County Family Court
Submitted: 6/1/2023 10:13 PM
Envelope: 4132704
Reviewer: Maria O.

11:28:47 Tuesday, December 13, 2022

```
12/13/22   11:28        C A S E   T R A C K I N G      CSCL  ASMXA201
           TRAC.00             CASE HISTORY            U824  PROD
STARTING DATE   09 01 2021
SELECTION    COMPREHENSIVE CASE HISTORY
```

12/06/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT
AGENT CONTACTED ME THAT NCP WANTS TO PAY ALL ARREARS TO OBTAIN PASSPORT. I
CALLED CP PRIVATE ATTORNEY BARBARA GRADY TO ADVISE, AND TO DISCUSS IF CP
WANTS THE INTEREST PUT BACK ON THE CASE (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇). WE REMOVED THE INTEREST WHEN
CASE WAS MADE UI WHEN WE WERE FILING TO TEXAS. ATTY GRADY CHECKED WITH CP
AND CP IS STATISFIED WITH THE LUMP SUM PAYMENT OF PRINCIPLE OF $104K +/-.
AFTER CONFERENCE WITH MONIQUE BONIN AND FRANK DIBIASE, IT WAS DECIDED TO
REQUIRE PAYMENT IN MORE SECURE/LESS REVERSABLE FORM THAN CREDIT CARD, SO $
WILL NEED TO BE WIRED OR BY BANK CHECK. AGENT WILL BE CONTACTED BACK BYNCP
ASNCP WON'T GIVE PHONE NUMBER OR EMAIL ADDRESS. AGENT IS NOT EVEN SURE IF
NCP IS IN COUNTRY. INTEREST IS NOT INCLUDED IN AMOUNT THAT IS CONSIDERED
FOR PASSPORT PURPOSES IN ANY EVENT.

12/06/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT

```
RL: 80  12 22 ABSP:           SEGUIN      MARY       CMD: _____
FNX: TRAC  D CLIENT:          MEYERSIEK   GERO    K  PNL:
```

Case Number: P2001052TM
Filed in Providence/Bristol County Family Court
Submitted 6/1/2023 10:13 PM
Envelope 4132704
Reviewer: Maria O.

11:20:56 Tuesday, December 13, 2022

```
12/13/22   11:20         C A S E   T R A C K I N G        CSCL  ASMXA201
           TRAC.00              CASE HISTORY               U024  PROD
STARTING DATE   09 01 2021
SELECTION   COMPREHENSIVE CASE HISTORY

12/06/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT_____
BUSINESS OFFICE HAS PUT A FLAG ON DISBURSEMENTS SO WE CAN GET THIS SORTED____
OUT. ADVISED AGENT THAT WHILE THERE IS NO BODY ATTACHMENT FOR NCP ISSUED_____
FOR OCSS, THERE MAY BE A BODY ATTACHMENT THAT ISSUED PRIVATELY, SO WE DO_____
NOT WANT TO TELL THE NCP ANY MORE THAN THAT. NCP CAN CHECK WITH THE COURT.____
ATTY GRADY SAID THAT SHE DOES NOT RECALL WHETHER OR NOT BA ISSUED PRIVATEL____
Y FOR NCP. ONCE WE ARE SATISFIED THAT PAYMENT HAS BEEN MADE AND THE FORM_____
OF IT, WE CAN NOTIFY SYSTEMS TO RELEASE THE BLOCK ON PASSPORT._____

12/07/21 WENDY FOBERT (WAF2363) ENTERED COMMENT_____
PER ATTY KDT AT CP REQUEST REINSTATING INTEREST_____

12/07/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT_____
REC'D CALL FROM ATTY GRADY THAT CP HAD RECONSISDERED AND WANTED INTEREST____
TO BE PUT BACK UP ON SYSTEM. EMAIL TO ACCOUNTING OFFICE TO PUT THE INTERES___

RL: 80  12 22 ABSP:        SEGUIN      MARY         CMD: _____
FNX: TRAC  D CLIENT:       MEYERSIEK   GERO    K    PNL:
```

11:29:01 Tuesday, December 13, 2022

12/13/22    11:29          C A S E    T R A C K I N G          CSCL   ASMXA2G1
            TRAC.00             CASE HISTORY                   U824   PROD
STARTING DATE   09 01 2021
SELECTION    COMPREHENSIVE CASE HISTORY

12/07/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT
REC'D CALL FROM ATTY GRADY THAT CP HAD RECONSIDERED AND WANTED INTEREST
TO BE PUT BACK UP ON SYSTEM. EMAIL TO ACCOUNTING OFFICE TO PUT THE INTEREST
T THAT WAS REMOVED IN 10/18 BACK UP ON SYSTEM AND TO RUN INTEREST FORWARD.

12/09/21 WENDY FOBERT (WAF2363) ENTERED COMMENT
SUSPEND DISBURSEMENT FLAG WAS CHANGED FROM B TO SPACE
       FROM CASE DATA PANEL

12/09/21 KATHLEEN MCCUSKER (KMM8623) ENTERED COMMENT
SUSPEND PASSPORT OFFSET WAS CHANGED FROM (BLANK) TO Y
FROM CASE ID: ████████
   FROM OFST PANEL

12/09/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT

RL: 80  12 22 ABSP:              SEGUIN       MARY          CMD: _____
FNX: TRAC  D CLIENT:             MEYERSIEK    GERO    X     PNL:

Case Number: 529-130911    Document: 00118162842    Page: 64    Date Filed: 07/03/2024    Entry ID: 6652564
Filed in 272nd Providence Brazos County Family Court
Submitted: 9/1/2023 10:13 PM
Envelope: 4132704
Reviewer: Maria G.
11:29:35 Tuesday, December 13, 2022

```
12/13/22   11:29         C A S E    T R A C K I N G      CSCL  ASMXA201
           TRAC.00              CASE HISTORY             U824  PROD
STARTING DATE   09 01 2021
SELECTION    COMPREHENSIVE CASE HISTORY
```

12/09/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT
ACCOUNTING HAS CONFIRMED WITH TREASURY THAT THE $104,000 PAYMENT HAS BEEN
RECEIVED AND THAT THAT ACCOUNT WILL NOT ALLOW THE MONEY TO BE REVERSED OUT
OF THE ACCOUNT. BASED ON THAT INFORMATION, I ASKED SYSTEMS TO RELEASE THE
PASSPORT BLOCK. ACCOUNTING HAS GIVEN ME THE BANK INFORMATION THAT CAME IN
WITH THE WIRE TRANSFER. I AM REFERRING THIS TO T. FLYNN TO RESEARCH IF WE
CAN MATCH ACCOUNT TO NCP AND TO LIEN IT IF POSSIBLE. ATTY GRADY, WHO REP-
RESENTS CP HAS ASKED THAT THE PAYMENT BE MADE BY CHECK RATHER THAN ON THE
KIDSCARD. ACCOUNTING WILL DO THIS, BUT I TOLD ATTY THAT IT MAY TAKE A FEW
DAYS TO EFFECTUATE. ATTY GRADY ALSO SENT EMAIL TODAY CONFIRMING THAT SHE
REPRESENTS CP AND IS AUTHORIZED TO TAKE POSSESSION OF THE CHECK. CP IS
BLIND SO COMING TO THE OFFICE TO PICK UP IS A HARDSHIP AND ACCOUNTING IS
CONCERNED ABOUT MAILING THE CHECK.

12/09/21 WENDY FOBERT (WAF2343) ENTERED COMMENT

```
RL: 80  12 22 ABSP:              SEGUIN      MARY        CMD: _____
FXX: TRAC  D CLIENT:             MEYERSIEK   GERO     K  PNL:
```

```
12/13/22   11:28        C A S E   T R A C K I N G       CSCL   ASMXA201
           TRAC.00           CASE HISTORY               U824   PROD
STARTING DATE   09 01 2021
SELECTION    COMPREHENSIVE CASE HISTORY
```

12/09/21 WENDY FOBERT (WAF2363) ENTERED COMMENT_____
CORRECT CP MEDCL ARREARS AS INTEREST OF $6028.75 WAS ADDED TO PRINCIPAL IN____
ERROR.  RELEASED $104185.98 WIRE TRANSFER RECEIVED 12/8/21 TO NON FIP_____
PRINCIPAL $93214.56, CP MEDCL PRINCIPAL $8675.00 AND MEDICAID PRINCIPAL_____
$2296.42_____

12/09/21 18:32 ASPXEND (ASPXEND) DEACTIVATED THE CODE:_____
         TF61 (IN ARREARS - SEND OOS REQUEST FOR CONTEMPT ACTION)_____

12/09/21 SYSTEM CLOSED ENFORCEMENT EPISODE WITH FINAL STATUS_____
         58 COMPLETED - RECEIPTS/ADJUSTMENT ENDED DELINQUENCY_____

12/10/21 ADAM DIAS (ACD2457) ENTERED COMMENT_____
MADE ADJ TO CORRECT ACCIDENTAL ADJ THAT MADE CP MED NEGATIVE. IT IS SUPPOS____
ED TO BE $6028.75._____

```
RL: 80  12 22 ABSP:           SEGUIN        MARY          CMD: _____
FNX: TRAC  D CLIENT:          MEYERSIEK     GERO     K    PNL:
```

Case Number: P2001286
Filed in Providence/Bristol County Family Court
Submitted: 5/1/2023 10:13 PM
Envelope: 4132704
Reviewer: Maya J.

11:29:09 Tuesday, December 13, 2022

| 12/13/22 | 11:28 | C A S E     T R A C K I N G | CSCL  ASMXA201 |
| | TRAC.00 | CASE HISTORY | U824   PROD |

**STARTING DATE** 09 01 2021
**SELECTION** COMPREHENSIVE CASE HISTORY

12/09/21 WENDY FOBERT (WAF2363) ENTERED COMMENT
CORRECT CP MEDCL ARREARS AS INTEREST OF $6028.75 WAS ADDED TO PRINCIPAL IN
ERROR. RELEASED $104185.98 WIRE TRANSFER RECEIVED 12/8/21 TO NON FIP
PRINCIPAL $93214.56, CP MEDCL PRINCIPAL $8675.00 AND MEDICAID PRINCIPAL
$2296.42

12/09/21 18:32 ASPXEND (ASPXEND) DEACTIVATED THE CODE:
   TF61 (IN ARREARS - SEND OOS REQUEST FOR CONTEMPT ACTION)

12/09/21 SYSTEM CLOSED ENFORCEMENT EPISODE WITH FINAL STATUS
   58 COMPLETED - RECEIPTS/ADJUSTMENT ENDED DELINQUENCY

12/10/21 ADAM DIAS (ACD2457) ENTERED COMMENT
MADE ADJ TO CORRECT ACCIDENTAL ADJ THAT MADE CP MED NEGATIVE. IT IS SUPPOS
ED TO BE $6028.75.

| RL: 80  12 22 ABSP: | SEGUIN | MARY | | CMD: _____ |
| FNX: TRAC  D CLIENT: | MEYERSIEK | GERO | K | PNL: |

Case Number: K2001052tM    Document: 00118162842    Page: 67    Date Filed: 07/03/2024    Entry ID: 6652564
Filed in Providence/Bristol County Family Court
Submitted: 6/1/2023 10:13 PM
Envelope: 4132704
Reviewer: Maria O.

11:29:13 Tuesday, December 13, 2022

```
12/13/22    11:28         C A S E    T R A C K I N G        CSCL  ASMXA201
            TRAC.00                  CASE HISTORY            U824   PROD
STARTING DATE    09 01 2021
SELECTION    COMPREHENSIVE CASE HISTORY

12/14/21 TIMOTHY FLYNN (TWF3296) ENTERED COMMENT_____
MAILED ADMIN. SUBPOENA AND REQ. FOR INFO TO BANK OF AMERICA_____

12/14/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT_____
CONTACTED CP'S ATTY TO ADVISE THAT CHECK IS READY TO BE PICKED UP AND TO____
PLEASE LET ME KNOW WHEN SHE WILL COME BY SO I CAN ALERT THE GUARD AT THE_____
DOOR AND BRING THE CHECK DOWN TO HER._____

01/04/22 TIMOTHY FLYNN (TWF3296) ENTERED COMMENT_____
SPOKE WITH MARIE AT BANK OF AMERICA REGARDING A SUBPOENA THAT I HAD SENT_____
TO THEM REGARDING THE NCP. SHE WILL NOTIFY AN EMPLOYEE THERE TO DO MORE_____
RESEARCH_____

01/12/22 TIMOTHY FLYNN (TWF3296) ENTERED COMMENT_____
PER SI RECEIVED LETTER TODAY FROM BANK OF AMERICA STATING THAT THE NCP HAS____

RL: 80  12 22 ABSP:              SEGUIN      MARY        CMD: _____
FNX: TRAC  D CLIENT:             MEYERSIEK   GERO    K   PNL:
```

ed in Providence/Bristol County Family Court
omitted: 8/1/2023 10:13 PM
welope: 4132704
Viewer: Maria O.

11:29:17 Tuesday, December 13, 2022

12/13/22    11:28        C A S E   T R A C K I N G        CSCL  ASMXA201
            TRAC.00           CASE HISTORY               U824  PROD
STARTING DATE    09 01 2021
SELECTION     COMPREHENSIVE CASE HISTORY

01/12/22 TIMOTHY FLYNN (TWF3296) ENTERED COMMENT
PER SI RECEIVED LETTER TODAY FROM BANK OF AMERICA STATING THAT THE NCP HAS
A CHECKING ACCOUNT WITH THEM. CREATED AN OFFLINE NOTICE OF INTENT TO LIEN
THE NCP'S ACCOUNT. FAXED AND MAILED COPIES TO BANK OF AMERICA TODAY. WILL
NOTICE NCP VIA MAIL AT THE TEN DAY MARK

02/21/22 TIMOTHY FLYNN (TWF3296) ENTERED COMMENT
MAILED AND FAXED OFFLINE PERFECTED NOTICE OF LIEN TO BANK OF AMERICA
REGARDING NCP.'S ACCOUNT. COPY MAILED TO NCP

03/04/22 SYSTEM (SYSTEM) ENTERED COMMENT
KWS1263 CREATED THE LIEN OF INSURANCE ASSETS FORM
ON 03/03/2022 FOR: PRIVILEGE UNDERWRITERS RECIPROCAL EXCHANGE (PURE)
CLAIM NUMBER: TX027985

RL: 80  12 22 ABSP:                  SEGUIN      MARY          CMD: _____
FNX: TRAC  D CLIENT:                 MEYERSIEK   GERO    K     PNL:

EXHIBIT IV.

cseinfo.dhs.ri.gov

Ri.gov

R.I. Government Agencies | Privacy policy | Search RI.gov:

## State of Rhode Island
# Office of Child Support Services
### DEPARTMENT OF HUMAN SERVICES

Welcome Mary Seguin

Home | My profile | Contact Us | Site Bar | Log Out

**Menu**
- Case Information
  - Last 5 Payments
  - Last 13 Months
  - Current Orders/ Past Due Balances
  - Court Dates/ Appointments
  - Enforcement Actions
- PIN Lookup

Home > Last 13 Months

Case Manager

## Last 13 Months

Custodial Parent: Gero K Meyersiek     CSE ID:

### Payment Made By The Non-Custodial Parent

| Period | Payment Made |
|--------|-------------|
| 12/2021 | $0.00 |
| 09/2018 | $6,461.95 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

EXHIBIT V.

**Supreme Court**

No. 2023-278-A.

Mary Seguin                                    :

v.                                    :

Rhode Island Department of Human Services    :
    Office of Child Support Services.

# O R D E R

The appellant's "Second Motion to Repeal Rule 5 of the Rhode Island Rules of Practice Governing Public Access to Electronic Case Information", as prayed, is denied.

The appellant's "Second Motion to Stay Proceedings Until Repeal of Rule 5 of Rules of Practice Governing Public Access to Electronic Case Information", as prayed, is denied.

The appellant's "Motion to Compel and Comply with the Court's Order", as prayed, is denied. This Court's November 27, 2023 Order stated that, to extent the appellant needed any materials "***related to this matter***" during the pendency of this appeal, the Clerk's Office was directed to make reasonable efforts to provide her with the requested materials. Pursuant to that Order, the appellant is only permitted to request materials from the Clerk's Office that have been filed in her Superior Court case (PC 22-07215) or in this appeal.

The appellant's "Third Motion for an Extension of Time to File Statement of the Case and a Summary of the Issues Proposed to be Argued" is granted. The appellant shall either file her Rule 12A statement within ***thirty (30) days*** of the date of this Order or she

may seek to hold this appeal in abeyance until she is permitted remote access to case materials as a <u>pro</u> <u>se</u> litigant which access we estimate will be in effect by the end of the year.

Chief Justice Suttell did not participate.

Justice Lynch Prata did not participate.

Entered as an Order of this Court this **29th** day of **March 2024.**

By Order,


/s/ *Meredith A. Benoit*
Clerk

EXHIBIT VI.

# Recorded Phone Call

## Recording Name:

[Recording of phone conversations among John Langlois, Debra DeStefano and Mary Seguin recorded in Texas by Mary Seguin on October 5 2022]

## Transcript Prepared By:



720-287-3710
3801 E. Florida Ave.
Suite 500
Denver, CO 80210

DUNS Number: 037801851
CAGE Code: 6C7D5
Tax ID #: 27-2983097

```
 1   Seguin:    'Cause all -- like, if -- if we base the practice on
 2              how things are done of -- based on what Mr. Langlois,
 3              John, is representing today, everyone should be able
 4              to look at that screenshot, that screen, and be able
 5              to rely on it, correct?
 6   DeStefano:  Well, yeah, I --
 7   Seguin:    And its accuracy, correct?
 8   DeStefano:  -- I mean, the agen- --
 9   Seguin:    So --
10   DeStefano:  The agency is going to have to prove it.  Yes.  The
11              agency is going to have to submit -- and, again, it --
12              it's difficult for me to know how relevant what you're
13              asking for is 'cause I don't know what the agency's
14              gonna submit yet, uh, to -- to support their position.
15              So --
16   Langlois: And can I -- can I just say, the reason I asked
17              earlier whether, uh, Mary had spoken to Carla after
18              she made the $104,000 payment was because there was a
19              change in circumstances immediately after that and I
20              don't know whether anyone in my agency has ever
21              explained that to Mary.
22   Seguin:    Wait -- wait -- wait a minute.
23   Langlois: (Inaudible - 00:01:10)
24   Seguin:    Wait a minute.
25   Langlois: (Inaudible - 00:01:11)
```



```
 1   Seguin:    Wait -- wait -- wait -- wait a minute.  Wait a minute.
 2              If there is --
 3   DeStefano:  Wait a minute.
 4   Seguin:    -- I'd like to get some documents of that.  Okay?  So
 5              -- so, again --
 6   DeStefano:  Mary, what do you --
 7   Seguin:    -- I've asked for, I think --
 8   DeStefano:  Oh.  Wait a minute --
 9   Seguin:    I -- I'm so sorry.  I'm --
10   DeStefano:  -- Mary.  I know -- I know what you asked for.  Let
11              me get to -- let me understand what John just said
12              before.  So, John, you're saying there was a change
13              subsequent to her making a payment --
14   Langlois: Correct.
15   DeStefano:  -- but before the Notice of Lien went out?
16   Langlois: Yes.
17   DeStefano:  Okay.  So --
18   Langlois: And can I -- can -- if I could just back up and
19              explain what happened.  Okay?
20   DeStefano:  Okay.
21   Seguin:    This --
22   Langlois: This is -- 99 percent of this is a misunderstanding.
23   DeStefano:  Okay.
24   Langlois: Okay?
25   Seguin:    Including --
```

```
 1   Langlois: (Inaudible - 00:01:51)
 2   Seguin:   -- what's on the screenshot?  Is that a
 3            misunderstanding?
 4   Langlois: Can -- can I speak without being shouted over?
 5   Seguin:   Well, I'm --
 6   DeStefano:  Mary, let --
 7   Seguin:   I'm sh- --
 8   DeStefano:  Let --
 9   Seguin:   I'm flabbergasted really.
10   DeStefano:  Uh, Mary, you've got to let me --
11   Seguin:   Sorry.
12   DeStefano:  -- listen --
13   Seguin:   Sorry.
14   DeStefano:  -- to what the agency is gonna --
15   Seguin:   I appreciate that.
16   DeStefano:  I mean, I know -- I only know that -- what's in
17            front of me and I don't know everything that has
18            happened in this case, but if -- if -- let me just
19            listen to the agency and see what they have to say for
20            --
21   Seguin:   Sure.
22   DeStefano:  Go ahead, John.
23   Langlois: What -- what happened in this case is when, uh --
24            Mary's representative, her attorney, called us in late
25            November 2021 and said there's a -- she wants her
```

1    passport released.  What does she have to do to

2    release her passport?  They put her in touch with

3    Carla, who gave her the $104,000 number.  Where that

4    number came from, was the department attorney

5    contacted the custodial parent, Mr. Miurski (ph) or,

6    uh, Mr. -- I can't pronounce her last name.

7    Meyersiek.  So we contacted his attorney -- it wasn't

8    me, but it was someone in my office -- and said, "If

9    she's willing to make a $104,000 payment to pay off

10   the principal, would you agree to waive the $75,000" -

11   - I think it was $73,000 in arrears at that time?  He

12   said yes.  So Carla notified Mary that, if she paid

13   $104,000, it would be paid in full because he was

14   willing to waive the interest.  That was just the

15   principal.  What happened was, the day after Carla

16   spoke to Mary and told her to mail in the -- or to --

17   to wire the $104,000, the attorney for Mr., um,

18   Meyersiek contacted us again and said he changed his

19   mind, please put the interest back up on the system,

20   so we did.  That's his money.  The state is just

21   collecting for -- for this past child support that's

22   owed to him.  If he wants the arrears, he has every

23   right to ask for it.  So the number that was given to

24   her was correct on the day it was given to her.  The

25   arrears for $104,000.  Because when he was waiving the

```
 1              arrears, wen he changed his mind the next day, we put
 2              the arrear -- I mean, interest back up on the system.
 3  Seguin:    I think --
 4  Langlois:  He was waiving the interest, and when that interest
 5              went back up on the system, that's why the system is
 6              now saying she owes $73,000.  That's why, in March,
 7              when the system saw that she had a, uh -- some kind of
 8              a personal injury settlement or some kind of an
 9              insurance settlement, we had -- we -- our system was
10              showing that she owed $73,000 in interest, so we
11              issued the lien.  But that's what happened, is when he
12              changed his mind the next day, and that's what messed
13              up the numbers.  So that's how this all happened.  It
14              was a pure misunderstanding.  I don't know whether
15              anyone has ever explained that to Mary, how that
16              happened.
17  DeStefano:  Okay.  Mary, did anybody ever explain that to you
18              before?
19  Seguin:    No.  No one ever --
20  DeStefano:  That the system has just -- just --
21  Seguin:    -- explained any of that, and I --
```

1                    TRANSCRIBER'S CERTIFICATE

2

3          I, Laurel Keller, do hereby certify that I have

4    listened to the recording of the foregoing; further that the

5    foregoing transcript, Pages 1 through 5, was reduced to

6    typewritten form from a digital recording of the proceedings

7    held October 5, 2022, in this matter; that Participant Mary

8    Seguin has stated John Langlois and Debra DeStefano present were

9    included in this recording; and that the foregoing is an

10   accurate record of the proceedings as above transcribed in this

11   matter on the date set forth.

12          DATED this 20th day of June, 2024.

13

14

15                              *Laurel Keller*
                                _____

16                              Laurel Keller

17                              Ditto Transcripts
                                3801 E. Florida Ave.
18                              Suite 500
                                Denver, CO 80210
19                              Tel: 720-287-3710
                                Fax: 720-952-9897
20

21                              DUNS Number: 037801851
                                CAGE Code: 6C7D5
22                              Tax ID #: 27-2983097

23

24

25