THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT
Appeal from the United States District Court for the District of Rhode Island

MARY SEGUIN                                    No. 23-1967
*Plaintiff-Appellant*                          No. 23-1978
                                               No. 24-1313

v.

RHODE ISLAND DEPARTMENT OF HUMAN SERVICES, et al.
*Defendants-Appellees*

———————————————

**APPELLANT'S MOTION REQUEST TO SUPPLEMENT THE RECORD
PRIOR TO BRIEFING**

**Pursuant to FRE 201, the Inherent Authority of the Court Pursuant to
Supervening Change of Facts and Change in Law**

**28 U.S.C. § 2106 and Fed. R. App. P. 27**

**AND**

**APPELLANT'S MOTION TO VACATE IN PART**

———————————————

**ORGANIZED FRAUD, THEFT OF PUBLIC MONEY AND
GOVERNMENT PROGRAMS INVOLVING BILLIONS OF DOLLARS**

Plaintiff-Appellant, MARY SEGUIN, hereby respectfully moves, pursuant to
this Court's *two* orders dated May 24, 2024 (Document: 00118148678) and dated
August 13, 2024 (Document: 00118177676), Federal Rules of Evidence 201(c)(1)
and (2), invoking the Inherent Authority of the Court, **28 U.S.C. § 2106** and
pursuant to supervening change of facts and change in law, to supplement the
record prior to court-ordered briefing due September 13, 2024. The Appellant

further moves to vacate in part the August 13, 2024 Order in this matter. The Court

should vacate the parts "Appellant's motion for limited remand and reassignment

rehashes arguments previously raised and rejected by this court;" "Any future

motions by Appellant seeking remand or reassignment will be subject to summary

denial." Appellant respectfully requests the Court to place on the record a basis in

fact and in law for denial on the record of Appellant's motion for limited remand

based on the facts and record of the above-captioned consolidated matters Appeal

No. 23-1967, 23-1978 and 24-1313, in which <u>no prior Rule 60(b)(3) motions</u>

<u>pursuant to FRAP 12.1 and FRCP 62 were ever filed in the district court during the</u>

<u>pendency of appeal requesting district court judicial review of the proffered 2024</u>

<u>new evidence showing Appellees' written-prescribed agency procedures involving</u>

<u>systemic falsification of Title IV of the Social Security Act federal central registry</u>

<u>records in the corrupt agency administration of an Act of Congress triggering</u>

<u>federal obstruction laws, including 18 U.S.C. § 1512.</u>  In support of Appellant's

motions, Appellant states the following:

To summarize, the crux of Appellant's motion filings in this matter since on or

about March 24, 2024 about twenty days after the Court vacated its original

briefing schedule on March 5, 2024 consists of Appellant presenting material

highly relevant <u>new evidence</u> available in 2024 that is relevant to the key issue of

Appellees-criminal corrupt administration of an act of Congress and criminal intent

that were moreover in the possession of the Appellees, which strongly refute a key

finding of fact made against Appellant in the district court, by a disqualified

district court judge whose requisite impartiality is already under challenge for his

former attorney-client relationship with the Appellee-administrators of Title IV-D

of the Social Security Act in Rhode Island.  Federal Title IV-D is required to be

administered by all political subdivisions in Rhode Island, see, 42 U.S.C. § 654(1),

including the executive branches that Governor Chafee oversaw and whose

administrative procedures Chafee approved, as well as when Chafee was the

former mayor of W. Warwick.  Under 28 U.S.C. § 455(a), the district court judge's

appearance of knowledge of Appellees' decades long federal Title IV-D record

tampering procedures and requisite impartiality would definitely be questioned.

His appearance of knowledge of record tampering goes to explain the district

court's subsequent *functus officio* interference with the pending appeals 23-1967,

23-1978 and 24-1313 that, under these set of evidenced facts, Appellant also

challenged are criminal, that Appellant duly presented the evidence through

appellate motion practice to the Court for the very purpose of <u>supplementing the</u>

<u>record on appeal</u>.  The material highly relevant new evidence show Rhode Island

Appellees criminally falsify federal Title IV of Social Security Act records, that

incorporates the federal Administrative Procedures Act, in order to make false

claims to the United States for federal funds under Title IV-A and Title IV-D of the

Social Security Act and to support obligors.  Due to the highly and systemic criminal nature of the Appellees activities evidenced in the new evidence implicating theft of billions of federal public program funds, Appellant also submitted/made known the evidence to the public officers, United States judges in this Court in these appellate proceedings "***as soon as possible***" as required by federal criminal statute, pursuant to and invoking 18 U.S.C. § 4 on or about March 24, 2024.

The undisputable and undisputed fact remains that the material highly relevant new evidence available in 2024 is the fundamental game changer that fundamentally alters the crux of the issues on appeal in this matter, goes toward the issue of Younger Abstention Exception (*inter alia* bad faith, prosecutorial misconduct, structural defect, systemic criminal obstruction scheme for the purpose of making false claims implicating billions of federal public program funds), goes toward the issue of the disqualification of district court judge William E. Smith, goes toward the merits on appeal, goes toward the issue of Appellee criminal concealment and goes toward fundamental constitutional infirmity and structural defects of the state court structure designed and created by Appellees that administer the federal-state cooperative federal Title IV-D and Title IV-A program legal framework, which incorporates the federal Administrative Procedures Act.  The Court's orders in response make clear that the Court *de facto*

supplemented the record.  Appellant hereby moves through appellate motion

practice under the law to supplement the record with explicit clarity ahead of the

brief due on September 13, 2024, to comply with the Court's orders in these

consolidated matters, by applying *Lowry*, 329 F.3d at 1025; *Jones v. White,* 992

F.2d 1548, 1567 (1lth Cir. 1993)(noting, in a case in which supplementation was

allowed, that it had previously been denied "when a party ha[d] failed to request

leave of this court to supplement a record on appeal or ha[d] appended material to

an appellate brief without filing a motion requesting supplementation"); *Patterson*

*v. Ala.*, 294 U.S. 600, 607 (1935) (The Supreme Court has held that courts of

appeal are *required* to "consider *any* change, either *in fact or in law*, which has

supervened" since the disputed decision was issued.;

I.    **The Court's Two Orders Make Clear that the Court De Facto
      Supplemented the Record Through Taking Judicial Notice of
      Adjudicative Facts under FRE 201 of proffered new evidence in the
      Related Proceedings Appeals 23-1851 and 24-1451; Appellant
      Hereby Formally Requests Supplementation of the Record In
      Preparation of Briefing, in Compliance With the Court's Orders**

1. The Court made clear in its two orders in these consolidated appeals that the

Court reviewed supervening change of facts evidenced in Appellant-proffered

2024 newly available evidence filed in the above-captioned consolidated matters

that shows the Rhode Island Appellees not only function and act as the

administrative persons of the federal program under the legal framework of the

Title IV-D of the Social Security Act, but further undisputedly, through prescribed

written Title IV administrative procedures and practices concealed but inherent

within Rhode Island's Title IV State Plan that Appellees routinely purposely falsify

records in interstate support cases to zero out Rhode Island's 12% compound

interest for no other reason than to conceal it from federal authorities, for the

purpose of making false claims to the United States to corruptly obtain federal

funding for the Appellee criminal scheme, and making false claims to support

obligors with falsified, altered, fabricated and capriciously fabricated federal Title

IV records, that further incorporate and trigger the federal Administrative

Procedures Act and a slew of federal criminal statutes, including 18 U.S.C. § 1512,

18 U.S.C. 1516, 18 U.S.C. § 666 *et al.* that have been previously invoked, raised

and preserved in the appellate record in these consolidated appeals.   In reality and

in essence, this Court received and must consider by law supervening facts (and

Appellant will show change in law) that show interstate state child support

collection proceedings pursuant to Title IV of the Social Security Act under the

Title IV-D legal framework are nothing more than Appellees' civil administration

of federal programs that are funded and reimbursed by federal funding under Part

A and Part D of the Title IV scheme, that are moreover regulated by federal law

and audited by federal auditors (see, e.g., 42 U.S.C. § 654(5) and 42 U.S.C. § 666,

and see 42 U.S.C. § 655(a)(1)(A); 42 U.S.C. § 602(a)(2)). Moreover,

fundamentally state child support collection actions are actions in debt at common

law, that the government Appellees misleadingly dress up as "enforcement

actions" whose nature are nothing more than legal actions in debt at common law.

See *S.E.C. v Jarkesy*, 603 U.S. ___ (2024).   In these matters, since the underlying

action is not a welfare case, the state Appellees merely provide debt collection

"services" to Appellee Gero Meyersiek under 42 U.S.C. § 654(6), and as new

evidence show, are motivated by the inherent false claims for substantial interstate

"child support interest" debt amounts in excess of $75,000 that, due to the interest

aspect, was falsified by the Appellees and falsely claimed through Rhode Island's

prescribed routine "zeroing out of interest" in interstate cases for the purpose of

concealing Appellees' 12% compound usury false claim scheme targeting support

obligors.  Appellees offer no legitimate purpose for "zeroing out" interest, then

capriciously put it back on the federal central registry computer system in the Title

IV scheme, while transmitting falsified court orders prescribed by administrative

procedures routinely in practice in Rhode Island's criminally corrupt

administration of the Act of Congress.  As for the criminally structured digital

court systems that operate two electronic court filing and management systems

(one for use by the agency Appellees and the state judge, another for use by

everyone else in which the  public, pro se defenders and federal auditors are unable

to see/blinded by agency filings and court orders filed and ultimately entered

routinely without opposing party even being made aware of/noticed of agency

filings that purposely (1) obstruct federal auditors, pro se defenders and the

public's access to court case information and judge-created laws concerning

Appellees' administration of these Title IV debt collection proceedings involving

the routine Rhode Island policy-prescribed falsification of federal central registry

debt collection electronic records within the Title IV-D legal framework, (2) rig the

proceeding to the advantage of the agency that the new 2024 evidence make clear

aid and abet Appellees to make false claims in dressed-up "support" "enforcement"

actions whose nature are actions in debt at common law Appellees knowingly held

in constitutionally infirm forums that violate defendants' trial by jury rights, the

Appellees in these consolidated appeals remain loudly <u>silent</u>, abjectly failing to

offering a single shred of legal or legitimate reason throughout these proceedings

in this matter for "zeroing out interest" and altering court orders to zero out interest

in the federal central registry in their administration of Title IV.  New controlling

supervening law must supplement the record: *S.E.C. v Jarkesy,* 603 U.S. ___

(2024), ***Fischer vs. U.S.***, 603 U. S. ____ (2024); ***LOPER BRIGHT***

***ENTERPRISES ET AL. v. RAIMONDO, SECRETARY OF COMMERCE, ET***

***AL***., No. 22-451 *Together with No. 22–1219, ***Relentless, Inc., et al. v.***

***Department of Commerce**, et al.*; ***Corner Post, Inc. v. Board of Governors of the***

***Federal Reserve System***, 603 U. S. ____ (2024); *Ohio v. Environmental Protection*

*Agency*, 603 U.S. ___(2024).  As raised in the record by Appellant, the Supreme

Court's supervening changes in law make clear that like Title IV-D of the Social Security Act, "enforcement" actions under new federal schemes, often in the form of complex and over-ruled multi-tiered "federal and state work-together schemes" such as the Clean Air Act and Title IV-D and Title IV-A of the Social Security Act enacted by Congress, are fundamentally by nature actions in debt, or penalty or fraud at common law that require Article III review and jury trial, not constitutionally infirm forums – federal program administrations and "enforcement" are obviously not akin to state dental licensing board civil "enforcement" devoid of federal regulation or federal audit or federal funding or reimbursement under federal regulatory oversight, like here.

2. Accordingly, in response, the Court's May 24, 2024 Order (**Document: 00118148678**) ordered "Many of Seguin's motions concern the merits of the district court's rulings in the underlying matter and/or offer materials and arguments not placed before the district court. Those motions are denied, ***though Seguin is free to address relevant matters during briefing, and this denial is without prejudice to the pursuit of any specific argument during briefing.*** Again, the ultimate merits panel will decide this appeal based on the parties' briefs and will consider those matters properly encompassed by the appeals. In light of the foregoing, any requests for the court to strike filings by Seguin are denied."

3. It is plainly evident that the newly proffered evidence showing systemic criminal falsification of federal records in Appellees' administration of the federal Title IV-D federal program, regulated by federal law, funded by federal public program funds, and audited by federal regulators are the supplemented record matters that the Court had ordered Appellant is "free to address during briefing" and "address during briefing." The law is plainly evident that the Court in ordering Appellant is free to address these new evidence matters during briefing, has *de facto* supplemented the record, since as an initial matter of law, briefing is on the appeal record. Henceforth, Appellant hereby applies the afore-cited appellate practice by law to explicitly move to supplement the record with the new 2024 evidence that Appellant had proffered from March 24, 2024 to the present, that the Court had ordered since May 24, 2024 in this matter Appellant is "free to address during briefing."

4. Moreover, the Court's August 13, 2024 Order had *de facto* supplemented the record with the 2024 new evidence through the Court's *de facto* judicial notice of facts of appeals 24-1451 and 23-1851. See Document: 00118177676, that ordered "Appellant's motion for limited remand and reassignment ***rehashes arguments previously raised and <u>rejected by this court</u>***; therefore, this motion is denied." The appeal record in this matter is crystal clear that Appellant never filed a motion for limited remand and reassignment in these consolidated appeals 23-

1967, 23-1978 or 24-1313.  Therefore, it is crystal clear that the Court's August 13, 2024 Order in *this* matter refers to the Court's **judicially noticed** concurrent and related appellate proceedings and 23-1851 May 30, 2024 Court Order (Document: 00118150370) in appeal 23-1851 and 24-1451 in which Appellant proffered the same 2024 new evidence proffered here that is also highly relevant there, that in appeal 24-1451 is formally and explicitly the crux of the record on appeal.  The 23-1851 May 30, 2024 Court Order (Document: 00118150370) ordered, "Seguin's motions seeking a stay, leave to file a Rule 60(b)(3) motion in the district court, limited remand, reassignment, and disqualification of the district court judge are denied as to those requests properly lodged in this court. Seguin has pending in this court an appeal from some relevant district court rulings, see Appeal No. 24-1451, and may address relevant matters in briefing in that appeal once a briefing schedule has been set." It is plain that the Court in this matter *de facto* supplemented the record by judicially notice on its own the record on appeal in Appeal No. 24-1451 in which the 2024 new evidence that is also proffered in this matter lies at the heart of the record on appeal there.  Since the Court in this matter had judicially noticed on its own the appeal record in the related and relevant concurrent proceeding Appeal 24-1451, Appellant hereby formally requests supplementation of the record in this matter pursuant to Federal Rules of Evidence 201(c)(1) and 201(c)(2), of the entire record in the related concurrent proceeding Appeal 24-1451 in which the

2024 new evidence lies at the heart of the disputed district court order issued

pursuant to Appellant's appellate practice of Fed. R. Civ. P 62 and FRAP 12.1

during the pendency of Appeal No, 23-1851.  Pursuant to FRE 201(c)(2), the

Appellant furnishes attached in Exhibit the Court's May 30, 2024 Court Order in

Appeal No. 23-1851, Document: 00118150370 and the relevant new evidence

attached hereto as Exhibit I.

5. In the concurrent and relevant proceedings 23-1851 and 24-1451, the entire

new evidence showing the Appellees routinely falsify federal central registry Title

IV-D support records to deceive and make false claims to the United States,

receiving states and support obligors, is material highly relevant evidence of

coordinated crimes "go[es] to the heart of the contested issue, and it would be

inconsistent with this court's own equitable obligations and truth-seeking

obligations . . . to pretend that [it does] not exist." See, *In re AOV Indus., Inc.*, 797

F.2d at 1013 (D.C. Cir. 1986) (citing ***Singleton v. Wulff,*** 428 U.S. 106, 96 S.Ct.

2868, 49 L.Ed.2d 826 (1976)).  The courts of appeals supplement the record in its

truth seeking function, when "injustice might otherwise result.'" *Id*. (quoting

*Singleton*, 428 U.S. at 121, 96 S.Ct. 2868). See also *CSX Transp., Inc. v. Garden

City,* 235 F.3d 1325, 1330 (11th Cir.2000) ("[Courts of appeals] have the inherent

equitable power to allow supplementation of the appellate record if it is in the

interests of justice.").

6. Appellant, pursuant to the Court's May 24, 2024 (in THIS matter (**Document: 00118148678**) ordered "Many of Seguin's motions concern the merits of the district court's rulings in the underlying matter and/or offer materials and arguments not placed before the district court. Those motions are denied, ***though Seguin is free to address relevant matters during briefing, and this denial is without prejudice to the pursuit of any specific argument during briefing***" seeks to comply with the Court's order and will address the relevant 2024 new evidence during briefing here that is due September 13, 2024, which new evidence this Court has further judicially noticed on its own of the entire record on appeal on appeal 24-1451.  With the 2024 new evidence *de facto* supplemented by this Court in this matter in the aforesaid manner, the scope of this consolidated appeal has by record supplementation law been properly expanded and the record properly supplemented.

## II. The Court of Appeals Must Consider Supervening Change in Facts and Change in Law

7. The Supreme Court has made it crystal clear courts of appeals must consider supervening change in facts and change in law.  The Court has supplemented the record with the proffered 2024 new evidence showing Appellees corruptly administered a federal-state "work-together" program that the federal statutory scheme in no uncertain terms regulates, funds and audits the state participants' administration of the work-together scheme – Appellees administer the federal

program using the new 2024 new evidenced *written prescribed <u>criminal</u>*

*procedures* to <u>falsify</u> Title IV-D support *interest* records for the purpose of

systemically <u>and</u> systemically making false claims that has been <u>undisputed</u> by

Appellees in this matter.  This is categorically systemic commission by public

officials of egregious federal obstruction and theft crimes within the administration

of the Title IV-D of the Social Security Act legal framework, that has been made

known as soon as possible to the judges of the United States in the First circuit in

the judges' <mark><u>**ministerial capacity under 18 U.S.C. § 4**</u></mark> through a "Notice" filing

<u>first</u>, which plainly does not require adjudication, since March 24, 2024, within the

jurisdiction where <mark>***United States v. Caraballo-Rodriguez,***</mark> 480 F.3d 62 (1st Cir.

2007) applies to any and all public officials throughout the First Circuit. Appellant

***emphasized the egregiousness of the reported federal criminal activities due to***

***their intended and purposeful broad expansive reach to all jurisdictions within***

***the legal framework of Title IV-D of the Social Security Act, which reach***

***includes the Fifth Circuit that has concurrent jurisdiction.***   <mark><u>**Only subsequent to**</u></mark>

<mark><u>**the Notice filing pursuant to 18 U.S.C. § 4, did Appellant file motions in April**</u></mark>

<mark><u>**2024 requesting judicial notice under FRE 201(c)(2) of the highly undisputed**</u></mark>

<mark><u>**facts, attaching the new evidence documents – emphatically, as of April 2024,**</u></mark>

<mark><u>**Appellees never filed any objections nor responded nor refuted the proffered**</u></mark>

<mark><u>**2024 new evidence materials.**</u></mark>  Appellant filed the motions for judicial notice

invoking the inherent authority of the Court and under FRE 201 pursuant to

accepted appellate practice to request supplementing the record with highly

relevant and controlling new evidence.  See *Lowry*, 329 F.3d at 1025; *Jones v.*

*White,* 992 F.2d 1548, 1567 (1lth Cir. 1993), in anticipation of the Court resetting

the briefing schedule in this matter. See also *In re AOV Indus., Inc.*, 797 F.2d at

1013 (D.C. Cir. 1986), as the entire new evidence showing the Appellees routinely

falsify federal central registry Title IV-D support records to deceive and make false

claims to the United States, receiving states and make false claims to support

obligors throughout the legal reach to all jurisdictions within the Title IV-D legal

framework, this material highly relevant evidence of coordinated crimes "go[es] to

the heart of the contested issue, it would be inconsistent with this court's own

equitable obligations . . . to pretend that [it does] not exist." See, *In re AOV Indus.,*

*Inc.*, 797 F.2d at 1013 (D.C. Cir. 1986) (citing *Singleton v. Wulff*, 428 U.S. 106, 96

S.Ct. 2868, 49 L.Ed.2d 826 (1976)).  The courts of appeals supplement the record

when `injustice might otherwise result.'" *Id.* (quoting *Singleton*, 428 U.S. at 121, 96

S.Ct. 2868). See also *CSX Transp., Inc. v. Garden City,* 235 F.3d 1325, 1330 (11th

Cir.2000) ("[Courts of appeals] have the inherent equitable power to allow

supplementation of the appellate record if it is in the interests of justice."). Since

Appellant made known the new evidence "as soon as possible" on or about March

24, 2024, Appellant sought permission for limited remand under FRAP 12.1 and

Fed. R. Civ. P 62 to file Rule 60(b)(3), (4), (5) and (6) motions in the district court
and for the purpose of focused discovery on the damning new evidence to the
Appellees and the district court judge who is categorically disqualified.  During the
above-captioned consolidated matters, Appeals 23-1967, 23-1978 and 24-1313,
Appellant never previously filed any Rule 60(b)(3) motions under appellate
procedures FRAP 12.1 or Fed. R. Civ. P 62.   This material highly relevant factual,
procedural and rule-based distinction must be seen as critical in this matter given
the seriousness of the circumstances and issues cumulatively raised on the record
in this matter.  Therefore, Appellant challenges this Court's August 13, 2024 Order
(Document: 00118177676) in this matter, that in part held, "Appellant's motion for
limited remand and reassignment rehashes arguments previously raised and
rejected by this court; therefore, this motion is denied." (Document:
00118177676).  The Court is in fact referring to Appellant's previously filed
motion for limited remand and reassignment in the concurrent Appeal 23-1851; the
Court issued an Order on May 30, 2024 that held in part, "Seguin's motions
seeking a stay, leave to file a Rule 60(b)(3) motion in the district court, limited
remand, reassignment, and disqualification of the district court judge are denied as
to those requests properly lodged in this court. Seguin has pending in this court an
appeal from some relevant district court rulings, see Appeal No. 24-1451, and may
address relevant matters in briefing in that appeal once a briefing schedule has

been set" (Document: 00118150370) as is evident in the record in that matter, during the pendency of Appeal 23-1851, Appellant had previously filed a Rule 60(b)(3) motion in the district court under motion practice of FRAP 12.1 and FRCP 62, and has pending in the Court an appeal from the district court judge's rulings in Appeal No. 24-1451 as they relate to the common district court matter there. It is crystal clear that the Court in 23-1851 rejected Appellant's motion for limited remand and re-assign based on the "pending appeal from some relevant district court rulings in Appeal No. 24-1451" on the filed Rule 60(b)(3) motions in district court. Since by contrast, there is no pending appeal from any Rule 60(b)(3) motion rulings by the district court during the pendency of the consolidated appeals 23-1967, 23-1978 and 24-1313, the basis of this Court's denial of Appellant's motion for limited remand focused on the new 2024 evidence in the separate underlying district court matter 23-cv-126, is in error, and emphatically, given the seriousness of systemic government criminal corrupt administration of an Act of Congress that implicates false claims for billions of public federal funds with purposeful broad reach to all jurisdictions within the Title IV-D legal framework, Appellant challenges the Order in part, as well as the implicated on-its-face failure of the ministerial duty or obligation of the judge(s) and the designated federal authorit(ies) under 18 U.S.C. § 4, applying *United States v. Caraballo-Rodriguez,* 480 F.3d 62 (1st Cir. 2007), issues of which were also raised in

Appellant's denied motion for limited remand in this matter.  Appellant explicitly

places on the record Appellant does not waive Appellant's right to challenge the

Court's August 13, 2024 Order insofar as it denies Appellant's request for limited

remand in this matter.  Appellant challenges the implied failure of truth-seeking

obligations in a judicial capacity, and ministerial failure of public official

obligations of all relevant officials under the "as soon as possible" clause under 18

U.S.C. § 4, applying *United States v. Caraballo-Rodriguez,* 480 F.3d 62 (1st Cir.

2007).  "As soon as possible" is defined as "hastened pace" insofar as it applies to

taking action under 18 U.S.C. § 4.  Yet time again, this Court interprets "as soon as

possible" as "not hasten" insofar as it applies to taking action in response to the

reported AND Appellee-unrefuted serious crimes reported under 18 U.S.C. § 4 that

implicate the very serious issues of government legitimacy, federal program

administration legitimacy that incorporates the federal Administrative Procedure

Act, public officials' decades-long theft of vast sums of federal public funds,

making significant false claims via written-prescribed obstruction falsification and

alteration of federal records in the federal central registry in impending federal

Title IV legal framework proceedings that are funded by federal funds.  The

Supreme Court held in Trump v. U.S., 603 U.S. ___ (2024) that no-one is above

the law, including the President of the United States.  Appellant hereby preserves

these issues for review by the Supreme Court, which are ripe for review – what are

the obligations of the named persons under the "as soon as possible" clause under

18 U.S.C. § 4 and delaying or denying persons from taking action under the law

and procedural rules that are availed or at disposal, especially when serious

obstruction crimes are involved that go towards the legitimacy of systemic

government administration of Acts of Congress.  The Supreme Court has held that

"in the exercise of its appellate jurisdiction over a judgment, the courts of appeal

must not only correct error in judgment under review, but to make such disposition

of the case as justice requires, and where any change, either in fact or in law, has

supervened since the judgment was entered, which may affect the result, the

judgment may be set aside and the cause remanded.  This is in line with the ***truth-***

***seeking*** function of the Court.  See ***Patterson v. Alabama,*** 294 U.S. 600 (1935).

See also ***Watts, Watts & Co., Ltd. V. Unione Austriaca***, 248 U.S. 9 (1918), "…in

determining what justice <u>now</u> requires, the Court MUST consider the changes in

fact and in law which have supervened since the decree was entered below." "It is

more insistent when the appellate court reviews *de novo*."  Also see ***Gulf,***

***Colorado & Santa Fe Ry. Co. v. Dennis,*** 224 U.S. 503 (1912) (quoting Chief

Justice Marshall: "..if subsequent to the judgment, and before the decision of the

appellate court, a law intervenes and positively changes the rule which governs, the

law must be obeyed, or its obligation denied…in such a case, the court must decide

according to existing laws, and set aside the judgment."  Since 18 U.S.C. § 4 is a

carry over from common law at the founding of this Nation, public officials'
obligations under the "as soon as possible" clause of 18 U.S.C. § 4 in the context
of statutorily prescribed statutes of limitations makes it more urgent for public
officials' obligation to take action or obligation relating to impede, influence, or
stop other persons to take action as soon as possible.  Given the potential impact of
these agency actions on individual rights, the Supreme Court has recognized a
"strong presumption that Congress intends judicial review of agency action"; this
presumption is embodied in the Administrative Procedure Act (APA).  See
*BOWEN, SECRETARY OF HEALTH AND HUMAN SERVICES, ET AL. V.*
*MICHIGAN ACADEMY OF FAMILY PHYSICIANS ET AL.*, 476 U.S. 610, 106
S.Ct. 2101 90 L.Ed.2d 584 (1986). In *Ohio v. Environmental Protection Agency*,
603 U.S. ___(2024), the Supreme Court made clear that *another* federal-state
"work-together" administration scheme enacted by Congress that shares the similar
structure of federally approved state plan and is similarly (partially at up to 25%)
funded by federal funds, is subject to Article III judicial review is subject to pre-
enforcement review, and is subject to stay.  The Supreme Court in light of *Ohio v.*
*EPA* (2024) will have no trouble striking down Appellees' criminal administration
of another federal-state "work-together" scheme that involves/is operated through
Appellees' coordinated systemic criminal obstruction altering, falsifying and
concealing falsified federal central registry records for the purpose of making false

claims, corruptly collect unlawful debt, theft of public federal funds and corrupt administration of an Act of Congress, as well as focus discovery on these 2024 newly discovered Appellee-concealed RICO activities.  The Supreme Court in light of *Trump v. U.S.*, 603 U.S. ___ (2024) will have no trouble finding that "nobody is above the law."  The Supreme Court in light of *Fischer v. U.S.*, 603 U.S. ___ (2024) will have no trouble finding coordinated obstruction, document alteration, falsification, false certification, tampering and aiding and abetting, including violation of obstruction of federal auditors.  The Supreme Court in light of **Loper Bright Enterprise v. Raimondo**, (2024) (Slip Opinion), striking the Chevron deference, will have no trouble interpreting, or subject 42 U.S.C. § 654(21)(A) for Article III judicial review, and hold Appellee-administration involving systemic "zeroing out the interest and zeroing out interest in court orders" in interstate support cases transmitted to the Title IV federal central registry is criminal obstruction and is concealment of the knowingly unlawful 12% compound interest under the Title IV-D legal framework scheme, in order to make false claims for federal funding that the administrators know they are ineligible for. The discovery of the new evidence in 2024 conclusively shows injury to the Appellant, and the Supreme Court in light of **Corner Post, Inc. v. Board of Governors of the Federal Reserve System**, 603 U. S. ____ (2024) will have no trouble to protect Appellant's right to timely remedy upon injury.  The Supreme

Court in light of *S.E.C. v Jarkesy*, 603 U.S. ___ (2024) will have no trouble

enjoining and striking down "as soon as possible" the clearly purposeful due

process violative, First-Amendment violative, Government Edicts Doctrine

violative, jury trial right deprivation, two separate digital court case filing and case

management systems rigged to the advantage of the criminal Appellee agency

federal program administrators for Title IV proceeding forums that are

constitutionally infirm forums and structural defects implemented and

administered by all political subdivisions of Rhode Island under 42 U.S.C. §

654(1) that *de facto* pursue actions in debt at common law proceedings dressed up

as "enforcement" or "civil penalty enforcement" in forums without juries that are

rigged in the agencies' favor using two separate court case management systems

that blinds pro se defendants from seeing or being notice of agency filings and

which bars access to judge-created laws and court records in violation of the

Government Edicts Doctrine and the First Amendment, where "judges" in forums

that deny trial by jury rights inexplicably failing abjectly in their fact-finding

functions never found issue with systemic "zeroing out interest" in Title IV

electronic records and underlying court orders when transmitting to the Title IV

federal central registry for DECADES since 2001 have *de facto* enabled the

systemic criminal alteration and falsification of electronic federal central registry

records and state central registry records instate concealing the 12% compound

interest from official record audit for <u>decades</u>.  Given these non-exhaustive

voluminous criminal and Constitutional issues implicating the legitimacy of

government agencies administering one of the largest federal-state "work-together"

programs and the legitimacy of the judiciary, the Supreme Court in light of *Jarkesy*

will have no trouble ensuring the impartiality of reviewing Article III judges could

not be questioned under § 455(a), and that *functus officio* district courts are

reprimanded, condemned and disciplined for, as well as <u>hastily</u> enjoined from

*prima facie* altering, influencing through altering the record on appeal, and

otherwise interfering with a federal appellate proceeding that justice requires, that

further trigger federal criminal obstruction laws.  These issues are not exhaustive

but represent a preliminary set of issues as they relate to structural defects and

forensic prosecutorial misconduct at both the state and federal levels previously

raised in the record that are preserved, are not waived, and are ripe for Supreme

Court review.  Moreover, Appellant challenges the Court's August 13, 2024

Order's blanket decision that "Any future motions by Appellant seeking remand or

reassignment will be subject to summary denial."  Appellant's March 2024

proffered evidence documenting Appellee-falsification of official Title IV federal

records as it relates to "zeroing out interest" in all interest-related documents is but

one aspect of the criminal administration of Title IV.  The Court lacks any facts or

legally sufficient basis before it to issue a blanket prohibition on "any" future

requests involving any other new evidence that may become available.  In these

proceedings, this appellate Court lacks factual information before it that there are

other or additional incriminating evidence that may become available, and to

broadly prohibit any requests for remand before any requests are even made

pursuant to the availability other or additional incriminating evidence is premature.

Due to the criminal nature of the Appellee administration of the Act of Congress,

such a blanket prohibition or summary denial would *de facto* function as chilling or

impeding making available documents in a federal proceeding under 18 U.S.C. §

1512.  As such, Appellant respectfully requests the Court vacate this blanket

"summary denial" and blanket prohibition on any future requests for limited

remand, especially as it applies to new evidence (which may likewise show

Appellee criminal acts) become available during the pendency of the consolidated

appeals in this matter.  The Appellant is concerned that this portion of the order

may also conflict with the judge(s)' ministerial obligation under 18 U.S.C. § 4.

Likewise, it may conflict with First Amendment rights to publicly "make known"

to judges of the commission of federal cognizable crimes in an official proceeding

and conflict with requests provided in and available in FRAP 12.1.

**III. The Court must apply the changes in law pursuant to *S.E.C. v Jarkesy,* 603
U.S. ___ (2024), *Fischer vs. U.S.*, 603 U. S. ____ (2024); *LOPER BRIGHT
ENTERPRISES ET AL. v. RAIMONDO, SECRETARY OF COMMERCE, ET
AL.*, No. 22-451 \*Together with No. 22–1219, *Relentless, Inc., et al. v.
Department of Commerce*, et al. (2024)(slip opinion); *Corner Post, Inc. v. Board***

**of Governors of the Federal Reserve System, 603 U. S. ____ (2024); *Ohio v. Environmental Protection Agency*, 603 U.S. ___(2024) to these aforesaid changes in facts**

8. The 2024 new evidence that is supplemented to the record in this matter changed

the facts, as discussed in the above paragraphs.  When these changes alter the

suitability of the outcome, the court of appeals may remand the case to the district

court to supplement the record.  In 2024, the Supreme Court issued seminal

seismic changes in law governing agency administration of federal programs.

Having firmly established that the Appellees dressed up its own administration of

the federal Title IV-D Program scheme as if Title IV proceedings merely and

exclusively implicated only state laws or interests, this misrepresentation has since

been refuted by the new 2024 evidence and change in facts – Title IV-D legal

framework proceedings are administered by the states pursuant to federal law

regulation, operated under federal funding of operations contingent on state

compliance with federal regulation and are subject to federal statutory-prescribed

audit by federal auditors.  The Appellees are themselves the agencies and persons

carrying out the administration of the federal Title IV-D scheme.  The Appellees

have been exposed before this Court that they sought to violate federal regulation

by self-prescribing and concealing clandestine Rhode Island administrative

procedures that falsify federal Title IV central registry records by zeroing out

Rhode Island's 12% compound interest, falsifying state support orders transmitted

to the federal central registry by zeroing out the interest to conceal it from federal auditors, falsify certifications of compliance, for the purpose of making false claims to the United States for federal funds and false claims to support obligors for unlawful fraudulent usurious compound interest. The Rhode Island federal program administrator Appellees capriciously put the zeroed out interest back on the federal computer records to fraudulently lien properties interstate, and operate constitutionally infirm forums that further deprive jury trials in *de facto* legal actions in debt at common law.  The Court must apply the changes in law pursuant to *S.E.C. v Jarkesy,* 603 U.S. ___ (2024), ***Fischer vs. U.S.***, 603 U. S. ____ (2024); ***LOPER BRIGHT ENTERPRISES ET AL. v. RAIMONDO, SECRETARY OF COMMERCE, ET AL***., No. 22-451 *Together with No. 22–1219, ***Relentless, Inc., et al. v. Department of Commerce***, *et al*. **(2024)(slip opinion)**; ***Corner Post, Inc. v. Board of Governors of the Federal Reserve System***, 603 U. S. ____ (2024); *Ohio v. Environmental Protection Agency*, 603 U.S. ___(2024) to these aforesaid changes in facts, which Appellant has the right to, and is free to brief the Court on and which the Court must consider – in the agency administration of a federal program scheme as are the undisputed facts here, the forum's constitutionality is zealously scrutinized, the nature of any "new" federal program "enforcement action" proceeding is scrutinized relying on originalism at common law, judicial review of disputed meaning of the federal program statute is performed by Article

III courts, criminal falsification of records in a federal program proceeding that incorporates the Administrative Procedure Act and the Congressional presumption for judicial review of agency actions, is reviewable by Article III, the United States Supreme Court.

## **CONCLUSION**

WHEREFORE, the Court should GRANT Appellant's explicit request to supplement the record that the Court had *de facto* supplemented pursuant to Its prior Orders in these consolidated appeal matters.  The Court should GRANT Appellant's explicit request to consider changes in fact and changes in law.  The Court should GRANT Appellant's explicit request to apply the changes in law to the changes in fact.  The Court should VACATE the August 13, 2024 Order insofar as it holds "Appellant's motion for limited remand and reassignment rehashes arguments previously raised and rejected by this court; Any future motions by Appellant seeking remand or reassignment will be subject to summary denial." The Court should PLACE on the record a basis or reason based in fact and in law for denial on the record of Appellant's motion for limited remand requesting focused discovery on newly discovered evidence based on the facts and record of the above-captioned consolidated matters Appeal No. 23-1967, 23-1978 and 24-1313, in which no prior Rule 60(b)(3) motions pursuant to FRAP 12.1 and FRCP

62 were ever filed in the district court during the pendency of appeal requesting

district court judicial review of the proffered 2024 new evidence showing

Appellees' written-prescribed agency procedures involving systemic falsification

of Title IV of the Social Security Act federal central registry records in the corrupt

agency administration of an Act of Congress triggering federal obstruction laws,

including 18 U.S.C. § 1512.  The Appellant respectfully requests any and all relief

deemed just under these circumstances, that Appellant avers are extraordinary to

any objective person under 28 U.S.C. § 455(a).

Respectfully submitted,

Mary Seguin

/s/    *Mary Seguin*

Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

Dated: August 15, 2024

## CERTIFICATE OF SERVICE

This is to certify that the foregoing Motions were served via the Court's ECF

filing system on August 15, 2024, on all registered counsel of record, and has been

transmitted to the Clerk of the Court.

/s/ _Mary Seguin_
_____
Mary Seguin
Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

EXHIBIT I.

# United States Court of Appeals
## For the First Circuit

————————————

No. 23-1851

MARY SEGUIN,

Plaintiff - Appellant,

v.

RHODE ISLAND OFFICE OF CHILD SUPPORT SERVICES, in its official capacity; KEVIN TIGHE, in his individual and official capacity; MONIQUE BONIN, in her individual and official capacity; FRANK DIBIASE, in his individual and official capacity; WENDY A. FOBERT, in her individual and official capacity; KARLA CABALLEROS, in her individual and official capacity; GERO MEYERSIEK; TIMOTHY FLYNN, in his individual and official capacity,

Defendants - Appellees.

————————————

**ORDER OF COURT**

Entered: May 30, 2024

Plaintiff-Appellant Mary Seguin appeals from rulings made in the underlying district court case concerning child-support matters. Seguin named as defendants a Rhode Island agency and multiple state officials and employees (collectively, "the State Defendants-Appellees"), as well as an individual by the name of Gero Meyersiek.

Several motions are pending in this case. As an initial matter, this court resolves appeals through the briefing process and generally does not engage in piecemeal adjudication of individual issues by way of motion practice. The parties are strongly discouraged from filing further motions, especially motions addressing the merits of the district court's rulings in and procedural handling of the underlying matter. This matter will be resolved in due course. The filing of additional motions will not hasten resolution.

Many of Seguin's motions concern the merits of the district court's rulings in the underlying matter and/or offer materials and arguments not placed before the district court. Those motions are <u>denied</u>. Again, the ultimate merits panel will decide this appeal based on the parties' briefs and will consider those matters properly encompassed by the appeal. In light of the foregoing, any requests for the court to strike filings by Seguin are <u>denied</u>.

All of Seguin's motions for sanctions are <u>denied</u>, as Seguin has failed to identify legitimately sanctionable conduct, and Seguin is strongly discouraged from filing further such baseless motions.

Seguin's motion seeking leave to file a supplemental brief and/or a stay of the briefing schedule is <u>denied</u>. Seguin seemingly has addressed relevant issues in other filings already, and the merits panel will consider relevant content to the extent appropriate.

Seguin's motions seeking a stay, leave to file a Rule 60(b)(3) motion in the district court, limited remand, reassignment, and disqualification of the district court judge are <u>denied</u> as to those requests properly lodged in this court. Seguin has pending in this court an appeal from some relevant district court rulings, <u>see</u> Appeal No. 24-1451, and may address relevant matters in briefing in that appeal once a briefing schedule has been set.

Defendant-Appellee Gero Meyersiek's "Motion to Adopt by Reference" is <u>granted</u>. Any pending motions or requests not specifically addressed above are <u>denied</u>.

By the Court:

Maria R. Hamilton, Clerk

cc:
Mary Seguin
Matthew I. Shaw
Marissa D. Pizana
Joanna M. Achille

# SPECIFICATION FOR OCSS CHANGE ORDER
*Auto Adjustment of Interstate Interest*

This specification will outline the process by which interstate cases are selected, automatic adjustments are created, and support orders are modified all for the purpose of removing interest from interstate cases.

## FUNCTIONAL REQUIREMENTS

It is desirable for the Rhode Island Office of Child Support Services (OCSS) to prohibit the charging of interest on interstate cases. This is manually done by placing an N in the interest field on page 2 of the support order. Entry of the N not only prohibits the charging of future interest but automatically creates adjustments to zero out any existing interest.

There currently exists on the InRhodes system interstate cases for which the interest field is not an N and for which there is interest due. It is these cases that the system will process.

If on an interstate case, the interest field on the support order is blank, the system will automatically place an N in the interest field and create non-cash adjustments to zero out any existing interest. No support order modification or interest adjustments will be done on interstate cases without a support order or for which the interest field is already an N or is a Y, B or P.

Two reports will be created. The first will detail the interstate cases for which a support order modification was done and for which one or more interest adjustments were created. The second report will detail interstate cases for which the interest field is Y, B or P. A Y in the interest field is an order to accrue interest while B and P are orders to stay future interest but to keep any interest that has accrued to date.



12:38 PM Mon Dec 6

cseinfo.dhs.ri.gov

ADCB Internet Banking | Community Health Choice | ... | Sign In - Community Healt... | Case Manager Portal | Offi... | RI OCSS Payment

RI.gov

R.I. Government Agencies | Privacy policy | Search RI.gov:

**State of Rhode Island**
**Office of Child Support Services**
DEPARTMENT OF HUMAN SERVICES

Welcome Mary Sagan

Home    My Profile    Contact Us    Site Map    Log

**Menu**

▼ Case Information
  ▶ Last 5 Payments
  ▶ Last 13 Months
  ▶ Current Orders/ Past Due Balances
  ▶ Court Dates/ Appointments
  ▶ Enforcement Actions
▶ PIN Lookup

Home > Current Orders and Past Due Balances

**Case Manager**

**Current Orders / Past Due Balances**

**Custodial Parent:** Gero K Meyersiek    **CSE ID:** 1689817

**Current Orders**

| Court Order | Amount | Frequency | Begin Date | End Date |
|---|---|---|---|---|
| Child Support | $218.00 | Weekly | 05/28/2012 | 06/30/2018 |
| Arrears | $21.80 | Weekly | 07/17/2012 | |
| Past Liability | $0.00 | None | | |
| Spousal Support | $0.00 | None | | |

⚠ Note: Medical orders and medical arrears are **not** listed on this screen.

**Past Due Balances**

| As Of | Total Due | Arrears | Interest | Spousal |
|---|---|---|---|---|
| 11/30/2021 | $93,214.56 | $93,214.56 | $0.00 | $0.00 |

11:28:47 Tuesday, December 13, 2022

```
12/13/22    11:28          C A S E   T R A C K I N G       CSCL  ASMXA201
            TRAC.00               CASE HISTORY              U824  PROD
STARTING DATE   09 01 2021
SELECTION    COMPREHENSIVE CASE HISTORY
```

12/06/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT
AGENT CONTACTED ME THAT NCP WANTS TO PAY ALL ARREARS TO OBTAIN PASSPORT. I
CALLED CP PRIVATE ATTORNEY BARBARA GRADY TO ADVISE, AND TO DISCUSS IF CP
WANTS THE INTEREST PUT BACK ON THE CASE (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓). WE REMOVED THE INTEREST WHEN
CASE WAS MADE UI WHEN WE WERE FILING TO TEXAS. ATTY GRADY CHECKED WITH CP
AND CP IS STATISFIED WITH THE LUMP SUM PAYMENT OF PRINCIPLE OF $104K +/-.
AFTER CONFERENCE WITH MONIQUE BONIN AND FRANK DIBIASE, IT WAS DECIDED TO
REQUIRE PAYMENT IN MORE SECURE/LESS REVERSABLE FORM THAN CREDIT CARD, SO $
WILL NEED TO BE WIRED OR BY BANK CHECK. AGENT WILL BE CONTACTED BACK BYNCP
ASNCP WON'T GIVE PHONE NUMBER OR EMAIL ADDRESS. AGENT IS NOT EVEN SURE IF
NCP IS IN COUNTRY. INTEREST IS NOT INCLUDED IN AMOUNT THAT IS CONSIDERED
FOR PASSPORT PURPOSES IN ANY EVENT.

12/06/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT

```
RL: 80  12 22 ABSP:          SEGUIN      MARY        CMD: _____
FNX: TRAC  D CLIENT:         MEYERSIEK   GERO     K  PNL:
```

Case Number: N200-1052TM
Filed in Providence/Bristol County Family Court
Submitted 6/1/2023 10:13 PM
Envelope 4132704
Reviewer Maria O.

11:20:56 Tuesday, December 13, 2022

```
12/13/22   11:20        C A S E   T R A C K I N G         CSCL  ASMXA201
            TRAC.00             CASE HISTORY               U024  PROD
STARTING DATE    09 01 2021
SELECTION    COMPREHENSIVE CASE HISTORY

12/06/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT_____
BUSINESS OFFICE HAS PUT A FLAG ON DISBURSEMENTS SO WE CAN GET THIS SORTED_____
OUT. ADVISED AGENT THAT WHILE THERE IS NO BODY ATTACHMENT FOR NCP ISSUED_____
FOR OCSS, THERE MAY BE A BODY ATTACHMENT THAT ISSUED PRIVATELY, SO WE DO_____
NOT WANT TO TELL THE NCP ANY MORE THAN THAT. NCP CAN CHECK WITH THE COURT._____
ATTY GRADY SAID THAT SHE DOES NOT RECALL WHETHER OR NOT BA ISSUED PRIVATEL____
Y FOR NCP. ONCE WE ARE SATISFIED THAT PAYMENT HAS BEEN MADE AND THE FORM_____
OF IT, WE CAN NOTIFY SYSTEMS TO RELEASE THE BLOCK ON PASSPORT._____

12/07/21 WENDY FOBERT (WAF2363) ENTERED COMMENT_____
PER ATTY KDT AT CP REQUEST REINSTATING INTEREST_____

12/07/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT_____
REC'D CALL FROM ATTY GRADY THAT CP HAD RECONSISDERED AND WANTED INTEREST_____
TO BE PUT BACK UP ON SYSTEM. EMAIL TO ACCOUNTING OFFICE TO PUT THE INTERES____

RL: 80  12 22 ABSP:          SEGUIN        MARY         CMD: _____
FNX: TRAC  D CLIENT:         MEYERSIEK     GERO    K    PWL:
```

Filed in Providence/Bristol County Family Court
Submitted: 6/1/2023 10:13 PM
Envelope: 4132704
Reviewer: Maria O.

11:29:01 Tuesday, December 13, 2022

12/13/22   11:29          C A S E   T R A C K I N G          CSCL   ASMXA201
              TRAC 00                CASE HISTORY              U824   PROD
STARTING DATE  09 01 2021
SELECTION    COMPREHENSIVE CASE HISTORY

12/07/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT
REC'D CALL FROM ATTY GRADY THAT CP HAD RECONSISDERED AND WANTED INTEREST
TO BE PUT BACK UP ON SYSTEM. EMAIL TO ACCOUNTING OFFICE TO PUT THE INTERES
T THAT WAS REMOVED IN 10/18 BACK UP ON SYSTEM AND TO RUN INTEREST FORWARD.

12/03/21 WENDY FOBERT (WAF2363) ENTERED COMMENT
SUSPEND DISBURSEMENT FLAG WAS CHANGED FROM B TO SPACE
     FROM CASE DATA PANEL

12/03/21 KATHLEEN MCCUSKER (KMM8623) ENTERED COMMENT
SUSPEND PASSPORT OFFSET WAS CHANGED FROM (BLANK) TO Y
FROM CASE ID:
     FROM OFST PANEL

12/03/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT

RL: 80  12 22 ABSP;              SEGUIN      MARY           CMD: ____
FWX: TRAC  D CLIENT:             MEYERSIEK   GERO     X     PNL:

Case Number: 620-13014   Document: 00118178653   Page: 38   Date Filed: 08/15/2024   Entry ID: 6661456
Filed in Providence Brazos County Family Court
Submitted: 9/1/2023 10:13 PM
Envelope: 4132704
Reviewer: Maria G.
11:29:53 Tuesday, December 13, 2022

```
12/13/22    11:28          C A S E    T R A C K I N G        CSCL   ASMXA201
            TRAC.00                    CASE HISTORY          U824   PROD
STARTING DATE    09 01 2021
SELECTION    COMPREHENSIVE CASE HISTORY

12/09/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT
ACCOUNTING HAS CONFIRMED WITH TREASURY THAT THE $104,000 PAYMENT HAS BEEN
RECEIVED AND THAT THAT ACCOUNT WILL NOT ALLOW THE MONEY TO BE REVERSED OUT
OF THE ACCOUNT. BASED ON THAT INFORMATION, I ASKED SYSTEMS TO RELEASE THE
PASSPORT BLOCK. ACCOUNTING HAS GIVEN ME THE BANK INFORMATION THAT CAME IN
WITH THE WIRE TRANSFER. I AM REFERRING THIS TO T. FLYNN TO RESEARCH IF WE
CAN MATCH ACCOUNT TO NCP AND TO LIEN IT IF POSSIBLE. ATTY GRADY, WHO REP-
RESENTS CP HAS ASKED THAT THE PAYMENT BE MADE BY CHECK RATHER THAN ON THE
KIDSCARD. ACCOUNTING WILL DO THIS, BUT I TOLD ATTY THAT IT MAY TAKE A FEW
DAYS TO EFFECTUATE. ATTY GRADY ALSO SENT EMAIL TODAY CONFIRMING THAT SHE
REPRESENTS CP AND IS AUTHORIZED TO TAKE POSSESSION OF THE CHECK. CP IS
BLIND SO COMING TO THE OFFICE TO PICK UP IS A HARDSHIP AND ACCOUNTING IS
CONCERNED ABOUT MAILING THE CHECK.

12/09/21 WENDY FOBERT (WAF2343) ENTERED COMMENT

RL: 80  12 22 ABSP:              SEGUIN       MARY            CMD: _____
FXX: TRAC  D CLIENT:             MEYERSIEK    GERO       K    PNL:
```

ed in Providence/Bristol County Family Court
ibmitted: 8/7/2023 10.13 PM
ivelope: 4132704
iviewer: Maria O

11:29:09 Tuesday, December 13, 2022

```
12/13/22   11:28        C A S E   T R A C K I N G        CSCL  ASMXA201
           TRAC.00           CASE HISTORY               U824  PROD
STARTING DATE   09 01 2021
SELECTION    COMPREHENSIVE CASE HISTORY
```

12/09/21 WENDY FOBERT (WAF2363) ENTERED COMMENT
CORRECT CP MEDCL ARREARS AS INTEREST OF $6028.75 WAS ADDED TO PRINCIPAL IN
ERROR.  RELEASED $104185.98 WIRE TRANSFER RECEIVED 12/8/21 TO NON FIP
PRINCIPAL $93214.56, CP MEDCL PRINCIPAL $8675.00 AND MEDICAID PRINCIPAL
$2296.42

12/09/21 18:32 ASPXEND (ASPXEND) DEACTIVATED THE CODE:
TF61 (IN ARREARS - SEND OOS REQUEST FOR CONTEMPT ACTION)

12/09/21 SYSTEM CLOSED ENFORCEMENT EPISODE WITH FINAL STATUS
58 COMPLETED - RECEIPTS/ADJUSTMENT ENDED DELINQUENCY

12/10/21 ADAM DIAS (ACD2457) ENTERED COMMENT
MADE ADJ TO CORRECT ACCIDENTAL ADJ THAT MADE CP MED NEGATIVE. IT IS SUPPOS
ED TO BE $6028.75.

```
RL: 80  12 22 ABSP:          SEGUIN      MARY         CMD: _____
FNX: TRAC  D CLIENT:         MEYERSIEK   GERO    K    PNL:
```

11:29:09 Tuesday, December 13, 2022

```
12/13/22   11:28        C A S E   T R A C K I N G        CSCL  ASMXA201
           TRAC.00            CASE HISTORY              U824  PROD
STARTING DATE   09 01 2021
SELECTION   COMPREHENSIVE CASE HISTORY

12/09/21 WENDY FOBERT (WAF2363) ENTERED COMMENT
CORRECT CP MEDCL ARREARS AS INTEREST OF $6028.75 WAS ADDED TO PRINCIPAL IN____
ERROR. RELEASED $104185.98 WIRE TRANSFER RECEIVED 12/8/21 TO NON FIP
PRINCIPAL $93214.56, CP MEDCL PRINCIPAL $8675.00 AND MEDICAID PRINCIPAL_____
$2296.42
_____

12/09/21 18:32 ASPXEND (ASPXEND) DEACTIVATED THE CODE:
         TF61 (IN ARREARS - SEND OOS REQUEST FOR CONTEMPT ACTION)

12/09/21 SYSTEM CLOSED ENFORCEMENT EPISODE WITH FINAL STATUS
         58 COMPLETED - RECEIPTS/ADJUSTMENT ENDED DELINQUENCY

12/10/21 ADAM DIAS (ACD2457) ENTERED COMMENT
MADE ADJ TO CORRECT ACCIDENTAL ADJ THAT MADE CP MED NEGATIVE. IT IS SUPPOS____
ED TO BE $6028.75.

RL: 80  12 22 ABSP:            SEGUIN       MARY             CMD: _____
FNX: TRAC  D CLIENT:          MEYERSIEK    GERO       K     PNL:
```

Case Number: K2001052tM
Filed in Providence/Bristol County Family Court
Submitted: 6/1/2023 10:13 PM
Envelope: 4132704
Reviewer: Maria O.

11:29:13 Tuesday, December 13, 2022

```
12/13/22   11:28        C A S E   T R A C K I N G        CSCL  ASMXA201
           TRAC.00             CASE HISTORY               UB24  PROD
STARTING DATE   09 01 2021
SELECTION    COMPREHENSIVE CASE HISTORY

12/14/21 TIMOTHY FLYNN (TWF3296) ENTERED COMMENT_____
MAILED ADMIN. SUBPOENA AND REQ. FOR INFO TO BANK OF AMERICA_____

12/14/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT_____
CONTACTED CP'S ATTY TO ADVISE THAT CHECK IS READY TO BE PICKED UP AND TO_____
PLEASE LET ME KNOW WHEN SHE WILL COME BY SO I CAN ALERT THE GUARD AT THE_____
DOOR AND BRING THE CHECK DOWN TO HER._____

01/04/22 TIMOTHY FLYNN (TWF3296) ENTERED COMMENT_____
SPOKE WITH MARIE AT BANK OF AMERICA REGARDING A SUBPOENA THAT I HAD SENT_____
TO THEM REGARDING THE NCP. SHE WILL NOTIFY AN EMPLOYEE THERE TO DO MORE_____
RESEARCH_____

01/12/22 TIMOTHY FLYNN (TWF3296) ENTERED COMMENT_____
PER SI RECEIVED LETTER TODAY FROM BANK OF AMERICA STATING THAT THE NCP HAS____

RL: 80  12 22 ABSP:           SEGUIN       MARY          CMD: _____
FNX: TRAC  D CLIENT:          MEYERSIEK    GERO     K    PNL:
```

ed in Providence/Bristol County Family Court    Document: 00118178653    Page: 42    Date Filed: 08/15/2024    Entry ID: 6661456
bmitted: 8/1/2023 10:13 PM
velope: 4132704
Viewer: Maria O.

```
        11:29:17 Tuesday, December 13, 2022


    12/13/22    11:28        C A S E    T R A C K I N G        CSCL  ASMXA201
               TRAC.00               CASE HISTORY              U824  PROD
    STARTING DATE    09 01 2021
    SELECTION    COMPREHENSIVE CASE HISTORY

    01/12/22 TIMOTHY FLYNN (TWF3296) ENTERED COMMENT
    PER SI RECEIVED LETTER TODAY FROM BANK OF AMERICA STATING THAT THE NCP HAS
    A CHECKING ACCOUNT WITH THEM. CREATED AN OFFLINE NOTICE OF INTENT TO LIEN
    THE NCP'S ACCOUNT. FAXED AND MAILED COPIES TO BANK OF AMERICA TODAY. WILL
    NOTICE NCP VIA MAIL AT THE TEN DAY MARK


    02/21/22 TIMOTHY FLYNN (TWF3296) ENTERED COMMENT
    MAILED AND FAXED OFFLINE PERFECTED NOTICE OF LIEN TO BANK OF AMERICA
    REGARDING NCP.'S ACCOUNT. COPY MAILED TO NCP


    03/04/22 SYSTEM (SYSTEM) ENTERED COMMENT
    KWS1263 CREATED THE LIEN OF INSURANCE ASSETS FORM
    ON 03/03/2022 FOR: PRIVILEGE UNDERWRITERS RECIPROCAL EXCHANGE (PURE)
    CLAIM NUMBER: TX027985


    RL: 80  12 22 ABSP:
    FNX: TRAC  D CLIENT:            SEGUIN        MARY        CMD: _____
                                    MEYERSIEK     GERO    K   PNL: _____
```

cseinfo.dhs.ri.gov

R.I. Government Agencies | Privacy policy | Search RI.gov:

RI.gov

## State of Rhode Island
# Office of Child Support Services
### DEPARTMENT OF HUMAN SERVICES

Welcome Mary Seguin

Home   My profile   Contact Us   Site Map   Log Out

### Menu
- **Case Information**
  - Last 5 Payments
  - Last 13 Months
  - Current Orders/ Past Due Balances
  - Court Dates/ Appointments
  - Enforcement Actions
  - PIN Lookup

Home > Last 13 Months

Case Manager

## Last 13 Months

Custodial Parent: Gero K Meyersiek          CSE ID:

### Payment Made By The Non-Custodial Parent

| Period | Payment Made |
|--------|-------------|
| 12/2021 | $0.00 |
| 09/2018 | $6,461.95 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

# Recorded Phone Call

## Recording Name:

[Recording of phone conversations among John Langlois, Debra DeStefano and Mary Seguin recorded in Texas by Mary Seguin on October 5 2022]

## Transcript Prepared By:



720-287-3710
3801 E. Florida Ave.
Suite 500
Denver, CO 80210

DUNS Number: 037801851
CAGE Code: 6C7D5
Tax ID #: 27-2983097

```
 1  Seguin:    'Cause all -- like, if -- if we base the practice on
 2             how things are done of -- based on what Mr. Langlois,
 3             John, is representing today, everyone should be able
 4             to look at that screenshot, that screen, and be able
 5             to rely on it, correct?
 6  DeStefano:  Well, yeah, I --
 7  Seguin:   And its accuracy, correct?
 8  DeStefano:  -- I mean, the agen- --
 9  Seguin:   So --
10  DeStefano:  The agency is going to have to prove it.  Yes.  The
11             agency is going to have to submit -- and, again, it --
12             it's difficult for me to know how relevant what you're
13             asking for is 'cause I don't know what the agency's
14             gonna submit yet, uh, to -- to support their position.
15             So --
16  Langlois: And can I -- can I just say, the reason I asked
17             earlier whether, uh, Mary had spoken to Carla after
18             she made the $104,000 payment was because there was a
19             change in circumstances immediately after that and I
20             don't know whether anyone in my agency has ever
21             explained that to Mary.
22  Seguin:   Wait -- wait -- wait a minute.
23  Langlois: (Inaudible - 00:01:10)
24  Seguin:   Wait a minute.
25  Langlois: (Inaudible - 00:01:11)
```

```
 1   Seguin:   Wait -- wait -- wait -- wait a minute.  Wait a minute.

 2             If there is --

 3   DeStefano:  Wait a minute.

 4   Seguin:   -- I'd like to get some documents of that.  Okay?  So

 5             -- so, again --

 6   DeStefano:  Mary, what do you --

 7   Seguin:   -- I've asked for, I think --

 8   DeStefano:  Oh.  Wait a minute --

 9   Seguin:   I -- I'm so sorry.  I'm --

10   DeStefano:  -- Mary.  I know -- I know what you asked for.  Let

11             me get to -- let me understand what John just said

12             before.  So, John, you're saying there was a change

13             subsequent to her making a payment --

14   Langlois: Correct.

15   DeStefano:  -- but before the Notice of Lien went out?

16   Langlois: Yes.

17   DeStefano:  Okay.  So --

18   Langlois: And can I -- can -- if I could just back up and

19             explain what happened.  Okay?

20   DeStefano:  Okay.

21   Seguin:   This --

22   Langlois: This is -- 99 percent of this is a misunderstanding.

23   DeStefano:  Okay.

24   Langlois: Okay?

25   Seguin:   Including --
```

```
 1   Langlois: (Inaudible - 00:01:51)
 2   Seguin:   -- what's on the screenshot?  Is that a
 3            misunderstanding?
 4   Langlois: Can -- can I speak without being shouted over?
 5   Seguin:   Well, I'm --
 6   DeStefano:  Mary, let --
 7   Seguin:   I'm sh- --
 8   DeStefano:  Let --
 9   Seguin:   I'm flabbergasted really.
10   DeStefano:  Uh, Mary, you've got to let me --
11   Seguin:   Sorry.
12   DeStefano:  -- listen --
13   Seguin:   Sorry.
14   DeStefano:  -- to what the agency is gonna --
15   Seguin:   I appreciate that.
16   DeStefano:  I mean, I know -- I only know that -- what's in
17            front of me and I don't know everything that has
18            happened in this case, but if -- if -- let me just
19            listen to the agency and see what they have to say for
20            --
21   Seguin:   Sure.
22   DeStefano:  Go ahead, John.
23   Langlois: What -- what happened in this case is when, uh --
24            Mary's representative, her attorney, called us in late
25            November 2021 and said there's a -- she wants her
```

1    passport released.  What does she have to do to

2    release her passport?  They put her in touch with

3    Carla, who gave her the $104,000 number.  Where that

4    number came from, was the department attorney

5    contacted the custodial parent, Mr. Miurski (ph) or,

6    uh, Mr. -- I can't pronounce her last name.

7    Meyersiek.  So we contacted his attorney -- it wasn't

8    me, but it was someone in my office -- and said, "If

9    she's willing to make a $104,000 payment to pay off

10   the principal, would you agree to waive the $75,000" -

11   - I think it was $73,000 in arrears at that time?  He

12   said yes.  So Carla notified Mary that, if she paid

13   $104,000, it would be paid in full because he was

14   willing to waive the interest.  That was just the

15   principal.  What happened was, the day after Carla

16   spoke to Mary and told her to mail in the -- or to --

17   to wire the $104,000, the attorney for Mr., um,

18   Meyersiek contacted us again and said he changed his

19   mind, please put the interest back up on the system,

20   so we did.  That's his money.  The state is just

21   collecting for -- for this past child support that's

22   owed to him.  If he wants the arrears, he has every

23   right to ask for it.  So the number that was given to

24   her was correct on the day it was given to her.  The

25   arrears for $104,000.  Because when he was waiving the

| | |
|---|---|
| 1 | arrears, wen he changed his mind the next day, we put |
| 2 | the arrear -- I mean, interest back up on the system. |
| 3 | Seguin: I think -- |
| 4 | Langlois: He was waiving the interest, and when that interest |
| 5 | went back up on the system, that's why the system is |
| 6 | now saying she owes $73,000.  That's why, in March, |
| 7 | when the system saw that she had a, uh -- some kind of |
| 8 | a personal injury settlement or some kind of an |
| 9 | insurance settlement, we had -- we -- our system was |
| 10 | showing that she owed $73,000 in interest, so we |
| 11 | issued the lien.  But that's what happened, is when he |
| 12 | changed his mind the next day, and that's what messed |
| 13 | up the numbers.  So that's how this all happened.  It |
| 14 | was a pure misunderstanding.  I don't know whether |
| 15 | anyone has ever explained that to Mary, how that |
| 16 | happened. |
| 17 | DeStefano: Okay.  Mary, did anybody ever explain that to you |
| 18 | before? |
| 19 | Seguin: No.  No one ever -- |
| 20 | DeStefano: That the system has just -- just -- |
| 21 | Seguin: -- explained any of that, and I -- |

1                    TRANSCRIBER'S CERTIFICATE

2

3           I, Laurel Keller, do hereby certify that I have

4    listened to the recording of the foregoing; further that the

5    foregoing transcript, Pages 1 through 5, was reduced to

6    typewritten form from a digital recording of the proceedings

7    held October 5, 2022, in this matter; that Participant Mary

8    Seguin has stated John Langlois and Debra DeStefano present were

9    included in this recording; and that the foregoing is an

10   accurate record of the proceedings as above transcribed in this

11   matter on the date set forth.

12           DATED this 20th day of June, 2024.

13

14

15   _____
                                    *Laurel Keller*

16   Laurel Keller

17   Ditto Transcripts
     3801 E. Florida Ave.
18   Suite 500
     Denver, CO 80210
19   Tel: 720-287-3710
     Fax: 720-952-9897
20
21   DUNS Number: 037801851
     CAGE Code: 6C7D5
22   Tax ID #: 27-2983097

23

24

25

**Supreme Court**

No. 2023-278-A.

Mary Seguin                              :

v.                              :

Rhode Island Department of Human Services    :
Office of Child Support Services.

**O R D E R**

The appellant's "Second Motion to Repeal Rule 5 of the Rhode Island Rules of Practice Governing Public Access to Electronic Case Information", as prayed, is denied.

The appellant's "Second Motion to Stay Proceedings Until Repeal of Rule 5 of Rules of Practice Governing Public Access to Electronic Case Information", as prayed, is denied.

The appellant's "Motion to Compel and Comply with the Court's Order", as prayed, is denied.  This Court's November 27, 2023 Order stated that, to extent the appellant needed any materials "***related to this matter***" during the pendency of this appeal, the Clerk's Office was directed to make reasonable efforts to provide her with the requested materials.  Pursuant to that Order, the appellant is only permitted to request materials from the Clerk's Office that have been filed in her Superior Court case (PC 22-07215) or in this appeal.

The appellant's "Third Motion for an Extension of Time to File Statement of the Case and a Summary of the Issues Proposed to be Argued" is granted.  The appellant shall either file her Rule 12A statement within ***thirty (30) days*** of the date of this Order or she

may seek to hold this appeal in abeyance until she is permitted remote access to case materials as a <u>pro</u> <u>se</u> litigant which access we estimate will be in effect by the end of the year.

Chief Justice Suttell did not participate.

Justice Lynch Prata did not participate.

Entered as an Order of this Court this **29**[th] day of **March 2024.**

By Order,

/s/ *Meredith A. Benoit*
Clerk