THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT
Appeal from the United States District Court for the District of Rhode Island

MARY SEGUIN                                              No. 23-1967
*Plaintiff-Appellant*                                    No. 23-1978
                                                         No. 24-1313

v.

RHODE ISLAND DEPARTMENT OF HUMAN SERVICES, et al.
*Defendants-Appellees*

_____

**APPELLANT'S MOTION FOR AN ORDER WAIVING FEES In Cases No. 23-1978 and No. 24-1313
PURSUANT TO MULTIPLE VIOLATIONS OF 18 U.S.C. §§ 1512 and 1503 and *MISPRISCIO CLERICI*
BY THE *FUNCTUS OFFICIO* U.S. DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND
ALTERING THE RECORD ON APPEAL AND INTERFERING WITH PENDING APPEAL No. 23-1967
APPLYING
SUPERCEDING FISCHER v. U.S., 603 U.S.__ (2024) *et al*.**

_____

Texas Appellant, MARY SEGUIN, respectfully moves for an order waiving fees in cases No. 23-1978 <u>and</u> No. 24-1313, pursuant to the extraordinary facts of travel in the above-captioned three consolidated appellate cases that arose ***during*** the pendency of Appeal 23-1967 (Notice of Appeal dated November 17, 2023, ECF 32) caused by extraordinary and subversive *functus officio* ==mispriscio clerici== acts in district court that the Court in part determined in its May 24, 2024 Order in **Appeal No. 23-1967 Document: 00118148678**. Appellant requests the Court to apply superseding ==***Fischer v. U.S***==., 603 U.S. __ (2024) and invokes 18 U.S.C. §

1512(c)(2), § 1503 and *misprisio clerici* by the federal district court in the District of Rhode Island. In support of Appellant's motion, the Appellant states the following undisputable facts and *misprisio clerici* by officials of the district court federal judiciary:

**I.   SUMMARY OF FACTS OF TRAVEL OF THE CONSOLIDATED APPEALS**

(1) Emblazoned on the Federal Judiciary website for the district of Rhode Island is the undisputed biographical facts that U.S. District Court Judge William E. Smith has had unusually intimate multi-prong and multi-layered personal, professional **attorney-client relationship**s with *numerous* state (inter alia Office of the Governor and Office of the Treasury) and municipal political subdivisions of the State of Rhode Island, and loyal political relationships with the Rhode Island government judicial and executive Appellees, who implemented the 2024 newly evidenced systemic and systematic *criminal* document alteration of Title IV of the Social Security Act <u>*federal records*</u> procedures approved and operating under former Rhode Island Governor Lincoln Chafee in 2011 (systemic criminal computer record alteration procedures evidenced in the 2024 new evidence shows it is effective from 2011 (start of Chafee Governorship) to the present), for whom William Smith had

quit his Partnership at his former firm Edwards & Angell in order to run Chafee's campaign full-time for the U.S. Senate in 2000; Chafee, after successful election to the Senate, in turn rewarded Smith's personal and political loyalty by nominating Smith to the federal judgeship that Smith started twenty-two years ago in 2002.

(2) Earlier iterations (from 1996 to 2011) of the 2024 evidence showing Rhode Island's systemic and systematic *criminal* federal document alteration procedures were implemented by and in effect in *all* political subdivisions of Rhode Island (including counties, cities, towns, villages) under the Rhode Island State Plan pursuant to 42 U.S.C. § 654(1). Chafee served as the mayor of W. Warwick at the time of the seismic 1996 Congressional Amendments to Part D of Title IV of the Social Security Act, and the Rhode Island *criminal* federal document alteration procedures were in effect in W. Warwick, a political subdivision of Rhode Island, as early as 1996, zeroing out Rhode Island's 12% compound interest systemically and systematically electronically and manually.

(3) Smith had complex and in-depth attorney-client relationships with political subdivisions of Rhode Island at multiple levels, e.g., towns, cities, counties, state judiciary, state attorney-general, state secretary,

state treasury, state governor and executive subdivisions, to a well-known *personal* attorney-client relationship fact in Rhode Island with Lincoln Chafee from 1996 to 2002.  This fact is so well known that the ***Federal Judiciary Website*** itself credits Smith with building Edward & Angell's Public Law Practice based on Smith's person, professional and political attorney-client relationships with the judiciary and executive Appellees, in part through his personal relationship with Chafee.  Smith knew and or should have known the 2024 new evidence of Rhode Island systemic alteration of federal records for the purpose of making false claims to the United States for federal public funds of billions of dollars, and making false claims to support obligors for tens of millions of dollars within the reach of the Title IV legal framework.

(4) Before the Notice of Appeal was filed on November 17, 2024 (ECF 32), Smith interfered three times with the docketing of Appellant's filed papers on November 16, 2024 and November 17, 2024, in a pending judicial proceeding at the federal district court in the district of Rhode Island in violation of Federal Rules of Civil Procedure 79, and federal *criminal* laws 18 U.S.C. § 1512(c)(2) and 18 U.S.C. § 1503, among others, such as *misprisio clerici.*

(5) There were no pending motions before the docketing of the Notice of Appeal (ECF 32) on November 17, 2023 – this critical fact is now undisputable: The Court Order dated May 24, 2024 in Appeal No. 23-1967 **Document: 00118148678** found the Court <u>has jurisdiction</u> over Appeal No. 23-1978 after reviewing Appellant's court-ordered Show Cause, which is only legally possible if there were no pending motions at the time of notice of appeal filing on November 17, 2023 (ECF 32).

(6) Moreover, the district court clerk had certified there were no pending motions on November 17, 2023 (ECF 33, 33-1) – this critical fact is also undisputable:  The Court Order dated May 24, 2024 in Appeal No. 23-1967 **Document: 00118148678** found the Court has jurisdiction over Appeal No. 23-1978 after reviewing Appellant's court-ordered Show Cause.

(7) Three days post appeal (23-1967), on November 20, 2023, the *functus officio misprisio clerici* district court judge William E. Smith, whose personal, political and professional attorney-client relationship with the executive and judicial Appellees are at issue on appeal (and the subsequent 2024 new evidence shows Smith knew or should have known of the systemic Rhode Island falsification of federal Title IV official records in the federal Central Registry), in his *personal capacity* schemed

to alter the record on appeal. Issuing a void, *functus officio* directive dressed up as "an order," William E. Smith instructed the district court clerks in Rhode Island to alter the district court docket and the record on appeal, that purposefully *falsified* the record on appeal to make it look like there were pending motions on November 17, 2023. Therefore, while the federal Appeal 23-1967 was pending, Smith and the district court clerks knowingly falsified the federal record on appeal by post-appeal docketing three motions under the date November 17, 2023, to corruptly fabricate a false appellate record aimed to confuse this Court to falsely believe there were pending motions on November 17, 2023 this Court lacked jurisdiction over properly filed appeal no. 23-1978 that precisely appealed the district court's void November 20, 2023 text order and the subsequent resulting falsification and alteration of the original record on appeal, docketing on November 20, 2023 three motions under the November 17, 2023 docket entry date for the purpose of falsely making it look like there were pending motions on November 17, 2023, for the purpose of corruptly influencing this Court into believing it lacked jurisdiction over properly filed appeal No. 23-1978 (that appealed the validity of William Smith's post-appeal *functus officio* November 20, 2023 order). The knowing functus officio actions by William E. Smith

and persons in the district court altering the record on appeal for the purpose of corruptly influencing and interfering with a pending federal official proceeding in their personal capacities, trigger 18 U.S.C. § 1512(c)(2) and § 1503, and *misprisio clerici* among others.

(8) William E. Smith's former clients, the Rhode Island government judiciary and executive Appellees, in coordination with Smith, knowingly and purposefully filed dressed up "objections" in the district court while Appeal No. 23-1967 was pending, in coordination with the functus officio district court transmitting altered and falsified record on appeal with the purpose of interfering with the pending No. 23-1967 and 23-1978, moreover triggered 18 U.S.C. § 1512(c)(2) and § 1503 and among others, *misprisio clerici*.

(9) On February 1, 2024, William Smith in his functus officio *misprisio clerici* personal capacity issued a void "order" dressed up as "in aid of the court" to interfere with the pending appeals 23-1967 and 23-1978.

(10)  This appellate Court fell for the *functus officio* William E. Smith's and the Rhode Island judiciary and executive Appellees' *criminal misprisio clerici* ruse.  Three days prior to the due date of the opening brief, this Court vacated its original briefing schedule on the late afternoon of a Friday, on March 1, 2024, with explicit instructions to the Appellant to

file a motion for extension of time under FRAP 4 or amend the complaint in Appeal no. 23-1967.

(11)  Appeal No. 24-1313 arises from the district court's equally *functus officio misprisio clerici* VOID denials (dressed up as legitimate) of timely filed FRAP 4 motions for extensions of time, that this Court-instructed Appellant to file.

(12)  The *functus officio misprisio clerici* William E. Smith, in his personal capacity, persons in the district court in coordination with Smith, and William Smith's former clients, Rhode Island judiciary and executive Appellees, in coordination with Smith, knowingly altered and falsified the record on appeal, committed at common law *misprisio clerici*, and collectively interfered with Appeal No. 23-1967 and 23-1978, that <u>succeeded</u> in confusing this Court and succeeded in interfering with pending proceedings in this Court, which necessitated the filing of an appeal of yet more *functus officio* VOID denial orders in March 2024, the resulting Appeal 24-1313.

(13)  The newly discovered evidence showing criminal systemic and systematic procedures altering and falsifying federal records by the Appellees and all political subdivisions under the State Plan federally regulated and federally funded under Part D of Title IV of the Social

Security Act shows the motive behind the elaborate falsification and alteration of federal records of pending official proceedings in Appeals No. 23-1967 and 23-1978 by the *functus officio* William E. Smith, the Appellees with whom William E. Smith had intimate, extensive and broad multiple attorney-client relationships at multiple levels of political divisions and political subdivisions of the State of Rhode Island in which the systemic and systematic falsification of federal records procedures were in effect pursuant to federal regulation under 42 U.S.C. § 654(1), and *functus officio* persons employed by the district court for the district of Rhode Island, who ==**all** knew or should have known== that making *functus officio* alterations to the record pursuant to a *functus officio* judge's void orders during the pendency of said appeals to falsely make it look like the appellate court lacked jurisdiction over a properly filed appeal corruptly interferes with the pending official appellate proceedings.  The forensic misconduct implicates on its face *misprisio clerici* by officers of the federal court, whose misconduct this Court has ministerial supervision responsibility.

(14)   After this Court performed a forensic investigation of the record on appeal in the same underlying district court matter 23-cv-126 and determined that the Court has jurisdiction over Appeal 23-1978 because

the forensic record investigation concluded there were no pending motions on November 17, 2023, the Court in effect determined forensic misconduct *misprisio clerici* by the *functus officio* William E. Smith who issued not one but FIVE *functus officio misprisio clerici* VOID orders post appeal, purposefully and corruptly dressed up as legitimate orders by falsifying the docket entry post-appeal on November 20, 2023 to make it look like there were pending motions at the time of the appeal of the final judgment on November 17, 2023.  The forensic investigation of the record performed by this Court shows as a matter of undisputed fact that the acts of William E. Smith, the Appellees with whom Smith had extensive attorney-client relationships, and persons at the district court triggered federal criminal 18 U.S.C. § 1512(c)(2) and 18 U.S.C. § 1503, as well as *misprisio clerici* among others.

(15)   Pursuant to the performance of forensic investigation of the record on appeal, the Court, at Appellant's request, consolidated the above-captioned three appeals, 23-1967, 23-1978 and 24-1313.

(16)   Under these extraordinary circumstances involving federal obstruction crimes by federal officers of the district court for the district of Rhode Island under *misprisio clerici* at common law, this supervisory Court should not penalize the Appellant by charging the Appellant fees for

*misprisio clerici* criminal alteration and falsification of the record by federal district court officers of the court that as it turned out are motivated in part by a scheme to conceal, interfere with, impair and obstruct the potential appellate judicial review of systemic and systematic falsification and alteration of Title IV federal Central Registry records caused by and associated with crimes committed by officials of the lower federal judiciary itself, over whom this Court and the Chief Judge of this Court has ministerial supervisory responsibility and authority.  The Appellant is moreover irreparably harmed by the lower district court's *functus officio* criminal obstruction acts.

(17)   Under these extraordinary circumstances that involve the commission of ==*misprisio clerici*== **by *functus officio* persons of the federal judiciary in and officers of the lower district court for the district of Rhode Island**, this Court's <u>equitable obligations</u> require the Court to, at the minimum, <u>waive all fees</u> associated with appeal No. 23-1978 and 24-1313, that stem from injurious harm to Appellant caused by the ==*misprisio clerici*== *functus officio* <u>forensic misconduct</u> by William E. Smith.  The Court by law should apply the superseding *Fischer vs. U.S.*, 603 U.S. __ (2024), *Trump vs. U.S.*, 603 U.S. __ (2024), and *Lopes Bright Enterprises, Inc. vs. Raimondo* (2024)(Slip Opinion).

## II. FEDERAL OBSTRUCTION OF JUSTICE CONSTRUCTION STATUTES RELATING TO DOCUMENTS IS **BROAD**

1. The undisputed fact remains that Smith, persons in the district court and the Appellees altered the record on appeal in part to make it look like the Court lacked jurisdiction over Appeal 23-1978 and subsequent post-appeal void orders, succeeded in confusing this Court, the Court had to perform a forensic investigation of the record, found forensic alteration implicating *functus officio misprisio clerici* forensic misconduct by officers of the district court, and that it turns out in part was calculated to conceal a more egregious systemic document alteration and falsification crime by the State Appellees, with whom William E. Smith had extensive and broad attorney-client relationships, and who knew and should have known about the systemic federal record falsification implicating false claims involving billions of federal public funds, showing Smith's commission of egregious *misprisio clerici* with broad implications affecting the legitimacy of the judiciary and the corrupt administration of the federal Title IV-A and Title IV-D programs.

2. Obstruction of justice as both a concept and a legal term of art has adorned the halls of Anglo-American justice in the context of professional misconduct for over four centuries. See *People ex. rel. Karlin v. Culkin*, 162 N.E. 487, 489-92 (N.Y. 1928) (Cardozo, C.J.) (tracing, with *derision*, the history of barristers and

attorneys who have been charged with obstruction of justice back to the seventeenth century and making comparisons to contemporaneous prosecutions). In analyzing a case involving "practices obstructive or harmful to the administration of justice," Justice Cardozo considered the early instances of the attachment of culpability for such behavior, and that history underscores the importance of documentation in the judicial process dating to the 16th Century.' *Id.* at 490-91 (discussing the charge of *misprisio clerici*: the submission of writs without the required formalities). The appearance of judicial propriety, equity, and fairness was the underlying rationale behind the charge, as the Court emphatically must apply <u>here</u>. "Our court is 'slandered and evil spoken of, our cares and labors made void and frustrate' by the 'negligence of clerks and ministers;' the client 'beginneth to think evil of us that are judges, to suspect our skill,' and to speak evil of the law." *Id.* (quoting in part the Lord Chief Justice of the Common Pleas, Easter Term, 9 Eliz. 1567). The charge of obstruction of justice was carried into the Americas and retained its strongly negative normative overtone. *See* THE DECLARATION OF INDEPENDENCE para. 2, 10 (U.S. 1776), noted in *O'Malley v. Woodrough*, 307 U.S. 277, 284 (1939). The Declaration of Independence is illustrative: "The history of the present King of Great Britain is a history of repeated injuries and usurpations, all having in direct object the establishment of an absolute Tyranny over these States .... He has obstructed the

Administration of Justice, by refusing his Assent to Laws for establishing Judiciary powers.' *Id.* (emphasis added). In the twentieth century, federal obstruction of justice provisions expanded from Section 1503, the wellspring from which most of the obstruction of justice provisions arose, including section 1512. See *United States v. Poindexter,* 951 F.2d 359, 380-83 (D.C. Cir. 1991) (providing a detailed history of the development of federal obstruction of justice statutes including §§ 1503, 1505, and 1512). Sections 1503 and 1512 have been broadly construed to proscribe actions beyond those enumerated in their provisions. *See* Michael E. Tigar, *Crime Talk, Rights Talk, and Double-Talk*: *Thoughts on Reading the Encyclopedia of Crime and Justice*, 65 TEX. L. REV. 101, 111 n.72 (1986). Section 1512 was thought to "significantly broaden" the reach of Section 1503, even while 1503 was being read to reach outside its specifically enumerated scope. Tigar, *supra* note 33, at 111 n.72. Modern readings of the statutes texts "corrupt" intent require only that the act in question have the reasonably foreseeable effect of obstructing a proceeding, regardless of the defendant's actual intent. *See* Jeffrey R. Kallstrom & Suzanne E. Roe, *Obstruction of Justice*, 38 AM. CRIM. L. REV. 1090-91 (2001). The prosecutorial inquiry is not, therefore, the presence of intent to obstruct the proceeding per se, but rather the presence of intent to commit an act that could reasonably be foreseen to have that effect. *Id.* Already having had to apply the necessary prosecutorial inquiry itself during this Court's own

performance of forensic investigation of the appellate record in order to determine that Appeal 23-1978 can proceed, the Court already answered in the affirmative the "presence of intent to commit an act that could reasonably be foreseen to have that effect" – the act did in fact confuse this Court, did in fact mislead the Court into falsely believing initially that the Court lacked jurisdiction over 23-1978 after William E. Smith and officers of the court in the district court altered and falsified the appellate record post-appeal (on November 20, 2023) to falsely make it look like there were pending motions when the notice of appeal was filed for appeal no. 23-1967 (ECF 32 filed on November 17, 2023). (Successfully) Misleading this Court through record alteration into falsely believing the Court lacks threshold jurisdiction over a properly filed notice of appeal (23-1978) is a <u>fundamental material</u> corruption of the record on appeal.

3. Moreover, under construction of Section 1503, to be "corrupt" an act must only have the natural and probable effect of interfering with an official proceeding. Both natural and probable effect of interfering with this pending official proceeding occurred here. See *United States v. Aguilar*, 515 U.S. 593, 598-601 (1995). In *United States v. Aguilar*, a federal judge was convicted of both illegally disclosing a wiretap and obstruction of justice. Section 1512(c)(1) states, "alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an

official proceeding." Section 1512(c)(2) states, "otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both."

    4. The Supreme Court in *Fischer vs. U.S.*, 603 U.S. \_\_\_ (2024) made clear that Section 1512(c)(2) "otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so," relates to any official proceeding obstruction involving documents and records, that this Court must apply to the district court's acts in these consolidated matters. The Court must independently review the facts of travel of the appellate record post appeal after the overturn of the *Chevron* deference (see *Lopes Bright Enterprise vs. Raimondo*, (2024) (Slip Opinion), with no deference to the agency Appellees who aided and abetted the criminal alteration of the record on appeal. Trump vs. U.S., 603 U.S. \_\_\_ (2024) instructs the Court to review official and unofficial acts by public officials, that when applied here, must make the distinction among *functus officio* void acts of *mispriscio clericio* dressed up as valid judge-created law that on its face states "in aid of the court" showing intent to corruptly influence and interfere with the appellate judges in a pending official appellate proceeding when William Smith lacked any authority, that the 2024 new evidence shows is calculated to conceal, impair, impede the availability of egregiously incriminating evidence from coming to light showing systemic and systematic federal record falsification and alteration procedures that

went on for decades in Rhode Island covered by 18 U.S.C. §1512(c)(1) and (2), each count up to 20 years imprisonment.

    5. Under the Court's equitable obligations, these sets of extraordinary circumstances involving systematic and systemic obstruction with each count up to 20 years imprisonment warrants the Court to waive fees in appeals 23-1978 and 24-1313. To charge the Appellant the FRAP rule-prescribed fees for egregious crimes committed by William E. Smith, persons in the district court and the Appellees functions as a Court-awarded reward for criminal behavior involving *mispriscio clericio* by federal officers of the court, and as a punitive fee penalty on the victim of the *mispriscio clericio* crimes. It is not merely prejudicial to the Appellant but compounds the officer *mispriscio clericio* injury rather than provide requisite equitable obligation remedy. The harm of any resulting error would be irreparable and goes towards the legitimacy of the judiciary. Appellant hereby preserves the issues raised in this motion for Article III review by the U.S. Supreme Court and states on the record that the raised and preserved issues are ripe for Supreme Court review.

## CONCLUSION

    WHEREFORE, the Appellant respectfully requests this Appeals Court to GRANT the Appellant's herein Motion for an Order waiving fees, and while it

is pending, for an extension of time to pay filing fee for Appeal case numbers 23-1978 and 24-1313 to November 27, 2024.  The Appellant requests the Court to commit its decision and reasoning in writing, including adequate redress for the *functus officio mispriscio clericio* irreparable harm suffered by the Appellant after the Court already performed forensic investigation of the record on appeal showing forensic misconduct in May 2024, for Article III Supreme Court review.   The Appellant respectfully requests any and all relief under these extraordinary circumstances involving 18 U.S.C. §1512(c) and Section 1503 obstruction by officers of the federal court in the district court for the district of Rhode Island.

        Respectfully submitted,
        Mary Seguin
        Pro Se
        /s/   *Mary Seguin*
        Email: maryseguin22022@gmail.com
        Phone: (281)744-2016
        P.O. Box 22022
        Houston, TX  77019

        Dated: September 3, 2024

## CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the Court's ECF filing system on September 3, 2024, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

Mary Seguin
Pro Se
/s/ *Mary Seguin*

Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019