UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT
No. 23-1967

Plaintiff-Appellant,
MARY SEGUIN, *pro se*

v.

RHODE ISLAND DEPARTMENT OF HUMAN SERVICES in its official capacity; MICHAEL D. COLEMAN, DEBORAH A. BARCLAY in their individual and official capacities; Rhode Island OFFICE OF Child Support Services in its official capacity; KEVIN TIGHE, MONIQUE BONIN, FRANK DIBIASE, WENDY FOBERT, KARLA CABALLEROS, TIMOTHY FLYNN, LISA PINSONNEAULT, CARL BEAUREGARD, PRISCILLA GLUCKSMAN, JOHN LANGLOIS, PAUL GOULD, in their individual and official capacities; RHODE ISLAND STATE COURT SYSTEM in its official capacity; PAUL A. SUTTELL in his individual and official capacity as EXECUTIVE HEAD OF RHODE ISLAND STATE COURT SYSTEM; RHODE ISLAND ADMINISTRATIVE OFFICE OF STATE COURTS in its official capacity; RHODE ISLAND ADMINISTRATIVE OFFICE OF THE SUPERIOR COURT in its official capacity; RHODE ISLAND JUDICIAL COUNCIL in its official capacity; RHODE ISLAND SUPERIOR COURT in its official capacity; RHODE ISLAND SUPERIOR COURT JUDICIAL COUNCIL in its official capacity; THE JUDICIAL TECHNOLOGY CENTER in its official capacity; JULIE HAMIL, MARISA BROWN, JOHN JOSEPH BAXTER, JR., JUSTIN CORREA in their individual and official capacities; RHODE ISLAND OFFICE OF THE ATTORNEY GENERAL in its official capacity; RHODE ISLAND OFFICE OF THE ATTORNEY GENERAL OPEN GOVERNMENT UNIT in its official capacity; ADAM D. ROACH, PETER NERONHA in their official and individual capacities; TYLER TECHNOLOGIES, INC.; GERO MEYERSIEK
Defendants-Appellees.

Appeal from the United States District Court
for the District of Rhode Island

_____

BRIEF FOR APPELLANT

_____

<u>CERTIFICATE OF INTERESTED PERSONS</u>

MARY SEGUIN,
Plaintiff-Appellant,

v.                                                            No. 23-1967

RHODE ISLAND DEPARTMENT OF HUMAN SERVICES *et al.*
Defendant-Appellees.


      The undersigned certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.  Congress, United States of America.
2.  United States Department of Health and Human Services
3.  United States Department of Justice
4.  The House Judiciary Committee, Congress, United States of America
5.  Office of the Governor, State of Rhode Island
6.  Officer Authorities of the United States of America under 18 U.S.C. § 4, 1503
7.  Rhode Island Attorney General
8.  Office of Rhode Island Attorney General
9.  Department of Human Services of the State of Rhode Island
10. RHODE ISLAND OFFICE OF CHILD SUPPORT SERVICES in its official capacity;
11. KEVIN TIGHE,
12. MONIQUE BONIN,
13. FRANK DIBIASE,
14. WENDY FOBERT,
15. KARLA CABALLEROS
16. TIMOTHY FLYNN;
17. GERO MEYERSIEK;
18. BARBARA GRADY
19. RHODE ISLAND JUDICIARY
20. PAUL SUTTELL
21. DUNGAN & GRADY, LLC.
22. EDWARDS & ANGELL, LLC.
23. United States District Court Judge William E. Smith
24. Tyler Technologies, Inc.
25. Counsels for all Defendants-Appellees

Submitted by:_____
MARY SEGUIN,  P.O. BOX 22022, HOUSTON, TEXAS 77019; (281) 744-2016

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant MARY SEGUIN ("Seguin") requests oral argument as she believes it could significantly aid the decisional process in this case.

## __TABLE OF CONTENTS__

Certificate of Interested Persons..................................................................2

Statement Regarding Oral Argument ........ ................................................3

Table of Contents...........................................................................................4

Table of Authorities.......................................................................................5

Jurisdictional Statement..............................................................................11

Issues Presented ...........................................................................................23

Statement of the Case...................................................................................31

Summary of the Argument...........................................................................34

Argument........................................................................................................50

Conclusion…..................................................................................................72

Certificate of Service…................................................................................73

Certificate of Compliance…........................................................................73

# <u>TABLE OF AUTHORITIES</u>

## Cases

Branzburg v. Hayes,
408 U.S. 665, 696 n. 36, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)……………….64

Caperton v. A.T. Massey Coal Co.,
556 U.S. 868 (2009)……………………………………………………………68

Cohens v. Virginia,
19 U.S. 264, 404 (1821)…………………….……………………………36, 41

Colonial Life & Accident Ins. Co. v. Medley,
572 F. 3d 22, 25 (1st Cir. 2009)……………………………………………….48

Co. River Water Conserv. Dist. v. United States,
424 U.S. 800, 817 (1976)……………………………………………………..42

*Commonwealth School, Inc. v. Commonwealth Academy Holdings LLC*, 2021 WL
1398268 (1st Cir. Apr. 14, 2021)…………………………………………..63

CORNER POST, INC. v. BOARD OF GOVERNORS OF THE FEDERAL
RESERVE SYSTEM, (2024) (Slip Opinion)………………………… …31

Curtis v. Loether,
415 U. S. 189, 193 (1974)……………………………………………..56

Feminist Women's Health Ctr. v. Codispoti,
69 F.3d 399, 400 (9th Cir. 1995)…………………………………………70

Fischer v. U.S.,
603 U.S. ___ (2024)………………….… … … … … … … … … … …31

Fletcher v. Conoco Pipe Line Co.,
323 F.3d 661, 664 (8th Cir. 2003)…………………………………………70

GEORGIA, ET AL., PETITIONERS v. PUBLIC.RESOURCE.ORG, INC,
590 U.S. ___ (2020)………………………………………………………60

Granfinanciera, S.A. v. Nordberg,
492 U.S. 33 (1989)………………………………………………………..55

Griggs v. Provident Consumer Discount Company,
459 U.S. 56 (1982)……………………………………………………… 63

Hamer v. Neighborhood Housing Services of Chicago,
583 U.S. ___ (2017)………………………………………………………63

Offutt v. United States,
348 U.S. 11, 14 (1954)……………………………………………………70

In re Bernard,
31 F.3d 842, 843 (9th Cir. 1994)…………………………………………70

In re Martinez-Catala,.,
129 F.3d 213, 220 (1st Cir. 1991)…………………………………16, 70

John's Insulation, Inc.v. L. Addison and Assocs.,
156 F.3d 101, 105 (1st Cir. 1998)………………………………………63

Lass v. Bank of America, N.A.,
695 F. 3d at 133 (1st Cir. 2012)…………………………………………48

Liljeberg v. Health Servs. Acquisition Corp.,
486 U.S. 847, 858 n.7 (1988)…………………………………………… 69

Liteky v. United States,
510 U.S. 540, 548 (1994)…………………………………………… ...69

Lopes Bright Enterprises v. Raimondo, (2024) (Slip Opinion)………………… 31

Murray's Lessee v. Hoboken Land & Improvement Co.,
59 U.S. 272 (1856)………………………………………………………..55

New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans,
491 U.S. 350, 359 (1989)……………………………………………...35, 42

Netflix v. Babin, No. 22-40786 (5th Cir. 2023)…………………………………44

Oklahoma v. U.S. Dept of Health and Human Services, (2024)………………….24

Ohio v. EPA, et al, (2024) (Slip Opinion)………………………………………….. 31

Old Wayne Mut. I. Assoc. v. McDonough,
204 U.S. 8, 27 S. Ct. 236 (1907)………………………………………………………27

O'Malley v. Woodrough,
307 U.S. 277, 284 (1939)………………………………………………………………50

People ex. rel. Karlin v. Culkin,
162 N.E. 487, 489-92 (N.Y. 1928)……………………………………………………50

Quackenbush v. Allstate Ins. Co.,
517 U.S. 706 (1996) ……………………………………………………………   42

S.E.C. v. Jarkesy,
603 U.S. __ (2024)…………………………………………………………………..31

Sheridan v. Garrison,
415 F.2d 699, 707 (5th Cir. 1969)…………………………………………………… 44

Sprint Communications, Inc. v. Jacobs,
571 U.S. 69 (2013) ……………………………………………………………15, 42

Stern v. Marshall,
564 U.S. 462 (2011)……………………………………………………………………55

Teamsters v. Terry,
494 U. S. 558, 564 (1990)……………………………………………………………..54

Trump v. U.S.,
603 U.S. ___ (2024)…………………………………………………………….. 31

Tull v. United States,
481 U. S. 412 (1987)………………………………………………………………… 54

Vallely v. Northern Fire & Marine Ins. Co.,
254 U.S. 348, 41 S. Ct. 116 (1920)…………………………………………………..27

Willcox v. Consol. Gas Co. of New York,
212 U.S. 19, 40 (1909)………………………………………………………... 41

Wilson v. Thompson,
593 F.2d 1375, 1383 (5th Cir. 1979)…………………………………………..44

United States v. Aguilar,
515 U.S. 593, 598-601 (1995)…………………………………………………52

United States v. Caraballo-Rodriguez,
480 F.3d 62 (1st Cir. 2007)……………………………………………………45

United States v. Nelson-Rodriguez,
319 F.3d 12, 33 (1st Cir.2003)………………………………………………….66

United States v. Poindexter,
951 F.2d 359, 380-83 (D.C. Cir. 1991)……………………………………….. 51

United States v. Previte,
648 F.2d 73, 85 (1st Cir.1981)…………………………………………………66

United States v. Reilly,
76 F.3d 1271, 1280 (2d Cir.1996)…………………………………………….65

United States v. Sessions,
Nos. 00-1756, 00-1791, 2000 WL 1456903 (8th Cir. Oct.2, 2000) (unpublished
decision)……………………………………………………………………..65

United States v. Sierra Pac. Indus., Inc.,
862 F.3d 1157, 1174 (9th Cir. 2017)…………………………………………...71

Constitution

Article III
The Supremacy Clause
Due Process Clause
Equal Protection Clause
Privileges & Immunities Clause
First Amendment

Fourth Amendment
Seventh Amendment
Fourteenth Amendment


<u>Statutes</u>

5 U.S.C. § 706 ……………………………………………………………….. 40

28 U.S.C. § 455…....................................................................10, 12, 13, 17

34 U.S.C. § 12471 *et seq.* ……………………………………………………11

42 U.S.C. § 651-669, 654(21)(A), § 654  ............................................9

42 U.S.C. §1983 ...................................................................................25

Civil RICO 18 U.S.C. §1964 …………………………………………… 8, 28

28 U.S.C. § 1343 …………………………………………………………38

28 U.S.C. § 1331………………………………………………………...8

28 U.S.C. §1332 …………………………………………………………...8

28 U.S.C. § 1343(a)(3) (civil rights) …………………………………………8

28 U.S.C. § 1367…………………………………………………………...8

18 U.S.C. § 1503, 1512(c)(2) ……………………………………………  8

Fed. R. Civ. P 79 …………………………………………………………….25

18 U.S.C. § 1512(c)(2), 18 U.S.C. § 1503, 18 U.S.C. § 1516, 31 U.S.C. § 3279, 18 U.S.C. §2, 18 U.S.C. §3, 18 U.S.C. § 4, 18 U.S.C. §13, 18 U.S.C. §21, 18 U.S.C. §35, 18 U.S.C. §88, 18 U.S.C. § 241, 18 U.S.C. §285, 18 U.S.C. §286, 18 U.S.C. §287, 18 U.S.C. § 2071(a), 18 U.S.C. § 2071(b), 18 U.S.C. § 1512(k), 18 U.S.C. § 371, 18 U.S.C. § 242, 18 U.S.C. § 1519, 18 U.S.C. §666, 18 U.S.C. §641, Wire Fraud 18 U.S.C. §1343, 18 U.S.C. § 201, 18 U.S.C. §205, 18 U.S.C. §225, 18 U.S.C. §285, 18 U.S.C. §1505 and 1506, 18 U.S.C. § 1512, 18 U.S.C. § 1515, 18

U.S.C. §1001, 18 U.S.C. §1002, 18 U.S.C. §1031, 18 U.S.C. §1341, 18 U.S.C. §1344, 18 U.S.C. §1346, 18 U.S.C. §1349, 18 U.S.C. §1510, 18 U.S.C. §1513; RICO: 18 U.S.C. §1961,  18 U.S.C. §1962, 18 U.S.C. §1963, 18 U.S.C. §1964, 18 U.S.C. §1965, 18 U.S.C. §1968……………………………………………………… 33

Other Authorities

THE DECLARATION OF INDEPENDENCE para. 2, 10 (U.S. 1776) …………50

The Federalist No. 10, at 59 (J. Cooke ed. 1961)…………………………………68

RI Gen. Laws§ 8-10-3 ........................................................................................18

Rhode Island General Laws § 42-7.2-2, § 42-7.2-4, § 42-7.2-5, § 42-7.2-6, § 42-7.2-6.1(2) …………………………………………………………………………16

RI Government Tort Liability Act - RI Gen. Laws§ 9-31-1, *et seq.*. ……………28

R.I. Gen. Laws ch. 631, § 4 (1938))……………………………………………12

Canon 3C and 3E of the Code of Judicial Conduct

Jeffrey R. Kallstrom & Suzanne E. Roe, *Obstruction of Justice*, 38 AM. CRIM. L. REV. 1090-91 (2001)…………………………………………………………..51

Michael E. Tigar, *Crime Talk, Rights Talk, and Double-Talk*: *Thoughts on Reading the Encyclopedia of Crime and Justice*, 65 TEX. L. REV. 101, 111 n.72 (1986)..51

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because it is an appeal of (1) the final decision, (2) merged orders disposing pre-appeal filed Rule 60(b) motions, (3) pre-appeal *docketing obstruction* post-judgment of Appellant-filed *three* Rule 59 and 60 motions by the district court judge William E. Smith (who built his Public Law Practice at his former Firm Edwards & Angell based on Smith's extensive, broad and intimate political attorney-client relationships with all Appellee-political subdivisions of Rhode Island that are subject to federal regulation under 42 U.S.C. § 654(1)), triggering federal criminal obstruction laws committed by the lower court federal judiciary *inter alia* 18 U.S.C. § 1503, 1512(c)(2) *et al*., (3) that is *repeated* post-appeal on November 20, 2023 in his *functus officio* unofficial capacity issuing a series of *void ab initio* orders post-appeal commencing on November 20, 2023 (that is calculated to irreparably harm and prejudice the Appellant), committing federal criminal obstruction altering and falsifying the record on appeal of *this* pending appeal No. 23-1967, that is calculated to *influence and interfere with this pending official proceeding* before *this* Court, by docketing *post-appeal* (on November 20, 2023) Appellant's aforesaid three *pre-appeal* filed <u>and</u> *pre-appeal disposed* post-judgment motions in the district court's ECF docket entries *falsely <u>on the same date as</u>* the docket entry of the notice of appeal on November 17, 2023 (ECF 32) to

*falsely* make it look like there were pending motions prior to the filing of notice of

appeal, *with the explicit intent* to *confuse this Court* of Appeals and to *falsely* make

it look like that this Court lacks jurisdiction to hear, as it turns out, matters and

issues relating to the Smith's former law client Appellees' (4) <u>automatic</u>,

<u>systematic</u> and <u>systemic</u> administrative procedures administering *federal* Title IV-

D of the Social Security Act that *inter alia* criminally alter and falsify federal Title

IV-D Federal Central Registry records including falsifying support orders by

*automatically* "*zeroing out*" Rhode Island's *unlawful* 12% compound interest on

overdue support *debt* that runs afoul of the text of 42 U.S.C. § 654(21)(A) which

allows for participating States to charge only 3%-6% simple interest, that is

calculated by the *public officer* Appellees to *falsely* make it look like there is no

interest (*concealment*), for the purpose of making it *falsely* look like Rhode Island

charges no interest and therefore *falsely* look like it is Title IV-D compliant (Title

IV-D federal funding is contingent on State compliance with all provisions of 42

U.S.C. § 654, including 654(21)(A)), for the purpose of making *false claims for*

*federal public funding* of billions of dollars at 66% *federal* funding of Rhode

Island's unlawful *criminal* operation of essentially Title IV-D *debt collection*

activities, that includes bringing essentially *legal actions in debt at common law* in

grossly *structurally defective constitutionally infirm forums* implemented by the

executive and judiciary Appellees in *ministerial* capacities, that are structured in

such as a way as to rig the proceeding to the advantage of the Appellee *debt collector* Agency, that are *dressed up* as "enforcement" under the Title IV-D scheme, for which federal funding Rhode Island *knows* it is not eligible, for billions of dollars for *three decades,* since the 1996 Congressional Amendments to Title IV-D went into effect from 1996 to the present – *and* simultaneously making *false claims* to the Receiving State Sovereigns, like Texas within the Title IV-D legal structure scheme, *and* equally central to the scheme, making *false claims* for *unlawful 12% compound interest debt* to support debt obligor victims (because Agency Appellees' *automatic* Federal Central Registry-removed 12% compound interest is then *put back* on the *STATE* registry in the Title IV-D scheme); among *many*, *many* others, Appellees and their counsels are exposed to federal RICO liability.  Agency Appellees' RICO debt collection *and* actions in *debt* at common law is coordinated with the judiciary Appellees, whose creation and implementation of structurally defective and constitutionally infirm forums (among many others, *juryless forums for Title IV-D action in debt at common law claims)* are central to Appellees' effectuating the scheme – the ministerial judiciary Appellees are 42 U.S.C. § 654(1) political subdivisions who *aid and abet* the Agency Appellees' Federal Central Registry record-falsification using *automatic "zeroing out of interest" concealment* of Rhode Island's 12% compound interest by operating *two separate* court case filing and management systems that are

purposefully *not* integrated for the past *twelve* years in Rhode Island's digital court forums hearing Title IV-D *actions in debt at common law* that are *juryless*, in which the Title IV-D Administrator and Record-Falsification Agency Appellees file *legal actions in debt in juryless forums* through their separate "*legacy*" case filing and management system that has *a separate set of court clerks* called "*Reciprocal*" that purposefully are instructed by the judiciary Appellees to fail to integrate Agency filings into the main case filing and management system everyone else uses, Odyssey, (that has *a separate set of court clerks different from the "Reciprocal court clerks" in the same or single forum*) so that Appellee Agency filings are only visible to themselves and the judge, but are invisible to *pro se* defendants and the public, and are moreover *not noticed* to opposing parties, AND *denied access pro se* litigants/*defendants*, including access to court records of *their own* case court information, in *gross violation of due process*, that *facially* are calculated to rig the outcome to the advantage of the Agency Appellees.  Public and *pro se* defendants are moreover *"blinded"* as they are denied access to all judge-created laws in Rhode Island that are published in the Rhode Island digital court system, crucially including those judge-created laws relating to Title IV-D administrative procedure records and Title IV-D associated legal actions in debt at common law.  To conceal evidence of Agency Appellees' systematic, automatic and systemic federal record alteration "zeroing out interest," the judiciary

Appellees moreover in their ministerial capacity promulgated Rule 5 that *obstructs* the *availability of public digital court records* of digital courts in Rhode Island that ultimately *contain documentation of the automatic systemic criminal record alteration of Title IV-D federal Central Registry* targeting *federal auditors*, the *public* and *pro se litigants*, such as the Appellant, by denying these singled-out targeted classes access to public court information, including Rhode Island's judge-created laws, in violation of *inter alia* the Government Edicts Doctrine, First Amendment, Due Process and Equal Protection Clauses, Privileges and Immunities Clause, the Supremacy Clause.

Appellees are persons related to, involved in, aiding and abetting and cognizant of Rhode Island's the aforesaid and any and all related-to administrative procedures administrating federal Title IV-D of the Social Security Act, that are governed by and implies incorporating of the Administrative Procedures Act, e.g., 5 U.S.C. § 706, in which the United States has a substantial interest, especially in so far as the procedures concern federal regulation of State's Title IV-A (TANF) funding eligibility and funding of 66% of the operation of Appellees' debt collection activities under the Title IV-D scheme, dressed up as "enforcement," that are funded by *federal* public funds *contingent* upon Appellee State *compliance* with *all federal* laws and *federal* regulations in one of the largest (OVERLY COMPLICATED) state-federal work-together schemes Congress has enacted, *see*

*e.g.*, 42 U.S.C. § 655. Independent judicial review of Title IV-D administrative procedures for their constitutionality and conformity with federal laws, and *foremost* the Constitution under the Administrative Procedures Act, 5 U.S.C. § 706, has been invoked by the Appellant, and Appellant seeks to amend the Complaint to add *Administrative Procedures Act claims* (implying respective related defendants added) under Fed. R. Civ. P 15(a), through filing in the district court on September 5th and September 6, 2024 a *Rule 62.1 Motion for Indicative Ruling on Rule 60(b) and Rule 15(a) Motions*, *See* ECF 63, 64. It is a fact that the Court cannot pretend is not.

Title IV-D state-federal work-together provisions are distilled to nothing more than overly complex federally regulated and federally funded (contingent on federal law compliance) *Congressional* provisions concerning *debt-setting*, *debt collection* and *legal actions in debt at common law*. *See* 42 U.S.C. § § 651-669. Under Title IV-D since the 1996 Amendments, State noncompliance incurs substantial penalties, therefore, Appellees' concealment of Rhode Island's noncompliant 12% compound interest is calculated to defraud the United States (Receiving States and support debt obligors), violate the law and avoid Rhode Island incurrence of substantial federal penalties, as well as to make false claims to the United States for federal funds for which Rhode Island knows it is not eligible.

Title IV-D provisions can be distilled to a state-federal work-together scheme in which *welfare* recipients under Title IV-A (TANF) must assign over ordered child support *debt* owed by obligors to the State as *debt owed by the obligors to the State*. The participating State is permitted under 42 U.S.C. § 654(21)(A) to charge interest on the overdue debt but *only* 3%-6% simple interest, *not* 12% compound interest. In welfare cases, the *assigned principal and interest debts* are *owed by the support debt obligors to the State*. Under 42 U.S.C. § 654(6), the State Appellees, for a mere fee of $35 under federal law, provide the same debt collection "services" to *non-welfare* persons, such as non-welfare Appellee Gero Meyersiek, showing that non-welfare action in debt at common law does *not* implicate State debt interests, since the alleged debt constitutes debt allegedly owed to a non-welfare recipient *private* person, Gero Meyersiek, not a welfare recipient, nor debt assigned to the State. *Therefore, only an action in debt at common law for a private person, Gero Meyersiek, is pending in the state family court*. Normally, within the Title IV-D scheme, the state does not even enter the fray in cases where there are no welfare recipients because the State has *no state interest* in the "enforcement" of "personal private debt" actions. A state *only retains welfare recipients-assigned child support* according to IV-D distribution rules. In actuality, the *only* interest the State Appellees have in the pending *private debt action* in the constitutionally infirm state forum that is dressed-up as

"enforcement" is the State's *bad faith, dirty hands criminal* obstruction alteration of the federal Central Registry records and any and all associated criminal procedures such as transmitting and certifying falsified interest records that *falsely* state there is no interest, which *criminally-removed* interest is then "put back on" the Rhode Island STATE Registry.   Therefore, the only "State interest" Rhode Island has is thus: After automatically zeroing out court-ordered unlawful 12% compound interest, Rhode Island falsely certifies in the federal Central Registry that there is no interest, then puts the interest back on the computer system in the State Registry, so as to collect the unlawful 12% compound interest in unlawful false debt claims defrauding support debt obligors.

   The United States District Court for the District of Rhode Island dismissed this diversity Texas Plaintiff-Appellant's *legal action* consisting of twenty-two federal monetary damages *only* claims properly brought under, *inter alia*, 42 U.S.C. §1983 and RICO, pursuant to Younger Abstention.   Post-appeal, the lower court federal judiciary's alteration of the record on appeal and issuance of <u>several</u> *functus officio misprisio clerici VOID Ab Initio* orders from November 20, 2023 to March 2024 during the pendency of this appeal No. 23-1967 (this is a grossly troubling crucial fact that litters the record in this Court that this Court cannot under the law *pretend* did not happen) which the *functus officio* Smith explicitly explained is for the purpose of "in aid of the court," showing a *purposeful*

*interference with* and *functus officio* <u>influence</u> of *this* pending appeal that triggers

18 U.S.C. § 1512(c)(2) and 1503  – which the subsequent 2024 *new evidence*,

comprising of Rhode Island's *criminal* record falsification administrative

procedures of Title IV-D, that the Court has directed the "ultimate merits panel" to

review and to consider (Court Order dated September 9, 2024 Document:

**00118187278)**, showing *systemic* Appellee *administrative procedures altering* and

*falsifying* Title IV federal Central Registry records, *makes clear Smith's purpose* is

*corrupt.*  Smith, who has had extensive political, personal and attorney-client

relationships with not just the State Appellees but also with former Governor

Chafee (who nominated Smith for his current judgeship) who ultimately approved

the Agency Appellees' federal criminal obstruction administrative procedures

(under Rhode Island law, the corrupt Title IV procedures had to have been

approved by the Secretary of the Executive Office of Health and Human Services,

and which administrative procedures are approved by the **Governor** (Chafee) <u>and</u>

operated by *all subsequent (and current)* Governors – (*see* Rhode Island General

Laws §  **42-7.2-2, § 42-7.2-4, § 42-7.2-5, § 42-7.2-6,** § **42-7.2-6.1(2)**, "legal

services including *applying and interpreting the law*, oversight of the *rule making*

*process*, and *administrative duties* and any *related functions* and duties deemed

necessary by the secretary" for *all publicly funded* health and *human services*.") –

knew and should have known of the decades-long criminal administrative

procedures "automatically" altering and falsifying federal records zeroing out Rhode Island's unlawful 12% compound interest.  Certainly, Smith's personal friend and former client Governor Chafee in his supervisory capacity, is ultimately responsible for the procedure iteration (that is effective dated 2011 to the present) *criminal* obstruction procedures' approval and implementation in Chafee's *executive* capacity in 2011 as Governor.

As such, United States *judges of the merits panel*, Appellant duly reported to the United States judges of the Court of Appeals in the First Circuit Appellant's discovery of Appellees' "automatic zero out interest" federal criminal administrative procedures contained in the new evidence available in 2024 on March 24, 2024, under 18 U.S.C. § 4 (incorporating 18 U.S.C. § 1503) in the form of a public Notice (Document: 00118123623) concerning public officers.  Nothing in Sections 4 or 1503 requires "make known" reporting to be under seal or nonpublic.  Appellees' *decades-long systemic* crime implicates the legitimacy of the government, implicates the federal judiciary of the *functus officio* federal district court under *this* Court materially *altering* records on appeal during the pendency of this appeal, implicates United States' substantial interest and ultimately implicates the all-important public interest ever so egregiously, and necessitates it shouted out *loud* in the *federal* "Town Square."  Appellant is *irreparably harmed* and is *prejudiced*, by the district court's obstruction actions.

Younger Abstention does not apply for several reasons, including, putting it lightly, bad faith.  The gravamen of Appellees' and Smith's alleged "State interest" "enforcement" is nothing more than a *bad faith private* legal action in debt at common law brought by the State in order *to cover up their criminal obstruction RICO liability* intentionally brought before a juryless, *purposefully* rigged constitutionally infirm state forum that moreover deprive defendants of the right to jury trial (*see* Rhode Island General Laws § 8-10-3) for a non-welfare client, Appellee Gero Meyersiek, who *never* assigned any "interest" debt to the State, and who, his agent (the State Agency Appellees) represented, ***waived interest***, thus "explaining away" the $0 interest showing in Appellant's Title IV account records on December 6, 2021, which at the time unbeknownst to Appellant, also was "automatically zeroed out" under State Agency Appellees' corrupt criminal administrative procedures to conceal Rhode Island's unlawful 12% compound interest.   Accordingly, Appellant moved to supplement the record on August 15, 2024 (Document: 00118178653).  The Court on September 9, 2024 held "the ultimate merits panel will consider the materials attached to the motion" (Document: 00118187278).  This Article III Court has jurisdiction to independently review Appellees' Title IV automatic federal record alteration and falsification administrative procedures and Appellees' related Title IV forum actions contained in the Complaint that are *purposefully* constitutionally infirm,

infested with *structural defect*s, for <u>bad faith</u> and/or <u>criminality</u>, *with* the

corresponding implied judicial *duty* under 18 U.S.C. sec. sec. 4 or 1503 – as well

as the related federal judiciary district court alteration and falsification of the

record of a pending proceeding in a *successful* bid to *corruptly* confuse/interfere

with/influence this Court on the material *threshold* matter *falsely* making this Court

initially believe it lacked jurisdiction.  *Functus Officio* fraud on the court by, *inter*

*alia*, the lower court federal judiciary itself, *irreparably* harmed and *irreparably*

prejudiced Appellant.  This Court's subsequent August 13, 2024 ordered

requirement (when its operations are *amply funded* by annual Congressional

appropriations *in excess* of the cost of its operational budget so much so that during

a federal government shut down, this federal judiciary could function for *months*

relying solely on its collected *fees*, such as filing fees) or ultimatum penalizing and

*forcing* the Appellant to pay $605 filing and docketing fees *per appeal*  in order to

appeal a *series of* or *several functus officio void ab initio orders* involving criminal

corrupt record alterations or *functus officio void ab initio* orders by the lower court

*during the pendency* of *this appeal that* <u>*succeeded*</u> *in confusing this Court*, or face

the Court's ultimatum "appeal dismissal," effectively penalizes and irreparably

harms, and is *irreparably prejudicial* to the Appellant *(see consequently dismissed*

*appeals 23-1978 and 24-1313)*.  This fundamental unconstitutional irreparable

harm structural defect issue is preserved and ripe for Article III Supreme Court review.

## STATEMENT OF THE ISSUES

This appeal of the dismissal of purely monetary damages federal legal claims that it turns out implicates government and private Appellees' systemic criminal obstruction Title IV of the Social Security Act administrative procedures and the subsequent federal judiciary pre-appeal and post-appeal *functus officio misprisio clerici* multiple successful federal records alteration and falsification by the lower district court federal judiciary during the pendency of this appeal, for the explicit purpose of interfering with the issues on appeal, it turns out calculated to conceal or otherwise obstruct from coming to light Appellees' decades-long and systemic criminal record falsification Title IV procedures, raises questions regarding ultimately the legitimacy of not just the judiciary, but more fundamentally that of the government, as aforesaid at both the state and federal levels, that commit federal criminal obstruction with federal RICO liability, in the corrupt administration of an Act of Congress within the First Circuit:

ISSUE ONE: Whether Article III has independent judicial review of Congressional provisions and corresponding administrative procedures in federally regulated and

federally funded state-federal work-together schemes, such as any of the enumerated Titles of the Social Security Act that is at issue.

ISSUE TWO: Whether Article III has independent judicial review of newly discovered State-withheld evidence showing systemic obstruction criminality inherent in the State's Title IV federally-regulated administrative procedures, triggering federal 18 U.S.C. sec. 1512(c)(2), 1503, 1516, 4, among others, that systemically alter digital federal Central Registry records concerning Title IV-D support debt to which the Administrative Agency automatically "zero out interest" to "modify" support orders, calculated to falsely make it look like there is no interest, so as to *falsely* make it look compliant to the text of 42 U.S.C. sec. 654(21)(A), compliance of which is requisite under Title IV-D in order for the State to make claims to the United States for federal public funding under the Title IV scheme for TANF (Title IV-A) and the State's Title IV-D operations.  Corollary to this issue is whether Article III has independent judicial review of undisputed 2024 newly discovered State-withheld evidence showing the same Agency Administrators put the "zeroed out" removed interest back on the State's Title IV registry, in order to make false claims for the 12% compound interest targeting support debt obligors within the Title IV scheme and legal structure, such as Appellant.

ISSUE THREE:  (a) Whether the complex Title IV-D of the Social Security Act is distilled to nothing more than [overly] complex federally regulated and funded debt setting, debt collection, and provisions for federal law prescribed procedures and forums Congress permitted to bring legal actions in debt at common law in welfare cases, in which Title IV-A [and Part D] requires support debt ordered for the welfare-recipient be assigned to the State, becoming debt owing to the State. (b) Corollary to this issue is whether the *absence* of debt owing to the State in *non-welfare* cases in which essentially *private* actions in debt at common law brought in juryless and constitutionally infirm and structurally defective forums that in part obstruct court record access of court documents relating to these federal Title IV issues targeting not just the public or defendants, but also implicate federal auditors under the Title IV-D scheme, that are implemented by the judiciary political subdivision of Rhode Island implicate a legitimate State interest.

(c) Corollary to this issue is whether the above enumerated facts, evidence of and issues show obstruction and or trigger federal criminal laws such as 18 U.S.C. sec. 1512(c)(2), 1503.

(d) Corollary to this issue is whether the above enumerated facts and issues show a legitimate State interest.

(e) Corollary to this issue is whether the above enumerated issues show bad faith or harassment.

(f) Corollary to this issue is whether this Circuit's application of Younger Abstention to essentially pending state *legal actions in debt* at common law, dressed up as quasi-criminal "enforcement" that are moreover *wholly* regulated by *federal* law, mostly *funded* at 66% by *federal* public *funds*, and *audited* by federal auditors is, under the Constitution, fundamentally unlawful flouting of jurisdiction conferred on to it, and whether that has functioned to enable Rhode Island's decades-long systemic obstruction administrative procedures in place that are federally regulated and funded for mere actions which amount to nothing more than *debt collection* and *legal actions in debt at common law* dressed up as "enforcement" – which debt, just as consequential towards the constitutional infirmity of both applying Younger and Title IV's administrative procedure provisions, and the merits in this matter, is allegedly as a matter of "State DEBT Forgiveness policy and program" ***forgiven*** by Rhode Island, pursuant to the United States Department of Health and Human Services that *regulates* the State Appellees – showing the ***quasi-criminal*** nature of Younger Abstention *never* should have applied to mere discretionary or agency-forgivable *debt collection* and agency-forgivable *legal actions in debt at common law* that are clearly dressed up as quasi-criminal enforcement in every single state in the First Circuit: Maine

(agency-debt-forgivable), Massachusetts (debt-forgivable codified by state law),

New Hampshire (no interest state, and also agency-debt-forgivable), and Rhode

Island (agency-debt-forgivable) (Puerto Rico is a United States territory but *not* a

state sovereign, therefore in the Younger case law texts regarding equal *sovereign*

*Comity, Puerto Rico does not fit, implying Younger does not lawfully fit in the U.S.*

*territories*) who *all* have reported, in their capacities as *comity but* <u>*federally-*</u>

<u>*regulated*</u> and <u>*federally-funded*</u> sovereigns, to the U.S. Department of Health and

Human Services they negotiate and or forgive assigned debts <u>*under*</u> Title IV-D.

The *federalism and comity* <u>*equal*</u> *sovereigns* concepts behind Younger clashes and

conflicts with the fact of the participating state sovereigns' voluntarily submission

to federal regulation for federal funding state-federal work-together legal structure

schemes such as Title IV-A and Title IV-D, making *Younger not apply* to

concurrent federally-regulated and federally funded state actions within Title IV-A

or Title IV-D.  For that very reason, under the Constitution, the United States

Supreme Court repeatedly upheld federal regulation *in the face of state invocations*

*of the Tenth Amendment* where states voluntarily submit to federal regulation in

exchange for receiving federal funding. *See*, e.g., *Oklahoma v. U.S. Dept of Health*

*and Human Services*, (2024).

ISSUE FOUR: Whether William E. Smith's unofficial, ministerial acts and the

district court's ministerial acts *pre-appeal* obstruction of the clerk's docketing of

Plaintiff-Appellant's three post-judgment Rule 59(e) and Rule 60(b) motions is lawful, or violates Fed. R. Civ. P 79, or attempted to or succeeded in or otherwise altering or impairing or otherwise the availability of the whole record for appellate judicial review in a pending official proceeding; or attempted to or succeeded in interfering or influencing or otherwise with a pending official proceeding, or committed *misprisio clerici.*

ISSUE FIVE:   Whether post-appeal, the f*unctus officio misprisio clerici* William E. Smith's unofficial, ministerial acts and the district court's ministerial acts through Smith's *functus officio misprisio clerici* issuances of several or a series of *void ab initio* orders spanning from November 20, 2023 to March 2024, that attempted to and succeeded confusing this Court through *functus officio misprisio clerici void ab initio* altering the record in the bald attempt to falsely make this Court falsely believe that it lacked jurisdiction of this appeal and the former 23-1978 during the duration of the pendency of both appeals.  Corollary to this issue is whether the federal judiciary violation of federal criminal obstruction 18 U.S.C. sec. 1512(c)(2) and 1503, implying violation of wire fraud, Section 666, Section 241, and applicable federal crimes raised before the Court from March 2024 to September 6, 2024 by officers of the federal court irreparably harmed and prejudiced the Appellant, that taints this forum in the First Circuit.

ISSUE SIX: Whether Section 4 and Section 1503 and the "as soon as possible"

Clause therein *obligate* the United States judges of the United States in the First

Circuit to whom the commission of crimes were "made known" to take *obligatory*

*and hastened* action, such as granting the requested limited remand under the

invocation of Fed. R. App. P 12.1, in order to pursue focused discovery on the new

2024 evidence showing Appellee systemic administrative procedurally prescribed

federal record falsification and otherwise obstruction in Appellees' corrupt

administration of Title IV-D and Title IV-A that is self-acknowledged "aided" by

*functus officio* William Smith's post-appeal alteration of the record on appeal

during the pendency of *two* (subsequently) Court-consolidated appeals (23-1967

and 23-1978) (stemming from the final judgment, post-judgment orders and a

series of post-appeal federal public officers of the court's commission of criminal

obstruction in the same underlying district court case, 23-cv-126 (*see* Document:

**00118162842**).  See also Document: **00118178653 dated August 15, 2024.**

ISSUE SEVEN: Whether this Court's coercive response forcing the Appellant to

pay $605.00 filing and docket fees *per appeal* (23-1978 and 24-1313) or suffer

consequential dismissal of properly-appealed *functus officio misprisio clerici void*

*ab initio* William E. Smith orders dating from November 20, 2023 to March 2024

issued during the pendency of *this* appeal that irreparably harmed and prejudiced

the Appellant *during the pendency* of *this* appeal underline compounded the district court's

irreparable harm and prejudice to the Appellant – this Court denied Appellant

relief and consequently dismissed appeals of the *functus officio misprisio clerici*

*void ab initio* Smith orders that *litter and taint* this appeal's record that are

fundamentally unsegregable from 23-1978 and 24-1313, which shows structural

defect bias by *this* Court that is irreparably *prejudicial* to the Texas Appellant.  *See*

consequentiality of the tantamount ruse of forcing payment of $605 fees per appeal

on appeals of void ab initio orders and proceedings: "a void order may be attacked

at any time in any court, either directly or collaterally" *Vallely v. Northern Fire &*

*Marine Ins. Co.*, 254 U.S. 348, 41 S. Ct. 116 (1920); "orders are regarded as

nullities.  They are not voidable, but simply void, and this even prior to reversal."

*Old Wayne Mut. I. Assoc. v. McDonough*, 204 U.S. 8, 27 S. Ct. 236 (1907).

ISSUE EIGHT: Whether under these extraordinary circumstances, this matter

should be *transferred* to another neutral and simultaneously *Title IV-D*

*Administrator Appellees-affected* Circuit venue, such as the Fifth Circuit.

(DISQUALIFICATION) ISSUE NINE: Whether under the above enumerated

extraordinary circumstances, 28 U.S.C. § 455(a) disqualifies Judge William E.

Smith whose former Firm and past clients, who are his former Firm's *current*

clients, include the State Defendants (who ultimately were supervised by former

Governor Chafee) and the interested parties, the Rhode Island state judiciary and

state courts, and the office of the state attorney general, and who remain currently

key clients of Judge Smith's former firm and Public Law Practice he built at formerly Edwards & Angell.

## <u>STATEMENT OF THE CASE</u>

This is a diversity federal jurisdiction *purely* federal monetary damages *legal* action for fraud, tort liability, Rhode Island Government Tort Liability Act under R.I.G.L. § 9-31-1, Civil RICO § 1964 liability that are further predicated on wire fraud, mail fraud, falsification of records, making false claims, and 42 U.S. Code § 1983 federal civil rights legal action for *monetary damages* case under the Fourth, Fifth, and First Amendments of the United States Constitution as applied to the States under the United States Constitution's Fourteenth Amendment for the Defendants' individual and collective unlawful constitutional, common law and RICO debt collection liability violations under color of Rhode Island's criminal obstruction corrupt Administrative Procedures of federal Title IV-D that violate Plaintiff's constitutional right to Due Process and Equal Protection, Privileges and Immunities protection against the Title IV-D the unlawful interstate Title IV-D debt collection schemes for a *private* debt allegedly owed to the private non-welfare Appellee, Gero Meyersiek. The incredulity of the State expending federal public funds bringing essentially a legal action in debt at common law suit under

color of state law in the juryless state family court forum for *private* debt allegedly owed to the private non-welfare Gero Meyersiek that is dressed up as quasi-criminal "enforcement" with "state interest" is explained, as it turns out, by the 2024 new evidence showing the State's true motive is to cover up the State's federal Title IV-D administrative procedures that systemically automatically alters federal Title IV Central Registry records "zeroing out" Rhode Island's 12% compound interest that Rhode Island seeks to conceal from federal Title IV-D regulatory auditors, which removed interest the State "puts back" on the State's Title IV-D Registry so as to make false debt claims of 12% compound interest targeting support debt obligors, that furthers the State's RICO scheme, exposing the State (and partner private Appellees) to common law and government tort liabilities <u>and</u> RICO liabilities, and federal criminal liability such as obstruction. *See* Appellant's Jurisdictional Statement on generally pages 10 to 21, and Statement of Issues on Appeal (on pages 22-29) that are hereby fully stated and incorporated.  *See also*, Documents: **00118178653**, **00118186837: Motions to supplement the record**.  This Court ordered (Document: **00118187278**) that the merits panel shall consider the documents attached to the motion to supplement the record (Document: **00118178653**) as well as all of Seguin's (Appellant's) filings since March 1, 2024 to the present in this matter (*see* Document: 00118148678). Under the Constitution and federal law, <u>Article III has jurisdiction to *independently*</u>

review this matter, that the United States Supreme Court, in its *seismic focus* on

independent review of the administrative state, that in this matter by and through

Rhode Island's criminal administrative procedures and corrupt administration of

federal Title IV-D of the Social Security Act, implicates the fundamental public

interest issues of *government legitimacy* and *legitimacy of both the state and*

*federal judiciaries*, had *recently upheld,* augmented by the Supreme Court's recent

review of federal criminal obstruction and its application to *public officers* – see

e.g., *CORNER POST, INC. v. BOARD OF GOVERNORS OF THE FEDERAL*

*RESERVE SYSTEM*, (2024) (Slip Opinion); *Lopes Bright Enterprises v. Raimondo*,

(2024) (Slip Opinion); *Ohio v. EPA, et al*, (2024) (Slip Opinion); *S.E.C. v. Jarkesy*,

603 U.S. __ (2024); *Fischer v. U.S.*, 603 U.S. ___ (2024); *Trump v. U.S.*, 603 U.S.

___ (2024).

## SUMMARY OF ARGUMENTS

This a *legal monetary damages* action for tortious, constitutional and RICO injury to the Plaintiff-Appellant caused by the Appellees' coordinated corrupt federal criminal obstruction involving altering and falsifying *federal Central Registry* Title IV-D records through Rhode Island's systemic criminal administrative procedures for the purpose of making *false* claims for unlawful interest debt that are purposefully brought to *deliberate* constitutionally infirm forums purposed with egregious structural defects to not only rig the outcome to the advantage of State Agencies within the Title IV-D legal framework, but serves the purpose to conceal evidence of the State's criminal obstruction administrative procedures administering Title IV-D provisions that involves altering and falsifying federal records, fabricating orders to zero out the interest, and transmitting false certifications that there is no interest – the removed interest is subsequently put back on the State Registry in order to make false debt claims for unlawful 12% compound interest. The alleged interest debt owed is a non-welfare

case, therefore, it is wholly a State activity involving *private* debt collection and

subsequent *private* action in debt at common law brought by the State of Rhode

Island falsely dressed up as "state enforcement with state interests."

The Appellees never filed a response pre-judgment. Rhode Island's

arguably most well-known Public Law former firm-Partner, William Smith, was

Rhode Island Appellees' former attorney with intimate, political and personal

relationships added to the attorney-client relationships. *See*, *e.g.*, Federal Judiciary

Website biography on Smith. As such, the whole federal judiciary in the District

for Rhode Island and Smith knew or should have known of the systemic automatic

criminal obstruction administrative procedures altering and falsifying federal

Central Registry Title IV-D records and corollary certifications falsely certifying

there is no interest, concerning Rhode Island's unlawful 12% compound interest

that runs afoul of 42 U.S.C. sec. 654(21)(A). To impair the availability of and

impede the obstruction evidence from coming to light, and to interfere with and

corruptly influence the judges of this Court, Smith's subsequent pre-appeal

obstruction of docketing post-judgment motions and Smith's *functus officio* post-

appeal alteration of the record on appeal during the pendency of this appeal

relating to the issues on appeal equally runs afoul of 18 U.S.C. sec. sec. 1512(c)(2)

and 1503. As such, a non exhaustive list of federal criminal liability statutes have

been simultaneously triggered: e.g., **18 U.S.C. § 1512(c)(2), 18 U.S.C. § 1503, 18**

U.S.C. § 1516, 31 U.S.C. § 3279, 18 U.S.C. §2, 18 U.S.C. §3, 18 U.S.C. § 4, 18

U.S.C. §13, 18 U.S.C. §21, 18 U.S.C. §35, 18 U.S.C. §88, 18 U.S.C. § 241, 18

U.S.C. §285, 18 U.S.C. §286, 18 U.S.C. §287, 18 U.S.C. § 2071(a), 18 U.S.C. §

2071(b), 18 U.S.C. § 1512(k), 18 U.S.C. § 371, 18 U.S.C. § 242, 18 U.S.C. §

1519, 18 U.S.C. §666, 18 U.S.C. §641, Wire Fraud 18 U.S.C. §1343, 18 U.S.C. §

201, 18 U.S.C. §205, 18 U.S.C. §225, 18 U.S.C. §285, 18 U.S.C. §1506, 18

U.S.C. § 1512, 18 U.S.C. § 1515, 18 U.S.C. §1001, 18 U.S.C. §1002,  18 U.S.C.

§1031, 18 U.S.C. §1341, 18 U.S.C. §1344, 18 U.S.C. §1346, 18 U.S.C. §1349, 18

U.S.C. §1510, 18 U.S.C. §1513; RICO: 18 U.S.C. §1961,  18 U.S.C. §1962, 18

U.S.C. §1963, 18 U.S.C. §1964, 18 U.S.C. §1965, 18 U.S.C. §1968.

The legitimacy of the government and the legitimacy of the judiciary are

central to the issues on appeal, implicating all important public interests.

Due to the egregiousness nature of Appellees' and Smith's collective

actions, the arguments are laid out as follows in three stages:

(1) Final Judgment: The quasi-criminal Younger Abstention does not apply

to civil debt collection schemes that are federally regulated and federally

funded contingent upon compliance with federal law and the

Constitution.  Title IV-D provisions are distilled to nothing more than

debt collection through, among others, legal actions in debt at common

law that must be tried before a jury and all constitutional protections afforded to legal actions in debt at common law.  In non-welfare cases, the interest debt is *private*, as is the case here.  Rhode Island's criminal obstruction administrative procedures relating to interest debt portion of Title IV-D (42 U.S.C. sec. 654(21)(A)) shows there was never any legitimate state interest.  Rhode Island's forums in which legal actions in debt are brought are purposefully administered and implemented to make the forums constitutionally infirm wrought with structural defect structures that are calculated to rig the outcome to the advantage of the Agency Appellees, so as to collect the unlawful 12% interest debt, with clear exposures to RICO liability, among others.  Moreover, under Title IV-D, Rhode Island is liable for penalties attached to federal noncompliance that Rhode Island corruptly concealed through criminal obstruction to avoid federal penalties.  The second purpose is to conceal or impair the availability of evidence of Rhode Island's corrupt Title IV-D record obstruction and the unlawful 12% compound interest from the public, *pro se* defendants and importantly, federal auditors: to that end, these targeted classes are obstructed from access to all court records and information in Rhode Island's digital courts, including judge-created laws, that trigger fundamental rights violations to include the First

Amendment, Due Process and Equal Protection Clauses, Privileges and Immunities Clause, the Supremacy Clause and Government Edicts Doctrine.  Rhode Island Appellees' corrupt administration of Title IV-D shows not just bad faith but triggers the above enumerated non-exhaustive federal criminal law violations carrying up to 20 years imprisonment per count.  Since Appellees' scheme spans decades involving and is in effect in all political subdivisions (as the State certified Title IV-D administrative procedures for decades is in effect as required by federal law 42 U.S.C. sec. 654(1)), Appellees' exposure to criminal liability is extensive; and as such, implicates the legitimacy of government, the legitimacy of the state judiciary, and significant public interests.  None of the Appellees responded to the Amended Complaint (ECF 25) and Smith dismissed *sua sponte*; Smith knew or should have known his former clients' decades long systemic federal record falsification, dismissed the purely monetary damages legal action under Younger Abstention.

(2) Post-judgment, Pre-Appeal, Unofficial Capacity Docketing Obstruction: Federal obstruction crimes are triggered by Smith's obstruction of the docketing of three post-judgment Rule 59(e) and 60(b) motions Plaintiff-Appellant filed *pre-appeal* on November 16 and November 17, 2023.  As

the docketing of filings fall under official ministerial actions by *clerks* regulated under Fed. R. Civ. P 79, normally docketing involves no official judicial capacity.  Therefore, Smith's obstruction of the clerk's docketing of three post-judgment motion filings are *unofficial acts* that trigger, among others, 18 U.S.C. sec. 1512(c)(2) and 1503, that serve no other legitimate purpose other than to corruptly alter the record and interfere with a pending official proceeding.  Similarly, the federal clerks' obligation under Rule 79 is to docket filings.  In his official judicial capacity, Judge Smith disposed of all three post-judgment motions on November 17, 2023 (denials).  Smith's pre-appeal post-judgment motion denials are moreover *void ab initio*, as the motion disposition is structurally defective.  As such, when Plaintiff-Appellant filed the Notice of Appeal for 23-1967, the district court clerk certified to this Court that there were no pending motions at the time of filing of notice of appeal (ECF 33, 33-1).  Smith's action necessitated this Court to belatedly vacate this appeal's briefing schedule, and to perform a forensic investigation of the district court transmitted record on appeal, and found that indeed, there were no pending motions at the time of filing of the notice of appeal (ECF 32).  This pre-appeal record obstruction constitutes the first count of irreparable harm and prejudice to the Texas

Appellant by the lower court federal judiciary's obstruction of docketing

and alteration of the record in an official proceeding.

(3) Extensive and Prolonged Post-Appeal *Functus Officio Misprisio Clerici*

Alteration and Falsification of the Record on Appeal During the

Pendency of the Appeal – Smith's actions and the federal judiciary's

actions altering the record on appeal in their *functus officio* unofficial

capacity post-appeal not only disqualifies Smith, but the structurally

defective federal forum in the District of Rhode Island.  Similarly, the

corrupt alteration of the record on appeal triggers 18 U.S.C. sec.

1512(c)(2) and 1503, among others.  Because Smith's post-appeal record

alteration succeeded in confusing this Court, this Court abruptly vacated

in the eleventh hour its briefing schedule in this appeal, 23-1967.  This

Court was forced pre-briefing to perform a forensic investigation of the

record, in order to find that there were no pending motions at the time of

the filing of the notice of appeal, confirming this Court's jurisdiction over

this matter and the then-pending 23-1978, whose records cannot be

divorced from this appeal's records – due to Smith's post-appeal *functus*

*officio* alterations of the record, this confused Court on its own vacated

the original briefing schedule in the eleventh hour on March 1, 2024,

placing the burden on Appellant to "Show Cause" to prove this Court has

jurisdiction over, as it turns out, properly filed appeals. Smith succeeded in placing doubt on the threshold issue of this Court's jurisdiction over properly filed appeals – a fundamental irreparable harm and prejudice to the Appellant was achieved by Smith. This Court's post-forensic investigation of the record subsequent response denying Appellant relief from paying fees and forcing Appellant to pay $605 filing and docketing fees *per appeal* of <u>several</u> functus officio corrupt record alteration *void ab initio* orders by the lower court federal judiciary over which *this* Court has supervisory responsibility functions to ***penalize*** rather than *remedy* irreparable injury to the Appellant, especially when *functus officio void ab initio* orders are **<u>nullities</u>** and can be attacked at any time in any proceeding, such as this one. Appellant's pre-appeal irreparable injury has now been exponentially compounded, and due to the structural defect inherent in the federal judiciary's corrupt alteration of the appeal record during the pendency of this appeal proceeding, Appellant is exponentially prejudiced by the commission of criminal obstruction of judicial records by *Smith et al*. within this Circuit. Over Appellant's repeated strenuous objections, this Court dismissed appeals 23-1978 and 24-1313 for Appellant's objections to paying what amounts to $605 penalty per

appeal of federal judiciary criminal obstruction that has undisputedly

prejudiced and harmed Appellant in *this* 23-1967 proceeding.

**Final Judgement: Sua Sponte Dismissal Under Younger Abstention Of Monetary Damages Due To As It Turns Out Smith's Prior Knowledge of His Former Clients' Systemic "Automatic" Criminal Obstruction Administrative Procedures of Title IV-D Altering and Falsifying Federal Central Registry Records**

Younger Abstention does not apply to Federal Legal Claims for monetary

damages brought under 42 U.S.C. § 1983 and 18 U.S.C. § 1964, 28 U.S.C. § 1343

for the scheme and Defendants criminal obstruction administrative procedures'

violations of, *inter alia,* Plaintiff's civil rights, right to jury trial, and property

rights, and rights deprivation under the Appellees' criminal and corrupt

administration of the federally regulated and funded state-federal work-together

legal framework of *Federal the* Title IV-D of Social Security Act Program just

because a *private legal action in debt at common law* for the private, non-welfare

Appellee Gero Meyersiek was unlawfully brought by Rhode Island who have

engaged in prosecutorial misconduct and in reality are purely motivated by

criminal cover-up in a juryless and constitutionally infirm and cannot be dismissed

under doctrine of Younger Abstention that applies narrowly only to quasi-criminal

state "enforcement" with legitimate state interests under the Constitution, Article

III.   Clearly, the pending private legal action in debt at common law is <u>not</u> quasi-

criminal enforcement in nature, *but is criminally and falsely dressed up as if it is,*

with criminal *concealment* <u>State motives</u> calculated to conceal and otherwise

obstruct the availability of evidence of Rhode Island's systemic automatic "zero

out interest" record falsification administrative procedures.    Plaintiff is a citizen

of the State of Texas and the amount in controversy exceeds $75,000.00.  This

Court has jurisdiction to independently review the lawfulness of Rhode Island's

Title IV-D administrative procedures (*see* 5 U.S.C. § 706; see *Corner Post, Id.*),

and has subject-matter jurisdiction pursuant to Title 28, Section 1332 of the United

States Code (28 U.S.C. § 1332).  Plaintiff also brings this action pursuant 42

U.S.C. § 1983 for violations of civil rights under the Fourth, Fifth, First and

Fourteenth Amendments to the United States Constitution.  Rhode Island state tort

claims were additionally brought in this action.  This Court has subject-matter

jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 28

U.S.C. § 1343(a)(3) (civil rights); 28 U.S.C. § 1367 provides supplemental

jurisdiction over the state law tort claims that arose from the same common nuclei

of facts.

A. The federal courts' exercise of their jurisdiction is a matter of obligation, not

choice. This Court has long held that "[q]uestions may occur which [federal courts]

would gladly avoid; but [they] cannot avoid them." *Cohens v. State of Virginia*, 19

U.S. 264, 404 (1821). Accordingly, "[w]hen a Federal court is properly appealed to

in a case over which it has by law jurisdiction, it is its duty to take such

jurisdiction[.]" *Willcox v. Consol. Gas Co. of New York*, 212 U.S. 19, 40 (1909).

The district court's "automatic" application of Younger abstention to federal

monetary claims in pending state Title IV-D proceedings is contrary to the

Supreme Court's clear directives regarding federal courts' jurisdiction. Federal

courts are obligated to exercise the jurisdiction given to them. As Justice Scalia

explained, this obligation flows from Congress's control over the scope of their

jurisdiction: The [C]ourts of the United States are bound to proceed to judgment

and to afford redress to suiters before them in every case to which their jurisdiction

extends. They cannot abdicate their authority or duty in any case in favor of

another jurisdiction . . . . Underlying these assertions is the undisputed

constitutional principle that Congress, and not the Judiciary, defines the scope of

federal jurisdiction within the constitutionally permissible bounds. *New Orleans*

*Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358 (1989)

(internal quotation marks and citations omitted). Accordingly, "abstention is

permissible, and it remains the exception, not the rule." *Id*. at 359 (internal

quotation marks and citations omitted). "Federal courts, it was early and famously

said, have 'no more right to decline the exercise of jurisdiction which is given, than

to usurp that which is not given.'" *Sprint Communications, Inc. v. Jacobs, 571 U.S.*

*69 (2013)*; 571 U.S. at 77 (quoting *Cohens*, 19 U.S. at 404). The obligation to

exercise jurisdiction is therefore "virtually unflagging." *Id*. (quoting *Co. River*

*Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976)). In *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706 9 (1996), the Supreme Court limited the application of abstention principles to cases involving *only equitable and discretionary relief.* The quasi-criminal civil state proceedings that Younger Abstention covers *do not apply* to on-going state proceedings whose nature are nothing more than *legal actions in debt at common law* for *private* ==*non-welfare debts*==, that Rhode Island criminally expends federal public funds to bring in a constitutionally infirm juryless forum that is motivated in part by Rhode Island's need, in part, to conceal/cover up its criminal record alterations schemes to make false claims for unlawful 12% compound interest debt within the Title IV-D legal framework. Certainly, *Younger* never intended to extend abstention application to the State expending federal public funds to "enforce" the state's *private debt judgments*, as is the case here. Article III is required to *independently* review the common law nature of the federal claimant's-complained of proceedings that are enacted under provisions of Congressional Title IV-D schemes in damages claims for *forum infirmity* and *criminal record alteration administrative procedure* that are extensively alleged in the operating Amended Complaint (ECF 25). *See also, S.E.C. v. Jarkesy*, 603 U.S. __ (2024); *Lopes Bright Enterprises v. Raimondo* (2024)(slip opinion). The Amended Complaint is itself a "Younger Abstention Exception Monetary Damages Claim" that alleges bad faith, government tort and

*criminal and civil* RICO liability.  Because <u>civil RICO</u> liability is predicated on

*criminal* violations, such as wire fraud and mail fraud, in the <u>*collection of unlawful*</u>

<u>*debt*</u>, Article III is required to independently review Title IV-D provisions whose

nature are distilled to nothing more than federal regulation and funding of <u>*debt*</u>

<u>*collection activities*</u> – the Amended Complaint's allegations of unlawful debt and

corrupt administrative procedures administering Title IV-D themselves show <u>*bad*</u>

<u>*faith*</u> through the commission of *federal crimes* and that the nature of Title IV-D

state proceedings are *civil legal actions in debt at common law* dressed up as

"enforcement" – see *Jarkesy*.   Younger does not apply to on-going state legal

actions in debt at common law state proceedings that are clearly not quasi-criminal.

Younger does not apply to bad faith state prosecutions through its systemic

procedural commission of federal record alteration crimes.  *See, e.g.*, Supreme

Court holdings on record alteration triggering 18 U.S.C. sec. 1512(c)(2), *Fischer v.*

*U.S.*, 603 U.S.__ (2024).   The commission of federal obstruction crimes to falsely

alter the record to make false debt claims underlying the on-going state legal action

in debt at common law in a juryless constitutionally infirm forum serves *no*

*legitimate State interest* cognizable in any court of law. *See, e.g*., *Netflix v. Babin*,

No. 22-40786 (5th Cir. 2023).  Allegations of "bad faith and harassment," the

Supreme Court has said, can usually fit the bill. *Younger*, 401 U.S. at 53–54. While

states certainly have a legitimate interest in the enforcement of their criminal laws,

they have no such interest when the enforcement of those laws is carried out in bad faith. With respect to the interests of the State," we have said, "it by definition does not have any legitimate interest in pursuing a bad faith prosecution brought to retaliate for or deter the exercise of constitutionally protected rights." *Wilson v. Thompson*, 593 F.2d 1375, 1383 (5th Cir. 1979).   Comity, the notion that largely undergirds the relational jurisprudence between state and federal courts, gives way once good faith does. As we put it decades ago, *if the "state's legal machinery is being used in bad faith," relying "upon comity is to beg the question." Sheridan v. Garrison*, 415 F.2d 699, 707 (5th Cir. 1969)(emphasis added).   Moreover, claims on the juryless constitutional infirmity of the forums in which the State brings *Civil* legal actions in debt at common law proceedings requires scrutiny of constitutional infirmity foremost of the juryless forum.   In Article III, the jury finds the facts, therefore fact finding on federal constitutional claims must be performed by the jury, not a judge. *See Jarkesy*. Juryless forums foremost lack jurisdiction to award monetary damages claim in legal actions at common law.  Under the factual circumstances of this case, private Appellee Gero Meyersiek and his partner the State Appellees, have no hope of obtaining a valid *debt conviction* against Appellant.  The inapplicability of Younger Abstention in this matter is fundamental.

B. Similar to the Clean Water Act, Title IV-A and Title IV-D of the Social Security
   Act is one of the largest state-federal work-together federal programs enacted by
   Congress, that extensively regulates and funds (at 66% contingent on federal law
   State compliance) Title IV-D administration by the participating states.  See 42
   U.S.C. sec. 651-669.  See *Ohio v. EPA*, 603 U.S. __ (2024) state-federal work-
   together scheme.   Title IV-D administrative procedures are subject to independent
   Article III judicial review, and upon injury to the Claimant, see 5 U.S.C. sec. 706;
   *Corner Post v. Board of Governors of the Federal Reserve; Although State*
   *Appellees criminally claimed in void ab initio post-appeal proceedings that the*
   *State has a legitimate interest in enforcing child support orders are nullities not*
   *properly before the Court themselves,* it is nevertheless clear that the public officer
   State Appellees' written filing position is Rhode Island's administrative procedures
   altering and falsifying the interest portion of federal Title IV Central Registry of
   Title IV-D serve legitimate state interests.  Rhode Island's criminal position begs
   this Court to differ.  Title IV-D can be distilled to nothing more than debt setting,
   draconian Fourth amendment violative debt collection and bringing legal actions in
   debt at common law in juryless forums – fundamentally, provisions of Title IV-D
   wholesale violate Due Process, Equal Protection, the Fourth Amendment, the
   Seventh Amendment and the Eleventh Amendment.  See *Jarkesy*. Furthermore,
   Rhode Island's record alteration and falsification administrative procedures of Title

IV-D categorically *begs* Article III independent review for legitimacy, be it

conformity to federal civil and above enumerated criminal laws as well as to the

Constitution.  See, e.g. 5 U.S.C. sec. 706. As such, Appellant filed a Rule 62.1

Motion for Indicative Ruling on Rule 60(b) and Rule 15(a) motions that currently

pends before the district court in 23-cv-126.   Appellant discovered in 2024 that

Appellant is irreparably injured by the Appellee-withheld federal criminal

obstruction record alteration and falsification administrative procedures that

exposes the government to RICO liability.  Given the foregoing, Younger does not

apply to criminal obstruction Title IV-D debt collection that Rhode Island alleges

is Title IV-D compliant – if Rhode Island's criminal alteration and falsification of

federal records is actually "Title IV-D compliant," Article III *must* strike down

Title IV-D as nothing more than corrupt obstruction of justice RICO debt

collection scheme dressed up as "social security."  The legitimacy of Rhode

Island's criminal obstruction Title IV-D administrative procedures goes to the

underlying issue of the legitimacy of Title IV-D itself.  This issue is hereby

reserved and preserved for additional future briefing before the U.S. Supreme

Court in the event this Court sides with the corrupt federal obstruction

Administrative State.

C. The aforesaid federal judiciary obstruction of this pending proceeding that

implicates the legitimacy of the judiciary, the legitimacy of Rhode Island's

government in so far as it relates to its administration of an Act of Congress must be struck down, and impeached.  Nobody is above the law, and the federal judiciary's obstruction acts were committed in ministerial and *functus officio void ab initio* unofficial capacities. See, *Fischer v. U.S.*, 603 U.S. __ (2024); *Trump v. U.S.*, __ (2024).  Appellant made known "as soon as possible" the federal obstruction crimes to appellate judges of the United States in the First Circuit since 2024 pursuant to 18 U.S.C. sec. 4.  The corollary "as soon as possible" response obligations by the public officers to the reported commission of crimes listed in Section 4, incorporating Section 1503, necessarily corresponds to the "as soon as possible" clause in Section 4.  The duty of the public officer is greater.  *See*, *United States v. Caraballo-Rodriguez*, 480 F.3d 62 (1st Cir. 2007)

## ARGUMENT

### I.     STANDARD OF REVIEW

Younger Abstention Dismissal is subject to *de novo* review. *Colonial Life & Accident Ins. Co. v. Medley*, 572 F. 3d 22, 25 (1st Cir. 2009).  *See* also, *Lass v. Bank of America, N.A.*, 695 F. 3d at 133 (1st Cir. 2012).  The Court accepts as true the well-pleaded factual allegations in Plaintiff's Amended Complaint.  *Lass*, 695 F.3d at 129, 133.

### II.     ISSUE I: UNDER ARTICLE III, THE FEDERAL COURT HAS AN UNFLAGGING OBLIGATION TO EXERCISE JURISDICTION TO INDEPENDANTLY REVIEW TITLE IV-D PROVISIONS

Appellant's Amended Complaint alleges Appellant suffered monetary damages

injury from Appellees' corrupt administrative procedures that violate federal

criminal obstruction concealing Rhode Island's unlawful 12% compound interest

within Title IV-D legal structural framework. Their co-conspirator judiciary

administrators of Title IV-D administer juryless, constitutionally infirm structural

defective forums as laid out in the foregoing and the Amended Complaint (ECF

25). The new 2024 evidence shows documentary proof of Title IV-D

administrative procedures that are essentially criminal obstruction altering and

falsifying federal Title IV-D records, which Appellee-counsels (public officers

themselves) claim in post-appeal filings before the district court implicate

legitimate state interest, implying the facially criminal procedures are *Title IV-D

compliant*. The same public officers have claimed before the Court that Rhode

Island's Title IV-D administrative procedures are Title IV-D compliant. Faced

with proffered obstruction of justice evidence before it, the Court must review

whether Article III has an unflagging obligation to exercise jurisdiction to

independently review the lawfulness of administrative procedures enacted by

Congress. As a threshold question, Article III's fundamental truth finding

obligation has an unflagging obligation to review criminal obstruction or practices

harmful to the administration of justice, including within the halls of the Court

itself. Obstruction of justice as both a concept and a legal term of art has adorned

the halls of Anglo-American justice in the context of professional misconduct for
over four centuries. See *People ex. rel. Karlin v. Culkin*, 162 N.E. 487, 489-92
(N.Y. 1928) (Cardozo, C.J.) (tracing, with ***derision***, the history of barristers and
attorneys who have been charged with obstruction of justice back to the
seventeenth century and making comparisons to contemporaneous prosecutions).
In analyzing a case involving "practices obstructive or harmful to the
administration of justice," Justice Cardozo considered the early instances of the
attachment of culpability for such behavior, and that history underscores the
importance of documentation in the judicial process dating to the 16th Century.' *Id.*
at 490-91 (discussing the charge of *misprisio clerici*: the submission of writs
without the required formalities).  The appearance of judicial propriety, equity, and
fairness was the underlying rationale behind the charge, as the Court emphatically
must apply <u>here</u>. "Our court is 'slandered and evil spoken of, our cares and labors
made void and frustrate' by the 'negligence of clerks and ministers;' the client
'beginneth to think evil of us that are judges, to suspect our skill,' and to speak evil
of the law." *Id.* (quoting in part the Lord Chief Justice of the Common Pleas,
Easter Term, 9 Eliz. 1567). The charge of obstruction of justice was carried into
the Americas and retained its strongly negative normative overtone.  *See* THE
DECLARATION OF INDEPENDENCE para. 2, 10 (U.S. 1776), noted in
*O'Malley v. Woodrough*, 307 U.S. 277, 284 (1939).  The Declaration of

Independence is illustrative: "The history of the present King of Great Britain is a history of repeated injuries and usurpations, all having in direct object the establishment of an absolute Tyranny over these States .... He has obstructed the Administration of Justice, by refusing his Assent to Laws for establishing Judiciary powers. ' *Id*. (emphasis added).  In the twentieth century, federal obstruction of justice provisions expanded from Section 1503, the wellspring from which most of the obstruction of justice provisions arose, including section 1512. See *United States v. Poindexter,* 951 F.2d 359, 380-83 (D.C. Cir. 1991) (providing a detailed history of the development of federal obstruction of justice statutes including §§ 1503, 1505, and 1512).  Sections 1503 and 1512 have been broadly construed to proscribe actions beyond those enumerated in their provisions. *See* Michael E. Tigar, *Crime Talk, Rights Talk, and Double-Talk*: *Thoughts on Reading the Encyclopedia of Crime and Justice*, 65 TEX. L. REV. 101, 111 n.72 (1986). Section 1512 was thought to "significantly broaden" the reach of Section 1503, even while 1503 was being read to reach outside its specifically enumerated scope. Tigar, *supra* note 33, at 111 n.72.  Modern readings of the statutes texts "corrupt" intent require only that the act in question have the reasonably foreseeable effect of obstructing a proceeding, regardless of the defendant's actual intent. *See* Jeffrey R. Kallstrom & Suzanne E. Roe, *Obstruction of Justice*, 38 AM. CRIM. L. REV. 1090-91 (2001).  The prosecutorial inquiry is not, therefore, the presence of intent

to obstruct the proceeding per se, but rather the presence of intent to commit an act that could reasonably be foreseen to have that effect. *Id*.

Moreover, under construction of Section 1503, to be "corrupt" an act must only have the natural and probable effect of interfering with an official proceeding. Both natural and probable effect of interfering with this pending official proceeding occurred here.  See *United States v. Aguilar*, 515 U.S. 593, 598-601 (1995).  In *United States v. Aguilar*, a federal judge was convicted of both illegally disclosing a wiretap and obstruction of justice.  Section 1512(c)(1) states, "alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding." Section 1512(c)(2) states, "otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both."

The Supreme Court in *Fischer vs. U.S.*, 603 U.S. ___ (2024) made clear that Section 1512(c)(2) "otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so," relates to any official proceeding obstruction involving documents and records, that this Court must apply to the district court's acts in these consolidated matters.  The Court must independently review the facts of travel of the appellate record post appeal after the overturn of the *Chevron* deference (see *Lopes Bright Enterprise vs. Raimondo*, (2024) (Slip Opinion), with

no deference to the agency Defendant-Appellees who aided and abetted the criminal alteration of the record on appeal. *Trump vs. U.S.*, 603 U.S. ___ (2024) instructs the Court to review official and unofficial acts by public officials in the administration of Title IV-D.

Title IV-D is distilled to nothing more than setting debt, debt collection and bringing legal actions in debt at common law in juryless constitutionally infirm forums that is regulated by federal law and funded by federal public funds. As a basic tenet of government legitimacy, a government's administratively-procedure proscribed systemic alteration and falsification of government records makes clear Article III must review for criminality. Article III has jurisdiction to review the lawfulness of administrative procedures of Title IV-D.

### III.   ISSUE TWO: ARTICLE III HAS AN UNFLAGGING OBLIGATION TO REVIEW RHODE ISLAND'S ADMINISTRATION OF TITLE IV-D THAT INCLUDES BRINGING LEGAL ACTIONS IN DEBT AT COMMON LAW TO JURYLESS CONSTITUTIONALLY INFIRM AND STRUCTURALLY DEFECTIVE FORUMS

The Supreme Court excoriated the lower federal courts for failing to independently review the crucial facts with instructions to differentiate between official and unofficial acts in Trump v. U.S., 603 U.S. __ (2024). Without independent review of the facts, the lower courts merely made sweeping assumptions of immunity that are not applicable to the facts of the case. The

Supreme Court's excoriation is exactly applicable to this Circuit's Younger

Abstention application to on-going private interests dressed up as support

"enforcement proceedings." This Court's unflagging obligation is to exercise

jurisdiction properly conferred to it, and before the "narrow exception of

abstention" is invoked, the Court must independently review the nature of the

proceeding, obstruction of justice alleged and the alleged constitutional infirmity of

the forum.  Title IV-D proceedings in state forums are *federal* proceedings that

must conform to *federal* law and the Constitution, that are fundamentally legal

actions in debt at common law.  See *S.E.C. v. Jarkesy*, 603 U.S. __ (2024) holding

that the Court reaffirmed the applicability of the Seventh Amendment to *new*

*causes of action*, first in *Tull v. United States*, 481 U. S. 412 (1987), and then in

*Granfinanciera*. See ante, at 8–9. And by 1990, the U.S. Supreme Court case law

had come full circle, announcing once again what has always been true: that "[t]he

right to a jury trial includes <u>more</u> than the common-law forms of action recognized

in 1791." *Teamsters v. Terry*, 494 U. S. 558, 564.  (J., Gorsusch, Concurring).

"*Granfinanciera* effectively decides this case. Even when an action "originate[s] in

a newly fashioned regulatory scheme," what matters is the <u>*substance of the action*</u>,

not where Congress has assigned it. *Id*., at 52. And in this case, the substance

points in only one direction, this is nothing but a legal action in debt at common

law.  "And they target the same basic conduct as common law debt, employ the

same terms of art, and operate pursuant to similar legal principles. See *supra*, at

10–12. In short, this action involves a "matter[] of *private* rather than public right."

*Granfinanciera*, 492 U. S., at 56. Therefore, "Congress may not 'withdraw'" it

"'from [Article III] judicial cognizance.'" *Stern*, 564 U. S., at 484 (quoting

*Murray's Lessee*, 18 How., at 284). *Ibid.* Therefore, private right debt claims may

not be withdrawn from Article III judicial cognizance. Moreover, here, in this

matter, the underlying action does not involve a welfare case, and is therefore

nothing more than a *private* legal action in debt at common law criminally brought

by the State "dressed up as enforcement" calculated in part to continue the cover

up of the State's underlying falsification of Title IV-D federal records for the

purpose of making it look like there is no interest to falsely make it look like

Rhode Island is 42 U.S.C. sec. 654(21)(A) compliant. The U.S. Supreme Court

moreover held that "Congress cannot "conjure away the Seventh Amendment by

mandating that traditional legal claims be . . . taken to an administrative tribunal."

492 U. S., at 52. *Ibid.* Nor does the fact that the State's action "originate[d] in a

newly fashioned regulatory scheme" permit Congress to siphon a [debt] action

away from an Article III court. *Ibid.* "[T]raditional legal claims" must be decided

by courts with jury trials, "whether they originate in a newly fashioned regulatory

scheme or possess a long line of common-law forebears." *Ibid.* To determine

whether the claim implicated the Seventh Amendment, the Court applied the

principles distilled in *Tull*. We examined whether the matter was "from [its] nature subject to 'a suit at common law.'" 492 U. S., at 56 20; see id., at 43–50.  A jury is required.   The Supreme Court went on to hold, "By its text, the Seventh Amendment guarantees that in "[s]uits at common law, . . . the right of trial by jury shall be preserved." In construing this language, we have noted that the right is not limited to the "common-law forms of action recognized" when the Seventh Amendment was ratified. *Curtis v. Loether*, 415 U. S. 189, 193 (1974). As Justice Story explained, the Framers used the term "common law" in the Amendment "in contradistinction to equity, and admiralty, and maritime jurisprudence." *Parsons*, 3 Pet., at 446. The Amendment therefore "embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume." *Id*., at 447. The Seventh Amendment extends to a particular statutory claim if the claim is "legal in nature." *Granfinanciera,* 492 U. S., at 53. As we made clear in *Tull*, whether that claim is statutory is immaterial to this analysis. *See* 481 U. S., at 414–415, 417–425.  The Supreme Court's jurisprudence in *Jarkesy* makes clear that not only does the Seventh Amendment extends to Title IV-D statutory claims but that the Fourth Amendment, the First Amendment, Due Process and Equal Protection Clauses, Privileges and Immunity, and the Government Edicts Act protections extend to Title IV-D statutory claims of the claims are "legal in nature," making it crystal clear that actions in debt are "legal in

nature." The fact that the pending state action is nothing but a private legal action in debt at common law is dispositive – nothing in Younger nor its progeny extensions to quasi-criminal proceedings extended Younger to private legal actions in debt at common law.

### IV. ISSUE THREE: PRIVATE DEBT COLLECTION AND STATE APPELLEES' BAD FAITH TITLE IV-D ADMINISTRATIVE PROCEDURES AND CONSTITUTIONAL INFIRM FORUMS MAKE CLEAR YOUNGER ABSTENTION DOES NOT APPLY

The commission of federal obstruction crimes to falsely alter the record to make false interest debt claims underlying the on-going state legal action in debt at common law in a juryless constitutionally infirm forum serves *no legitimate State interest* cognizable in any court of law. *See, e.g.*, *Netflix v. Babin*, No. 22-40786 (5th Cir. 2023). Allegations of "bad faith and harassment," the Supreme Court has said, can usually fit the bill. *Younger*, 401 U.S. at 53–54. While states certainly have a legitimate interest in the enforcement of their laws, they have no such interest when the enforcement of those laws is carried out in bad faith. With respect to the interests of the State," we have said, "it by definition does not have any legitimate interest in pursuing a bad faith prosecution brought to retaliate for or deter the exercise of constitutionally protected rights." *Wilson v. Thompson*, 593 F.2d 1375, 1383 (5th Cir. 1979). Comity, the notion that largely undergirds the relational jurisprudence between state and federal courts, gives way once good faith does. As we put it decades ago, *if the "state's legal machinery is being used*

*in bad faith," relying "upon comity is to beg the question." Sheridan v. Garrison*, 415 F.2d 699, 707 (5th Cir. 1969)(emphasis added). The 2024 newly discovered Rhode Island's federal obstruction Title IV-D administrative procedures fit the bill. Rhode Island has no legitimate interest in carrying out the administration of Title IV-D in bad faith criminal obstruction federal Central Registry record alteration and falsification to make it look like there is no interest, represent to support obligors that the $0.00 interest means interest was waived, then put it back on the State registry to make false claims to support debt obligors for unlawful 12% compound interest. Appellant and the Court has a substantial interest to explore the whole administrative procedures record. Accordingly, Appellant filed a Rule 62.1 motion for indicative ruling on Rule 60(b) and Rule 15(a) motions to amend the complaint to add new Administrative Procedures Act claims under 5 U.S.C. sec. 706, that is currently pending in the district court since September 6, 2024.

## V. ISSUE 4 and ISSUE 5: PRE-APPEAL AND POST-APPEAL OBSTRUCTION IN THE FEDERAL COURT

Having laid out the pre-appeal and post-appeal obstruction by William E. Smith in district court for the district of Rhode Island, Appellant argues the Court must make the distinction among ministerial *void ab initio* acts of *mispriscio clerici* dressed up as valid judge-created law that on its face states "in aid of the court" showing intent to corruptly influence and interfere with the appellate judges in a pending official appellate proceeding when the *functus officio* William Smith

lacked any authority, that the 2024 new evidence shows Smith's action is calculated to conceal, impair, impede the availability of egregiously incriminating evidence from coming to light showing systemic and systematic federal record falsification and alteration procedures that went on for decades in Rhode Island covered by 18 U.S.C. §1512(c)(1) and (2), each count up to 20 years imprisonment.

Modern readings of the statutes texts "corrupt" intent require only that the act in question have the reasonably foreseeable effect of obstructing a proceeding, regardless of the defendant's actual intent. *See* Jeffrey R. Kallstrom & Suzanne E. Roe, *Obstruction of Justice*, 38 AM. CRIM. L. REV. 1090-91 (2001).   The prosecutorial inquiry is not, therefore, the presence of intent to obstruct the proceeding per se, but rather the presence of intent to commit an act that could reasonably be foreseen to have that effect. *Id*.  Already having had to apply the necessary prosecutorial inquiry itself during this Court's own performance of forensic investigation of the appellate record during the pendency of *this* appeal 23-1967, in order to determine that Appeal 23-1978 could proceed, the Court already answered in the affirmative the "presence of intent to commit an act that could reasonably be foreseen to have that effect" – the act did in fact confuse the Court, did in fact mislead the Court into falsely believing initially that the Court lacked jurisdiction over properly filed appeal 23-1978 after William E. Smith and

officers of the court in the district court altered and falsified the appellate record

post-appeal (on November 20, 2023) to falsely make it look like there were

pending motions when the notice of appeal was filed for appeal no. 23-1967 (ECF

32 filed on November 17, 2023). (Successfully) Misleading the Court through

record alteration into falsely believing the Appellate Court lacks threshold

jurisdiction over a properly filed notice of appeal (23-1978) is a <u>fundamental</u>

<u>material</u> corruption of the record on appeal.

Moreover, under construction of Section 1503, to be "corrupt" an act must only

have the natural and probable effect of interfering with an official proceeding.

Both natural and probable effect of interfering with this pending official

proceeding occurred here. See *United States v. Aguilar*, 515 U.S. 593, 598-601

(1995). In *United States v. Aguilar*, a federal judge was convicted of both illegally

disclosing a wiretap and obstruction of justice. Section 1512(c)(1) states, "alters,

destroys, mutilates, or conceals a record, document, or other object, or attempts to

do so, with the intent to impair the object's integrity or availability for use in an

official proceeding." Section 1512(c)(2) states, "otherwise obstructs, influences, or

impedes any official proceeding, or attempts to do so, shall be fined under this title

or imprisoned not more than 20 years, or both."

The Supreme Court in *Fischer vs. U.S.*, 603 U.S. ___ (2024) made clear that

Section 1512(c)(2) "otherwise obstructs, influences, or impedes any official

proceeding, or attempts to do so," relates to any official proceeding obstruction involving documents and records, that this Court must apply to the district court's acts in these consolidated matters. The Court must independently review the facts of travel of the appellate record post appeal after the overturn of the *Chevron* deference (see *Lopes Bright Enterprise vs. Raimondo*, (2024) (Slip Opinion), with no deference to the agency Defendant-Appellees who aided and abetted the criminal alteration of the record on appeal. *Trump vs. U.S.*, 603 U.S. ___ (2024) instructs the Court to review official and unofficial acts by public officials, that when applied here, must make the distinction among *functus officio* void acts of *mispriscio clericio* dressed up as valid judge-created law that on its face states "in aid of the court" showing intent to corruptly influence and interfere with the appellate judges in a pending official appellate proceeding when the *functus officio* William Smith lacked any authority, that the 2024 new evidence shows Smith's action is calculated to conceal, impair, impede the availability of egregiously incriminating evidence from coming to light showing systemic and systematic automatic federal record falsification and alteration procedures that went on for decades in Rhode Island covered by 18 U.S.C. §1512(c)(1) and (2), each count up to 20 years imprisonment.

Under the Court's fundamental truth-finding and equitable obligations, these sets of extraordinary circumstances involving systematic and systemic obstruction

with each count up to 20 years imprisonment warrants the Court to explore the

"substantial issue."    Smith's obstruction act is not merely prejudicial to the

Plaintiff-Appellant but compounds the officer *mispriscio clericio* injury rather than

provide requisite truth-seeking and equitable obligation the Court by law is

required to remedy.   Whatever paltry excuse proffered by William Smith does not

and will not exculpate him and the federal judiciary from obstruction liability –

there is no justifiable excuse for functus officio William Smith void ab initio to

alter the record on appeal post-appeal, to falsely make it look like there were

pending motions prior to the filing of the notice of appeal, so as to confuse the

appellate Court into falsely believing initially that it lacked jurisdiction over

properly filed appeals – that is a material threshold irreparable injury to Appellant

whom Smith aimed to harm.  It is a facial obstruction of justice.  The *void ab initio*

*functus officio* Smith intended to criminally influence the Court of Appeals and

interfere with this pending appeal 23-1967.  Smith knew the filing of an appeal

divests the district court of power to modify its judgment or take other action

affecting the cause without permission from the court of appeals. *Griggs v.*

*Provident Consumer Discount Company*, 459 U.S. 56 (1982). *See* also *Hamer v.*

*Neighborhood Housing Services of Chicago*, 583 U.S. ___ (2017). Once a district

court enters final judgment and once the district court denies post-judgment

motions, the final judgment and district court's denials of post-judgment motions

become subject to appellate review. See *Commonwealth School, Inc. v. Commonwealth Academy Holdings LLC*, 2021 WL 1398268 (1st Cir. Apr. 14, 2021).  *See* also *John's Insulation, Inc.v. L. Addison and Assocs.*, 156 F.3d 101, 105 (1st Cir. 1998).  The intended prejudicial harm of any resulting error would be irreparable and goes towards the legitimacy of the judiciary.  Appellant hereby preserves the issues raised in this motion for Article III review by the U.S. Supreme Court and states on the record that the raised and preserved issues are ripe for Supreme Court review.

### VI. ISSUE SIX: Public Officer Obligation under 18 U.S.C. sec. 4 and the "As soon as possible" clause.

This Circuit's *United States v. Caraballo-Rodriguez*, 480 F.3d 62 (1st Cir. 2007) held that under 18 U.S.C.  § 4, hinderance, concealment, suppression, affirmative neglect, or unjustified delay are "especially culpable for public officers, since they received a higher penalty for the crime than that received by ordinary citizens at common law." Mullis, *supra*. at 1113. The public officers specifically named in the Federal misprision statutory text with a duty to act upon the receipt of information are "judge(s) and civil authorities under the United States."  The First Circuit equally applies the Federal misprision statute to state and local public officers.  The First Circuit in *Caraballo* further noted that the Supreme Court also noted in *Branzburg v. Hayes*, 408 U.S. 665, 696 n. 36, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), that some lower courts had construed the statute to require both

knowledge of a crime and an affirmative act of concealment or participation, but

that both the Supreme Court and the First Circuit did not adopt that construction.

This Circuit in *Caraballo* (precedent) cited **United States v. Sessions**, Nos. 00-

1756, 00-1791, 2000 WL 1456903 (8th Cir. Oct.2, 2000) (unpublished decision),

holding that the misprision statute was satisfied where the individual "gave

incomplete information regarding his knowledge of the [crime]," at least where he

"gave the police partial information that was misleading." Id. at *1, 2000 WL

1456903. If the statute is geared toward avoiding the misleading of authorities,

*Ciambrone*, 750 F.2d at 1418, it is still possible, in concept and in fact, that even a

truthful but partial disclosure could conceal by misleading the government through

the withholding of key information, specifically in footnote 10 that "it is

commonly accepted in other areas of law.  The specific cases this Circuit Court

cited and relied on are all in the form of omitted facts in filings submitted to judges

in a federal court of law in official federal proceedings that "may mislead."

(Emphatically, it is obvious that the omission of key facts submitted in the federal

district court which satisfies the misprision statute equally applies to the omission

of key facts submitted in the federal appellate court). See the *Caraballo* Court cited

cases, *United States v. Nelson-Rodriguez,* 319 F.3d 12, 33 (1st Cir.2003)

(recognizing that omitted facts in a wiretap warrant affidavit may mislead); *United

States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir.1996) (commenting that a "bare-bones

description" submitted to judge may have been "calculated to mislead"); *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir.1985) (holding that omitted facts in a warrant affidavit may mislead); *United States v. Previte*, 648 F.2d 73, 85 (1st Cir.1981) (noting that trial court's use of slide transparencies to deliver jury instructions "had some potential to mislead the jury, more by what they omitted than by what they contained").  Therefore it is abundantly plain that the First Circuit *Caraballo* Court applied the misprision statute to court "filings submitted to a judge."   Accordingly, the Appellee motions that were filed before this very Court of Appeals, that grossly and egregiously omitted key facts evidenced in the attached state Title IV-D administrative procedures documenting the falsification of federal computer records zeroing out the unlawful 12% compound interest in order to conceal it for the felonious purpose of feloniously making false claims to the United States and to support-obligors, "may have been calculated to mislead" which this Court held in *United States v. Caraballo-Rodriguez*, 480 F.3d 62 (1st Cir. 2007) satisfies the misprision of felony statute**,** holding that the misprision statute was satisfied where the individual "gave incomplete information regarding his knowledge of the [crime]," at least where he "gave the partial information that was misleading"  which Appellee public officers plainly committed before this same Court.  Appellees' and William Smith's commission of misprision of felony

before this Court requires "as soon as possible" response from judges of the United

States under 18 U.S.C. sec. 4.

### VII. ISSUES SEVEN AND EIGHT: Prejudice and Transfer of Venue

This Court's response to Smith's record obstruction consisted of forcing the

Appellant to pay $605.00 filing and docket fees *per appeal* (23-1978 and 24-1313)

or suffer consequential dismissal of properly-appealed *functus officio misprisio*

*clerici void ab initio* William E. Smith orders dating from November 20, 2023 to

March 2024 issued during the pendency of *this* appeal that irreparably harmed and

prejudiced the Appellant *during the pendency* of *this* appeal compounded the

district court's irreparable harm and prejudice to the Appellant – this Court denied

Appellant relief and consequently dismissed appeals of the *functus officio*

*misprisio clerici void ab initio* Smith orders that *litter and taint* this appeal's record

that are fundamentally unsegregable from 23-1978 and 24-1313, which shows

structural defect bias by *this* Court that is irreparably *prejudicial* to the Texas

Appellant. *See* consequentiality of the tantamount ruse of forcing payment of $605

fees per appeal on appeals of void ab initio orders and proceedings: "a void order

may be attacked at any time in any court, either directly or collaterally" *Vallely v.*

*Northern Fire & Marine Ins. Co.*, 254 U.S. 348, 41 S. Ct. 116 (1920); "orders are

regarded as nullities. They are not voidable, but simply void, and this even prior to

reversal." *Old Wayne Mut. I. Assoc. v. McDonough*, 204 U.S. 8, 27 S. Ct. 236 (1907).

Under these extraordinary circumstances, this matter should be *transferred* to another neutral and simultaneously *Title IV-D Administrator Appellees-affected* Circuit venue, namely the <u>Fifth Circuit</u>. *See*, 28 U.S.C. § 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

## VIII. ISSUE NINE: Disqualification is Self-executing under 28 U.S.C. sec. 455(a)

As stated by James Madison, "No man is allowed to be a judge in his own cause; because his interest would certainly bias his judgment, and, not improbably, corrupt his integrity." The Federalist No. 10, at 59 (J. Cooke ed. 1961). As a corollary to that maxim, neither may any person be allowed to choose the judge in his or her own cause, either directly or indirectly. See *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009). Supplementing these fundamental principles, more specific rules have been developed to promote fairness, as well as the appearance of fairness, in cases in which a judge may have an interest or bias that may affect the judge's ability to be fair and evenhanded.

Under §455(a), a judge must "disqualify himself in any proceeding in which

his impartiality might reasonably be questioned." The statute defines a

"proceeding" to include "appellate review." 28 U.S.C. §455(d)(1). Disqualification

is mandatory for conduct that reasonably calls into question a judge's impartiality.

*Liteky v. United States,* 510 U.S. 540, 548 (1994). *Liljeberg v. Health Servs.*

*Acquisition Corp.*, 486 U.S. 847, 858 n.7 (1988). Section 455(a) "was designed to

promote public confidence in the integrity of the judicial process by replacing the

subjective 'in his opinion' standard with an objective test and by avoiding even the

appearance of impropriety whenever possible." *Id*. at 858 n.7, 865. The statute is

self-executing; a judge must both inquire without a request from the parties and

continually evaluate any potential conflict at all stages of the appeal. Section

455(a) operates as a "catchall" recusal provision to supplement the specifically

enumerated grounds for judicial disqualification under §455(b). *Liteky*, 510 U.S. at

548. Because the appearance of bias may arise when no bias exists in fact, the

reach of §455(a) is much broader than §455(b). It is for this reason that

disqualification motions are typically brought under §455(a). Courts apply an

objective standard of reasonableness in determining if disqualification is required

under §455(a)*. Liteky,* 510 U.S. at 548. Disqualification is required "if a reasonable

person who knew the circumstances would question the judge's impartiality, even

though no actual bias or prejudice has been shown." *Fletcher v. Conoco Pipe Line*

*Co.*, 323 F.3d 661, 664 (8th Cir. 2003) The question of disqualification "is to be

judged objectively as a reasonable person with knowledge of all the facts would judge." *Feminist Women's Health Ctr. v. Codispoti*, 69 F.3d 399, 400 (9th Cir. 1995). When the disqualification question is close, the judge "whose impartiality might reasonably be questioned must recuse" from hearing the appeal. *Roberts v. Bailar*, 625 F.2d 125, 129 (6th Cir. 1980). The Supreme Court stated long ago that "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14 (1954). A judge is presumed to be impartial, and the party seeking disqualification bears the heavy burden of proving otherwise. A judge must be satisfied that he or she is "actually unbiased toward the parties in each case and that his impartiality is not reasonably subject to question." *In re Bernard*, 31 F.3d 842, 843 (9th Cir. 1994). For instance, under Canon 3C, a judge must recuse in a proceeding in which his or her "impartiality might reasonably be questioned," mirroring 28 U.S.C. §455(a). The test for judicial disqualification under the impartiality provisions of the Code of Conduct is, similar to §455(a), an objective one based on public perception. *United States v. Sierra Pac. Indus., Inc*., 862 F.3d 1157, 1174 (9th Cir. 2017). The Code of Conduct contains no enforcement mechanism. *Microsoft Corp*., 253 F.3d at 114. But there are remedies extrinsic to the Code, such as §455(a), discussed earlier. Violations of the Code of Conduct may give rise to a violation of §455(a) "if doubt is cast on the integrity of the judicial process." *Id*. See, *In re Martinez-Catala,* 129 F.3d 213, 220 (1st Cir. 1991)

Here, this Court *doubted its own jurisdiction* over properly filed appeals caused by William Smith's *functus officio* post-appeal criminal obstruction alteration of the record on appeal, committing a pattern of serious federal crimes warranting 20 years imprisonment per count. See 18 U.S.C. sec. 15012(c)(2), 1503. Smith cast the most egregious doubt on the integrity of the judicial process. There is no justifiable excuse.

## **CONCLUSION**

This Court should reverse the District Court's Dismissal of Federal Monetary Damages Claims pursuant to Younger. This Court should vacate the District Court's *void ab initio* post-appeal orders from November 20, 2023 through March 2024 as null and void. The District Court is bound by Article III to exercise jurisdiction conferred to it by Congress; this federal action is properly before it. The Court should reverse with instructions permitting the Plaintiff-Appellant to amend the complaint to add Administrative Procedures Act claims, and order discovery focused on Appellees' Title IV-D administrative procedures altering and falsifying Title IV-D federal records "zeroing out interest." The Court should transfer venue to the Fifth Circuit. Judge William E. Smith should be disqualified, and the case assigned to another qualified judge.

Respectfully submitted,

Mary Seguin
Pro Se
/s/    *Mary Seguin*

Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

Dated:  September 13, 2024

## CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the

Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal

Rules of Appellate Procedure, on September 13, 2024 on all registered counsel of

record, and has been transmitted to the Clerk of the Court.

Mary Seguin
Pro Se
/s/    *Mary Seguin*

Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FED. R. APP. P.

32(A)(7)(B) because:

• this brief contains 12,730 words, excluding the parts of the brief

exempted by FED. R. APP. P. 32(f).

This brief also complies with the typeface requirements of FED. R. APP. P.

32(A)(5) and the type requirements of FED. R. APP. P. 32(A)(6) because:

• this brief has been prepared in a proportionally spaced typeface using

Microsoft Word 2020 with a 14 point font named Times New Roman.

Mary Seguin
Pro Se
/s/    *Mary Seguin*
Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

Dated: September 13, 2024